IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ROCKWELL AUTOMATION, INC. and<br>ROCKWELL AUTOMATION TECHNOLOGIES, INC.,<br><br>Plaintiffs,<br><br>v.<br><br>WAGO CORPORATION and<br>WAGO KONTAKTTECHNIK GmbH & CO. KG,<br><br>Defendants. | Case No. 10-CV-718-WMC |

**PLAINTIFFS ROCKWELL AUTOMATION, INC. AND ROCKWELL AUTOMATION TECHNOLOGIES, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR SANCTIONS PURSUANT TO FED. R. CIV. P. 37(C)(1)**

Plaintiffs Rockwell Automation, Inc. and Rockwell Automation Technologies, Inc. ("Rockwell") file this Memorandum in Support of its Motion for Sanctions Pursuant to Fed. R. Civ. P. 37(c)(1).

I.   INTRODUCTION

Defendants WAGO Corporation and WAGO Kontakttechnik GmbH & Co. KG's ("Defendants") have violated the Preliminary Pretrial Conference Order by attempting to add new expert opinions on patent invalidity in a supplemental expert report that are not based on matters raised in their expert's first report.  These new opinions do not qualify as genuine supplementation, as permitted under the rules, because they use new prior art references to support newly formulated opinions.  These new opinions are neither justified nor harmless. Because Defendants' supplemental expert report fails to comply with this Court's Preliminary Pretrial Conference Order and Rule 26 of the Federal Rules of Civil Procedure, Defendants'

should be precluded from using the new matters to supply evidence on a motion, at a hearing, or at a trial.

## II. STATEMENT OF FACTS

Defendants are accused of infringing four patents in this lawsuit: U.S. Patent No. 6,745,232 (the '232 patent), U.S. Patent No. 6,801,813 (the '813 patent), U.S. Patent No. 7,065,415 (the '415 patent), and U.S. Patent No. 7,123,974 (the '974 patent).

With regard to expert disclosures in this case, this Court imposed its usual restrictions:

> "All disclosures mandated by this paragraph must comply with the requirements of Rule 26(a)(2). Supplementation pursuant to Rule 26(e) is limited to matters raised in an expert's first report, must be in writing and must be served no later than five calendar days before the expert's deposition, or before the general discovery cutoff if no one deposes the expert."

See Preliminary Pretrial Conference Order, Dkt. # 22, ¶ 4. The Court's Order provided for two rounds of expert reports. The first round of expert reports on liability (patent infringement and patent invalidity) were to be served on February 24, 2012. The second round of expert reports, responding to the opening reports, were to be served on March 23, 2012.

Pursuant to this schedule the parties exchanged opening expert reports on February 24, 2012. Defendants' opening expert report opined on the alleged invalidity of the asserted patents and was entitled "Declaration of Richard Hooper, Ph.D, P.E.," (the "First Report"). See Exhibit ("Exh.") 1.

Following receipt of Defendants' First Report, Rockwell and its expert spent a significant amount of time, resources and effort preparing a rebuttal report challenging the invalidity opinions set forth in Defendants' First Report. Rockwell served its rebuttal expert report on March 23, 2012, pursuant to the Court's Preliminary Pretrial Conference Order.

That same day, March 23, 2012, Defendants served a second expert report entitled "Supplemental Declaration of Richard Hooper, Ph.D., P.E.," (the "Second Report"). Hooper stated that his Second Report "supplements my declaration dated February 23, 2012, by addressing infringement issues and by <u>supplementing my February 23 discussion of invalidity issues</u>." See Exh. 2, ¶ 1 (emphasis added). Defendants' Second Report acts as both a rebuttal report to the patent infringement opinions presented in Rockwell's opening expert infringement report served on February 24, 2012, and as a supplement to Defendants' First Report on issues of patent invalidity. However, the invalidity opinions in the Second Report do not supplement any opinions found in the First Report, rather they are brand new opinions on patent invalidity that apply new pieces of prior art against each of the asserted patents.

