UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ROCKWELL AUTOMATION, INC. AND ROCKWELL AUTOMATION TECHNOLOGIES, INC., <br><br> Plaintiffs, <br><br> -against- <br><br> WAGO CORPORATION AND WAGO KONTAKTTECHNIK GmbH & CO. KG, <br><br> Defendants. | Case No. 10-CV-718-WMC |

**PLAINTIFFS ROCKWELL AUTOMATION, INC. AND
ROCKWELL AUTOMATION TECHNOLOGIES, INC.'S MEMORANDUM
OF LAW IN SUPPORT OF THEIR MOTION TO COMPEL DISCOVERY RESPONSES**

Pursuant to Federal Rule of Civil Procedure 37(a), Plaintiffs Rockwell Automation, Inc. and Rockwell Automation Technologies, Inc. (collectively, "Rockwell" or "Plaintiffs") submit this Memorandum of Law in Support of their Motion to Compel Defendants Wago Corporation ("WCP") and Wago Kontakttechnik GmbH & Co., KG ("WKT," and collectively with WCP, "Wago" or "Defendants") to produce all emails and correspondence responsive to Rockwell's document requests, to produce all documents responsive to Document Request Nos. 11-14, 21, 28, 31, and 32, to produce Sven Hohorst's responsive documents, and to provide information responsive to Interrogatory Nos. 13 and 14.

In accordance with Rule 37(a) of the Federal Rules of Civil Procedure, Rockwell certifies that it has conferred with counsel for Defendants in good faith in an effort to resolve the parties' disagreement without court intervention, but those efforts have been unsuccessful.  (See generally Declaration of Paul Tanck in Support of Plaintiffs Motion to Compel Discovery ("Tanck Decl.") ¶¶ 11-16, 22-23.)

## INTRODUCTION

Since the commencement of this action, Rockwell has been attempting to obtain discovery on the matters that are at the very heart of this patent infringement lawsuit. As discovery winds to a close, however, Defendants continue to stonewall Rockwell in several key areas of discovery. Defendants refuse to produce the following documents and provide the following information relevant to Rockwell's claims, despite Rockwell's repeated requests for this discovery:

1) Correspondence and emails responsive to Rockwell's document requests;

2) Documents relating to Defendants' conception, design, research, development; and programming of the accused products (Document Request Nos. 11-14);

3) WKT Managing Director Sven Hohorst's responsive documents, as well as documents that relate to Defendants' licenses and agreements (and any related documentation, such as correspondence) surrounding the sale and distribution of the accused and related products, which are relevant to Mr. Hohorst's deposition (Document Request Nos. 21, 28, 31, and 32); and

4) Information concerning the identity of Defendants' customers and related sales data (Interrogatory Nos. 13 and 14).

Defendants' excuses for their refusal to produce these documents and provide this information fall into two categories: the first are those that center on Defendants' unilateral determination that the limited discovery it has provided thus far is sufficient, and the second are those that center on Rockwell's purported failure to satisfy its discovery obligations. Neither set of excuses, however, even if true, is sufficient to relieve Defendants of their obligation to respond to the discovery requests at issue. The Federal Rules of Civil Procedure require parties

to provide discovery that "appears reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1). Here, as discussed below, the requested discovery at issue exceeds this threshold and is germane to the claims and defenses in this lawsuit. Thus, the Court should grant Rockwell's motion for an order compelling Defendants to provide this discovery.

## ARGUMENT

The Federal Rules of Civil Procedure provide that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Fed. R. Civ. P. 26(b)(1). The test of relevancy is not whether the information would be admissible at trial, but rather whether the discovery sought "appears reasonably calculated to lead to the discovery of admissible evidence." Id. Indeed, relevancy is construed broadly, and encompasses "any matter that bears on, or that reasonably could lead to other matters that could bear on, any issue that is or may be in the case." Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 351 (1978). In patent infringement cases, relevancy is governed by Federal Circuit law. See Truswal Sys. Corp. v. Hydro-Air Eng'g, Inc., 813 F.2d 1207, 1212 (Fed. Cir. 1987). Like other jurisdictions, the Federal Circuit construes relevance broadly at the discovery stage. See, e.g., id. at 1211 ("Relevance under Rule 26(b)(1) is construed more broadly for discovery than for trial.").

