**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

| | | |
|---|---|---|
| ROCKWELL AUTOMATION, INC., and | ) | |
| ROCKWELL AUTOMATION | ) | |
| TECHNOLOGIES, INC., | ) | Case No. 10-cv-718 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| WAGO CORPORATION and | ) | |
| WAGO KONTAKTTECHNIK GmbH | ) | |
| & CO. KG, | ) | |
| | ) | |
| Defendants. | ) | |

---

**DEFENDANTS' RESPONSE IN OPPOSITION TO**
**PLAINTIFFS' MOTION FOR SANCTIONS**

---

Defendants WAGO Corporation ("WCP") and WAGO Kontakttechnik GmbH & Co. KG ("WKT") (collectively, "Defendants") submit this Response In Opposition To Plaintiffs Rockwell Automation, Inc. and Rockwell Automation Technologies, Inc.'s (collectively, "Plaintiffs") Motion For Sanctions ("Motion").

**I.      INTRODUCTION.**

Plaintiffs seek to preclude Defendants' expert witness, Dr. Hooper, from offering an invalidity opinion on three prior versions of products that have the same functionality as the products that are accused of infringing the patents-in-suit.  Plaintiffs complain that such invalidity opinions should be excluded because they were not set forth in Dr. Hooper's opening expert report on invalidity and are an improper supplement under the Court's Pretrial Order.  Plaintiffs' concerns are grossly overstated for multiple reasons.

First, Plaintiffs' overlook the fact that Dr. Hooper's opinions on the prior versions can be offered as a defense to Plaintiffs' claims of infringement, as well as a supplement to his

invalidity opinions.  The Federal Circuit has made clear that Defendants may offer evidence of the prior art as an affirmative defense to claims of infringement under the doctrine of equivalents.  Accordingly, Dr. Hooper properly opined on the state of the prior art as an affirmative defense to each of Plaintiffs' infringement claims based upon the doctrine of equivalents.

Second, Dr. Hooper properly supplemented his opening report on invalidity.  Relating to the '232 Patent, Dr. Hooper analyzed CoDesSys (1997) in his invalidity report.  In his Supplemental Declaration, Dr. Hooper simply referenced WAGO-I/O-PRO (1999), which has the same functionality as CoDeSys (1997).  Relating to the '974 Patent, Dr. Hooper analyzed CoDeSys 2.2 (2001) in his Supplemental Declaration.  Dr. Hooper did not analyze this reference in his opening invalidity report because he did not have an English version of CoDeSys 2.2 (2001) at that time.  These supplements are well within the scope of a proper supplement under the Court's Pretrial Order and the Federal Rules of Civil Procedure.

Third, to the extent that the Court determines that these supplements were improper, the Court still should not strike the references because Dr. Hooper's opinions on the prior versions were both justified and harmless.  It is clear that Plaintiffs have suffered absolutely no prejudice or surprise.  Indeed, the references simply are prior versions of the accused products.  Plaintiffs certainly are well aware of the functionality of these references and essentially have already addressed their functionality through their expert's analysis of the later version of CoDeSys 2.3.  There is no real dispute that any delay in addressing the references will have no impact on discovery, as Plaintiffs were provided the references two weeks prior to the deposition of Dr. Hooper.  Further, trial will not be impacted, as it is not set for another six months.  Simply put,

Plaintiffs will suffer absolutely no harm in responding to the references based on the prior versions of the accused products.

Perhaps more importantly, Plaintiffs were unable to identify any bad faith or willfulness of Defendants in not disclosing the references in Dr. Hooper's opening invalidity report.  If the Court had any questions regarding any potential prejudice to Plaintiffs, the Court's concerns should be alleviated by the fact that Defendants have acted in good faith in presenting their expert witness's opinions.  Dr. Hooper merely supplemented his expert report to offer opinions on prior versions of the accused products a month after filing his opening report.  Dr. Hooper did not delay in offering these opinions and Plaintiffs have been provided ample time to prepare to depose Dr. Hooper and otherwise prepare for trial.  Thus, even if the Court determines that the references were an improper supplement, the Court nonetheless should exercise its discretion and allow Defendants to rely on the prior versions in this case.  Plaintiffs' motion for sanctions should be denied.

