IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ROCKWELL AUTOMATION, INC., and ROCKWELL AUTOMATION TECHNOLOGIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WAGO CORPORATION and WAGO KONTAKTECHNIK GmbH & CO. KG, <br><br> Defendants. | Case No. 10-cv-718 |

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION TO COMPEL DISCOVERY RESPONSES PURSUANT TO FED. R. CIV. P. 37(A)**

Defendants WAGO Corporation ("WCP") and WAGO Kontakttechnik GmbH & Co. KG ("WKT") (collectively, "Defendants") submit this Brief In Opposition To Plaintiffs Rockwell Automation, Inc. and Rockwell Automation Technologies, Inc.'s (collectively, "Plaintiffs") Motion To Compel Discovery Responses Pursuant To Fed. R. Civ. P. 37(a).

I.   INTRODUCTION.

Plaintiffs prematurely seek to compel Defendants to produce documents. Despite certifying that Plaintiffs met and conferred with Defendants in good faith, Plaintiffs have not done so. Instead, Plaintiffs and Defendants have exchanged various letters that discuss multiple discovery issues. Plaintiffs moved to compel the production of some of the documents addressed in these letters. Instead of fully

addressing these discovery issues, Plaintiffs seek redress from the Court before attempting to fully resolve the issues in good faith outside of Court.  Plaintiffs' motion should be denied for this reason alone.  The Court also should award Defendants the attorneys' fees and costs they have unnecessarily incurred in responding to this premature motion.

Plaintiffs specifically seek an order compelling the production of *all* emails and correspondence that are responsive to every single document request.  The Court should deny this request because Defendants have never informed Plaintiffs that Defendants will not produce responsive emails and correspondence.  Indeed, Plaintiffs currently are in the process of gathering responsive emails and correspondence.  Plaintiffs also ignore the fact that WKT is a foreign entity that is subject to different laws relating to privacy and the production of documents.  Had Plaintiffs attempted to resolve this matter outside of court, Plaintiffs would have learned that Defendants are attempting to produce responsive documents while at the same time comply with the civil and criminal laws in Germany that vary greatly from the laws of the United States, especially in regard to the production of personal emails.  At a more elementary level, Plaintiffs fail to identify with any specificity whatsoever what document requests actually request emails and communications and how Defendants' responses to such document requests are deficient.

Next, Plaintiffs ask the Court to compel the production of all documents related to Document Request Nos. 11 through 14.  First, Defendants have produced over 24,000 pages of responsive documents and 5.5 gigabytes of data.  Plaintiffs' characterization of

Defendants' alleged "stonewalling" discovery is wrong. Moreover, had Plaintiffs attempted to resolve the issue in good faith, they would have learned that, in addition to the documents already produced, Defendants are continuing to search for responsive documents in accordance with German law. Simply put, there is nothing to compel.

Plaintiffs also ask the Court to compel the production of all documents related to Mr. Hohorst and Document Request Nos. 21, 28, 31 and 32. As discussed above, this request must be denied because Plaintiffs failed to resolve the matter in good faith with Defendants. Again, had Plaintiffs adequately met and conferred, they would have learned the Defendants are in the process of producing certain responsive documents and that other requested documents simply do not exist. Again, there simply is nothing for the Court to compel because Defendants are working to obtain all responsive documents that may be located in the United States or Germany.

Lastly, Plaintiffs seek an order from the Court compelling Defendants to answer Interrogatory Nos. 13 and 14, which seek sensitive information relating to Defendants' customers. This is the only issue that is properly before this Court as Plaintiffs seek this Court's input on this sensitive issue. To alleviate the obvious concerns of producing this sensitive information, Defendants offered to Plaintiffs a stipulation that would completely eliminate the need for Plaintiffs to depose or otherwise contact Defendants' customers. Plaintiffs rejected this overly reasonable offer. Instead, Plaintiffs hope to harass and unduly burden Defendants by contacting their customers. This is unacceptable in light of the fact that Defendants have offered to Plaintiffs a stipulation that essentially provides that Plaintiffs would meet the elements of each indirect

infringement claim that may be proven through information gathered from Defendants' customers. The Court should enter a protective order that modifies the discovery sought in this matter through a stipulation in form and substance substantially similar to that proposed by Defendants.[1]

