**EXHIBIT 3**

# AN E-DISCOVERY MODEL ORDER

## INTRODUCTION

Since becoming a staple of American civil litigation, e-discovery has been the subject of extensive review, study, and commentary. *See The Sedona Principles: Best Practices, Recommendations & Principles for Addressing Electronic Document Production* (2d ed. June 2007). In view of the growing concern about e-discovery, the Federal Rules of Civil Procedure were amended in 2006 to more fully address e-discovery. Likewise, several district courts have adopted local e-discovery rules.[1]

Despite these amendments, e-discovery continues to present a broad spectrum of challenges, such as preservation obligations, production format, and the disproportionate cost of e-discovery.[2] Patent cases, in particular, tend to suffer from disproportionally high discovery expenses. *See* Emery G. Lee III & Thomas E. Willging, *Litigation Costs in Civil Cases: Multivariate Analysis* 8 (Fed. Judicial Ctr. 2010) ("Intellectual Property cases had costs almost 62% higher, all else equal, than the baseline 'Other' category."); s*ee also* Thomas E. Willging et al., *Discovery and Disclosure Practice, Problems, and Proposals for Change: A Case-*

---

[1] District Courts in Delaware, Kansas and Maryland have adopted e-discovery local rules. The Seventh Circuit has adopted an e-discovery pilot program.

[2] The following are the main cost areas for e-discovery:

**Collection:** Forensically sound (*e.g.*, preserving the document date) collection can require a trained specialist. Costs will include vendor fees and/or licensing fees, and media related charges. Inactive data requires restoration and software licensing fees.

**Processing:** Requires use of licensed assessment or review tools (more than 1 tool are often used for this process). Expenses will include data and text extraction, de-duplication, imaging fees, project management time and potential hosting fees. Frequently includes narrowing or broadening the scope of collection based on results.

**Review:** Requires continued hosting and licensing fees. Project management time is necessary for database setup and management, additional keyword filtering/assessment and searching. If human review is involved, this is the largest area of cost.

**Production:** Requires any additional data and image conversion, text extraction and/or appropriate language OCR generation. Tech time will include dealing with problematic files (*e.g.*, Excel). Also requires endorsement and control numbering. Costs will also be incurred for project management/tech time and media related charges.

**Post Production:** Project management and load time for importing productions into production review tool or index. Additional costs for associating native files to records.

*Based National Survey of Counsel in Closed Federal Civil Cases* 38-39 (Fed. Judicial Ctr. 1997) (finding that patent cases "stood out for their high discovery expenses"). Such expenses are compounded when attorneys use discovery tools as tactical weapons, which hinders the "just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

In recent years, the exponential growth of and reliance on electronic documents and communications has exacerbated such discovery abuses. Excessive e-discovery, including disproportionate, overbroad email production requests, carry staggering time and production costs that have a debilitating effect on litigation. Routine requests seeking all categories of Electronically Stored Information often result in mass productions of marginally relevant and cumulative documents. Generally, the production burden of these expansive requests outweighs the minimal benefits of such broad disclosure.

Most discovery in patent litigation centers on what the patent states, how the accused products work, what the prior art discloses, and the proper calculation of damages. These topics are normally the most consequential in patent cases. Thus, far reaching e-discovery, such as mass email searches, is often tangential to adjudicating these issues.

As technology and knowledge play an increasingly important role in our economy, the courts must not become an intolerably expensive way to resolve patent disputes. Specifically, litigation costs should not be permitted to unduly interfere with the availability of the court to those who seek to vindicate their patent rights—the enforcement of such rights is both an obligation of the legal system and important to innovation. Likewise, disproportionate expense should not be permitted to force those accused of infringement to acquiesce to non-meritorious claims. This only serves as an unhealthy tax on legitimate commerce.

Fortunately, district courts have inherent power to control their dockets to further "economy of time and effort for itself, for counsel and for litigants." *Landis v. North Am. Co.*, 299 U.S. 248, 254 (1936). Our objective is thus narrow, but important. The accompanying Model Order Limiting E-Discovery in Patent Cases is intended to be a helpful starting point for district courts to use in requiring the responsible, targeted use of e-discovery in patent cases. The goal of this Model Order is to promote economic and judicial efficiency by streamlining e-discovery, particularly email production, and requiring litigants to focus on the proper purpose of discovery—the gathering of material information—rather than permitting unlimited fishing expeditions. It is further intended to encourage

discussion and public commentary by judges, litigants, and other interested parties regarding e-discovery problems and potential solutions.

## DISCUSSION OF THE MODEL ORDER

Hard-worn experience in patent cases and recent commentary teach that efforts to identify comprehensively the discovery issues or to produce all "relevant" documents at once at the outset of the case can result in the vastly overbroad production of e-discovery. Indeed, the practice of gathering huge amounts of information at the front of a case and running broad key searches as the issues emerge has come under increasing question. The recently published *Judges' Guide to Cost-Effective E-Discovery* critiqued this practice sharply:

> Some argue that e-discovery is best accomplished by taking large amounts of data from clients and then applying keyword or other searches or filters. While, in some rare cases, this method might be the only option, it is also apt to be the most expensive. In fact, keyword searching against large volumes of data to find relevant information is a challenging, costly, and imperfect process.

Anne Kershaw & Joe Howie, *Judges' Guide to Cost-Effective E-Discovery* 4 (Fed. Judicial Ctr. 2010).