On March 26, 2012, the first business day following Rockwell's receipt of the Second Report, Paul Tanck, counsel for Rockwell, wrote a letter to Robert Cook, counsel for Defendants identifying the fact that the Second Report violates the Court's rules on supplementation of expert reports (Dkt. 22, ¶ 4) and requested that Defendants voluntarily withdraw any portions of the Second Report that were improper. See Exh. 3. In their response, Defendants' never denied that Hooper's Second Report proffered new opinions on invalidity that were not raised in his First Report. See Exh. 4. And yet, Defendants refused to withdraw these new opinions from Hooper's Second Report. Id. So Rockwell was forced to bring this Motion.

### A. New Opinions as to the Alleged Invalidity of the '974 Patent

In his First Report, Hooper's patent invalidity opinion on the '974 patent was based on two prior art references: the Yukutomo patent and Cimplicity commercial system. See Exh. 1, ¶¶ 472-594. Hooper's First Report provided over 120 paragraphs of painstaking detail on the alleged invalidity of the '974 patent based on these two references only. But Hooper's Second

3

Report argues for the invalidity of the '974 patent based on two entirely new prior art references: the WAGO-I/O PRO 1.0 User Manual (1999) and the CoDeSys 2.2 User Manual (2001). See Exh. 2, ¶¶ 145-207. The CoDeSys 2.2 (2001) reference was not cited in Hooper's First Report. See Exh. 1, ¶¶ 472-594. Similarly, the WAGO-I/O PRO (1999) reference was not cited in Hooper's First Report with respect to invalidity of the '974 Patent. See Exh. 1, ¶¶ 472-594. A table summarizing the references cited by Hooper with respect to the alleged invalidity of the '974 patent is included below:

| '974 Patent | |
|---|---|
| **References Cited in First Report** | **New References Cited in Second Report** |
| • Yukutomo <br> • Cimplicity | • WAGO-I/O-PRO (1999) <br> • CoDeSys 2.2 (2001) |

### B. New Opinions as to the Alleged Invalidity of the '232 Patent

The invalidity opinions in Hooper's First Report regarding the '232 Patent are based on two references: the CoDeSys Commercial System (1997) and the LabVIEW Real Time Commercial System (1999). See Exh. 1, ¶¶ 148-219. Hooper's First Report spent over 70 paragraphs opining on the alleged invalidity of the '232 patent based on only these two references. But in his Second Report, Hooper argues invalidity based on a completely new reference, the WAGO-I/O-PRO 1.0 User Manual (1999). See Exh. 2, ¶¶ 4-48. The WAGO-I/O-PRO (1999) reference was never cited in Hooper's First Report with respect to invalidity of the '232 patent. See Exh. 1, ¶¶ 148-219. A summary chart of the references cited in each of Hooper's reports with respect to invalidity of the '232 patent is included below.

| '232 Patent | |
|---|---|
| **References Cited in First Report** | **New References Cited in Second Report** |
| • CoDeSys (1997) <br> • LabVIEW RT (1999) | • WAGO-I/O-PRO (1999) |

C.     **New Opinions as to the Alleged Invalidity of the '415 Patent**

Regarding his opinions on invalidity of the '415 Patent, Hooper's First Report relied primarily on two references: the Chuo patent and the TRiLOGI commercial product. See Exh.1, ¶¶ 428-471. Hooper's First Report also cited to several additional patent references for support of his invalidity opinion regarding the '415 Patent. These references included: the Skeirik, Cassell, Wellan, Beaverstock, Cotugno, Hillman, Lemoine, Belotserkovshkiy, Jang, Bhagwat, Siegrist, Bender, Bourne, Flood, Struger, and Shearer patents. See id., ¶446, 448, 449, 452. Hooper's Second Report, however, introduced brand new opinions based on two new references: the CoDeSys 1.5 User Manual (1997) and the WAGO-I/O PRO 1.0 User Manual (1999). The CoDeSys (1997) reference was never cited in Hooper's First Report with respect to invalidity of the '415 patent. See Exh. 1, ¶¶ 428-471. Similarly, the WAGO-I/O-PRO (1999) reference was not cited in Hooper's First Report with respect to invalidity of the '415 patent. See Exh. 1, ¶¶ 428-471. A summary chart of the references cited in each of Hooper's reports with respect to invalidity of the '415 patent is included below.