I.  **Defendants' Correspondence and Emails Relating to the Accused Products Should Be Produced Because They Are Relevant**

On September 7, 2011, Rockwell served their First Set of Requests for Documents and Things on Defendants (the "Document Requests"). (Tanck Decl. Ex.1 at 7.) On October 7, 2011, Defendants served their Objections and Responses to Plaintiffs' Document Requests ("Defendants' Responses"). (Id. Ex. 2.) With regard to each Document Request, Defendants' Responses repeatedly stated they would "search their records and . . . produce nonprivileged material . . . ." (See generally id. Ex. 2.) Nonetheless, Defendants have not produced *any*

3

correspondence or emails in response to *any* of Rockwell's document requests in this lawsuit. (Id. ¶ 5.) Defendants lack of diligence in searching for and collecting responsive documents on individuals' computers and e-mails in this lawsuit is readily apparent from the deposition testimony of WKT's chief engineer for the accused products. He testified that while he has exchanged emails with WCP regarding the accused products and that he has other electronic documents regarding the accused products, he has never been asked to provide copies of those emails or documents for use in this lawsuit.[1] (Id. Ex. 3.) Since these emails and presumably the other emails of Defendants that have yet to be collected and produced are germane to the issues of knowledge, intent, direct and indirect patent infringement, and damages and are "reasonably calculated to lead to the discovery of admissible evidence," Defendants should be required to produce them. Moreover, to the extent Defendants' emails and correspondence show that Defendants copied the disclosures of Rockwell's patent or its commercial embodiments, this evidence would be highly probative to each of the above listed issues. Rockwell must be given an opportunity to discover these materials.

---

[1] Unlike Defendants, Plaintiffs have taken their obligations to conduct electronic discovery in this lawsuit seriously. Plaintiffs have spent a significant amount time, effort and resources searching, collecting and reviewing all of the emails of all relevant custodians in this lawsuit. For example, Plaintiffs searched the email of Steven Blech, Gregory Majcher, John Caspers, Jeffrey Hamilton, James Kay, David Johnston, Shelly Urdaneta, Stuart Sigel, Samuel Malizia, Jr., John Weisenberger, Steven Hickcox, Ron Bliss, and Bob Kreschmann using many relevant search terms related to Defendants, the patents-in-suit, and the accused products.

II.  **Documents Relating to Defendants' Conception,
Design, Research, Development, and Programming of the
<u>Accused Instrumentalities Must Be Produced Because They Are Relevant</u>**

Plaintiffs' Document Requests included the following specific requests for documents relating to Defendants' conception, design, research, development, and programming of the accused products:

<u>Request No. 11</u>:  All documents and things related to the conception, design, research, development, and/or programming of Defendants' Accused Instrumentalities, including but not limited to sketches, prints, images, electronic information, written disclosures, test data, notebooks, minutes, reports or the like.

<u>Request No. 12</u>:  Documents and things sufficient to identify all persons who participated in the design, development, or programming of Defendants' Accused Instrumentalities.

<u>Request No. 13</u>:  All documents and things related to any study, analysis, reverse engineering, and/or copying of Plaintiffs' products or the subject matter claimed in the Patents-In-Suit.

<u>Request No. 14</u>:  All documents and things referring or relating to all design proposals and design alternatives considered or known by Defendants for Defendants' Accused Instrumentalities.

(Tanck Decl. Ex.1 at 7.)

With regard to each of Document Request Nos. 11-14, Defendants' Response stated that they would "search their records and . . . produce nonprivileged material . . . ." (<u>Id.</u> Ex. 2 at 13-17.)  Nonetheless, Defendants have not produced any testing information on any of the accused products.  (<u>Id.</u> ¶ 5.)  For purposes of proving direct infringement, Plaintiffs are entitled to discovery on whether Defendants test or use the accused products.  <u>See</u>, <u>e.g.</u>, <u>Joy Techs., Inc.</u> v. <u>Flakt, Inc.</u>, 6 F.3d 770, 775 (Fed. Cir. 1993); <u>Elan Microelectronics Corp</u>. v. <u>Apple, Inc</u>., 2011 WL 4048378, at *4 (N.D. Cal. Sept. 9, 2011) (ordering the production of testing documents since it is relevant to the issue of direct infringement).