## II.      BACKGROUND.

### A.      Plaintiffs Allege Four Claims Of Patent Infringement Against Defendants.

Count Two alleges infringement of U.S. Patent No. 6,745,232 for "Strobed synchronization providing diagnostics in a distributed system" (the "'232 Patent").  (Dkt. No. 1-2.)  Plaintiffs' expert describes the subject matter of the '232 Patent as follows:

> The '232 patent is directed to a runtime debugging and diagnostics method and system for industrial control systems. The disclosed embodiments allow a user to regulate processing of a control device in a step mode during execution of a stored program. The patent discloses methods of storing an executable program in a programmable logic controller ("PLC"), where the PLC communicates with devices in a networked system to receive instructions to suspend execution, change modes of execution, or run in a step mode. The step mode can be for a specified number of iterations of the code, or for a specified time period. Further, the patent describes the structure of mode change messages or step mode messages exchanged between the executing PLC and a communications medium.

(Declaration of Robert N. Cook ("Cook Decl."), dated April 10, 2012, ¶ 2, Ex. 1, ¶ 15 ("Zatarain Opening Report").)

      Count Three alleges infringement of U.S. Patent No. 6,801,813 for "Method for consistent storage of data in an industrial controller" (the "'813 Patent").  (Dkt. No. 1-3.) Count Five alleges infringement of U.S. Patent No. 7,065,415 for "Method for consistent storage of data in an industrial controller" (the "'415 Patent").  (Dkt. No. 1-5.)  Plaintiffs' expert describes the subject matter of the '813 Patent and '415 Patent as follows:

> The '813 and '415 patents are directed to systems and methods of employing a file system in the memory of a PLC. An editor allows a user to write an industrial control program that utilizes the file system services on the PLC. An execution engine operable in the PLC is adapted to interpret instructions that invoke the services of the file system on the PLC. The file system on the PLC can be used to log and retrieve measured data and trend data. The file system can be used to load "recipe files" from local or remote storage location. The execution engine and the file system allow loading user-defined routine files at run-time from a file storage location. Typical file service storage locations could be a memory device residing within (or attached to) a PLC, on a local server, or at a remote location.

(Zatarain Opening Report (Cook Decl. Ex. 1) ¶ 20.)

      Count Six alleges infringement of U.S. Patent No. 7,123,974 for "System and methodology providing audit recording and tracking in real time industrial controller environment" (the "'974 Patent").  (Dkt. No. 1-6.)  Plaintiffs' expert describes the subject matter of the '974 Patent as follows:

> Aspects of the '974 patent are directed to systems and methods for "real time" automated monitoring, recording, and tracking of interactions with an industrial control component. A recording component on the control component (or on a remote device) records certain real-time interactions (e.g., access records; value forcing operations; clearing/setting counter, register, or status area of memory). A tracking component aggregates these interactions.  The aggregated interactions can be used to generate audit data related to the control component..

(Zatarain Opening Report (Cook Decl. Ex. 1) ¶ 17.)

**B.    The Parties Exchanged Expert Reports On Invalidity And Infringement.**

Pursuant to the Court's Preliminary Pretrial Conference Order ("Pretrial Order"),

Defendants timely served the expert report of Dr. Hooper on invalidity on February 24, 2012

("Invalidity Report").  (Dkt. No. 37-1 ("Invalidity Report").)  In his report, Dr. Hooper analyzed

various prior art references and concluded that the patents-in-suit are invalid.  (*See id.* ¶¶ 150,

222, 430 & 474.)

Plaintiffs served their expert report on infringement on February 24, 2012, which was

prepared by Arthur Zatarain.  (*See* Zatarain Opening Report (Cook Decl. Ex. 1).)  To support his

opinions regarding infringement of the patents-in-suit, Mr. Zatarain relied extensively on

CoDeSys 2.3 (2007), which is a product for creating programs for industrial automation

controllers and which is distributed as open source software by 3S Smart Software Solutions.

(*See, e.g.*, Dkt. No. 37-2 ("Hooper Supp. Decl.") ¶¶ 6, 14-17 & 116-17; Zatarain Opening Report

(Cook Decl. Ex. 1) ¶¶ 49, 64, 68, 139, 141, 143 & 145; Cook Decl. ¶ 3, Ex. 2 at 5.)  Plaintiffs

contend that Defendants' products were created with CoDeSys software and Defendants'

products infringe the patents-in-suit, which include WAGO-I/O-PRO CAA.  (Zatarain Opening

Report (Cook Decl. Ex. 1) ¶ 120.)  Thus, WAGO-I/O-PRO CAA is, in effect, a private label

version of CoDeSys.  (*See id.* ¶ 49.)