## II. LEGAL STANDARD.

District courts have broad discretion in matters relating to discovery. *Packman v. Chicago Tribune Co.,* 267 F.3d 628, 646-47 (7th Cir.2001); *Rennie v. Dalton,* 3 F.3d 1100, 1110 (7th Cir.1993). Federal Rule of Civil Procedure 26(b)(2) empowers this Court to limit the scope of discovery if "the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." Before restricting discovery, the court should consider "the totality of the circumstances, weighing the value of the material sought against the burden of providing it." *Patterson v. Avery Dennison Corp.*, 281 F.3d 676 (7th Cir. 2002)(citations omitted).

The limitations imposed by Rule 26(b)(2)(C) include the requirement that the Court "must" limit the frequency or extent of discovery if it determines that "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." *See*

---

[1] On a related note, Plaintiffs have served a Rule 30(b)(6) Notice of Deposition on Defendants which includes topics directed at obtaining the exact same customer information. For instance, Plaintiffs' Notice includes topics regarding identities of customer who purchased the accused products (topic 4), number of accused products sold to each customer (topic 5), and communications regarding functionality and sales of the accused products (topics 6-7). Defendants intended to move for a protective order as to those topics and ask the Court to resolve that issue now in connection with Plaintiffs' Motion.

Fed. R. Civ. P. 26(b)(2)(C)(i). The Court must also impose such limitations if it determines that "the burden or expense of the proposed discovery outweighs its likely benefit, considering the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the action, and the importance of the discovery in resolving the issues." *See* Fed. R. Civ. P. 26(b)(2)(C)(iii). District courts have broad discretion in determining motions to compel. *See Peals v. Terre Haute Police Dep't,* 535 F.3d 621, 629 (7th Cir. 2008).

Federal Rule of Civil Procedure 26(b)(2)(B), which relates specifically to electronic discovery, provides that a party "need not provide discovery of electronically discovered information from sources that the party identifies as not reasonably accessible because of undue burden or cost." Fed. R. Civ. P. 26(b)(2)(B). In the event of a motion to compel or for a protective order, "the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost." *Id.* As explained by the Rules Commentary, the "responding party has the burden as to one aspect of the inquiry — whether the identified sources are not reasonably accessible in light of the burdens and costs required to search for, retrieve, and produce whatever responsive information may be found." Advisory Committee Notes, 2006 Amendment, Subdivision (b)(2); *see also Thermal Design, Inc. v. Guardian Building Products, Inc.*, No. 08-CV-828, 2011 WL 1527025 (E.D. Wis. Apr. 20, 2011).

### III. ARGUMENT.

Plaintiffs bring four counts of patent infringement against Defendants. (*See generally* Dkt. No. 1.) WCP is a corporation organized under the laws of the State of

- 5 -

Nevada with a principal place of business at N120 W19129 Freistadt Road, P.O. Box 1015, Germantown, Wisconsin 53022. (Dkt. No. 1 ¶ 3; Dkt. No. 27 ¶ 3.) WKT is a limited partnership organized under German law with a principal place of business at principal place of business at Postfach 28 80 32385 Minden, Hansastrasse 27, 32423 Minden, Germany. (Dkt. No. 1 ¶ 4; Dkt. No. 27 ¶ 4.)

This Court, in supervising pretrial proceedings, should exercise special vigilance to protect foreign litigants such as WKT from the danger that unnecessary, or unduly burdensome, discovery may place them in a disadvantageous position. *Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522, 536 (1987).[2] Judicial supervision of discovery should always seek to minimize its costs and inconvenience and to prevent improper uses of discovery requests. *Id.* When it is necessary to seek evidence abroad, however, the district court must supervise pretrial proceedings particularly closely to prevent discovery abuses. *Id.* For example, the additional cost of transportation of documents or witnesses to or from