Hence, this Model Order requires a discovery process whereby the parties exchange core documentation concerning the patent, the accused product, the prior art, and the finances before making email production requests. Moreover, email production requests should be focused on a particular issue for which that type of discovery is warranted. Much as Federal Rule of Civil Procedure 30 presumptively limits cases to ten depositions and seven hours per deposition,[3] this Model Order presumptively limits the number of custodians and search terms for all email production requests. However, the parties may jointly agree to modify these limits or request court modification for good cause.

This is not to say a discovering party should be precluded from obtaining more e-discovery than agreed upon by the parties or allowed by the court. Rather, the discovering party shall bear all reasonable costs of discovery that exceeds these

---

[3] Such limits have reformed deposition practice, making it more efficient. *See* Fed. R. Civ. P. 30(a), 1993 Advisory Committee Notes (explaining that Rule 30 limits the number of depositions a party may take in order to "to emphasize that counsel have a professional obligation to develop a mutual cost-effective plan for discovery in the case").

limits.  This will help ensure that discovery requests are being made with a true eye on the balance between the value of the discovery and its cost.

A large source of e-discovery cost is the pre-production review of documents by attorneys or other human reviewers.  Even with clawback provisions, this pre-production review is often undertaken to avoid the disclosure of privileged or other sensitive documents to adversaries.  Accordingly, this Model Order addresses concerns regarding waiver of attorney-client privilege and work product protection in order to minimize human pre-production review.

**E-Discovery Committee**

Chief Judge James Ware (ND Cal)
Judge Virginia Kendall (ND Ill)
Magistrate Judge Chad Everingham (ED Tex)
Chief Judge Randall Rader (Fed. Cir.)
Tina Chappell
Richard "Chip" Lutton
Joe Re
Edward Reines
Steve Susman
John Whealan

Addendum: Discovery Model Order

|  |  |
|---|---|
| Plaintiff, <br> v. <br> Defendant. | Case No. |

**[MODEL] ORDER REGARDING E-DISCOVERY IN PATENT CASES**

The Court ORDERS as follows:

1. This Order supplements all other discovery rules and orders. It streamlines Electronically Stored Information ("ESI") production to promote a "just, speedy, and inexpensive determination" of this action, as required by Federal Rule of Civil Procedure 1.

2. This Order may be modified for good cause. The parties shall jointly submit any proposed modifications within 30 days after the Federal Rule of Civil Procedure 16 conference. If the parties cannot resolve their disagreements regarding these modifications, the parties shall submit their competing proposals and a summary of their dispute.

3. Costs will be shifted for disproportionate ESI production requests pursuant to Federal Rule of Civil Procedure 26. Likewise, a party's nonresponsive or dilatory discovery tactics will be cost-shifting considerations.

4. A party's meaningful compliance with this Order and efforts to promote efficiency and reduce costs will be considered in cost-shifting determinations.

5. General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include metadata absent a showing of good cause. However, fields showing the date and time that the document was sent and received, as well as the complete distribution list, shall generally be included in the production.

6. General ESI production requests under Federal Rules of Civil Procedure 34 and 45 shall not include email or other forms of electronic correspondence (collectively "email"). To obtain email parties must propound specific email production requests.

7. Email production requests shall only be propounded for specific issues, rather than general discovery of a product or business.

8. Email production requests shall be phased to occur after the parties have

exchanged initial disclosures and basic documentation about the patents, the prior art, the accused instrumentalities, and the relevant finances. While this provision does not require the production of such information, the Court encourages prompt and early production of this information to promote efficient and economical streamlining of the case.

9. Email production requests shall identify the custodian, search terms, and time frame. The parties shall cooperate to identify the proper custodians, proper search terms and proper timeframe.

10. Each requesting party shall limit its email production requests to a total of five custodians per producing party for all such requests. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for up to five additional custodians per producing party, upon showing a distinct need based on the size, complexity, and issues of this specific case. Should a party serve email production requests for additional custodians beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, the requesting party shall bear all reasonable costs caused by such additional discovery.

11. Each requesting party shall limit its email production requests to a total of five search terms per custodian per party. The parties may jointly agree to modify this limit without the Court's leave. The Court shall consider contested requests for up to five additional search terms per custodian, upon showing a distinct need based on the size, complexity, and issues of this specific case. The search terms shall be narrowly tailored to particular issues. Indiscriminate terms, such as the producing company's name or its product name, are inappropriate unless combined with narrowing search criteria that sufficiently reduce the risk of overproduction. A conjunctive combination of multiple words or phrases (*e.g.*, "computer" and

"system") narrows the search and shall count as a single search term. A disjunctive combination of multiple words or phrases (*e.g.*, "computer" or "system") broadens the search, and thus each word or phrase shall count as a separate search term unless they are variants of the same word. Use of narrowing search criteria (*e.g.*, "and," "but not," "w/x") is encouraged to limit the production and shall be considered when determining whether to shift costs for disproportionate discovery. Should a party serve email production requests with search terms beyond the limits agreed to by the parties or granted by the Court pursuant to this paragraph, the requesting party shall bear all reasonable costs caused by such additional discovery.

      12.    The receiving party shall not use ESI that the producing party asserts is attorney-client privileged or work product protected to challenge the privilege or protection.

      13.    Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of a privileged or work product protected ESI is not a waiver in the pending case or in any other federal or state proceeding.

      14.    The mere production of ESI in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.