| '415 Patent | |
|---|---|
| **References Cited In First Report** | **New References Cited In Second Report** |
| • Chuo<br>• TRiLOGI<br>• Skeirik<br>• Cassell<br>• Wellan<br>• Beaverstock<br>• Cotugno<br>• Hillman<br>• Lemoine<br>• Belotserkovshkiy<br>• Jang<br>• Bhagwat<br>• Siegrist<br>• Bender | • WAGO-I/O-PRO (1999)<br>• CoDeSys 1.5 (1997) |

| | |
|---|---|
| • Bourne<br>• Flood<br>• Struger<br>• Shearer | |

### D. New Opinions as to the Alleged Invalidity of the '813 Patent

Finally, Hooper's First Report relied primarily on two references to support his opinion regarding the alleged invalidity of the claims in the '813 patent: the Li patent and the Stripf patent. See Exh. 1, ¶¶ 220-323. Hooper listed other references as secondary support for his invalidity opinion regarding the '813 patent. These references included the following patents: Bourne, Flood, Struger, Shearer, Klindt, Davis, Belotserkovskiy, Jang, Bhagwat, Siegrist, Bender, Cotugno, Skeirik, Cassell, Wellan, Beaverstock, Lemoine, Hosaka, Hillman, and Nixon, and Chuo. See Exh. 2, ¶¶239, 240, 253, 271, 277, 283, 292, and 309. Hooper's Second Report, however, argues invalidity based on a new reference, the WAGO-I/O PRO 1.0 User Manual (1999). The WAGO-I/O PRO (1999) reference was never cited in Hooper's First Report with respect to the alleged invalidity of the '813 patent. See Exh. 1, ¶¶ 220-323. A summary chart of the references cited in each of Hooper's reports with respect to invalidity of the '813 patent is included below.

| '813 Patent | |
|---|---|
| **References Cited In First Report** | **New References Cited In Second Report** |
| • Li<br>• Stripf<br>• Bourne<br>• Flood<br>• Struger<br>• Shearer<br>• Klindt<br>• Davis<br>• Belotserkovskiy<br>• Jang | • WAGO-I/O-PRO (1999) |

|  |  |
|---|---|
| <ul><li>Bhagwat</li><li>Siegrist</li><li>Bender</li><li>Cotugno</li><li>Skeirik</li><li>Cassell</li><li>Wellan</li><li>Beaverstock</li><li>Lemoine</li><li>Hosaka</li><li>Hillman</li><li>Nixon</li><li>Chuo</li></ul> |  |

### III. ARGUMENT

#### A. Hooper's Second Report Includes New Opinions On Invalidity That Appear Nowhere in His First Report And Therefore Should Be Precluded

In theory, Hooper's Second Report attempts to supplement his First Report on the issue of patent invalidity. However, it is undisputed that the new invalidity opinions presented in Hooper's Second Report apply new pieces of prior art against each of the asserted patents—opinions and prior art combinations that were never addressed in Hooper's First Report.

The inclusion of new opinions on invalidity in Hooper's Second Report, regarding matters not raised in his First Report, plainly violates this Court's Preliminary Pretrial Conference Order that states that "[s]upplementation pursuant to Rule 26(e) is limited to matters raised in an expert's first report." See Dkt. #22, ¶ 4. This Court has noted that such supplementation "is intended to provide parties an opportunity to correct mistakes and oversights, not to include new examples and illustrations that could have been included in an original expert report." Eugene Baratto v. Brushstrokes Fine Art, Inc., 701 F. Supp. 2d 1068, 1071 (W.D. Wis. 2010); Innogenetics N.V. v. Abbott Labs., 2006 WL 600000791, at *2 (W.D. Wis. 2006). A blackline copy of the Second Report showing the new matters that were never

7

disclosed in the First Report is attached as Exhibit 5 to the Declaration of Paul Tanck submitted herewith.