5

Defendants have also failed to produce their correspondence, emails, or contracts with third parties regarding the conception, design, research, development, and programming of the accused products, including those documents related to their relationships with Kontron Modular Computers ("Kontron") and 3S Smart Software Solutions, who play key roles in the design and manufacture of the accused products. (Tanck Decl. ¶ 7.) For example, Defendants produced only five documents regarding their relationship with Kontron. (Id. ¶ 8.) It is highly unlikely that Defendants have so few documents considering the fact that Kontron designed more than twenty of the accused products. (Id. ¶ 9 & Ex. 4.) This information is needed to discover Defendants' knowledge of Plaintiffs' products or patents or both in their joint efforts with third parties to design a product that competes with Plaintiffs' products. This information is not only relevant to indirect infringement, but is also relevant to willfulness and damages.

Defendants have also not produced any of their research documents, including demonstrations of the accused products to customers, communications with customers regarding the functionality of the accused products, customer technical support documents, and any customer surveys. (Id. ¶ 10.) For purposes of proving indirect infringement, Plaintiffs are entitled to discovery relating to Defendants' customers use of the accused products. See Elan Microelectronics, 2011 WL 4048378, at *3 (ordering the production of communications with customers or potential customers). Defendants have never claimed that this information is not relevant to proving indirect infringement.

Defendants take the position that it does not have to respond to Plaintiffs' specific discovery requests because it has produced what it deems as a sufficient amount of materials in the categories Defendants think are relevant. (Tanck Decl. Ex. 8 at 5-6.) The materials produced by Defendants, however, fail to provide entire categories of documents that are critical to

6

proving issues of knowledge, intent, direct and indirect patent infringement, and damages.  (Id. ¶¶ 5-10.)  The Federal Rules of Civil Procedure require Defendants to produce all nonprivileged documents responsive to these requests since the requests are "reasonably calculated to lead to the discovery of admissible evidence."  Fed. R. Civ. P. 26(b)(1).

To the extent Defendants claim that their production of responsive documents is somehow excused by Plaintiffs' purported discovery shortcomings, Defendants misunderstand the discovery system established by the Federal Rules of Civil Procedure.  Defendants must provide "discovery regarding any nonprivileged matter that is relevant to [Rockwell]'s claim[s]."  Id.  If Defendants have a genuine issue with the scope of Rockwell's discovery responses, the proper remedy is seek redress from the Court.  It is not entitled to engage in self-help by limiting its own discovery responses.

Accordingly, since the documents sought by Document Request Nos. 11-14 are "relevant," the Court should compel Defendants to produce all nonprivileged documents, including correspondence and emails, in their custody or control that are responsive to these requests.

### III.     Documents Relevant to the Deposition of WKT Managing Director Sven Hohorst Must Be Produced Because They Are Relevant

Prior to taking the deposition of WKT Managing Director Sven Hohorst, Rockwell seeks (1) production of Mr. Hohorst's documents responsive to Plaintiffs' Document Requests, and (2) Defendants' documents responsive to the following specific requests:

> Request No. 21:  Documents sufficient to show the manner of distribution of Defendants' Accused Instrumentalities in the United States.

> Request No. 28:  All documents and things referring or relating to licenses to which either or both Defendants are a party for technology in the field of the Patents-In-Suit or Defendants' Accused Instrumentalities.

7

> Request No. 31:  All agreements or negotiations for agreements concerning the manufacture, use, license, or sale of Defendants' Accused Instrumentalities.
>
> Request No. 32:  All agreements or negotiations for agreements between Defendants concerning transfer pricing for Defendants' Accused Instrumentalities.

(Tanck Decl. Ex. 1 at 8-10.)

Defendants have yet to produce Mr. Hohorst's documents or Defendants' documents responsive to Document Request Nos. 21, 28, 31, and 32 (id. ¶ 16), despite stating in Defendants' Response that they would "search their records and . . . produce nonprivileged material . . ." responsive to each of these requests (id. Ex. 2 at 23-24, 30-31, 33-35).  Thus, on March 12, 2012, Rockwell wrote Defendants again seeking production of these documents.  (Id. Ex. 9 at 1-2.) Defendants claimed in response that because the notice for Mr. Hohorst's deposition included a document schedule, they were surprised that Rockwell would view the complete production of documents relevant to his deposition as a prerequisite to his deposition.  (Id. Ex. 10 at 7.)  That Rockwell first wants all responsive documents relevant to a witness's testimony prior to that witness's deposition should not come as a surprise to Defendants; it is simply good litigation practice.