Regarding Count Two, for example, Plaintiffs' theory of infringement is that the

debugging mode of CoDeSys 2.3 software (of which WAGO-I/O-PRO CAA is a version) used

to program the accused products causes the products to infringe the '232 patent.  (*See, e.g.*,

Zatarain Opening Report (Cook Decl. Ex. 1) ¶ 139(a).)  The accused features of CoDeSys 2.3

were carried over from earlier versions of CoDeSys, ultimately from CoDeSys 1.5 (1997) (of

which WAGO-I/O-PRO (1999) is a version).  (*See, e.g.*, Hooper Supp. Decl. (Dkt. No. 37-2) figs

at 5-11, 13-15, 17-18 & 38-48.)  The 1997 date of CoDeSys 1.5 predates the 2000 filing date of

the '232 Patent.  (*See* Dkt. No. 1-2 (attaching a copy of the '232 Patent); Hooper Supp. Decl. (Dkt. No. 37-2) ¶ 8.)

In accordance with the Pretrial Order, Dr. Hooper responded on March 23, 2012 to Mr. Zatarain's infringement report.  (*See* Hooper Supp. Decl. (Dkt. No. 37-2).)  Dr. Hooper's responsive report was entitled a "Supplemental Declaration." (*Id.* at 1.)  In his Supplemental Declaration, Dr. Hooper opined that Defendants' accused products did not infringe any of the patents-in-suit.  (*See generally id.*)  Dr. Hooper also noted the importance of Mr. Zatarain's heavy reliance on CoDeSys 2.3 (2007).  For example, Dr. Hooper explained that the same functionality in the accused CoDeSys 2.3 (2007) software was present in the prior versions of CoDeSys 1.5 (1997), WAGO-I/O-PRO (1999), and CoDeSys 2.2 (2001).  (*See, e.g.*, Hooper Supp. Decl. (Dkt. No. 37-2) ¶¶ 7-9, 114-17 & 150-51.)  As a result, CoDeSys 2.3 (2007) could not infringe, as its prior versions predated the patent-in-suit. (*See id.*)

## III.   LEGAL STANDARD.

Federal Rule of Civil Procedure 26(a)(2) governs the disclosure of expert testimony. Fed. R. Civ. P. 26(a)(2).  Rule 26(a)(2) provides that a party must disclose to the other party the identity of any expert witness it may use to present evidence at trial and also provide a written report that contains "a complete statement of all opinions the witness will express and the basis and reasons for them."  Fed. R. Civ. P. 26(a)(2)(B)(i).

A party must supplement its expert report in accordance with Rule 26(e) and the Pretrial Order.  Rule 26(e)(1)(A) provides that a party must supplement its expert report "in a timely manner if the party learns that in some material respect the disclosure or response is incomplete or incorrect, and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing."  Fed. R. Civ. P. 26(e)(1)(A).  This Court's Pretrial Order further provides as follows:  "Supplementation pursuant to Rule 26(e) is

limited to matters raised in an expert's first report, must be in writing and must be served no later than five calendar days before the expert's deposition, or before the general discovery cutoff if no one deposes the expert."  (Dkt. No. 22 at 2.)

Under Rule 37(c), party may be sanctioned "unless the party . . . can show that its violation of Rule 26(a) was either justified or harmless.'" *Mid-America Tablewares, Inc. v. Mogi Trading Co., Ltd.*, 100 F.3d 1353, 1363 (7th Cir. 1996) (quoting *Finley v. Marathon Oil Co.*, 75 F.3d 1225, 1230 (7th Cir. 1996)). The determination of whether a Rule 26(a) violation is justified or harmless "is entrusted to the broad discretion of the district court." *Id.* (citing *Finley*, 75 F.3d at 1231).

The Court's discretion is guided by the following factors: "'(1) the prejudice or surprise to the party against whom the evidence is offered; (2) the ability of the party to cure the prejudice; (3) the likelihood of disruption to the trial; and (4) the bad faith or willfulness involved in not disclosing the evidence at an earlier date.'" *Koutnik v. Brown*, 396 F. Supp. 2d 978, 982 (W.D. Wis. 2005) (quoting *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003).