---

[2] When discovery from a foreign defendant is sought, the Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters ("Hague Convention") is a permissive alternative to the Federal Rules of Civil Procedure. *Societe Nationale Industrielle Aerospatiale v. United States District Court for the Southern District of Iowa*, 482 U.S. 522, 536 (1987). Under *Aerospatiale*, in determining whether to proceed with discovery under the Hague Convention or the Federal Rules of Civil Procedure, the court should consider "the particular facts, the sovereign interests, and likelihood that resort to [Hague Convention] procedures will prove effective." *Id.* at 544. Scrutiny of the sovereign interests involved requires "a more particularized analysis of the respective interests of the foreign nation and the requesting nation . . . ." *Id*. at 543-44. Those considerations include: (1) The importance to the litigation of the information requested; (2) the specificity of the request; (3) whether the information originated in the United States; (4) whether alternative means exist to obtain the information; and (5) whether the interests of the United States outweigh the interests of the foreign jurisdictions in maintaining confidentiality. *Id*. at 544 n. 28. Analysis of all these factors with regard to the particular discovery sought in this matter would require additional time to address issues surrounding German privacy law.

foreign locations may increase the danger that discovery may be sought for the improper purpose of motivating settlement, rather than finding relevant and probative evidence. Objections to "abusive" discovery that foreign litigants advance should therefore receive the most careful consideration. *Id.*

      **A.**    **Defendants Have Conducted And Continue To Conduct A Reasonable Search For Responsive Correspondence And Emails.**

Plaintiffs claim that Defendants have failed to diligently search for and produce correspondence and emails. (Dkt. No. 42 at 3-4.) Plaintiffs' contention is based upon their determination that Defendants have not produced any correspondence or emails to date in this lawsuit and that one person testified that he had not, as of January 27, 2012, been asked to produce copies of e-mails that relate to the alleged products in this case. (*Id.* at 4 (citing Dkt. No. 41-3).) Plaintiffs' motion must be denied for multiple reasons.

As an initial matter, Plaintiffs failed to meet and confer in any meaningful manner regarding Plaintiffs' demand for a motion compelling "Defendants to produce all emails and correspondence responsive to Rockwell's document requests." (*See* Dkt. No. 42 at 10.) Plaintiffs attach multiple letters to the motion showing that the parties have discussed various issues relating to outstanding discovery that has yet to be produced by each side. (*See* Dkt. Nos. 41-5 through 41-10.) *See, e.g., Promega Corp. v. Applera Corp.*, No. 01-C-244, 2002 U.S. Dist LEXIS 28476 (W.D. Wis. Sept. 27, 2002) (noting that merely sending letters threatening the filing of a motion to compel may not be "in keeping with the spirit of the court's order"). In conclusory fashion, Plaintiffs state that "Defendants refuse to produce . . . [c]orrespondance and emails responsive to

Rockwell's document requests." (*See* Dkt. No. 42 at 2.) Significantly, Plaintiffs cannot point to a single communication where Defendants have refused to produce all emails or correspondence in this matter. Plaintiffs' motion should be denied for this reason alone.

Plaintiffs' motion also is fatally defective because Plaintiffs fail to point to a single document request that demands the production of emails and correspondences. (*See generally* Dkt. No. 42.) Instead, Plaintiffs seek an order from the Court compelling Defendants to produce all emails and correspondence. Plaintiffs attempt to support the request by pointing to the deposition transcript of WKT's chief engineer, Mr. Thomas Albers, during which he testified that he had not, as of January 27, 2012, been asked to produce copies of e-mails that relate to the alleged products in this case. (Dkt. No. 42 at 4.) Plaintiffs did not serve a document request that requests any and all documents that relate in any way to the alleged products. Obviously, such a document request would be overly broad and unduly burdensome because it literally would include every email ever sent or received by any of Defendants' employees. Importantly, Plaintiffs fail to cite to any questions whereby Mr. Albers was asked whether he was asked to produce documents responsive to certain document requests. Simply put, Mr. Albers, and every other one of Defendants' employees, certainly will have emails that relate in any way to the products sold by Defendants. This question is irrelevant. The critical question is whether there are documents responsive to narrowly tailored document requests that have been propounded by Plaintiffs. The Court should deny the motion because

Plaintiffs fail to sufficiently identify which document requests they seeks to compel the production of emails and correspondence by Defendants.

If Plaintiffs actually attempted to meet and confer regarding Defendants' attempts to locate responsive emails and correspondence, Plaintiffs would have found out that Defendants are in the process of gathering and producing documents that are responsive to the actual document requests served by Plaintiffs. This process takes time, however, as many of the documents are in German and need to be pre-reviewed for, among other things, privilege.