Hooper's Second Report veers into new territory by including patent invalidity opinions that appear nowhere in his First Report. By adding the new opinions, Defendants have unilaterally decided to create a third and potentially fourth round of expert reports. Although a timely supplemental expert report is allowable, "it must be an actual supplement, not a new and different set of opinions." Z Trim Holdings, Inc. v. Fiberstar, Inc., 2007 WL 5462414, *2 (W.D. Wis. Sep. 26, 2007). Defendants may argue that the new opinions presented in Hooper's Second Report, while never presented in his First Report, were at least based, in part, on underlying information that was already of record. This argument is untenable. See Fujitsu Limited v. NetGear, Inc., 2009 WL 2341810, at *1 (W.D. Wis. Jul. 29, 2009) (granting motion to strike, noting that "the presence of the information and data in the reports does not mean that the opinions and explanations were present").

Hooper's use of new references and his use of known references in a new way are new opinions that should not be allowed in a supplemental expert report. The opinions added in the Second Report were not minor elaborations of Hooper's initial opinions; they were completely new examples, illustrations, and opinions on invalidity that should not be permitted.

### B.     Hooper's Addition of New Opinions is Not Harmless Nor Justified

Defendants' decision to "sandbag" Rockwell by adding new expert opinions on invalidity as part of Hooper's Second Report is not harmless and jeopardizes the trial schedule in this matter. The prejudice to Rockwell of allowing the Defendants to add this new material to the expert report is significant. By waiting until after Rockwell had submitted its rebuttal expert report on invalidity, Defendants now require Rockwell to go back to the drawing board and

suffer the unnecessary, significant expense of engaging its expert to draft a new rebuttal expert report on patent validity. Moreover, this new rebuttal report will not be prepared in time for Hooper's upcoming deposition or the upcoming dispositive motion deadline of April 13, 2012.

Further, Defendants' decision to add new expert opinions was not justified. There is no reason these opinions could not have been submitted earlier as Rockwell's infringement contentions, served on September 16, 2011, have been consistent throughout this lawsuit.

This Court has a longstanding policy of promoting fairness, efficiency, and predictability in every patent case that comes before it. See Eugene Baratto v. Brushstrokes Fine Art, Inc., 701 F. Supp. 2d 1068, 1071 (W.D. Wis. 2010). Defendants' actions flout that policy. Defendants have presented an opening expert report on patent invalidity based on one set of prior art references, and now present Rockwell with new patent invalidity positions in the Second Report based on yet another set of references. Defendants are presenting Rockwell, and this Court with a moving target that should not be permitted. Allowing Defendants to shift theories goes directly against this Court's stance on maintaining its schedule and procedures:

> "In past IP cases this court has had to clean up messes involving supplemental expert disclosure and it has determined that the only fair, predictable and efficient path to timely resolution is to enforce the federal rules and its own procedures stringently. So it is here, and so it will be in future cases."

Z Trim Holdings, 2007 WL 5462414, at *2.

### IV. CONCLUSION

Rockwell respectfully requests that the Court preclude Defendants from supplying evidence on a motion, at a hearing, or at a trial on any new matters of patent invalidity raised in the March 23, 2012 "Supplemental Declaration of Richard Hooper, Ph.D., P.E." that were not raised in Defendants' opening expert report served on February 24, 2012. In addition to the sanction of preclusion under Rule 37(c)(1) the Court also has the option to impose other

sanctions, including payment of attorney's fees. Rockwell respectfully requests that the Court impose this sanction for any fees related to preparing this motion and/or related to preparing any additional expert reports related to this matter.

Dated: March 30, 2012

/s/ Paul Tanck

Paul J. Tanck (admitted in W.D. Wis.)
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY 10112
Tel.: (212) 408-5100
Fax: (212) 541-5369
Email: ptanck@chadbourne.com

COUNSEL FOR PLAINTIFFS ROCKWELL AUTOMATION, INC.
and ROCKWELL AUTOMATION TECHNOLOGIES, INC.