Defendants do not contend that documents relevant to the deposition of Mr. Hohorst should not be produced; instead they take issue with the timing of the production of these documents relative to Mr. Hohorst's deposition.  While Rockwell recognizes that the scheduling of Mr. Hohorst's deposition is difficult because he has to travel to the United States to attend the deposition, this does not excuse Defendants' failure to produce the documents necessary for Rockwell to prepare for his deposition especially since those documents were requested over six months ago.  Thus, the Court should order Defendants to immediately produce these documents

8

so that they may be reviewed in advance of Mr. Hohorst's deposition, which is noticed for May 1, 2012. (Id. ¶ 19.)

### IV. Information Concerning the Identity of Defendants' Customers and Related Sales Data Must Be Provided Because It Is Relevant

On February 10, 2012, Rockwell served their Fourth Set of Common Interrogatories (the "Interrogatories"), which included the following interrogatories:

> Interrogatory No. 13: Identify Defendants' customers in the United States that purchase any of Defendants'750-8xx, 758-xxx, 762-3xxx, 767-2xxx, WAGO-I/O-PRO CAA, or CoDeSys (3.x) products.
>
> Interrogatory No. 14: Provide the volume of sales, the average sales price per unit, the sales revenue, cost of goods sold, and gross profit margin for the sales of each product (for example the 750-841, the 750-880, the 758-870, the 767-2501. etc.) sold to each customer identified in Interrogatory No. 12.

(Tanck Decl. Ex. 11 at 3.)

On March 12, 2012, Defendants served their Objections and Responses to Plaintiffs' Fourth Set of Common Interrogatories ("Interrogatory Responses"). (Id. Ex. 12.) In the Interrogatory Responses, Defendants "decline[d] to provide the information requested by Plaintiff's Interrogatory No. 13" on the basis that the identity of its customers "is not germane to any of the claims or defenses remaining in this case inasmuch as the theories of infringement that are being pressed by Plaintiffs with regard to non-dismissed Counts II, III, V and VI are theories of direct infringement . . . ." (Id. Ex. 12 at 3-4.) Further, although Defendants responded to Interrogatory No. 14, that response failed to link the requested sales data with each of Defendants' customers. (Id. ¶ 24.) On March 12, 2012, Rockwell wrote Defendants concerning the Interrogatory Response, explaining that the "identity of Defendants' customers and whether or not they directly infringe Rockwell's patents is germane to this lawsuit" because "Rockwell has always asserted and continues to assert claims of indirect infringement," which "requires a threshold showing of direct infringement" by Defendants' customers. (Id. Ex. 13.) Instead of

9

providing the requested information, Defendants sought to enter a stipulation of fact that would obviate the need for this discovery.  (Id. Ex.14.)  Subsequently, the parties unsuccessfully attempted to negotiate such a stipulation.  (Id. ¶ 25.)

Because the information requested by Interrogatory Nos. 13 and 14 is germane to the issue of proving direct infringement by Defendants' customers through their use of the accused products, it is, at a minimum, "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b)(1).  Defendants do not appear to dispute this; instead they have attempted to negotiate a stipulation of fact that would obviate the need for such discovery.  Since the parties have been unable to arrive at a mutually agreeable stipulation, the Court should order Defendants to provide this information without further delay so as not to prejudice Rockwell further.

## CONCLUSION

For the foregoing reasons, Rockwell respectfully requests that the Court grant their motion to compel Defendants to produce all emails and correspondence responsive to Rockwell's document requests, to produce all documents responsive to Document Request Nos. 11-14, 21, 28, 31, and 32, to produce Sven Hohorst's responsive documents, and to provide information responsive to Interrogatory Nos. 13 and 14.

Dated:  April 4, 2012                /s/ Paul Tanck
                                     Paul J. Tanck (admitted in W.D. Wis.)
                                     Chadbourne & Parke LLP
                                     30 Rockefeller Plaza
                                     New York, NY  10112
                                     Tel.:  (212) 408-5100
                                     Fax:  (212) 541-5369
                                     Email:  ptanck@chadbourne.com
                                     COUNSEL FOR PLAINTIFFS ROCKWELL
                                     AUTOMATION, INC.
                                     and ROCKWELL AUTOMATION
                                     TECHNOLOGIES, INC.