## IV.    ARGUMENT.

Plaintiffs' Motion is based upon a single premise: that Defendants should not be able to refer to earlier versions of products that have the same functionality of the products accused of infringement in this case.  The reason for Plaintiffs' insistence is obvious, as Plaintiffs hope to keep that damaging evidence out of the case.  But, Plaintiffs' complaints overstate the matter and ignore the standards under Rule 37.

**A.**     **Dr. Hooper Does Not Supplement His Invalidity Report, But Properly Offers Opinions On Prior Art That Are A Defense To Plaintiffs' Infringement Claims Based Upon The Doctrine Of Equivalents.**

Plaintiffs claim that Defendants improperly supplemented Dr. Hooper's Invalidity Report with three references – WAGO-I/O-PRO (1999), CoDeSys 2.2 (2001), and CoDeSys 1.5 (1997) – that are prior versions of Defendants' own product that is accused of infringement in this case. (Dkt. No. 36 at 3-7.)  Since they are prior versions of CoDeSys 2.3 (2007), the three products all have the same functionality as CoDeSys 2.3 (2007).  (*See, e.g.*, Hooper Supp. Decl. (Dkt. No. 37-2), figs at 5-11, 13-15, 17-18 & 38-48.)  In other words, to the extent that a jury finds that Defendants are infringing the patents-in-suit, Defendants have merely practiced the prior art through their use of prior versions of the alleged infringing products.

As a matter of law, Defendants can not be liable for infringement if the accused products were in public use or on sale in the United States more than one year before the date of application for the patents-in-suit.  *See, e.g.*, 35 U.S.C. § 102(b); *Classen Immunotherapies Inc. v. Biogen Idec*, 659 F.3d 1057, 1069 (Fed. Cir. 2011) ("[T]hat which infringes if later anticipates if earlier.").  The Federal Circuit has held, however, that "there is no 'practicing the prior art' defense to literal infringement."  *See Koito Mfg. Co. v. Turn-Key-Tech, LLC*, 381 F.3d 1142, 1153 (Fed. Cir. 2004); *Tate Access Floors, Inc. v. Interface Architectural Resources, Inc.*, 279 F.3d 1357, 1367 (Fed. Cir. 2002).  The Federal Circuit's holding is premised on the theory that "accused infringers are not free to flout the requirement of proving invalidity by clear and convincing evidence by asserting a 'practicing prior art' defense to literal infringement."  *Tate*, 279 F.3d at 1367.

The Federal Circuit has been equally clear, however, that a party may assert a defense of "practicing the prior art" to a claim for infringement that is based on the doctrine of equivalents. More importantly, "practicing the prior art" is an affirmative defense:  "It is an affirmative

defense of the accused infringer to allege and to show that it is practicing the prior art.  When the patentee has presented a prima facie case of infringement, the burden shifts to the accused infringer to come forward with evidence to establish this defense." *Fiskars, Inc. v. Hunt Mfg. Co.*, 221 F.3d 1318, 1323 (Fed. Cir. 2000); *National Presto Indus., Inc. v. West Bend Co.*, 76 F.3d 1185, 1192 (Fed. Cir. 1996) ("When the patentee has made a prima facie case of infringement under the doctrine of equivalents, the burden of coming forward with evidence to show that the accused device is in the prior art is upon the accused infringer.").  Indeed, the Federal Circuit in *Tate* explained the reason the Federal Circuit allows a party to assert a "practicing the prior art" defense to an infringement claim based on the doctrine of equivalents:

> The doctrine of equivalents expands the reach of claims beyond their literal language. That this expansion is guided and constrained by the prior art is no surprise, for the doctrine of equivalents is an equitable doctrine and it would not be equitable to allow a patentee to claim a scope of equivalents encompassing material that had been previously disclosed by someone else, or that would have been obvious in light of others' earlier disclosures. But this limit on the equitable extension of literal language provides no warrant for constricting literal language when it is clearly claimed.

*Tate*, 279 F.3d at 1367.