Specifically, Plaintiffs requested communication related to the Patents-In-Suit in Document Requests Nos. 35 and 65–74, and Defendants have already taken reasonable steps to locate such communications. These document requests generally request:

> All document and things concerning any communications between or among Defendants, their agents, or anyone else, and [entity X] with regard to the Patents-In-Suit, or any other issues related to this lawsuit (including but not limited to discovery, document identification and collection, notifications, witness identification and preparation, notes, etc.).

(*See* Dkt. No. 41-1 at 10; Cook Decl., ¶ 3, Ex. 2 at 9–12.)

WCP, at great cost and expense, has diligently searched for and reviewed emails that were potentially responsive to Plaintiffs' requests for communications. In response to Requests 35 and 65–74, Lisa Radtke, WCP's IT Manager, searched the emails of: Tom Artmann, President; Mark DeCramer, Product Support Manager - Automation; Greg Rinn, Vice President of Finance and Operations; Dean Norton, Vice President of Marketing; and Toby Thomann; Vice President of Sales. (Rinn Decl. ¶ 5.) Ms. Radtke

searched these individuals' email accounts for emails referring to the various patents at issue in this lawsuit, *e.g.*, "6,745,090" or "090 patent" or "090," and for emails referring to the various entities that Plaintiff's discovery requests referenced, *e.g*, "Microsoft Corporation" or "Microsoft". (*Id.*) In none of the "hits" for either the patents or the name of the various entities, were there any communications between Defendants or other entities regarding the "Patents-In-Suit." (*Id.* ¶ 6.) This should not come as a surprise because Defendants were unaware of the Patents-In-Suit prior to this litigation.

WKT currently is in the process of having certain of its employees' emails searched. (Hatke Decl. ¶ 8.) Again, if Plaintiffs had properly met and conferred regarding the production of such emails, Plaintiffs would have learned that it is difficult for a German employer to search the email of its employees. And, as defense counsel explained, Defendants are not objecting to the production of relevant emails. (*See* Dkt. No. 41-10 at 7.) Indeed, efforts are underway to have certain individuals who worked on the products at issue search their own files for responsive documents. (Hatke Decl. ¶ 8.) Employees must search their own individual files because WKT is rightly concerned with abiding by German privacy laws, *e.g.*, the German Federal Data Security Act, and WKT has been cautious not the break them. (*Id.*)

Not only is searching emails in compliance with German law arduous, but their relevance is *de minimis*. The Model Order Regarding E-Discovery in Patent Cases explains how emails are only "marginally" relevant in patent disputes. As the e-discovery committee noted:

> Most discovery in patent litigation centers on what the patent states, how the accused products work, what the prior art discloses, and the proper calculation of damages. These topics are normally the most consequential in patent cases. Thus, far reaching e-discovery, such as mass email searches, is often tangential to adjudicating these issues.

(Cook Decl., ¶ 4, Ex. 3, Introduction at 2.) The emails Plaintiffs seek do not relate to these core topics. In light of Germany's strict laws limiting employers from searching their employees' emails and the "marginal" relevance of the emails Plaintiffs seeks, Plaintiffs motion to compel is unnecessarily aggressive.

Nevertheless, as Defendants' counsel noted in his March 16 letter, Defendants are not refusing to cooperate in discovery. (Dkt. No. 41-10 at 7.) In the spirit of continued cooperation, WKT is in the process of having the relevant employees search their individual files for responsive documents. (Hatke Decl. ¶ 8.) Defendants have gone and continue to go above and beyond their obligations to produce documents of marginal relevance to this matter. The Court should deny Plaintiffs' motion to compel because Defendants are in full compliance with their discovery obligations.