All of Plaintiffs' claims of infringement are based upon the doctrine of equivalents.  (*See, e.g.*, Zatarain Opening Report (Cook Decl. Ex. 1) ¶¶ 146, 154, 162, 170, 178, 186, 203, 208, 278-79, 392-93.)  Thus, any reference in the Supplemental Declaration to WAGO-I/O-PRO (1999), CoDeSys 2.2 (2001), and CoDeSys 1.5 (1997) is properly an opinion relating to the *defense* of Plaintiffs' claims of infringement based upon the doctrine of equivalents.  This is not only an opinion that goes to invalidity that should have been set forth in Dr. Hooper's Invalidity Report.  Indeed, the Pretrial Order specifically provides that the "Proponent" was to file an expert report on February 24, 2012, and that the "Respondent" was to file a response by March 23, 2012.  (Dkt. No. 22 at 2.)  Here, Defendants certainly are the "Respondent" when it comes to

offering a defense to Plaintiffs' infringement analysis.  Under Federal Circuit law, practicing the

prior art is an affirmative defense and, thus, is appropriately in Dr. Hooper's Supplemental

Declaration.  Accordingly, the Court should deny Plaintiffs' motion for the simple reason that

Defendants may present evidence of the prior art as a defense to Plaintiffs' claims of

infringement based upon the doctrine of equivalents.

> **B.      Dr. Hooper Properly Supplemented His Invalidity Report.**
>
> > 1.      The Functionality Of CoDesSys (1997) Is The Same As WAGO-I/O-PRO (1999).

Plaintiffs complain that Dr. Hooper failed to disclose the reference to WAGO-I/O-PRO

(1999) in relation to the '232 Patent.  (Dkt. No. 36 at 4-5.)  Plaintiffs concede, however, that Dr.

Hooper provided a detailed analysis of CoDesSys (1997) in his Invalidity Report.  (*See id.*)

Significantly, Plaintiffs fail to recognize that WAGO-I/O-PRO (1999) has the same functionality

as CoDeSys (1997).  (*See, e.g.*, Hooper Supp. Decl. (Dkt. No. 37-2) ¶ 7.)  Thus, Defendants'

reference to WAGO-I/O-PRO (1999) merely adds a reference to an earlier 1997 product that

contains the *same functionality* as art included in the Invalidity Report.  This is readily apparent

from the figures in Dr. Hooper's report.  (*See, e.g.*, i*d.* figs at 5-11, 13-15 & 17-18.)  The Court

should therefore deny Plaintiffs' motion insofar as it seeks to preclude evidence based upon

WAGO-I/O-PRO (1999) as it relates to the '232 patent.

> > 2.      Defendants Did Not Locate A Copy Of CoDeSys 2.2 (2001) Until After Dr. Hooper Drafted His Invalidity Report.

Dr. Hooper analyzes CoDeSys 2.2 (2001) in regard to the '974 patent.  (*See* Dkt. No. 36

at 4.)  Dr. Hooper did not include any reference to CoDeSys 2.2 (2001) in his Invalidity Report

because Defendants and Dr. Hooper did not locate an English language copy of CoDeSys 2.2

(2001) until *after* Dr. Hooper drafted his Invalidity Report.  (*See* Dkt. No. 37-4 at 1.)  Plaintiffs

do not contest this fact.

Under this Court's Pretrial Order, a supplemental expert report "must meet the requirements of *Rule 26(e)(1)*, which allows a party to supplement to correct its *Rule 26(a)* disclosures 'if the party learns that in some material respect the disclosure or response is incomplete or incorrect and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." *Eugene Baratto & Textures, LLC v. Brushstrokes Fine Art, Inc.*, 701 F. Supp. 2d 1068, 1071 (W.D. Wis. 2010) (citing Fed. R. Civ. P. 26(e)(1)). CoDeSys 2.2 (2001) falls squarely within supplements contemplated by Rule 26(e)(1), as the information was not located at the time of Dr. Hooper's first report. (*See* Dkt. No. 37-4 at 1.) This is a common practice, as additional information often comes to light during the pendency of a lawsuit, which is the proper subject of a supplemental report.

**C.**   **Dr. Hooper's Supplemental Declaration Is Either Justified Or Harmless.**

If the Court concludes that Dr. Hooper improperly supplemented his expert report, then the question is whether the supplementation is justified *or* harmless. *See Mid-America Tablewares*, 100 F.3d at 1363 (citing *Finley*, 75 F.3d at 1231). Dr. Hooper's supplementation is justified *and* harmless because (1) there no prejudice or surprise to Plaintiffs; (2) any prejudice can easily be cured; (3) there is no likelihood of disruption to the trial; and (4) there is absolutely no bad faith or willfulness involved in not disclosing the evidence at an earlier date. *See Koutnik*, 396 F. Supp. 2d at 982 (citing *David*, 324 F.3d at 857). As a result, Plaintiffs' motion must be denied.