> **B. Defendants Conducted A Diligent Search And Produced Responsive Documents That Relate To The Conception, Design, Research, Development, And Programming Of The Accused Instrumentalities.**

As an initial matter, Defendants have produced over 24,000 pages and 5.5 GB of data to Plaintiffs in this matter. (Dkt. No. 41-10 at 2.) Moreover, Defendants have never refused to provide even more documents, but instead have informed Plaintiffs of their desire to cooperate in discovery. (*Id*. at 7.) Despite Plaintiffs' contentions, Defendants have hardly "stonewalled" Plaintiffs. Nor are Defendants picking and choosing what documents to produce, as Plaintiffs claim. (Dkt. No 42 at 6–7.) Defendants' obligation

- 11 -

is to conduct a reasonable search under the circumstances, which Defendants have done and are continuing to do.

With respect to the specific document requests related to the conception, design, research development, and programming of the accused instrumentalities, Defendants have either produced responsive documents or are in the process of searching for any additional responsive documents, if they exist.[3]

Regarding Document Request No. 11, Dr. Norbert Hatke, a patent engineer at WKT instructed and supervised WKT Employees to search for sketches, prints, images, electronic information, written disclosures, test data, notebooks, minutes, or reports related to the Programmable Logic Controller series 750, series 758, and series 767. (Hatke Decl. ¶ 10.) The search produced different firmware releases, RunTime Software, CoDeSys software, documents, requirement and functional specifications, reports on hardware measures, and drawings and documentation from Kontron. (*Id*. ¶ 11.) The documents, firmware, and CoDeSys software and documentation have been produced. (*Id*. ¶ 12.) The firmware releases, including operating and runtime systems, are in the process of being produced. (*Id*.)

Regarding Document Request No. 12, Mr. Hatke searched for documents that identify the people who participated in the design, development, or programming of products at issue in WKT's central database. (*Id*. ¶ 13.) WKT is in the process of producing a list of individuals for the relevant products. (*Id*. ¶ 14.)

---

[3] Because WCT did not develop the relevant products, it does not have documents responsive to these requests in its possession, custody, or control. (Rinn Decl. ¶ 8.)

As for Document Requests Nos. 13 and 14, WKT has no responsive documents because it never reverse engineered, studied, analyzed, or copied Plaintiffs' products. (*Id.* ¶ 15.) Similarly, there are no design proposals or alternatives responsive to Plaintiffs' request. (*Id.* ¶ 16.) Plaintiffs have no basis for their contention that these documents exist, and their it-must-exist-because-we-asked-for-it argument can not suffice.

### C. Defendants Have Not Refused To Produce Documents Responsive To Document Request No. 21, 28, 31 and 32.

Plaintiffs seek an order from the Court compelling Defendants to produce "Mr. Hohorst's documents responsive to Plaintiffs' Document Requests" and "Defendants' documents responsive to Document Request Nos. 21, 28, 31 and 32." (Dkt. No. 42 at 7-9 & 10.) Plaintiffs contend that Defendants "refuse to produce" these documents. (Dkt. No. 42 at 2.) Plaintiffs are wrong.

As discussed above, Plaintiffs failed to meet and confer regarding its demand to produce Mr. Hohorst's documents and all documents that are responsive to Document Request Nos. 21, 28, 31 and 32. The totality of the discussions between counsel for Plaintiffs and Defendants relating to this issue are found in two letters. (*See* Dkt. Nos. 41-9 & 41-10.) In a letter, dated March 12, 2012, Plaintiffs demanded Defendants to produce Mr. Hohorst's documents and all documents that are responsive to Document Request Nos. 21, 28, 31 and 32. (Dkt. No. 41-9.) Plaintiffs also demanded Defendants to provide a "statement confirming that Defendants have completed their search for his documents." (*Id.* at 1.) Plaintiffs threatened to file a motion to compel if these documents and the certification were not received by the end of the week. (*Id.* at 1-2.)

In response, Defendants expressed their surprise for the demands being made for the first time. (Dkt. No. 41-10 at 7.) Indeed, Defendants informed Plaintiffs that the deposition notices included a document schedule, which obviously would imply that those documents are the specific documents Plaintiffs were interested in obtaining prior to the deposition of Mr. Hohorst. (*Id.*) While Plaintiffs recognize that Mr. Hohorst does not live in the United States (Dkt. No. 42 at 8), Plaintiffs fail to recognize that Defendants clearly stated that they "have been trying to find a time for Mr. Hohorst to travel to the United States to provide the discovery." (Dkt. No. 41-10 at 7.) This is the last time Plaintiffs raised this issue with Defendants.