1.   Plaintiffs Have Suffered No Prejudice Or Surprise.

Plaintiffs do not claim that they suffered any surprise as a result of the references identified the Supplemental Declaration. Plaintiffs apparently concede that they were not

surprised for the simple reason that the references represent prior versions of the alleged infringing products.

Plaintiffs do, however, make a haphazard attempt to claim that they will suffer prejudice if they must address the prior versions referenced in the Supplemental Declaration. According to Plaintiffs, they will suffer prejudice because their expert witness will have to respond to these references in a new rebuttal report. (Dkt. No. 36 at 8.) But, there is no real burden or prejudice because these references are simply prior versions of the alleged infringing products, which contain the same functionality, so Plaintiffs' expert witness already is familiar with the references. Moreover, even if not in Dr. Hooper's report, Defendants are certainly free to cross-examine Plaintiffs' expert with these references; thus, Plaintiffs will have to prepare their expert for cross-examination on these references whether or not they are in Dr. Hooper's report.

Further yet, as Defendants can properly *defend* against Plaintiffs' infringement claims based upon the doctrine of equivalents with additional prior art references (as discussed fully above), Plaintiffs certainly will suffer no prejudice if Defendants also rely on the same prior art to establish that the patents-in-suit are invalid. Indeed, Plaintiffs will already have responded to these prior art references in addressing Defendants' defense to infringement. Thus, because Plaintiffs already will respond to the prior art references when addressing Defendants' defense, Plaintiffs will suffer absolutely no prejudice if they also do so in regard to Defendants' invalidity analysis.

Plaintiffs next maintain that they will suffer prejudice because their expert witness's rebuttal report will not be prepared before Dr. Hooper's deposition (Dkt. No. 36 at 9), which is scheduled to take place over ten hours and on tow days:  April 10-11, 2012. (Cook Declaration ¶ 4, Ex. 3.) Plaintiffs fail to explain why they must have a rebuttal report prepared before Dr.

Hooper's deposition.  Indeed, the purpose of a deposition is to determine the opinions of an expert witness.  Plaintiffs' arguments here wholly undermine their motion, as Plaintiffs certainly have had adequate time to prepare for Dr. Hooper's deposition.  Further, Mr. Zatarain's deposition has yet to even taken place.

Lastly, Plaintiffs argue that they do not have enough time to respond to the three references before the dispositive motion deadline of April 13, 2012.  (Dkt. No. 36 at 9.)  It bears repeating that Plaintiffs had a copy of the Supplemental Declaration on March 23, 2012, which would provide Plaintiffs a full *three weeks* for their expert witness to analyze the *three* references.  Tellingly, Plaintiffs do not explain why three weeks is insufficient for their expert witness to analyze the earlier versions.

Indeed, as set forth in the charts in the Motion, Plaintiffs' expert witness was able to analyze almost thirty pieces of prior art in the four weeks when he responded to Dr. Hooper's Invalidity Report.  (*See* Dkt. No. 36 at 4-7.)  Three weeks is more than enough time for Plaintiffs' expert witness to review three references, especially when these references have the same functionality as the alleged infringing products.  Plaintiffs present no real prejudice that they will suffer by responding to the earlier versions of the accused products.

Similar circumstances were present in *Ashley Furniture Industries, Inc. v. Lifestyle Enterprise, Inc.,* 574 F. Supp. 2d 920 (W.D. Wis. 2008), where this Court permitted supplementation.  *Id.* at 933-34.  In *Ashley*, the defendant offered a declaration of its expert witness in support of its motion for summary judgment, which included several catalogue pictures offered as prior art not included in the expert witness's report.  *Id.* at 933.  The defendant also offered another declaration of its expert witness in opposition to plaintiff's motion for summary judgment, which also included new prior art references.  *Id.*  The plaintiff moved to

strike these new prior art references.  *Id.*  The Court denied the plaintiff's motion to strike, and permitted the defendant to rely on the new references that were not disclosed in the expert report. *Id.*