Instead of taking part in good-faith discussions as required by this Court's Pretrial Order and Rule 37(a)(1) (Dkt. No. 22 at 5), Plaintiffs filed this motion seeking an order compelling production of these documents. (Dkt. No. 42 at 7-9.) As noted above, Plaintiffs' motion should be denied for the simple reason that Plaintiffs failed to meet and confer with Defendants. Had Plaintiffs made this cursory effort, they would have realized that Defendants are working to produce documents responsive to these document requests.

With respect to Document Request No. 21, it is impossible to know what Plaintiffs are seeking. (Rinn Decl. ¶ 10.) Defendants are in the business of selling their products to customers. (*Id.*) Documents "sufficient to how the manner of distribution" of the relevant products could mean any documents related to how Defendants conduct their business. Moreover, Plaintiffs have already conducted multiple Rule 30(b)(6) depositions to inquire into Defendants' "manner of distribution." Given Plaintiffs

ambiguous request, it should come as no surprise that Defendants have not produced these documents, if they even exist.

With respect to Document Request No. 28, Mr. Jens Adler, General Legal Counsel, has searched software license agreements for third party intellectual property. (Hatke Decl. ¶ 19.) WKT is still in the process of reviewing these agreements for possible production. (*Id.*)

With respect to Document Request No. 31, Mr. Adler searched for agreements or negotiations regarding the manufacture, use, license, or sale of the relevant products. (*Id.* ¶ 20.) WKT is still in the process of manually searching for relevant agreements and negotiations in different locations and of reviewing any agreement for possible production. (*Id.*)

Finally, with respect to Request No. 32, no such agreements exist. (Rinn Decl. ¶ 13; Hatke Decl. ¶ 21.) Indeed, Defendants questioned WCP's President, Tom Artmann, on this issue in his deposition. (Cook Decl., ¶ 5, Ex. 4.) Mr. Artmann explained that there is no contract or agreement for transfer pricing between WCP and WKT. (*Id.*) It is time for Plaintiffs to accept that these documents do not exist.

        **D.    The Court Should Issue A Protective Order That Protects Defendants From Responding To Interrogatory Nos. 13 And 14.**

Plaintiffs seek an order compelling Defendants to respond to two interrogatories that seek information specifically related to Defendants' customers:

> **Common Interrogatory No. 13:**
>
> Identify Defendants' customers in the United States that purchase any of Defendants'750-8xx, 758-xxx, 762-3xxx, 767-2xxx, WAGO-I/O-PRO CAA, or CoDeSys (3.x) products.

**Common Interrogatory No. 14:**

Provide the volume of sales, the average sales price per unit, the sales revenue, cost of goods sold, and gross profit margin for the sales of each product (for example the 750-841, the 750-880, the 758-870, the 767-2501. etc.) sold to each customer identified in Interrogatory No. 12.

(Dkt. No. 41-11 at 3; Dkt. No. 42 at 9-10.) Defendants objected to these interrogatories for multiple reasons, including but not limited to the fact that the discovery is (1) oppressive, unduly burdensome and not reasonably calculated to lead to the discovery of admissible evidence, and (2) likely to cause harm to the business relationships between Defendants and their customers, and such harm is likely to be disproportionate to the potential evidentiary value, if any, of material that might be obtained from customers. (Dkt. No. 41-12 at 3-5.)

To resolve this dispute, Defendants offered to resolve the dispute by entering into a stipulation regarding its customers' use of the accused products. Specifically, Defendants offered to stipulate as follows:

> If Plaintiffs show that an accused product would infringe the patents in suit if used according to the documentation provided by Defendants on how to use the product, then (for purposes of resolving this discovery issue) Defendants would agree not to deny that the customers are using the product that way, even if there is no evidence of what the customers are actually doing with the products.

(Cook Decl. ¶ 2, Ex. 1 at 3.) In other words, Defendants offered to Plaintiffs a stipulation that would completely eliminate the need for Plaintiffs to depose or otherwise contact Defendants' customers.