The Court reasoned that the additional proffered prior art and opinion was a minor supplementation of the original report, and did not raise any substantial new issues or opinion. The Court also noted that plaintiff had time to consider and analyze the new references and that the plaintiff "has adduced no evidence that it suffered any actual disadvantage."  *Id.*; *see also Maritime-Ontario Freight Lines v. STI Holdings, Inc.*, 481 F. Supp. 2d 963, 972 (W.D. Wis. 2007) (finding supplement was harmless where party had time to depose expert and prepare responsive report); *Sandisk Corp. v. Kingston Tech. Co., Inc.*, No. 3:10-cv-00243, 2011 U.S. Dist. LEXIS 153116, at *10-11 (W.D. Wis. Oct. 27, 2011) (refusing to exclude evidence when there was no prejudice or surprise and the plaintiff had ample time to evaluate the testimony for a rebuttal report).  The Court should reach the same result in this matter, as Dr. Hooper simply adds three references of earlier versions of the accused products, which are a minor supplementation that does not actually prejudice Plaintiffs.

> 2.    Any Alleged Prejudice Can Be Cured.

To the extent that Plaintiffs will actually suffer any prejudice, it easily can be cured. Plaintiffs were provided notice of the Supplemental Declaration at least two weeks *before* the deposition of Dr. Hooper and three weeks *before* the dispositive motion deadline.  Plaintiffs have had plenty of time to fully consider the earlier versions of the accused products.  There is no dispute that any prejudice suffered by Plaintiffs can be – indeed, already should be – cured by Plaintiffs.

3.      There Is No Likelihood Of Disruption To The Trial.

Plaintiffs suggest that the trial schedule in this matter is jeopardized. (Dkt. No. 36 at 8.) Not surprisingly, there is no support for this argument and Plaintiffs fail to develop this argument.  As discussed above, Plaintiffs have plenty of time to consider the earlier versions prior to the deposition of Dr. Hooper and prior to the dispositive motion deadline.  Indeed, trial is not set to commence until October 9, 2012, approximately *six months* away.  *See, e.g.*, *Koutnik*, 396 F. Supp. 2d at 983 ("Nor is there a likelihood of disruption of trial because trial was still nearly 3½ months away at the point defendant made his expert disclosure.  This is not an instance where an expert witness is disclosed three days before trial.").  There is absolutely no likelihood that the trial will be disrupted in any way in this matter.

4.      There Is Absolutely No Bad Faith Or Willfulness Involved In Not Disclosing The Evidence At An Earlier Date.

The fourth factor this Court should consider is whether Defendants acted in bad faith or willfully when Dr. Hooper did not address the earlier versions of the accused products in the Invalidity Report.  Plaintiffs do not seriously contend that Defendants acted in bad faith or willfully.  Thus, Plaintiffs concede that no such improper motives existed in this case and this analysis should end here.

**V.      CONCLUSION.**

Based upon the foregoing, the Court should deny Plaintiffs' motion for sanctions.

Dated this 10th day of April, 2012.

                                            Respectfully submitted,


                                            /s/ John C. Scheller
                                            John C. Scheller
                                            Nathan L. Moenck
                                            Michael Best & Friedrich LLP
                                            One South Pinckney Street, Suite 700
                                            Madison, Wisconsin 53703
                                            (608) 283-2276 (voice)
                                            (608) 283-2275 (fax)
                                            jcscheller@michaelbest.com

                                            Robert N. Cook
                                            Whitham, Curtis, Christofferson & Cook, P.C.
                                            11491 Sunset Hills Road, Suite 340
                                            Reston, Virginia 20190
                                            (703) 787-9400 (voice)
                                            (703) 787-7557 (fax)
                                            bob@wcc-ip.com

                                            Counsel for Defendants
                                            WAGO CORPORATION and WAGO
                                            KONTAKTTECHNIK GMBH & CO. KG

<u>**CERTIFICATE OF SERVICE**</u>

I certify that on April 10, 2012, I caused the following:

Defendants' Response In Opposition To Plaintiffs' Motion For Sanctions; and

Declaration of Robert N. Cook

to be electronically filed with the Clerk of Court using the Court's Case Management/Electronic Case Filing ("CM/ECF") System.  All parties are represented by at least one attorney of record registered with CM/ECF and will receive service electronically.  There is no party requiring a different form of service under this Court's electronic filing procedures.

/s/ John C. Scheller
John C. Scheller