Plaintiffs rejected Defendants' proposed stipulation. (Cook Decl. ¶ 2, Ex. 1 at 3.) Instead, Plaintiffs demanded that Defendants stipulate to infringement by Defendants'

- 16 -

customers. This proposal is absurd, as the issue of infringement is vigorously contested. Nevertheless, Plaintiffs proposed Defendants stipulate as follows:

> If Rockwell is able to show that an accused product or products contain functionality that satisfies the elements of an asserted patent claim, WAGO (WCP and WKT) will admit as follows:
>
>> For that claim, WAGO admits that its U.S. customers are direct infringers under USC 271(a) and will not argue otherwise;
>>
>> for that claim, WAGO admits that it is an indirect infringer under USC 271(b) and will not argue otherwise; and
>>
>> for that claim, WAGO admits that it is an indirect infringer under USC 271(c) and will not argue otherwise.

(Cook Decl. ¶ 2, Ex. 1 at 2.)

Plaintiffs' proposed stipulation has no relation to the information requested in Interrogatory Nos. 13 and 14. Instead, Plaintiffs offered Defendants two options. First, provide Plaintiffs complete access to Defendants' customers to obtain information that potentially may be relevant to Plaintiffs' indirect infringement claims. Or, second, agree that Defendants are liable for indirect infringement if Plaintiffs prove that an accused product or products contain functionality that satisfies the elements of an asserted patent claim.

Obviously, both options are unacceptable if Defendants can provide Plaintiffs the information they potentially could discovery from Defendants' customers through a stipulation. This is exactly what Defendants offered to Plaintiffs. The fact that Plaintiffs rejected Defendants' overly reasonable stipulation shows Plaintiffs' true intentions: Plaintiffs do not really seek to obtain discoverable information from Defendants'

customers. Instead, Plaintiffs seek only to harass Defendants and otherwise obtain sensitive, commercial information regarding Defendants' customers.

When considering a motion to compel a response to interrogatories under Federal Rule of Civil Procedure 37(a)(3)(B)(iii), the Court many issue a protective order under Rule 26(c) to protect the party that is subject to a discovery request. Fed. R. Civ. P. 37(a)(5)(B). Under Rule 26(c), the Court should deny Plaintiffs' motion to compel responses to Interrogatory Nos. 13 and 14 and enter a protective order "prescribing a discovery method other than the one selected by the party seeking discovery" or "requiring that . . . commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1)(C) & (G).

Plaintiffs seek to discover information regarding customers through interrogatories that allegedly is relevant only to Plaintiffs' claims of indirect infringement. Defendants have offered to Plaintiffs a stipulation that essentially provides that Plaintiffs would meet the elements of each indirect infringement claim that may be proven through information gathered from Defendants' customers. Thus, there is no legitimate reason that Plaintiffs need to contact Defendants' customers. In light of the stipulation offered by Defendants, the only reason Plaintiffs could possibly want to contact Defendants' customers would be to subject Defendants and their customers to annoyance, embarrassment, oppression, or undue burden or expense. A protective order under Rule 26(c) is necessary and appropriate to protect Defendants and their customers from this harm and the Court should enter a stipulation in form and substance substantially similar to that proposed by Defendants.

## IV. CONCLUSION.

For the foregoing reasons, the Court should deny Plaintiffs' motion to compel. Pursuant to Federal Rule of Civil Procedure 37(a)(5)(B), the Court should award Defendants the attorneys' fees and costs that they have incurred in responding to this motion.

Dated this 11th day of April, 2012.

                                            Respectfully submitted,

                                            /s/ John C. Scheller
                                            John C. Scheller
                                            Nathan L. Moenck
                                            Michael Best & Friedrich LLP
                                            One South Pinckney Street, Suite 700
                                            Madison, Wisconsin 53703
                                            (608) 283-2276 (voice)
                                            (608) 283-2275 (fax)
                                            jcscheller@michaelbest.com

                                            Robert N. Cook
                                            Whitham, Curtis, Christofferson & Cook, P.C.
                                            11491 Sunset Hills Road, Suite 340
                                            Reston, Virginia 20190
                                            (703) 787-9400 (voice)
                                            (703) 787-7557 (fax)
                                            bob@wcc-ip.com

                                            Counsel for Defendants
                                            WAGO CORPORATION and WAGO
                                            KONTAKTTECHNIK GMBH & CO. KG