**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WISCONSIN**

ROCKWELL AUTOMATION, INC. and
ROCKWELL AUTOMATION
TECHNOLOGIES, INC.,

Plaintiffs,

v.

WAGO CORPORATION and WAGO
KONTAKTTECHNIK GMBH & CO. KG,

Defendant.

Case No. 3:10CV718-WMC

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

# TABLE OF CONTENTS

I.     Proposed Findings of Fact…………………………………………………………     1

II.    Introduction………………………………………………………………………     1

III.   Background………………………………………………………………………     5

IV.    Applicable Legal Standard………………………………………………………     9

    A.   Summary Judgment…………………………………………………………..     9

    B.   Patent Infringement and Patent Validity……………………………………..     9

        1.   Patent Infringement……………………………………………………     9

            a.   Infringement Generally……………………………………………..     9

            b.   Infringement Under the Doctrine of Equivalents…………………     10

            c.   Indirect Infringement………………………………………………     13

        2.   Patent Invalidity………………………………………………………     14

            a.   Non-Patentable Subject Matter Under 35 U.S.C., § 101…………     14

            b.   Anticipation Under 35 U.S.C. § 102……………………………..     15

            c.   Obviousness Under 35 U.S.C. § 103……………………………..     16

            d.   Written Description Under 35 U.S.C. § 112, First Paragraph…….     18

        3.   Claim Construction……………………………………………………     19

VI.    Argument…………………………………………………………………………     21

    A.   Non-Infringement………………………………………………………….     21

        1.   Count One: U.S. Patent No. 6,745,090………………………………     21

        2.   Count Two: U.S. Patent No. 6,745,232………………………………     21

        3.   Count Three: U.S. Patent No. 6,801,813……………………………     23

            a.   The Interpreting Requirement……………………………………     25

            b.   The Accused Products Do Not Interpret Computer Code………..     28

        4.   Count Four: U.S. Patent No. 7,058,461………………………………     29

        5.   Count Five: U.S. Patent No. 7,065,415………………………………     29

        6.   Count Six: U.S. Patent No. 7,123,974………………………………     32

            a.   Claims 1 and 24…………………………………......…………     33

            b.   Claim 29………………………………………….....…..……     34

            c.   CoDeSys………………………………………….....…………     35

    B.   Invalidity………………………………………………………………….     36

        1.   Count One: U.S. Patent No. 6,745,090………………………………     36

        2.   Count Two: U.S. Patent No. 6,745,232………………………………     36

            a.   Invalidity Under 35 U.S.C. § 102, 103…………………………     37

                i.     Claim 1………………………………………………..     37

                ii.    Claim 2………………………………………………..     38

                iii.   Claim 3………………………………………………..     39

                iv.    Claim 5………………………………………………..     40

|   |   |   | v. | Claim 10……………………………………………………… | 41 |
|   |   |   | vi. | Claim 11……………………………………………………… | 42 |
|   |   |   | vii. | Claim 14……………………………………………………… | 43 |
| 3. |   | Count Three: U.S. Patent No. 6,801,813……………………………… | | | 44 |
|   | a. | Invalidity Under 35 U.S.C. § 102, 103………………………….. | | | 44 |
|   |   |   | i. | Claim 1……………………………………………………….. | 45 |
|   |   |   | ii. | Claim 2……………………………………………………….. | 46 |
|   |   |   | iii. | Claim 3……………………………………………………….. | 46 |
|   |   |   | iv. | Claim 4……………………………………………………….. | 47 |
|   |   |   | v. | Claim 5……………………………………………………….. | 48 |
|   |   |   | vi. | Claim 6……………………………………………………….. | 49 |
|   |   |   | vii. | Claim 7……………………………………………………….. | 50 |
|   |   |   | viii. | Claim 10……………………………………………………… | 51 |
|   |   |   | ix. | Claim 11……………………………………………………… | 51 |
|   |   |   | x. | Claim 12……………………………………………………… | 52 |
|   |   |   | xi. | Claim 13……………………………………………………… | 53 |
|   |   |   | xii. | Claim 14……………………………………………………… | 54 |
|   |   |   | xiii. | Claim 15……………………………………………………… | 55 |
|   |   |   | xiv. | Claim 16……………………………………………………… | 56 |
|   |   |   | xv. | Claim 17……………………………………………………… | 57 |
|   |   |   | xvi. | Claim 20……………………………………………………… | 58 |
|   |   |   | xvii. | Claim 21……………………………………………………… | 59 |
|   |   |   | xviii. | Claim 22……………………………………………………… | 60 |
| 4. |   | Count Four: U.S. Patent No. 7,058,461……………………………… | | | 60 |
| 5. |   | Count Five: U.S. Patent No. 7,065,415……………………………… | | | 61 |
|   | a. | Invalidity Under 35 U.S.C. § 102, 103………………………….. | | | 61 |
|   |   |   | i. | Claim 1……………………………………………………….. | 62 |
|   |   |   | ii. | Claim 2……………………………………………………….. | 63 |
|   |   |   | iii. | Claim 3……………………………………………………….. | 64 |
|   |   |   | iv. | Claim 4……………………………………………………….. | 65 |
|   |   |   | v. | Claim 5……………………………………………………….... | 66 |
|   |   |   | vi. | Claim 8……………………………………………………….... | 67 |
|   | b. | Invalidity Under 35 U.S.C. § 112, First Paragraph……………….. | | | 67 |
| 6. |   | Count Six: U.S. Patent No. 7,123,974……………………………… | | | 68 |
|   | a. | Invalidity Under 35 U.S.C. § 101……………………………….. | | | 69 |
|   | b. | Invalidity Under 35 U.S.C. §§ 102, 103………………………… | | | 69 |
|   |   |   | i. | Claim 1……………………………………………………….... | 70 |
|   |   |   | ii. | Claim 2……………………………………………………….... | 71 |
|   |   |   | iii. | Claim 3……………………………………………………….... | 72 |
|   |   |   | iv. | Claim 5……………………………………………………….... | 73 |
|   |   |   | v. | Claim 6……………………………………………………….... | 73 |

vi.    Claim 9…………………………………………........    74

vii.   Claim 10…………………………………………........    75

viii.  Claim 14…………………………………………........    76

ix.    Claim 16…………………………………………........    77

x.     Claim 24…………………………………………........    78

xi.    Claim 29…………………………………………........    79

VI.  Conclusion…………………………………….......................................    80

**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants WAGO Corporation ("**WCP**") and WAGO Kontakttechnik GmbH & Co. KG ("**WKT**") herein provide their brief in support of their motion for summary judgment on all counts.

## I.     PROPOSED FINDINGS OF FACT

The required Defendants' Proposed Findings of Fact (hereinafter cited in the form "**DPF**") are being separately submitted by WCP and WKT as required by the Court.

## II.    INTRODUCTION

This brief urges the Court to grant the summary judgment in favor of Defendants WCP and WKT on the four counts of patent infringement which remain in this case.  There are many arguments presented in this brief, addressing non-infringement as well as patent invalidity; however, Defendants respectfully suggest that turning first to the following argument may assist with the Court's understanding of the issues:

**U.S. Patent No. 6,745,232 (the "'232 Patent").**  The features of the products being accused of infringing the '232 Patent are software features that have been carried over from earlier versions of the same software, originally dating back to several years before the filing date of the '232 Patent.  If Plaintiffs successfully show that each of the elements of the asserted claims of the '232 Patent is present in the accused software, the result would be to invalidate the claims as having been anticipated by (or obvious in view of) the earlier versions of the software. If Plaintiffs successfully show that the earlier versions of the software do not provide each and every element of the asserted claims of the '232 Patent, then Plaintiffs would have done so at the expense of their ability to carry their burden of proof that the same features, when considered in the later versions of the software, constitute infringement.  Accordingly, summary judgment that

WCP and WKT are not liable for infringement of the '232 Patent is warranted, regardless of whether the theory of non-liability is based on non-infringement or patent invalidity.

**U.S. Patent No. 6,801,813 (the "'813 Patent").** Plaintiffs are asserting two independent claims of the '813 Patent and several dependent claims which incorporate one of the two independent claims by reference. The requirements of independent Claim 1 include having an "execution engine adapted to <u>interpret</u> code from an industrial control program" (emphasis added), and the requirement of independent Claim 21 include "developing an execution engine that <u>interprets</u> instructions of an industrial control program that utilizes at least one of the plurality of file system services" (emphasis added). This is a claim construction issue. The accused products are computerized industrial controllers, and the term <u>interpret</u> has a special meaning in this technology, which is in contrast to the term <u>compile</u>. An interpreted computer language is a human-readable computer language which is executed on the device for which it was written only through the mediation of an interpreter, while a compiled computer language is not human readable and does not require an interpreter. With compiled computer languages, a program must be converted into machine readable binary code (in other words, compiled) before being loaded onto the device for which was written. Once on the device, a compiled program runs without the mediation of an interpreter. Because the accused products use compiled computer code and not interpreted computer code, they do not provide an "execution engine adapted to <u>interpret</u> code from an industrial control program" (emphasis added), and they do not perform a step of "developing an execution engine that <u>interprets</u> instructions of an industrial control program that utilizes at least one of the plurality of file system services" (emphasis added). The distinction between <u>interpreted</u> computer code and <u>compiled</u> computer code was well-established before the filing date of the '813 Patent. As a result, Plaintiffs could have

covered compiled computer code in the specification if they had intended to so; as a result, the doctrine of equivalents is not available to Plaintiffs on this issue.

**U.S. Patent No. 7,065,415 (the "'415 Patent").** Plaintiffs are asserting one independent claim of the '415 Patent and several dependent claims which incorporate the independent claim by reference.  The requirements of independent Claim 1 include "a first instruction that employs a file system that resides on an industrial controller <u>to log data to a file containing ladder logic instructions</u>" (emphasis added).  So-called "ladder logic" is a type of computer language used almost exclusively in industrial controllers.  At least some of products being accused of infringement in this case may be able to execute instructions to log data, but they cannot "log data to a file containing ladder logic instructions."  Furthermore, there is nothing to indicate that Plaintiffs contend that the accused products can "log data to a file containing ladder logic instructions."  While Plaintiffs have not been forthcoming about exactly what their theory of infringement is with regard to the '415 Patent, they appear to be prepared to argue infringement under the doctrine of equivalents.  The doctrine of equivalents is not available to Plaintiffs to delete the words "to a file containing ladder logic instructions" from Claim 1, because those words were added to Claim 1 during the prosecution of the '415 Patent to overcome a rejection of the claim by the patent examiner.

**U.S. Patent No. 7,123,974 (the "'974 Patent").** Plaintiffs are asserting three independent claims of the '974 Patent and several dependent claims which incorporate one of the independent claims by reference.  The requirements of independent Claim 1 include "<u>a recording component</u> to log real time interactions with one or more industrial control components" and "<u>a tracking component</u> to aggregate the real time interactions to facilitate generation of audit data relating to the one or more industrial control components."  Again, Plaintiffs' theory of

infringement is murky; however, they appear to contend that the ability of the accused products to be programmed to create a log file satisfies both the "recording component . . ." requirement and the "tracking component . . ." requirement.  Because the analysis of patent infringement is done on an element-by-element basis, there can be no literal infringement when both of the elements of Claim 1 are not present.  Plaintiffs again appear to be setting up a doctrine of equivalents theory; however, the doctrine of equivalents is not available.  First, the doctrine of equivalents has never been available to relieve a patent plaintiff of the burden of proving one of the elements of a patent claim.  In addition, Plaintiffs argued the separate "recording component . . ." and the "tracking component . . ." as having signifance during patent prosecution in arguments to overcome a prior art-based rejection by the patent examiner, thus barring themselves from arguing the doctrine of equivalents on this issue today.  The requirements of independent Claim 24 include the distinct steps of "logging the activity data in at least one of a local and a remote location" and "aggregating the logged activity data in the at least one file." Plaintiffs' theory, still murky, appears to be that using the logging capability of the accused products to create a log file performs both the "logging . . ." and the "aggregating . . ." steps of Claim 24.  Once more, because infringement analysis is done on a claim-by-claim basis, there is no literal infringement, and Plaintiffs appear to be relying on the doctrine of equivalents.  That doctrine is not available to Plaintiffs to consolidate the separate logging and aggregating requirements of Claim 24 for the same reasons it is inapplicable to Claim 1.  (Indeed, Plaintiffs' arguments to the patent examiner expressly stated that Plaintiffs' comments on Claim 1 were applicable to Claim 24.)  Finally, the requirements of independent Claim 29 include three distinct elements: (1) "a first data field representing real time access data to an industrial control component," (2) "a second data field representing a tag name to store and aggregate the real time

access data," and (3) "a third data field to categorize the real time access data." As a matter of claim construction, the term "data field" is understood as applying to databases, and the accused products do not have databases. Furthermore, Plaintiffs have not pointed to anything other than the log file discussed above which might constitute a data field, and the log file is a simple binary file that does not have fields. The doctrine of equivalents is not available to Plaintiffs TO delete the data fields required by Claim 29 for the same reasons it is not available for Claims 1 and 28. (The arguments Plaintiffs made to the patent examiner on Claim 1 were stated by Plaintiffs to be equally applicable, not only to Claim 24, but also to Claim 29.) Finally, as with the '232 Patent, the software capabilities to which Plaintiffs' theory of infringement appears to be directed were carried over from an earlier version of the software, and that version predates the filing date of the '974 Patent by more than a year. Thus, if Plaintiffs successfully show that each of the elements of the asserted claims of the '974 Patent is present in the accused software, the result would be to invalidate the claims as having been anticipated by the earlier versions of the software. If Plaintiffs successfully show that the earlier versions of the software do not provide each and every element of the asserted claims of the '974 Patent, then Plaintiffs would have done so at the expense of their ability to carry their burden of proof that the same features, when considered in the later versions of the software, constitute infringement.

## III.    BACKGROUND

Plaintiff Rockwell Automation, Inc. alleges that it is a Wisconsin corporation, headquartered in Milwaukee, which is the exclusive licensee of U.S. Patent No. 6,745,090, U.S. Patent No. 6,745,232, U.S. Patent No. 6,801,813, U.S. Patent No. 7,058,461, and U.S. Patent No. 7,065,415, as well as the owner of U.S. Patent No. 7,123,974. (DPF, ¶ 1) Plaintiff Rockwell Automation Technologies, LLC alleges that it is an Ohio corporation, headquartered in Mayfield

Heights, Ohio, which is the owner of U.S. Patent No. 6,745,090, U.S. Patent No. 6,745,232, U.S. Patent No. 6,801,813, U.S. Patent No. 7,058,461, and U.S. Patent No. 7,065,415. (DPF, ¶ 2)

Defendant WAGO Corporation ("**WCP**"), is a Nevada corporation, headquartered in Germantown, Wisconsin. (DPF, ¶ 3_) Defendant WAGO Kontakttechnik GmbH & Co. KG ("**WKT**") is a German limited partnership, headquartered in Minden, Germany. WKT owns 100% of the outstanding stock of WCP. (DPF, ¶ 4)

There is no dispute that this lawsuit relates to industrial control systems and PLCs (programmable logic controllers) which are used, among other things, to monitor and control industrial processes, manufacturing equipment, and factory automation. (DPF, ¶ 5)

The Complaint was filed November 16, 2010. (DPF, ¶ 6) On December 8, 2010, WCP responded with a motion for a more definite statement, in which WKT joined, while WKT responded with a motion to dismiss which challenged service of process and personal jurisdiction. (DPF, ¶ 6)

On July 26, 2011, Plaintiffs reported that they had served WKT in Germany. WCP's motion for a more definite statement and WKT's motion to dismiss for lack of personal jurisdiction were denied on September 29, 2011. WCP and WKT did not plead counterclaims and have not invoked the jurisdiction of this Court other than to participate in this litigation to respond to Plaintiffs' allegations. (DPF, ¶ 6)

As originally filed, this civil action alleged six counts of patent infringement; however, Plaintiffs moved on February 23, 2012 for dismissal of Counts One and Four, representing to the Court that Plaintiffs had at that time only recently determined that, in their view, Counts One and Four related to products that were not being sold in the United States. As a result, there are four patents currently at issue in this lawsuit. (DPF, ¶ 7)

Count One, alleging infringement of U.S. Patent No. 6,745,090, is the first of the two dismissed counts.  (DPF, ¶ 8)

Count Two alleges infringement of U.S. Patent No. 6,745,232 for "Strobed synchronization providing diagnostics in a distributed system" (the "**'232 Patent**").  (DPF, ¶ 9) The filing date of the m'232 Patent is August 23, 2001.  (DFF, ¶ 10)  Plaintiffs are asserting Claims 1, 2, 3, 5, 10, 11, and 14 of this patent (a total of seven claims).  (DPF, ¶ 12)  Plaintiffs' expert describes the subject matter of the '232 Patent as follows:

> The '232 patent is directed to a runtime debugging and diagnostics method and system for industrial control systems. The disclosed embodiments allow a user to regulate processing of a control device in a step mode during execution of a stored program. The patent discloses methods of storing an executable program in a programmable logic controller ("PLC"), where the PLC communicates with devices in a networked system to receive instructions to suspend execution, change modes of execution, or run in a step mode. The step mode can be for a specified number of iterations of the code, or for a specified time period. Further, the patent describes the structure of mode change messages or step mode messages exchanged between the executing PLC and a communications medium.

(DPF, ¶ 11)

Count Three alleges infringement of U.S. Patent No. 6,801,813 for "Method for consistent storage of data in an industrial controller" (the "**'813 Patent**").  (DPF, ¶ 149)  The filig date of the m'813 Patent is July 30, 2001 ( DPF, ¶ 150)  Plaintiffs are asserting Claims 1-7, 10-17, and 20-22 of the '813 Patent (a total of 21 claims).  (DPF, ¶ 152)  Plaintiffs' expert describes the subject matter of the '813 Patent with the subject matter of related U.S. Patent No. 7,065,415 as follows:

> The '813 and '415 patents are directed to systems and methods of employing a file system in the memory of a PLC. An editor allows a user to write an industrial control program that utilizes the file system services on the PLC. An execution engine operable in the PLC is adapted to interpret instructions that invoke the services of the file system on the PLC. The file system on the PLC can be used to log and retrieve measured data and trend data. The file system can be used to load "recipe files" from local or remote storage location. The execution engine and the

file system allow loading user-defined routine files at run-time from a file storage location. Typical file service storage locations could be a memory device residing within (or attached to) a PLC, on a local server, or at a remote location.

(DPF, ¶ 151)

Count Four, alleging infringement of U.S. Patent No. 7,058,461 is the second of the two dismissed counts.  (DPF, ¶ 345)

Count Five alleges infringement of U.S. Patent No. 7,065,415 for "Method for consistent storage of data in an industrial controller" (the "**'415 Patent**").  (DPF, ¶ 346  Plaintiffs are asserting Claims 1-5, and 8 of the '415 Patent (a total of six claims).  (DPF, ¶ 349  The '415 Patent originated as a division of the '813 Patent, which has a filing date of July 30, 2001.  (DPF, ¶ 347), and Plaintiffs' expert describes the subject matter of the '415 Patent in the same statement as his description of the '813 patent, as quoted above.  (DPF, ¶¶ 151, 348)

Count Six alleges infringement of U.S. Patent No. 7,123,974 for "System and methodology providing audit recording and tracking in real time industrial controller environment" (the "**'974 Patent**").  (DPF, ¶ 420)  The filing date of the m'974 Patent is November 19, 2002 (DPF, ¶ 421)  Plaintiffs are asserting Claims 1-3, 5, 6, 9, 10, 14, 16, 24, and 29 of the '974 Patent (a total of 11 claims).  (DPF, ¶ 423)  Plaintiffs' expert describes the subject matter of the '974 Patent as follows:

> Aspects of the '974 patent are directed to systems and methods for "real time" automated monitoring, recording, and tracking of interactions with an industrial control component. A recording component on the control component (or on a remote device) records certain real-time interactions (e.g., access records; value forcing operations; clearing/setting counter, register, or status area of memory). A tracking component aggregates these interactions.  The aggregated interactions can be used to generate audit data related to the control component..

(DPF, ¶ 422)

## IV.   APPLICABLE LEGAL STANDARD

### A.   Summary Judgment

A party is entitled to summary judgment to the extent the evidence in the record "show[s] that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). For a dispute to be genuine, there must be more than "metaphysical doubt." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "'. . . . Summary judgment is as appropriate in a patent case as it is in any other case.'" *Desper Prods. v. QSound Labs., Inc.*, 157 F.3d 1325, 1332 (Fed. Cir. 1998) (quoting *C.R. Bard, Inc. v. Advanced Cardiovascular, Inc.*, 911 F.2d 670, 672 (Fed. Cir. 1990); Fed. R. Civ. P. 56(c).)

### B.   Patent Infringement and Patent Validity

#### 1.   Patent Infringement

##### a.   Infringement Generally

It is the plaintiff's burden to show the presence of every element or its equivalent of each asserted patent claim in the accused device. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1301 (Fed. Cir. 2011). "Literal infringement of a claim exists when each of the claim limitations 'reads on,' or in other words is found in, the accused device." *Allen Engineering Corp. v. Bartell Industries, Inc.*, 299 F.3d 1336, 1345 (Fed Cir. 2002). "If, however, even one claim limitation is missing or not met, there is no literal infringement." *Microstrategy v. Business Objects*, 429 F.3d 1344, 1352 (Fed. Cir. 2005); *see also Franks Casing Crew v. Weatherford Intern.*, 389 F.3d 1370, 1378 (Fed. Cir. 2004); *Southwall Technologies v. Cardinal*

*IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995) ("To establish literal infringement, every limitation set forth in a claim must be found in an accused product, exactly.").

Infringement is an issue of fact. *See Southwall Technologies v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995). "Occasionally, however, 'the issue of literal infringement may be resolved with the step of claim construction, for upon correct claim construction, it may be apparent whether the accused device is within the claims.'" *J & M Corp. v. Harley-Davidson, Inc.*, 269 F.3d 1360, 1366 (Fed. Cir. 2001) (citing *Multiform Desiccants, Inc. v. Medzam*, 133 F.3d 1473, 1476 (Fed. Cir. 1998)).

The determination of whether a patent claim is infringed thus involves a two-step analysis. "First, we construe the claim asserted to be infringed to determine its meaning and scope. Second, we compare the properly construed claim to the accused product or process . . . . The patent owner must show that every limitation of the patent claim asserted is found in the accused process or product." *Tanabe Seiyaku Co., Ltd. v. United States International Trade Commission*, 109 F.3d 726, 731 (Fed. Cir. 1997) (citations omitted).

Claim construction is discussed below.

**b.      Infringement Under the Doctrine of Equivalents**

As discussed above, the absence of "even one claim limitation" from an accused device requires a finding of no literal infringement. *See Microstrategy v. Business Objects*, 429 F.3d 1344, 1352 (Fed. Cir. 2005). However, "[e]ven if one or more of the claim limitations are not literally present in the accused device, thus precluding a finding of literal infringement, the claim may still be held infringed if equivalents of those limitations are present." *Allen Engineering Corp. v. Bartell Industries, Inc.*, 299 F.3d 1336, 1345 (Fed Cir. 2002). (citing *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 24 (1997)). Under the doctrine of equivalents, "a

product or process that does not literally infringe upon the express terms of a patent claim may nonetheless be found to infringe if there is 'equivalence' between the elements of the accused product or process and the claimed elements of the patented invention." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 21 (1997). A plaintiff invoking the doctrine of equivalents must do more than merely recite the general proposition that infringement may be proved by equivalence; instead, the plaintiff must explain how the defendant's product infringes under the doctrine. *See Mueller Sports Med., Inc. v. Beveridge Mktg., LLC*, 369 F. Supp. 2d 1028, 1034 (W.D. Wis. 2005). "A claim that contains a detailed recitation of structure is properly accorded correspondingly limited recourse to the doctrine of equivalents." *Bicon, Inc. v. Straumann Co.*, 441 F.3d 945, 955 (Fed. Cir.2006).

The doctrine of equivalents may allow a patent holder to claim "insubstantial alterations" to what is set forth in the original patent claim "which could be created through trivial changes." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002). While infringement, either literal or under the doctrine of equivalents is a question of fact, "whether statements in the specification limit the scope of equivalents is a question of law." *Retractable Techs., Inc. v. Becton*, 653 F.3d 1296, 1307 (Fed. Cir. 2011); *see also L.B. Plastics, Inc. v. Amerimax Home Prods.*, 499 F.3d 1303, 1309 (Fed. Cir. 2007).

"[T]he scope of equivalents may be limited by the prosecution history, if the applicant narrowed claims to overcome prior art." *J & M Corp. v. Harley-Davidson, Inc.*, 269 F.3d 1360, 1366 (Fed. Cir. 2001). Limitations on the applicability of the doctrine of equivalents include, for example, amendment-based estoppel, in which an applicant makes a narrowing amendment to a claim or argument-based estoppel, in which an applicant surrenders claim scope through arguments made to the patent examiner to overcome rejection. *See Voda v. Cordis Corp.*, 536

F.3d 1311, 1325 (Fed. Cir. 2008).  In amendment-based estoppel, "[a] patentee's decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740 (2002); *see also Regents of the Univ. of Cal. v. DakoCytomation Cal., Inc.*, 517 F.3d 1364, 1376 (Fed. Cir. 2008).  Thus:

> When a patent holder "narrowed the claim in response to a rejection, he may not argue that the surrendered territory comprised unforeseen subject matter that should be deemed equivalent to the literal claims of the issued patent. On the contrary, "by the amendment [the patentee] recognized and emphasized the difference between the two phrases[,] . . . and the difference which [the patentee] thus disclaimed must be regarded as material."

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733-34 (2002) (citation omitted).  "[A] narrowing amendment made to satisfy any requirement of the Patent Act may give rise to an estoppel." *Id.* at 736.  In argument-based estoppel, "[a]rguments made during the prosecution of a patent application are given the same weight as claim amendments." *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 979 (Fed. Cir. 1999).

It is well settled that each element of a claim is material and essential and that in order for a court to find infringement, whether literally or under the doctrine of equivalents, the patent holder must show the presence of each and every element or its substantial equivalent in the accused device.  *See Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed. Cir. 1985).  "[T]he doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997).

Finally, the doctrine of equivalents does not permit a plaintiff to claim equivalents that were foreseeable — but not included among the patent claims — at the time of patent prosecution:

> The principle of foreseeability ties patent enforcement appropriately to patent acquisition. In making this connection, foreseeability reconciles the preeminent notice function of patent claims with the protective function of the doctrine of equivalents. Thus, <u>foreseeability in this context ensures that the doctrine does not capture subject matter that the patent drafter could have foreseen during prosecution and included in the claims</u>. The goal of the principle is to ensure that the claims continue to define patent scope in all foreseeable circumstances, while protecting patent owners against insubstantial variations from a claimed element in unforeseeable circumstances. <u>The foreseeability principle thus relegates the doctrine of equivalents to its appropriate exceptional place in patent enforcement</u>.

*Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 523 F.3d 1304, 1313 (Fed. Cir. 2008)

(emphasis added).

### c.      Indirect Infringement

If the use of a product necessarily entails patent infringement, then the seller of the product

> may be liable for inducement of infringement if it actively induces the infringement . . . . In the event that direct infringement exists, [the seller] could also be found liable for contributory infringement if it knows the products to be "especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use."

*RF Delaware, Inc. v. Pac. Keystone Technologies, Inc.*, 326 F.3d 1255, 1267 (Fed. Cir. 2003)

(citing 35 U.S.C. § 271(b), (c)) (emphasis added).

*Inducement of Infringement.*  The Patent Act, 35 U.S.C. § 271(b), creates liability for inducement of infringement where there is "both an underlying instance of direct infringement <u>and</u> a requisite showing of intent." *Fuji Photo Film Co. v. Jazz Photo Corp.*, 394 F.3d 1368, 1377 (Fed. Cir. 2005) (citing *Insituform Technologies, Inc. v. Cat Contracting Inc.*, 385 F3d 1360, 1378 (Fed. Cir. 2004) (emphasis added); *see also Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1341 (Fed. Cir. 2008).

-13-

*Contributory Infringement.*  The Patent Act, 35 U.S.C. § 271(c), also creates liability for contributory infringement against "one who sells a component especially designed for use in a patented invention may be liable as a contributory infringer, provided that the component is not a staple article of commerce suitable for substantial noninfringing use."  *Ricoh Co., Ltd. v. Quanta Computer Inc.*, 550 F.3d 1325, 1377 (Fed. Cir. 2008).

### 2.   Patent Invalidity

Theories of patent invalidity, include, but are not limited to, invalidity on the basis of anticipation under 35 U.S.C. § 102 and invalidity on the basis of obviousness under 35 U.S.C. § 103.  Invalidity on the basis of anticipation is a question of fact, while invalidity on the basis of obviousness is a matter of law.  *See Titanium Metals Corp. v. Banner*, 778 F.2d 775, 780 (Fed. Cir. 1985).  A patent is "presumed valid," and "[t]he burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity."  35 U.S.C. § 282; *see also Microsoft Corp. v. i4i Limited Partnership*, ___ U.S. ___, 131 S. Ct. 2238, 2242 (2011); *Titan Tire Corp. v. Case New Holland, Inc.*, 566 F.3d 1372, 1376 (Fed. Cir. 2009).

### a.   Non-Patentable Subject Matter Under 35 U.S.C., § 101

Under the Patent Act, in order for subject matter to be eligible for patentability it must, among other things, be a "process, machine, manufacture, or composition of matter, or any new and useful improvement thereof."  35 U.S.C. § 101.  In addition, there are "three specific exceptions to § 101's broad patent-eligibility principles: 'laws of nature, physical phenomena, and abstract ideas.'"  *Bilski v. Kappos*, __ U.S. __, 130 S. Ct. 3218, 3225 (2010) (quoting *Diamond v. Chakrabarty*, 447 U.S. 303, 309 (1980)).  Abstract ideas are not patentable, and mental processes are a subcategory of unpatentable abstract ideas.  *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1371 (Fed. Cir. 2011) (citing *Gottschalk v. Benson*, 409

U.S. 63, 67 (1972)).  Mere data-gathering steps cannot rescue a claim that is otherwise invalid

for ineligible subject matter.  *CyberSource*, 654 F.3d at 1370, (citing *In re Grams*, 888 F.2d 835,

840 (Fed. Cir. 1989)).  An unpatentable mental process or other abstract idea cannot be made

patentable by "simply reciting the use of a computer to execute an algorithm that can be

performed entirely in the human mind."  *Id.* at 1375.  "Issues of patent-eligible subject matter are

questions of law."  *Id.* at 1369.

### b.     Anticipation Under 35 U.S.C. § 102

The Patent Act provides that subject matter may not be patented if it is shown to be

anticipated by another person's invention.  Such anticipation may be shown on the basis of,

among other things, evidence that

> the invention was known or used by others in this country, or patented or
> described in a printed publication in this or a foreign country, before the invention
> thereof by the applicant for patent,

35 U.S.C. § 102(a), or that

> the invention was patented or described in a printed publication in this or a
> foreign country or in public use or on sale in this country, more than one year
> prior to the date of the application for patent in the United States.

35 U.S.C. § 102(b).  Alternatively, an invention may be anticipated if it

> was described in (1) an application for patent, published under [35 U.S.C.
> § 122(b)], by another filed in the United States before the invention by the
> applicant for patent or (2) a patent granted on an application for patent by another
> filed in the United States before the invention by the applicant for patent, except
> that an international application filed under the treaty defined in [35 U.S.C.
> § 351(a)] shall have the effects for the purposes of this subsection of an
> application filed in the United States only if the international application
> designated the United States and was published under Article 21(2) of such treaty
> in the English language

35 U.S.C. § 102(e).  "Patent claims are presumed to be valid, 35 U.S.C. § 282, and the party

seeking to show invalidity must prove facts supporting invalidity by clear and convincing

evidence." *Abbott Labs. v. Baxter Pharm. Prods.*, 471 F.3d 1363, 1367 (Fed. Cir. 2006) (citing

*N. Am. Vaccine, Inc. v. Am. Cyanamid Co.*, 7 F.3d 1571, 1579 (Fed. Cir. 1993)).

Anticipation under § 102 is found "when the reference discloses exactly what is

claimed." *Titanium Metals Corp. v. Banner*, 778 F.2d 775, 780 (Fed. Cir. 1985). In those cases

"where there are differences between the reference disclosure and the claim, the rejection must

be based on § 103 which takes differences into account." *Id.* "[A] reference may anticipate even

when the relevant properties of the thing disclosed were not appreciated at the time." *Abbott*

*Labs. v. Baxter Pharm. Prods.*, 471 F.3d 1363, 1368 (Fed. Cir. 2006).

### c.    Obviousness Under 35 U.S.C. § 103

The Patent Act provides that subject matter may not be patented if it was obvious at the

time the asserted invention was made:

> A patent may not be obtained . . . if the differences between the subject matter
> sought to be patented and the prior art are such that the subject matter as a whole
> would have been obvious at the time the invention was made to a person having
> ordinary skill in the art to which said subject matter pertains.

35 U.S.C. § 103(a) (emphasis added). A party moving for summary judgment on patent

obviousness has the burden of showing obviousness by clear and convincing evidence. *See*

*Source Search Techs., LLC v. LendingTree, LLC*, 588 F.3d 1063, 1069 (Fed. Cir. 2009). In

determining whether obviousness has been shown,

> the district court can and should take into account expert testimony, which may
> resolve or keep open certain questions of fact. That is not the end of the issue,
> however. The ultimate judgment of obviousness is a legal determination.

*KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007).

In considering summary judgment on patent obviousness, once the necessary factual

predicates of "the content of the prior art, the scope of the patent claim, and the level of ordinary

skill in the art" are established, "[t]he ultimate judgment of obviousness is a legal

determination." *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398, 427 (2007). "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *Id.* at 416. "In determining whether the subject matter of a patent claim is obvious, neither the particular motivation nor the avowed purpose of the patentee controls. What matters is the objective reach of the claim. If the claim extends to what is obvious, it is invalid under § 103." *Id.* at 419. In considering summary judgment on the question of obviousness, "the district court can and should take into account expert testimony, which may resolve or keep open certain questions of fact." *Id.* at 427. However, a genuine issue of material fact is not automatically created merely because "an expert provides a conclusory affidavit addressing the question of obviousness." *Id.* at 426 "The ultimate judgment of obviousness is a legal determination." *Id.* at 427.

   "An obviousness determination is not the result of a rigid formula disassociated from the consideration of the facts of a case. Indeed, the common sense of those skilled in the art demonstrates why some combinations would have been obvious where others would not." *Western Union Co. v. MoneyGram Payment Sys.*, 626 F.3d 1361, 1369-70 (Fed. Cir. 2010). An obviousness determination requires the court "to inquire 'whether the improvement is more than the predictable use of prior-art elements according to their established functions.'" *Monolithic Power Sys. v. O2 Micro Int'l Ltd.*, 558 F.3d 1341, 1352 (Fed. Cir. 2009) (quoting *KSR Int'l Co. v. Teleflex Inc.*, 550 U.S. at 417). "Repeating known steps to obtain a desired result is not inventive." *Celsis in Vitro, Inc. v. CellzDirect, Inc.*, 664 F.3d 922, 933 (Fed. Cir. 2012) (citing *Perfect Web Techs., Inc. v. InfoUSA, Inc.*, 587 F.3d 1324, 1330-31 (Fed. Cir. 2009)).

   The statutory presumption of validity is a codification of an earlier "common-law presumption based on 'the basic proposition that a government agency such as the [PTO] was

presumed to do its job.'"   *Microsoft Corp. v. i4i Ltd. P'ship*, __ U.S. __, 131 S. Ct. 2238, 2240

(2011) (quoting *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359

(Fed. Cir. 1984)) (brackets in the original). While the burden remains with a party arguing patent

invalidity on the basis of prior art, it makes a difference if the prior art in question was not

considered by the examiner during patent prosecution.  "[R]eliance upon such art when that art is

more pertinent than the art considered by the PTO may facilitate meeting the burden of proving

invalidity." *Uniroyal, Inc. v. Rudkin-Wiley Corp.*, 837 F.2d 1044, 1050 (1988); *see also*

*Microsoft Corp. v. i4i Ltd. P'ship*, __ U.S. __, 131 S. Ct. at 2240-41 (2011).

### d.      Written Description Under 35 U.S.C. § 112, First Paragraph

The Patent Act requires that the patent specification must contain a written description of

the invention "in such full, clear, concise, and exact terms as to enable any person skilled in the

art to which it pertains, or with which it is most nearly connected, to make and use the same."

35 U.S.C. § 112, first paragraph.  "[T]he hallmark of written description is disclosure." *Boston*

*Scientific Corp. v. Johnson & Johnson*, 647 F.3d 1353, 1361 (Fed. Cir. 2011) (quoting *Ariad*

*Pharms., Inc. v. Eli Lilly & Co.,* 598 F.3d 1336, 1351 (Fed. Cir. 2010) (en banc)).  "The purpose

of the written description requirement is to 'ensure that the scope of the right to exclude, as set

forth in the claims, does not overreach the scope of the inventor's contribution to the field of art

as described in the patent specification.'" *ICU Medical, Inc. v. Alaris Medical Sys., Inc.*, 558

F.3d 1368, 1376 (Fed. Cir. 2009) (citation omitted).  "A specification adequately describes an

invention when it 'reasonably conveys to those skilled in the art that the inventor had possession

of the claimed subject matter as of the filing date." *Boston Scientific Corp. v. Johnson &*

*Johnson*, 647 F.3d at 1362  (citation omitted).  "When determining whether a specification

contains adequate written description, one must make an 'objective inquiry into the four corners

of the specification from the perspective of a person of ordinary skill in the art." *Boston Scientific Corp. v. Johnson & Johnson*, 647 F.3d at 1366, *quoting Ariad*, 598 F.3d at 1351.

### 3.     Claim Construction

A determination of patent infringement or validity may require a resolution of claim construction issues.  "[T]he courts construe patent claims as a matter of law."  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995); *see also O2 Micro International Ltd. v. Beyond Innovation Technology Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008).  "The claim language defines the bounds of claim scope."  *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002) (citing *Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 619-20 (Fed. Cir. 1995)).  It is axiomatic that "'claims should be so construed, if possible, as to sustain their validity.'"  *MBO Laboratories, Inc. v. Becton, Dickinson & Co.*, 474 F.3d 1323, 1332 (Fed. Cir. 2007) (quoting *Rhine v. Casio, Inc.*, 183 F.3d 1342, 1345 (Fed. Cir. 1999)) (emphasis added); *see also Whittaker Corp. v. UNR Industries, Inc.*, 911 F.2d 709, 712 (Fed. Cir. 1990); *American Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984).

The patent itself provides enough information to enable a person of ordinary skill in the relevant art to practice the invention, but not necessarily everything that a member of the general public would need to know in order to understand the claims.  *See Ajinomoto Co. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1346-47 (Fed. Cir. 2000).  "The construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims."  *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001).  The words of the claim are construed as having their ordinary meanings "unless it is apparent the inventor used them otherwise in the patent."  *Bell Communications v.*

*Vitalink Communications Corp.*, 55 F.3d 615, 620 (Fed. Cir. 1995) (citing *Envirotech Corp. v. Al George, Inc.*, 730 F.2d 753, 759 (Fed. Cir. 1984)).

In construing the claims of a patent, "[t]he intrinsic record in a patent case is the primary tool to supply the context for interpretation of disputed claim terms." *V-Formation, Inc. v. Benetton Group SpA*, 401 F.3d 1307, 1310 (Fed. Cir. 2005). The intrinsic record includes the claims themselves, the rest of the specification, and the prosecution history. *See, e.g., Gart v. Logitech, Inc.*, 254 F.3d at 1339-40. "In analyzing the intrinsic evidence, we start with the language of the claims and engage in a 'strong presumption' that claim terms carry their ordinary meaning as viewed by one of ordinary skill in the art." *Apex Inc. v. Raritan Computer, Inc.*, 325 F.3d 1364, 1371 (Fed. Cir. 2003) (emphasis added).

Courts may also use extrinsic evidence, "including expert and inventor testimony, dictionaries, and learned treatises. This evidence may be helpful to explain scientific principles, the meaning of technical terms, and terms of art that appear in the patent and prosecution history." *Markman v. Westview Instruments, Inc.*, 52 F.3d at 980; *see also Gart v. Logitech, Inc.*, 254 F.3d at 1339-40; *Spectrum International, Inc. v. Sterilite Corp.*, 164 F.3d 1372, 1378 (Fed. Cir. 1998). Extrinsic evidence may not be relied on to vary or contradict the clear meaning of claim terms. *See Apex Inc. v. Raritan Computer, Inc.*, 1364, 1371 (Fed. Cir. 2003). "However, it is not prohibited to provide the opinions and advice of experts to explain the meaning of terms as they are used in patents and as they would be perceived and understood in the field of an invention." *Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1372 (Fed. Cir. 2003). It is well recognized that "a dictionary is often useful to aid the court in determining the correct meaning to be ascribed to a term as it was used." *Vanguard Products Corp. v. Parker Hannifin Corp.*, 234 F.3d 1370, 1372 (Fed. Cir. 2000).

"[A] district court may engage in claim construction during various phases of litigation, not just in a *Markman* order." *Conoco, Inc. v. Energy & Envtl. Int'l, L.C.*, 460 F.3d 1349, 1359 (Fed. Cir. 2006).

## VI.   ARGUMENT

WCP and WKT argue that the patent claims at issue are not infringed and are, in any case, invalid.

### A.   Non-Infringement

It is Plaintiffs' burden to show the presence of every element or its equivalent of each asserted patent claim in the accused device. *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1301 (Fed. Cir. 2011). A failure to prove infringement of an independent claim is also a failure to prove infringement of the dependent claims based on the independent claim, because "[a] claim in dependent form shall be construed to incorporate by reference all the limitations of the claim to which it refers." 35 U.S.C. § 112. As a result, the following discussion of non-infringement focuses on the independent claims and not the dependent claims of the patents in suit.

#### 1.   Count One: U.S. Patent No. 6,745,090

Count One of the Complaint, addressing U.S. Patent No. 6,745,090, was dismissed on March 6, 2012 based on the representation that Plaintiffs did not know until February 2012 that certain products in which they were interested were not being sold in the United States. (DPF, ¶ 8)

#### 2.   Count Two: U.S. Patent No. 6,745,232

Regarding Count Two, Plaintiffs are asserting (according to their Rule 26(a)(2) disclosure) (DPF, ¶ 12) two independent claims of the '232 Patent, Claims 1 and 14, which

provide:

> 1.  A method of performing a function in a control device comprising:
> storing a program in a control device, the control device receives a
> message from a communications medium, the message includes
> instructions to suspend execution of the stored program at a particular
> location of the stored program;
> executing at least a portion of the stored program in the control device
> according to the instructions;
> suspending execution of the stored program according to the instructions;
> and receiving a mode change message with instructions therein to
> execute the stored program in a step mode from the location in which
> the program was suspended.

(DPF, ¶ 13); and

> 14.  A method of performing a function in a control device comprising:
> providing a control device that selectively executes a program and
> receives messages from a network;
> receiving a mode change message from the network;
> suspending execution of the program according to the mode change
> message;
> receiving a step command message from the network;
> executing at least a portion of the program in the control device according
> to the message; and
> suspending execution of the program according to the message.

(DPF, ¶ 15)  The dependent claims (DPF, ¶ 14) will not be individually discussed in terms of

infringement.

Plaintiffs' theory of infringement of the '232 Patent is that the program debugging

features of CoDeSys 2.3 software (of which WAGO-I/O-PRO CAA is a version) used to

program the accused products causes the products to perform each and every step of the patent

claims at issue.  (DPF, ¶¶ 16-18)  Thus, it is Plaintiffs' contention that every element of the

'232 Patent is performed by the CoDeSys 2.3 software, because it is Plaintiffs' burden to prove

infringement, *see Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1301 (Fed. Cir. 2011),

and, in order for Plaintiffs to succeed, "every limitation set forth in a claim must be found in an

accused product." *Southwall Technologies v. Cardinal IG Co.*, 54 F.3d 1570, 1575 (Fed. Cir. 1995).

The accused features of CoDeSys 2.3, however, were carried over from earlier versions of CoDeSys through various intermediate versions, at least as far back as CoDeSys 1.5 (1997), which predates the August 23, 2000 filing date of the '232 Patent.  (DPF, ¶¶ 19-24)  Indeed a simple comparison of the "Online" command section of the CoDeSys 2.3 (2007) manual and the CoDeSys 1.5 (1997) manual makes clear the substantial similarity between the two.  (DFP, ¶ 19)  As a result, if Plaintiffs were to carry their burden of proving that these CoDeSys features performs every step of the asserted claims of the '232 Patent, the result would be the Plaintiffs would have proven the asserted claims of the '232 Patent to be anticipated by or obvious in view of CoDeSys 1.5 (1997), *see* 35 U.S.C. § 102(b), inasmuch as anticipation is found "when the reference discloses exactly what is claimed." *Titanium Metals Corp. v. Banner*, 778 F.2d 775, 780 (Fed. Cir. 1985).  "If the claim extends to what is obvious, it is invalid under [35 U.S.C.] § 103." *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398, 419 (2007).

There may be room for debate as to whether non-infringement or invalidity is the most appropriate theory for addressing the circumstances of Count Two, where Plaintiffs accuse features of CoDeSys 2.3 (2007) which were carried over from earlier versiaons atl least as far back as CoDeSys 1.5 (1997).  Regardless of theory, however, it is clear that the end result will be a determination that WCP and WKT are not liable for infringing the asserted claims of the '232 Patent, irrespective of whether the determination is based on non-infringement or invalidity.

### 3.    Count Three: U.S. Patent No. 6,801,813

Regarding Count Three, Plaintiffs are asserting (according to their Rule 26(a)(2) disclosure) (DPF, ¶ 152) two independent claims of the '813 Patent, Claims 1 and 21, which

provide:

> 1.  An industrial controller system comprising:
> a file system residing in a program memory of an industrial controller, the file system having a plurality of file system services; and
> an execution engine residing in the program memory of the industrial controller, the execution engine adapted to interpret code from an industrial control program, the industrial control program including at least one instruction utilizing one or more of the plurality of file system services.

(DPF, ¶ 153); and

> 21.  A method for providing, an industrial controller with the functionality associated with utilizing a file system residing in the industrial controller, the method comprising:
> developing a file system and loading the file system on an industrial controller, the file system having a plurality of file system services; and
> developing an execution engine that interprets instructions of an industrial control program that utilizes at least one of the plurality of file system services.

(DPF, ¶ 155)  The dependent claims (DPF, ¶ 154, 156) will not be individually discussed in terms of infringement.

Plaintiffs' theory of infringement of the '813 Patent turns on the contention that the accused products, by virtue of their use of programs created using CoDeSys 2.3 software, necessarily have "the execution engine <u>adapted to interpret code</u> from an industrial control program" (DPF, ¶ 165, emphasis added) which is required by independent Claim 1 of the '813 Patent.  (DPF, ¶ 153) That requirement is incorporated by reference into asserted Claims 2-7, 10-17, and 20, which depend from Claim 1.  (DPF, ¶ 154)

Similarly, Plaintiffs' theory of infringement for Claims 21-22 of the '813 Patent turns on the contention that the accused CoDeSys 2.3 software performs the step of "developing an execution engine that <u>interprets instructions</u> of an industrial control program . . ." (DPF, ¶ 176, emphasis added) which is required by independent Claim 21 of the '813 Patent.  (DPF, ¶ 155)

That requirement is incorporated by reference into asserted Claim 22, which depends from Claim 21. (DPF, ¶ 156)

          **a.**      **The *Interpreting* Requirement**

This is a matter of claim construction. As discussed above, "the courts construe patent claims as a matter of law." *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 978 (Fed. Cir. 1995); *see also O2 Micro International Ltd. v. Beyond Innovation Technology Co.*, 521 F.3d 1351, 1360 (Fed. Cir. 2008). "The claim language defines the bounds of claim scope." *Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002) (citing *Bell Communications Research, Inc. v. Vitalink Communications Corp.*, 55 F.3d 615, 619-20 (Fed. Cir. 1995)). The patent itself provides enough information to enable a person of ordinary skill in the relevant art to practice the invention, <u>but not necessarily everything that a member of the general public would need to know in order to understand the claims</u>. *See Ajinomoto Co. v. Archer-Daniels-Midland Co.*, 228 F.3d 1338, 1346-47 (Fed. Cir. 2000). "The construction of claims is simply a way of elaborating the normally terse claim language in order to understand and explain, but not to change, the scope of the claims." *Gart v. Logitech, Inc.*, 254 F.3d 1334, 1339 (Fed. Cir. 2001).

Court sometimes consider "the opinions and advice of experts to explain the meaning of terms as they are used in patents and as they would be perceived and understood in the field of an invention." *Merck & Co. v. Teva Pharms. USA, Inc.*, 347 F.3d 1367, 1372 (Fed. Cir. 2003). Plaintiff's expert, Dr. Richard Hooper, notes the distinction between <u>compiled</u> computer languages and <u>interpreted</u> computer languages as being significant for understanding the '813 Patent. (DPF, ¶¶ 157-1159, 164) Plaintiffs' expeert views the characterization of computer code as "compiled" as being relevant to distinguishing the m'813 patent from prior art. (DPF,

¶ 167)

Before loading a compiled program on a computer, compiled programs undergo an intermediate step that processes the human-written program to create executable machine code, typically ones and zeros.  The process of translating the human-written programming language, such as ladder logic, into executable machine code is called compiling. People use editors to write computer programs, which must be transformed by a compiler before the program can be executed by the controller.  (DPF, ¶ 168  In contrast, interpreted programs do not undergo the compiling process before being loaded on a computer. Rather, interpreted programs require an interpreter to process the human-written programming language.  An interpreter transforms and executes a human-written computer program into executable machine code one instruction at a time. (DPF, ¶ 159)  Not all computer languages used for programming PLCs are compiled languages.  (DPF, ¶ 154)  However, the accused WAGO-I/O systems support compiled computer programming languages and not interpreted languages.  (DPF, ¶ 157)

In understanding how the distinction between would have been understood by a person of ordinary skill in the art at the time the '813 Patent was filed (July 30, 2001, *see* DPF, ¶ 150), the Court may, for example, take notice of the 1987 edition of the IBM Dictionary of Computing, which states:

> **compile**  *1.*  To translate a program expressed in a high-level language into a program expressed in an intermediate language, assembly language, or a computer language . . . .  *2.*  to prepare a machine language program from a computer program written in another programming language by making use of the overall logic structure of the program, or generating more than one computer instruction for each symbolic statement, or both, as well as performing the function of an assembler . . . .  *3.* To translate a source program into an executable program (an object program).  *4.*  To translate a program written in a high-level programming langue into a machine language program.

*   *   *

>**interpret**  To translating and execute a statement in a source program before translating and executing the next statement . . . .
>
>  * * *
>
>**interpretive routine**  A routine that decodes instructions written as pseudocodes and immediately executions the instructions.  <u>Contrast with compile</u>.

(DPF, ¶ 160-162)   "[A] dictionary is often useful to aid the court in determining the correct meaning to be ascribed to a term as it was used." *Vanguard Products Corp. v. Parker Hannifin Corp.*, 234 F.3d 1370, 1372 (Fed. Cir. 2000).

Notably, the specification and claims of the '813 Patent use the terms "interpret" or "interpreting" more than 10 times but do not use the terms "compile" or "compiling" at all. (DPF, ¶ 163)

The distinction between *compile* and *interpret* in the language of the art dates back at least to the 1987 edition of the IBM Dictionary of Computing, quoted above (DPF, ¶ 160-162), and the distinction between PLC programming languages which require compiling and those which do not was known in the art at least as early as the 1998 revised edition of Programming Industrial Control Systems Using IEC 1131-3.  (DPF, ¶ 164)

The distinction between <u>compiled</u> and <u>interpreted</u> computer languages goes to the core of what is claimed in the '813 Patent.  As a result, there is no room here for application of the doctrine of equivalents, which applies to "insubstantial alterations" to the subject matter of a claim "which could be created through trivial changes." *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002).

Furthermore, the doctrine of equivalents cannot be used to eliminate the distinction between *compile* and *interpret* in connection with the '415 Patent, because the use of compiled languages to program industrial controllers was foreseeable when the application resulting in the

-27-

'813 Patent was filed (*i.e.*, July 30, 2001). (DPF, ¶ 150) Application of the doctrine of equivalents excludes arguable equivalents that were foreseeable at the time of patent prosecution. The foreseeability principle "ensures that the doctrine does not capture subject matter that the patent drafter could have foreseen during prosecution and included in the claims." *Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.*, 523 F.3d 1304, 1313 (Fed. Cir. 2008). "The foreseeability principle thus relegates the doctrine of equivalents to its appropriate exceptional place in patent enforcement." *Id.*

### b.   The Accused Products Do Not Interpret Computer Code

The accused CoDeSys software creates programs for the accused industrial controllers, which are first compiled and then downloaded into the controller where the programs are run. (DPF, ¶ 166) Because CoDeSys creates compiled code and not interpreted code (DPF, ¶¶ 166, 177), products that use CoDeSys do not include provision for interpreting computer instructions. A person of ordinary skill in the art would thus understand the claim terms "adapted to interpret code" (Claims 1-7, 10-17, and 20) and "interprets instructions" (Claims 21-22) as referring to the operation of interpreted computer code and as excluding the operation of compiled computer code. Because the accused CoDeSys 2.3 software creates programs that must be compiled before they are loaded into the controllers, the accused products do not have either "the execution engine <u>adapted to interpret code</u> from an industrial control program" (emphasis added) of independent Claim 1 (and dependent Claims 2-7, 10-17, and 20) (DPF, ¶ 157-175) or the method for "developing an execution engine that <u>interprets instructions</u> of an industrial control program . . ." (emphasis added) of independent Claim 21 (and dependent Claim 22). (DPF, ¶¶ 157-164, 176-186)

Accordingly, the accused products do not infringe the asserted claims of the '813 Patent.

-28-

### 4.   Count Four: U.S. Patent No. 7,058,461

Count Four of the Complaint, addressing U.S. Patent No. 7,058,461, was dismissed on March 6, 2012 based on the representation that Plaintiffs did not know until February 2012 that certain products in which they were interested were not being sold in the United States.  (DPF, ¶ 345)

### 5.   Count Five: U.S. Patent No. 7,065,415

Regarding Count Five, Plaintiffs are asserting (according to their Rule 26(a)(2) disclosure) one independent claim of the '415 Patent, Claim 1, which provides:

> 1.  An editor for developing ladder logic programs that control operation of an industrial controller system, the editor comprising:
> a first instruction that employs a file system that resides on an industrial controller to log data to a file containing ladder logic instructions;
> a second instruction that employs the file system to retrieve the data from the file containing ladder logic instructions; and
> an implementation for converting the ladder logic instructions into instructions understandable and executable by an execution engine in the industrial controller.

(DPF, ¶ 350)  The dependent claims (DPF, ¶ 355) will not be individually discussed in terms of infringement.

Plaintiffs' theory of infringement of the '415 Patent has not been clearly articulated. Without an explanation as to why Plaintiffs assert that the accused products perform each and every step of Claim 1 (which is incorporated by reference into Claims 2-5 and 8) of the '415 Patent, Plaintiffs cannot carry their burden of proof on the issue of infringement, and summary judgment on the issue of non-infringement should be granted on that basis alone.

To the extent Plaintiffs have implied a theory of infringement of the '415 Patent, that theory appears to be (1) Plaintiffs appear to assert that the accused devices can log data to a file and (2) Plaintiffs appear to assert that the ability to log data to a file is equivalent to the

requirement of Claim 1 "to log data to a file containing ladder logic instructions," which incorporated by referenced into the other asserted claims of the '415 Patent.  (DPF, ¶¶ 356-357)  For example, Plaintiffs' expert seeks to distinguish the Chuo reference relied on be Defendants' expert as follows:  "the cited portion of Chuo discusses saving the program file itself, <u>as opposed to a ladder logic program using instructions to log PLC data to a storage file</u>."  (DPF, ¶ 358, emphasis added)

An infringement theory that *logging data to a file* is equivalent to *logging data to a file containing ladder logic instructions* is impermissible under the doctrines of amendment-based and argument-based estoppel, which are discussed in detail above:

- The language "containing ladder logic instructions" was added during patent prosecution to overcome the patent examiner's rejection of the claim as originally presented.  (DPF, ¶¶ 351-352)

- The requirement for the first instruction to log data to a file "containing ladder logic instructions" was added by Plaintiffs during patent prosecution to overcome a patent examiner's rejection that Claim 1 was indefinite.  (DPF, ¶ 351)

- The requirement for the second instruction to retrieve the data from a file "containing ladder logic instructions" was added during patent prosecution to replace the requirement "to log data to a file" was added by Plaintiffs during patent prosecution to overcome a patent examiner's rejection that Claim 1 was indefinite.  (DPF, ¶ 352)

- The requirement for "an implementation for converting the ladder logic instructions into instructions understandable and executable by an execution engine in the industrial controller" was added by Plaintiffs during patent

prosecution to overcome a patent examiner's rejection that Claim 1 was indefinite.  (DPF, ¶ 352)

●   Plaintiffs also invoked the limitations "to a file containing ladder logic instructions" and "an implementation for converting the ladder logic instructions into instructions understandable and executable by an execution engine " in arguing during patent prosecution that the claimed invention was distinguishable from prior art:

> "The editor includes *first and second instructions* for employing a file system on an industrial controller *to log data to and to retrieve the data from* a file containing ladder logic instructions, and an implementation for converting the ladder logic instructions into instructions understandable and executable by an execution engine in the industrial controller."

(DPF, ¶ 353)

As a result, the prosecution history forecloses the application of the doctrine of equivalents in this instance.  "A patentee's decision to narrow his claims through amendment may be presumed to be a general disclaimer of the territory between the original claim and the amended claim."  *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 740 (2002).  "Arguments made during the prosecution of a patent application are given the same weight as claim amendments."  *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 979 (Fed. Cir. 1999).

The accused devices do not "log data to a file containing ladder logic instructions" as required by independent Claim 1 of the '415 Patent (DPF, ¶¶ 351-354, 356, 362) and therefore do not infringe either Claim 1 or dependent Claims 2-5, and 8, which incorporate Claim 1 by reference.

### 6.     Count Six: U.S. Patent No. 7,123,974

Regarding Count Six, Plaintiffs are asserting (according to their Rule 26(a)(2) disclosure) three independent claims, which are Claims 1, 24 and 29.  (DPF, ¶ 423)

> 1.  An electronic audit system for an industrial control environment, comprising:
>> a recording component to log real time interactions with one or more industrial control components; and
>> a tracking component to aggregate the real time interactions to facilitate generation of audit data relating to the one or more industrial control components.

(DPF, ¶ 424);

> 24.  A method for verifying an industrial control process, comprising:
>> monitoring activity data directed to one or more control components;
>> tagging at least one file that is related to the or more control components;
>> logging the activity data in at least one of a local and a remote location; and
>> aggregating the logged activity data in the at least one file.

(DPF, ¶ 428); and

> 29.  A computer readable medium having stored thereon a data structure, comprising:
>> a first data field representing real time access data to an industrial control component;
>> a second data field representing a tag name to store and aggregate the real time access data; and
>> a third data field to categorize the real time access data..

(DPF, ¶ 429)

Plaintiffs' theory of infringement of Claim 1 of the '974 Patent is that the CoDeSys log file serves both as the "recording component . . ." required by Claim 1 and as the "tracking component . . ." also required by Claim 1.  (DPF, ¶¶ 435, 440)  Those requirements are incorporated into dependent Claims 2, 3, 5, 6, 9, 10, 14 and 16 by reference.  (DPF, ¶ 427, 445)

### a.       Claims 1 and 24

Plaintiffs assert that a single software feature — the CoDeSys log file — should be found to fulfill both the requirement of Claim 1 to have a "recording component . . ." and the requirement of Claim 1 to have a "tracking component . . . ."  (DPF, ¶¶ 435, 440, 442-445) In doing so, Plaintiffs are violating the well-established principle that "that each element of a claim is material and essential, and that in order for a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device." *Lemelson v. United States*, 752 F.2d 1538, 1551 (Fed. Cir. 1985).

The doctrine of equivalents applies to "insubstantial alterations" to the subject matter of a claim "which could be created through trivial changes," *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002), and therefore does not apply here.  Furthermore, "the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole." *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997).  Even if *arguendo* the doctrine of equivalents could be used to eliminate an entire claim element, the doctrine is foreclosed to Plaintiffs in this instance on the basis of argument-based estoppel, because Plaintiffs argued the distinction between the recording and tracking components during the prosecution of the '974 Patent in statements made to convince the patent examiner to reverse a rejection of the claim under the Patent Act.

In arguing before the U.S.P.T.O. in favor or the patentability of the subject matter of the '974 Patent over certain prior art being considered by the patent examiner during the patent examination process, Plaintiffs described the "recording component" and the "tracking component" as being distinct features: "the claimed invention discloses a recording component to log real time interactions and a tracking to aggregate real-time interactions.  Thus, the claimed

invention is recording and aggregating all changes *as they are taking place*."  (DPF ¶ 441, emphasis in the original))

"Arguments made during the prosecution of a patent application are given the same weight as claim amendments."  *Elkay Mfg. Co. v. Ebco Mfg. Co.*, 192 F.3d 973, 979 (Fed. Cir. 1999).

With regard to independent Claim 24, just as the CoDeSys log file does not meet Claim 1's requirements of having a distinct "recording component" and "tracking component," the ability of CoDeSys to create a log file does not meet Claim 24's requirement of having distinct steps of "logging the activity data in at least one of a local and a remote location" and "aggregating the logged activity data in the at least one file."  (DPF, ¶ 446-463)

The doctrine of equivalents is also foreclosed to Plaintiffs in connection with Claim 24, based on Plaintiffs' argument to the patent examiner that the same analysis applies to Claims 1 and 24 in this regard, because they "recite similar limitations."  (DPF, ¶ 441)

**b.    Claim 29**

Independent Claim 29 requires distinct <u>first, second and third data fields</u> :

> A computer readable medium having stored thereon a data structure, comprising:
> <u>a first data field</u> representing real time access data to an industrial control component;
> <u>a second data field</u> representing a tag name to store and aggregate the real time access data; and
> <u>a third data field</u> to categorize the real time access data..

 (DPF, ¶ 429, emphasis added)  However, the binary log file created by CoDeSys does not have data fields (DPF, ¶ 458); indeed, the binary format of the CoDeSys log file does not have <u>fields</u>. (DPF, ¶ 458)  The Court may take notice that the term "data field" is not a term that would be understandable to a layperson.  (DPF, ¶ 430)  The term "data field" is specialized terminology

relating to databases, which may contain one or more data fields in a database segment:

> **data field**  In IMS/VS, any designated portion of a data base segment.  A segment may contain one or more data fields

(DPF, ¶ 431)  The specification of the '974 Patent makes a connection between the use of databases and  tracking component discussed above:  "When interactions have been recorded, a tracking component aggregates such interactions in a file or record stored in a local or remote database, wherein audit reports that document control interactions or changes can automatically be generated from such files."  (DPF, ¶ 432)  The tracking component thus associated in the specification with a database (which might employ data fields) is also not present in the accused products, as discussed above.  Therefore, the absence of data fields should not be surprising.

The accused products do not provide the <u>first, second and third data fields</u> required by Claim 29, and there is no basis for determining that Claim 29 is infringed.  The doctrine of equivalents is not available to make up for the fact that those three claim elements are completely missing from the accused products, because "the doctrine of equivalents must be applied to individual elements of the claim, not to the invention as a whole."  *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 29 (1997).  The doctrine of equivalents applies to "insubstantial alterations" to the subject matter of a claim "which could be created through trivial changes," *Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 733 (2002).  It is not available to paper over the absence of all three of the required elements of a claim.

### c.    CoDeSys

Finally, as with the '232 Patent, Plaintiffs' theory of infringement of the '974 Patent is based on features of CoDeSys 2.3 which are carried over from an earlier version of CoDeSys (CoDeSys 2.2 (2001)), which predates the November 19, 2002 filing date of the '974 Patent.  (DPF, ¶ 437)  Indeed a simple comparison of the "Log" command section of the CoDeSys 2.3

(2007) manual and the CoDeSys 2.2 (2001) manual makes clear the substantial similarity between the two.  (DPF, ¶ 436)  If Plaintiffs were to carry their burden of proving that these CoDeSys features performs every step of the asserted claims of the '974 Patent, the result would be the Plaintiffs would have proven the asserted claims of the '974 Patent to be anticipated by or obvious in view of CoDeSys 2.2 (2001), *see* 35 U.S.C. § 102(b), inasmuch as anticipation is found "when the reference discloses exactly what is claimed."  *Titanium Metals Corp. v. Banner*, 778 F.2d 775, 780 (Fed. Cir. 1985).  "If the claim extends to what is obvious, it is invalid under [35 U.S.C.] § 103."  *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398, 419 (2007).  While there may be room for debate as to whether non-infringement or invalidity is the best theory against Count Six under these circumstances, it is clear that the end result will be a determination that WCP and WKT are not liable for infringing the asserted claims of the '974 Patent under Plaintiffs' theory that use of the logging functionality of CoDeSys 2.3 (2007) constitutes infringement.

Accordingly, the accused products do not infringe the asserted claims of the '974 Patent.

**B.    Invalidity**

**1.    Count One: U.S. Patent No. 6,745,090**

Count One of the Complaint, addressing U.S. Patent No. 6,745,090, was dismissed on March 6, 2012 based on the representation that Plaintiffs did not know until February 2012 that certain products in which they were interested were not being sold in the United States.  (DPF, ¶ 8)

**2.    Count Two: U.S. Patent No. 6,745,232**

Regarding Count Two, Plaintiffs are asserting (according to their Rule 26(a)(2) disclosure) Claims 1, 2, 3, 5, 10, 11, and 14 of the '232 Patent.  (DPF, ¶ 12)

### a.     Invalidity Under 35 U.S.C. § 102, 103

Invalidity on the basis of anticipation (35 U.S.C. § 102) is a question of fact, while invalidity on the basis of obviousness (35 U.S.C. § 103) is a matter of law.  *See Titanium Metals Corp. v. Banner*, 778 F.2d 775, 780 (Fed. Cir. 1985).  The factual predicate for determining obviousness is "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art."  *Id.* at 427.  The prior art relevant to determining the invalidity of the '232 Patent comprises CoDeSys 1.5 (1997) and LabVIEW 1999.  The 1997 date of CoDeSys 1.5 (1997) and the 1999 date of LabVIEW 1999 predate the August 23, 2000 priority date of the '232 Patent by more than 12 months.  (DPF, ¶¶ 26-34)

### i.     Claim 1

| Claim 1 | CoDeSys 1997 | LabVIEW RT 1999 |
|---|---|---|
| A method of performing a function in a control device comprising: | X | X |
| storing a program in a control device, the control device receives a message from a communications medium, the message includes instructions to suspend execution of the stored program at a particular location of the stored program; executing at least a portion of the stored program in the control device according to the instructions; | X | X |
| executing at least a portion of the stored program… | X | X |
| suspending execution of the stored program according to the instructions; and | X | X |
| receiving a mode change message with instructions therein to execute the stored program in a step mode from the location in which the program was suspended. | X | X |

(DPF, ¶ 67)

Claim 1 of the '232 is invalid over CoDeSys 1.5 (1997) under 35 U.S.C. §102(b), because each of the elements of Claim 1 is disclosed by CoDeSys 1.5 (1997).  Claim 1 of the '232 is invalid over LabVIEW 1999 under 35 U.S.C. §102(b), because each of the elements of Claim 1 is disclosed by LabVIEW 1999.  Claim 1 of the '232 Patent is invalid over CoDeSys 1.5

(1997) and/or LabVIEW 1999 under 35 U.S.C. § 103(a), because each of the elements of Claim 1 may be found in CoDeSys 1.5 and/or LabVIEW 1999.   In the alternative, Claim 1 of the '232 Patent is invalid over a combination of CoDeSys 1.5 (1997) and LabVIEW 1999 under 35 U.S.C. § 103(a), because each of the elements of Claim 1 is met by combining CoDeSys 1.5 (1997) with LabVIEW 1999 according to known function and with predictable results.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 35-66)

### ii.      Claim 2

| Claim 2 | CoDeSys 1997 | LabVIEW RT 1999 |
|---|---|---|
| The method of claim 1, further comprising | X | X |
| repeating executing the at least a portion of the stored program and suspending execution of the stored program, in response to another message from the communications medium. | X | X |

(DFP, ¶ 75)

Claim 2 of the '232 is invalid over CoDeSys 1.5 (1997) under 35 U.S.C. §102(b), because each of the elements of Claim 2 is disclosed by CoDeSys 1.5 (1997).  Claim 1 of the '232 is invalid over LabVIEW 1999 under 35 U.S.C. §102(b), because each of the elements of Claim 2 is disclosed by LabVIEW 1999.  Claim 2 of the '232 Patent is invalid over CoDeSys 1.5 (1997) and/or LabVIEW 1999 under 35 U.S.C. § 103(a), because each of the elements of Claim 2 may be found in CoDeSys 1.5 and/or LabVIEW 1999.   In the alternative, Claim 2 of the '232 Patent is invalid over a combination of CoDeSys 1.5 (1997) and LabVIEW 1999 under 35 U.S.C. § 103(a), because each of the elements of Claim 1 is met by combining CoDeSys 1.5 with LabVIEW 1999 according to known function and with predictable results.   "The

combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416. (DPF, ¶¶ 68-74)

### iii.     Claim 3

| Claim 3 | CoDeSys 1997 | LabVIEW RT 1999 |
|---|---|---|
| The method of claim 1, further comprising | X | X |
| providing data to the communications medium in response to a data request message from a network while execution of the stored program is suspended. | X | X |

(DPF, ¶ 84)

Claim 3 of the '232 is invalid over CoDeSys 1.5 (1997) under 35 U.S.C. §102(b), because each of the elements of Claim 3 is disclosed by CoDeSys 1.5 (1997). Claim 3 of the '232 is invalid over LabVIEW 1999 under 35 U.S.C. §102(b), because each of the elements of Claim 3 is disclosed by LabVIEW 1999. Claim 3 of the '232 Patent is invalid over CoDeSys 1.5 (1997) and/or LabVIEW 1999 under 35 U.S.C. § 103(a), because each of the elements of Claim 3 may be found in CoDeSys 1.5 and/or LabVIEW 1999. In the alternative, Claim 3 of the '232 Patent is invalid over a combination of CoDeSys 1.5 (1997) and LabVIEW 1999 under 35 U.S.C. § 103(a), because each of the elements of Claim 3 is met by combining CoDeSys 1.5 with LabVIEW 1999 according to known function and with predictable results. "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416. (DPF, ¶¶ 76-83)

iv.    Claim 5

| Claim 5 | CoDeSys 1997 | LabVIEW RT 1999 |
|---|---|---|
| The method of claim 1, wherein the mode change message further comprises | X | X |
| a step type, and wherein executing the at least a portion of the stored program and suspending execution of the stored program are done according to the step type. | X | X |

(DFP, ¶ 91)

    Claim 5 of the '232 is invalid over CoDeSys 1.5 (1997) under 35 U.S.C. §102(b), because each of the elements of Claim 5 is disclosed by CoDeSys 1.5 (1997).  Claim 5 of the '232 is invalid over LabVIEW 1999 under 35 U.S.C. §102(b), because each of the elements of Claim 5 is disclosed by LabVIEW 1999.  Claim 5 of the '232 Patent is invalid over CoDeSys 1.5 (1997) and/or LabVIEW 1999 under 35 U.S.C. § 103(a), because each of the elements of Claim 5 may be found in CoDeSys 1.5 and/or LabVIEW 1999.   In the alternative, Claim 5 of the '232 Patent is invalid over a combination of CoDeSys 1.5 (1997) and LabVIEW 1999 under 35 U.S.C. § 103(a), because each of the elements of Claim 5 is met by combining CoDeSys 1.5 (1997) with LabVIEW 1999 according to known function and with predictable results.  "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 85-90)

v.      **Claim 10**

| Claim 10 | CoDeSys 1997 | LabVIEW RT 1999 |
|---|---|---|
| *(claim 1)* | X | X |
| The method of claim 5, further comprising | X | X |
| repeating executing the at least a portion of the stored program and suspending execution of the stored program, in response to another message from the communications medium. | X | X |

(DPF, ¶ 98)

Claim 10 of the '232 is invalid over CoDeSys 1.5 (1997) under 35 U.S.C. §102(b), because each of the elements of Claim 10 is disclosed by CoDeSys 1.5 (1997).  Claim 10 of the '232 is invalid over LabVIEW 1999 under 35 U.S.C. §102(b), because each of the elements of Claim 10 is disclosed by LabVIEW 1999.  Claim 10 of the '232 Patent is invalid over CoDeSys 1.5 (1997) and/or LabVIEW 1999 under 35 U.S.C. § 103(a), because each of the elements of Claim 10 may be found in CoDeSys 1.5 and/or LabVIEW 1999.   In the alternative, Claim 10 of the '232 Patent is invalid over a combination of CoDeSys 1.5 (1997) and LabVIEW 1999 under 35 U.S.C. § 103(a), because each of the elements of Claim 10 is met by combining CoDeSys 1.5 (1997) with LabVIEW 1999 according to known function and with predictable results.  "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 92-97)

### vi.  Claim 11

| Claim 11 | CoDeSys 1997 | LabVIEW RT 1999 |
|---|---|---|
| *(claim 1)* | X | X |
| The method of claim 5, further comprising | X | X |
| providing data to the communications medium in response to a data request message from the network while execution of the stored program is suspended. | X | X |

(DPF, ¶ 109)

Claim 11 of the '232 is invalid over CoDeSys 1.5 (1997) under 35 U.S.C. §102(b), because each of the elements of Claim 11 is disclosed by CoDeSys 1.5 (1997).  Claim 11 of the '232 is invalid over LabVIEW 1999 under 35 U.S.C. §102(b), because each of the elements of Claim 11 is disclosed by LabVIEW 1999.  Claim 11 of the '232 Patent is invalid over CoDeSys 1.5 (1997) and/or LabVIEW 1999 under 35 U.S.C. § 103(a), because each of the elements of Claim 11 may be found in CoDeSys 1.5 and/or LabVIEW 1999.   In the alternative, Claim 11 of the '232 Patent is invalid over a combination of CoDeSys 1.5 (1997) and LabVIEW 1999 under 35 U.S.C. § 103(a), because each of the elements of Claim 11 is met by combining CoDeSys 1.5 (1997) with LabVIEW 1999 according to known function and with predictable results.  "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 99-108)

### vii.    Claim 14

| Claim 14 | CoDeSys 1997 | LabVIEW RT 1999 |
|---|---|---|
| A method of performing a function in a control device comprising: | X | X |
| providing a control device that selectively executes a program and receives messages from a network; | X | X |
| receiving a mode change message from the network; | X | X |
| suspending execution of the program according to the mode change message; | X | X |
| a step command message from the network; | X | X |
| executing at least a portion of the program in the control device according to the message; and | X | X |
| suspending execution of the program according to the message. | X | X |

(DPF, ¶ 147)

Claim 14 of the '232 is invalid over CoDeSys 1.5 (1997) under 35 U.S.C. §102(b), because each of the elements of Claim 14 is disclosed by CoDeSys 1.5 (1997). Claim 14 of the '232 is invalid over LabVIEW 1999 under 35 U.S.C. §102(b), because each of the elements of Claim 14 is disclosed by LabVIEW 1999.   Claim 14 of the '232 Patent is invalid over CoDeSys 1.5 (1997) and/or LabVIEW 1999 under 35 U.S.C. § 103(a), because each of the elements of Claim 14 may be found in CoDeSys 1.5 and/or LabVIEW 1999.  In the alternative, Claim 14 of the '232 Patent is invalid over a combination of CoDeSys 1.5 (1997) and LabVIEW 1999 under 35 U.S.C. § 103(a), because each of the elements of Claim 14 is met by combining CoDeSys 1.5 (1997) with LabVIEW 1999 according to known function and with predictable results.  "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 110-146)

### 3.  Count Three: U.S. Patent No. 6,801,813

Regarding Count Three, Plaintiffs are asserting (according to their Rule 26(a)(2) disclosure) Claims 1-7, 10-17, and 20-22 of the '813 Patent.

### a.  Invalidity Under 35 U.S.C. § 102, 103

Invalidity on the basis of anticipation (35 U.S.C. § 102) is a question of fact, while invalidity on the basis of obviousness (35 U.S.C. § 103) is a matter of law.  *See Titanium Metals Corp. v. Banner*, 778 F.2d 775, 780 (Fed. Cir. 1985).  The factual predicate for determining obviousness is "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art."  *Id.* at 427.  The prior art relevant to determining the invalidity of the '813 Patent comprises U.S. Patent 6,519,594 to Li ("Li") and U.S. Patent 6,263,487 to Stripf ("Stripf").  The March 1, 1999 filing date of the Li Patent and the July 17, 1998 filing date of the Stripf Patent predate the July 30, 2001 filing date of the '813 Patent.  Also relevant are numerous U.S. patents cited by Plaintiffs' expert as examples of what would have been known to a person of ordinary skill in the art in relation to the '813 Patent: U.S. Patent No. 5,134,574 to Beaverstock et al.; U.S. Patent No. 6,453,210 to Belotserkovskiy et al.; U.S. Patent No. 5,576,946 to Bender et al.; U.S. Patent No. 6,516,233 to Bhagwat et al.; U.S. Patent No. 4,517,637 to Cassell; U.S. Patent 5,764,507 to Chuo; U.S. Patent No. 6,198,480 to Cotugno et al.; U.S. Patent 5,470,218 to Hillman et al.; U.S. Patent No. 5,896,292 to Hosaka et al.; U.S. Patent No. 6,438,441 to Jang et al.; U.S. Patent No. 5,631,839 to Lemoine; U.S. Patent 5,801,942 to Nixon et al.; U.S. Patent No. 5,792,483 to Siegrist et al.; U.S. Patent No. 5,911,924 to Siegrist et al.; U.S. Patent No. 4,907,167 to Skeirik; and U.S. Patent No. 5,796,602 to Wellan et al. (DPF, ¶¶ 187-195)

### i.    Claim 1

| Claim 1 | Li | Stripf |
|---|---|---|
| An industrial controller system comprising: | X | X |
| file system residing in a program memory of an industrial controller, the file system having a plurality of file system services; and | X | X |
| an execution engine residing in the program memory of the industrial controller, the execution engine adapted to interpret code from an industrial control program, the industrial control program including at least one instruction utilizing one or more of the plurality of file system services. | X | X |

(DPF, ¶ 210)

Claim 1 of the '813 is invalid over Li under 35 U.S.C. §102(e), because each of the elements of Claim 1 is disclosed by Li.  Claim 1 of the '813 is invalid over Stripf under 35 U.S.C. §102(e), because each of the elements of Claim 1 is disclosed by Stripf.  In the alternative, Claim 1 of the '813 Patent is invalid over a combination of Li and Stripf under 35 U.S.C. § 103(a), because each of the elements of Claim 1 is met by combining Li with Stripf according to known function and with predictable results.  Claim 1 of the '813 Patent is invalid over Li and/or Stripf under 35 U.S.C. § 103(a), because each of the elements of Claim 1 may be found in Li and Stripf.   In the alternative, Claim 1 of the '813 Patent is invalid over a combination of Li and Stripf under 35 U.S.C. § 103(a), because each of the elements of Claim 1 is met by combining Li with Stripf according to known function and with predictable results.  "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 196-209)

ii.     **Claim 2**

| Claim 2 | Li | Stripf |
|---|---|---|
| The system of claim 1, | X | X |
| the file system and the execution engine being adapted to load user defined routine files upon loading an industrial control program having one or more header instructions for including a user defined routine file, the included user defined routine file being loaded into the same program space as the industrial control program. | X | X |

(DPF, ¶ 223)

Claim 1 of the '813 is invalid over Li under 35 U.S.C. §102(e), because each of the

elements of Claim 2 is disclosed by Li.   Claim 2 of the '813 is invalid over Stripf under

35 U.S.C. §102(e), because each of the elements of Claim 2 is disclosed by Stripf.  Claim 2 of

the '813 Patent is invalid over Li and/or Stripf under 35 U.S.C. § 103(a), because each of the

elements of Claim 2 may be found in Li and Stripf.    In the alternative, Claim 2 of the

'813 Patent is invalid over a combination of Li and Stripf under 35 U.S.C. § 103(a), because

each of the elements of Claim 2 is met by combining Li with Stripf according to known function

and with predictable results.   "The combination of familiar elements according to known

methods is likely to be obvious when it does no more than yield predictable results."  *KSR*

*International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 211-222)

iii.     **Claim 3**

| Claim 3 | Li | Stripf |
|---|---|---|
| *(from claim 1)* | X | X |
| The system of claim 2, | X | X |
| the user defined routine files being stored at a memory device separate from the program memory. | X | X |

(DPF, ¶ 229)

Claim 3 of the '813 is invalid over Li under 35 U.S.C. §102(e), because each of the elements of Claim 3 is disclosed by Li.   Claim 3 of the '813 is invalid over Stripf under 35 U.S.C. §102(e), because each of the elements of Claim 3 is disclosed by Stripf.   Claim 3 of the '813 Patent is invalid over Li and/or Stripf under 35 U.S.C. § 103(a), because each of the elements of Claim 3 may be found in Li and Stripf.   In the alternative, Claim 3 of the '813 Patent is invalid over a combination of Li and Stripf under 35 U.S.C. § 103(a), because each of the elements of Claim 3 is met by combining Li with Stripf according to known function and with predictable results.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 224-228)

### iv.    Claim 4

| Claim 4 | Li | Stripf |
|---|---|---|
| *(from claim 1)* | X | X |
| *(from claim 2)* | X | X |
| The system of claim 3, | X | X |
| the memory device being located at one of the industrial controller and a remote location from the industrial controller. | X | X |

(DPF, ¶ 235)

Claim 4 of the '813 is invalid over Li under 35 U.S.C. §102(e), because each of the elements of Claim 4 is disclosed by Li.   Claim 4 of the '813 is invalid over Stripf under 35 U.S.C. §102(e), because each of the elements of Claim 4 is disclosed by Stripf.  Claim 4 of the '813 Patent is invalid over Li and/or Stripf under 35 U.S.C. § 103(a), because each of the elements of Claim 4 may be found in Li and Stripf.    In the alternative, Claim 1 of the '813 Patent is invalid over a combination of Li and Stripf under 35 U.S.C. § 103(a), because

each of the elements of Claim 4 is met by combining Li with Stripf according to known function and with predictable results.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 230-234)

### v.      Claim 5

| Claim 5 | Li | Stripf | Numerous |
|---|---|---|---|
| The system of claim 1, | X | X | |
| the file system and the execution engine being adapted to load one or more recipe files into an executing industrial control program upon executing a load instruction in an industrial control program | | | X |

(DPF, ¶ 243)

Claim 5 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over Li in view of the knowledge that a person of ordinary skill in the art would have had of recipe files, as detailed in numerous prior art publications identified above, namely Belotserkovskiy et al., Jang et al., Bhagwat et al., U.S. Patent No. 5,792,483 to Siegrist et al., U.S. Patent No. 5,911,924 to Siegrist et al., Bender et al., and Cotugno et al. .  Similarly, Claim 5 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over Stripf in view of the knowledge that a person of ordinary skill in the art would have had of recipe files, as detailed in such numerous prior art publications.   In the alternative, Claim 5 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over a combination of Stripf and Li in view of the knowledge that a person of ordinary skill in the art would have had of recipe files, as detailed in such numerous prior art publications.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 236-242)

vi.      **Claim 6**

| Claim 6 | Li | Stripf | Numerous |
|---|---|---|---|
| *(from claim 1)* | X | X | |
| The system of claim 5, | | | X |
| the recipe files being stored at a memory device separate from the program memory. | X | X | |

(DPF, ¶ 249)

Claim 6 of the '813 is invalid over Li under 35 U.S.C. §103(a), because each of the elements of added to Claim 5 by Claim 6 is disclosed by Li, as well as Stripf.     Claim 6 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over Li in view of the knowledge that a person of ordinary skill in the art would have had of recipe files, as detailed in numerous prior art publications identified above, namely Belotserkovskiy et al., Jang et al., Bhagwat et al., U.S. Patent No. 5,792,483 to Siegrist et al., U.S. Patent No. 5,911,924 to Siegrist et al., Bender et al., and Cotugno et al. .  Similarly, Claim 6 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over Stripf in view of the knowledge that a person of ordinary skill in the art would have had of recipe files, as detailed in such numerous prior art publications.   In the alternative, Claim 6 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over a combination of Stripf and Li in view of the knowledge that a person of ordinary skill in the art would have had of recipe files, as detailed in such numerous prior art publications.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416. (DPF, ¶¶ 244-248)

### vii.    Claim 7

| Claim 7 | Li | Stripf | Numerous |
|---|---|---|---|
| (*from claim 1*) | X | X | |
| (*from claim 5*) | | | X |
| The system of claim 6, | X | X | |
| the memory device being located at one of the industrial controller and a remote location from the industrial controller | X | X | |

(DPF, ¶ 255)

Claim 7 of the '813 is invalid over Li under 35 U.S.C. §103(a), because each of the elements of added to Claim 5 by Claim 7 is disclosed by Li, as well as Stripf.    Claim 7 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over Li in view of the knowledge that a person of ordinary skill in the art would have had of recipe files, as detailed in numerous prior art publications identified above, namely Belotserkovskiy et al., Jang et al., Bhagwat et al., U.S. Patent No. 5,792,483 to Siegrist et al., U.S. Patent No. 5,911,924 to Siegrist et al., Bender et al., and Cotugno et al. .  Similarly, Claim 7 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over Stripf in view of the knowledge that a person of ordinary skill in the art would have had of recipe files, as detailed in such numerous prior art publications.   In the alternative, Claim 7 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over a combination of Stripf and Li in view of the knowledge that a person of ordinary skill in the art would have had of recipe files, as detailed in such numerous prior art publications.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416. (DPF, ¶¶ 250-254)

### viii.    Claim 10

| Claim 10 | Li | Stripf |
|---|---|---|
| The system of claim 1, | X | X |
| the file system and the execution engine being adapted to log measured data into a file upon executing an instruction in an industrial control program to record the measured data | X | X |

(DPF, ¶ 264)

Claim 10 of the '813 is invalid over Li under 35 U.S.C. §102(e), because each of the elements of Claim 10 is disclosed by Li.   Claim 10 of the '813 is invalid over Stripf under 35 U.S.C. §102(e), because each of the elements of Claim 10 is disclosed by Stripf.  Claim 10 of the '813 Patent is invalid over Li and/or Stripf under 35 U.S.C. § 103(a), because each of the elements of Claim 10 may be found in Li and Stripf.    In the alternative, Claim 10 of the '813 Patent is invalid over a combination of Li and Stripf under 35 U.S.C. § 103(a), because each of the elements of Claim 10 is met by combining Li with Stripf according to known function and with predictable results.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416. (DPF, ¶¶ 256-263)

### ix.    Claim 11

| Claim 11 | Li | Stripf | Numerous |
|---|---|---|---|
| (*from claim 1*) | X | X | |
| The system of claim 10, | | | X |
| the file system and the execution engine being adapted to retrieve measured data from a file upon executing an instruction in an industrial control program to load the measured data | X | X | |

(DPF, ¶ 271)

Claim 11 of the '813 is invalid over Li under 35 U.S.C. §103(a), because each of the elements of added to Claim 11 by Claim 12 is disclosed by Li, as well as Stripf.   Claim 11 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over Li in view of the knowledge that a person of ordinary skill in the art would have had of logging measured data, as detailed in such numerous prior art publications identified above, namely Skeirik, Cassell, Wellan et al., and Beaverstock. Similarly, Claim 11 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over Stripf in view of the knowledge that a person of ordinary skill in the art would have had of logging measured data, as detailed in such numerous prior art publications.    In the alternative, Claim 11 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over a combination of Stripf and Li in view of the knowledge that a person of ordinary skill in the art would have had of logging measured data, as detailed in such numerous prior art publications.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416. (DPF, ¶¶ 265-270)

### x.        Claim 12

| Claim 12 | Li | Stripf | Numerous |
|---|---|---|---|
| (*from claim 1*) | X | X | |
| The system of claim 10, | | | X |
| the measured data file being stored at a memory device separate from the program memory. | X | X | |

(DPF, ¶ 279)

Claim 12 of the '813 is invalid over Li under 35 U.S.C. §103(a), because each of the elements of added to Claim 10 by Claim 12 is disclosed by Li, as well as Stripf.   Claim 12 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over Li in view of the knowledge that a person of ordinary skill in the art would have had of logging measured data, as detailed in numerous prior art publications identified above, namely Skeirik, Cassell, Wellan et al., and Beaverstock.

Similarly, Claim 12 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over Stripf in view of the knowledge that a person of ordinary skill in the art would have had of logging measured data, as detailed in such numerous prior art publications.   In the alternative, Claim 12 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over a combination of Stripf and Li in view of the knowledge that a person of ordinary skill in the art would have had of logging measured data, as detailed in such numerous prior art publications.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416. (DPF, ¶¶ 272-278)

xi.      **Claim 13**

| Claim 13 | Li | Stripf | Numerous |
|---|---|---|---|
| *(from claim 1)* | X | X | |
| *(from claim 10)* | | | X |
| The system of claim 12, | X | X | |
| the memory device being located at one of the industrial controller and a remote location from the industrial controller. | X | X | |

(DPF, ¶ 285)

Claim 13 of the '813 is invalid over Li under 35 U.S.C. §103(a), because each of the elements of added to Claim 10 by Claim 13 is disclosed by Li, as well as Stripf.   Claim 13 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over Li in view of the knowledge that a person of ordinary skill in the art would have had of logging measured data, as detailed in numerous prior art publications identified above, namely Skeirik, Cassell, Wellan et al., and Beaverstock.  Similarly, Claim 13 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over Stripf in view of the knowledge that a person of ordinary skill in the art would have had of logging measured data, as detailed in such numerous prior art publications.   In the alternative,

Claim 13 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over a combination of Stripf and Li in view of the knowledge that a person of ordinary skill in the art would have had of logging measured data, as detailed in such numerous prior art publications.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416. (DPF, ¶¶ 280-284)

### xii.    Claim 14

| Claim 14 | Li | Stripf | Numerous |
|---|---|---|---|
| The system of claim 1, | X | X | |
| the file system and the execution engine being adapted to log trend data into a file upon executing an instruction in an industrial control program to record the trend data. | | | X |

(DPF, ¶ 293)

Claim 14 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over Li in view of the knowledge that a person of ordinary skill in the art would have had of trend data, as detailed in such numerous prior art publications identified above, namely Bender, Cotugno, Hillman et al., and Lemoine.  .  Similarly, Claim 14 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over Stripf in view of the knowledge that a person of ordinary skill in the art would have had of trend data, as detailed in such numerous prior art publications.   In the alternative, Claim 14 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over a combination of Stripf and Li in view of the knowledge that a person of ordinary skill in the art would have had of trend data, as detailed in such numerous prior art publications.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 286-292)

### xiii.   Claim 15

| Claim 15 | Li | Stripf | Numerous |
|---|---|---|---|
| *(from claim 1)* | X | X | |
| The system of claim 14, | | | X |
| the file system and the execution engine being adapted to retrieve trend data from a file upon executing an instruction in an industrial control program to load the trend data | X | X | |

(DPF, ¶ 290)

Claim 15 of the '813 is invalid over Li under 35 U.S.C. §103(a), because each of the elements of added to Claim 14 by Claim 15 is disclosed by Li, as well as Stripf.    Claim 15 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over Li in view of the knowledge that a person of ordinary skill in the art would have had of trend data, as detailed in numerous prior art publications identified above, namely Skeirik, Cassell, Wellan et al., and Beaverstock. Similarly, Claim 15 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over Stripf in view of the knowledge that a person of ordinary skill in the art would have had of trend data, as detailed in such numerous prior art publications.    In the alternative, Claim 15 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over a combination of Stripf and Li in view of the knowledge that a person of ordinary skill in the art would have had of trend data, as detailed in such numerous prior art publications.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 294-298)

### xiv.    Claim 16

| Claim 16 | Li | Stripf | Numerous |
|---|---|---|---|
| *(from claim 1)* | X | X | |
| The system of claim 14, | | | X |
| the trend data file being stored at a memory device separate from the program memory | X | X | |

(DPF, ¶ 304)

Claim 16 of the '813 is invalid over Li under 35 U.S.C. §103(a), because each of the elements of added to Claim 14 by Claim 16 is disclosed by Li, as well as Stripf.    Claim 16 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over Li in view of the knowledge that a person of ordinary skill in the art would have had of trend data, as detailed in numerous prior art publications identified above, namely Skeirik, Cassell, Wellan et al., and Beaverstock. Similarly, Claim 16 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over Stripf in view of the knowledge that a person of ordinary skill in the art would have had of trend data, as detailed in such numerous prior art publications.    In the alternative, Claim 16 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over a combination of Stripf and Li in view of the knowledge that a person of ordinary skill in the art would have had of trend data, as detailed in such numerous prior art publications.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 300-303, 305)

xv.     **Claim 17**

| Claim 17 | Li | Stripf | Numerous |
|---|---|---|---|
| *(from claim 1)* | X | X | |
| *(from claim 14)* | | | X |
| The system of claim 16, | X | X | |
| the memory device being located at one of the industrial controller and a remote location from the industrial controller. | X | X | |

(DPF, ¶ 311)

Claim 17 of the '813 is invalid over Li under 35 U.S.C. §103(a), because each of the elements of added to Claim 14 by Claim 17 is disclosed by Li, as well as Stripf.  Claim 17 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over Li in view of the knowledge that a person of ordinary skill in the art would have had of trend data, as detailed in numerous prior art publications identified above, namely Skeirik, Cassell, Wellan et al., and Beaverstock. Similarly, Claim 17 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over Stripf in view of the knowledge that a person of ordinary skill in the art would have had of trend data, as detailed in such numerous prior art publications.    In the alternative, Claim 17 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over a combination of Stripf and Li in view of the knowledge that a person of ordinary skill in the art would have had of trend data, as detailed in such numerous prior art publications.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 306-310)

xvi.     Claim 20

| Claim 20 | Li | Stripf | Numerous |
|---|---|---|---|
| The system of claim 1, | X | X | |
| the industrial control program being a ladder logic program. | | X | X |

(DPF, ¶ 323)

Claim 20 of the '813 is invalid over Stripf under 35 U.S.C. §102(e), because each of the elements of Claim 20 is disclosed by Stripf.  Claim 20 of the '813 Patent is invalid over a combination of Li and Stripf under 35 U.S.C. § 103(a), because each of the elements of Claim 20 is met by combining Li with Stripf according to known function and with predictable results. Similarly, Claim 20 of the '813 Patent is invalid over Li in view of the knowledge that a person of ordinary skill in the art would have had of ladder logic, as detailed in numerous prior art publications identified above, namely Nixon et al., Chuo, and Beaverstock.   In the alternative, Claim 20 of the '813 Patent is invalid over a combination of Li and Stripf in view of the knowledge that a person of ordinary skill in the art would have had of ladder logic, as detailed in such numerous prior art publications.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416. (DPF, ¶¶ 312-322)

### xvii.    Claim 21

| Claim 21 | Li | Stripf |
|---|---|---|
| A method for providing, an industrial controller with the functionality associated with utilizing a file system residing in the industrial controller, the method comprising: | X | X |
| developing a file system and loading the file system on an industrial controller, the file system having a plurality of file system services; and | X | X |
| developing an execution engine that interprets instructions of an industrial control program that utilizes at least one of the plurality of file system services | X | X |

(DPF, ¶ 337)

Claim 21 of the '813 is invalid over Li under 35 U.S.C. §102(e), because each of the elements of Claim 21 is disclosed by Li.   Claim 21 of the '813 is invalid over Stripf under 35 U.S.C. §102(e), because each of the elements of Claim 21 is disclosed by Stripf.  Claim 21 of the '813 Patent is invalid over Li and/or Stripf under 35 U.S.C. § 103(a), because each of the elements of Claim 21 may be found in Li and Stripf.   In the alternative, Claim 21 of the '813 Patent is invalid over a combination of Li and Stripf under 35 U.S.C. § 103(a), because each of the elements of Claim 21 is met by combining Li with Stripf according to known function and with predictable results.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 324-336)

**xviii.   Claim 22**

| Claim 21 | Li | Stripf |
|---|---|---|
| The method of claim 21, | X | X |
| further comprising developing an industrial control program including at least one instruction that utilizes one or more file system services and downloading the industrial control program to the industrial controller | X | X |

(DPF, ¶ 343)

Claim 22 of the '813 is invalid over Li under 35 U.S.C. §102(e), because each of the elements of Claim 22 is disclosed by Li.   Claim 22 of the '813 is invalid over Stripf under 35 U.S.C. §102(e), because each of the elements of Claim 22 is disclosed by Stripf.  Claim 22 of the '813 Patent is invalid over Li and/or Stripf under 35 U.S.C. § 103(a), because each of the elements of Claim 22 may be found in Li and Stripf.   In the alternative, Claim 22 of the '813 Patent is invalid over a combination of Li and Stripf under 35 U.S.C. § 103(a), because each of the elements of Claim 22 is met by combining Li with Stripf according to known function and with predictable results.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 338-342)

### 4.   Count Four: U.S. Patent No. 7,058,461

Count Four of the Complaint, addressing U.S. Patent No. 7,058,461, was dismissed on March 6, 2012 based on the representation that Plaintiffs did not know until February 2012 that certain products in which they were interested were not being sold in the United States.  (DPF, ¶ 345)

### 5.      Count Five: U.S. Patent No. 7,065,415

Regarding Count Five, Plaintiffs are asserting (according to their Rule 26(a)(2) disclosure) Claims 1-5 and 8 of the '415 Patent.

### a.      Invalidity Under 35 U.S.C. § 102, 103

Invalidity on the basis of anticipation (35 U.S.C. § 102) is a question of fact, while invalidity on the basis of obviousness (35 U.S.C. § 103) is a matter of law. *See Titanium Metals Corp. v. Banner*, 778 F.2d 775, 780 (Fed. Cir. 1985). The factual predicate for determining obviousness is "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art." *Id.* at 427. The prior art relevant to determining the invalidity of the '415 Patent comprises U.S. Patent 5,764,507 to Chuo and the TRiLOGI commercial product. The January 2, 1996 filing date of the Chuo Patent and the 1999 date of TRiLOGI predate the July 30, 2001 priority date of the '415 Patent (which is based on the filing date of the '813 Patent). Also relevant are numerous U.S. patents cited by Plaintiffs' expert as examples of what would have been known to a person of ordinary skill in the art in relation to the '415 Patent: U.S. Patent No. 5,134,574 to Beaverstock et al., U.S. Patent No. 6,453,210 to Belotserkovskiy et al., U.S. Patent No. 5,576,946 to Bender et al., U.S. Patent No. 6,516,233 to Bhagwat et al., U.S. Patent No. 4,787,035 to Bourne, U.S. Patent No. 4,517,637 to Cassell, U.S. Patent No. 6,198,480 to Cotugno et al., U.S. Patent No. 5,193,189 to Flood et al., U.S. Patent 5,470,218 to Hillman et al., U.S. Patent No. 6,438,441 to Jang et al. U.S. Patent No. 6,108,587 to Shearer et al., U.S. Patent No. 5,792,483 to Siegrist et al., U.S. Patent No. 5,911,924 to Siegrist et al., U.S. Patent No. 4,907,167 to Skeirik, U.S. Patent No. 4,302,820 to Struger et al., U.S. Patent No. 5,796,602 to Wellan et al.  (DPF, ¶¶ 363-371)

i.      **Claim 1**

| Claim 1 | Chuo | TRiLOGI |
|---|---|---|
| An editor for developing ladder logic programs that control operation of an industrial controller system, the editor comprising: | X | X |
| a first instruction that employs a file system that resides on an industrial controller to log data to a file containing ladder logic instructions; | X | X |
| a second instruction that employs the file system to retrieve the data from the file containing ladder logic instructions; and | X | X |
| an implementation for converting the ladder logic instructions into instructions understandable and executable by an execution engine in the industrial controller. | X | X |

(DPF, ¶ 388)

Claim 1 of the '415 is invalid over Chuo under 35 U.S.C. §102(e), because each of the elements of Claim 1 is disclosed by Chuo.   Claim 1 of the '415 is invalid over TRiLOGI under 35 U.S.C. §102(b), because each of the elements of Claim 1 is disclosed by TRiLOGI.  Claim 1 of the '415 Patent is invalid over Chuo and/or TRiLOGI under 35 U.S.C. § 103(a), because each of the elements of Claim 1 may be found in Chuo TRiLOGI.   In the alternative, Claim 1 of the '415 Patent is invalid over a combination of Chuo and TRiLOGI under 35 U.S.C. § 103(a), because each of the elements of Claim 1 is met by combining Chuo with TRiLOGI according to known function and with predictable results.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 372-387)

**ii.     Claim 2**

| Claim 2 | Chuo | TRiLOGI | Numerous |
|---|---|---|---|
| The system of claim 1, | X | X | |
| at least one of the recording component and the tracking component are associated with an access tool that interacts with the one or more industrial control components via a network. | | | X |

(DPF, ¶ 392)

Claim 2 of the '415 Patent is invalid under 35 U.S.C. § 103(a) over Chuo in view of the knowledge that a person of ordinary skill in the art would have had that measured data could be logged to and retrieved from the same file that contains the ladder logic instructions with predictable results, as detailed in numerous prior art publications identified above, namely Skeirik, Cassell, Wellan et al., and Beaverstock et al. .   Similarly, Claim 2 of the '415 Patent is invalid under 35 U.S.C. § 103(a) over TRiLOGI in view of the knowledge that a person of ordinary skill in the art would have had that measured data could be logged to and retrieved from the same file that contains the ladder logic instructions with predictable results, as detailed in such numerous prior art publications.    In the alternative, Claim 2 of the '415 Patent is invalid under 35 U.S.C. § 103(a) over a combination of Chuo and TRiLOGI in view of the knowledge that a person of ordinary skill in the art would have had that measured data could be logged to and retrieved from the same file that contains the ladder logic instructions with predictable results, as detailed in such numerous prior art publications.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 389-391)

### iii.    Claim 3

| Claim 3 | Chuo | TRiLOGI | Numerous |
|---|---|---|---|
| *(from claim 1)* | X | X | |
| The system of claim 2, | | | X |
| the access tool includes at least one of an editing tool, a programming tool, a communications component, a monitoring component, a maintenance component, a browser, a graphical user interface (GUI), and a database application that interacts with the one or more industrial control components. | | | X |

(DPF, ¶ 396)

Claim 3 of the '415 Patent is invalid under 35 U.S.C. § 103(a) over Chuo in view of the knowledge that a person of ordinary skill in the art would have had that trend data could be logged to and retrieved from the same file that contains the ladder logic instructions with predictable results, as detailed in numerous prior art publications identified above, namely Cotugno et al., Hillman et al., and Lemoine.   .  Similarly, Claim 3 of the '415 Patent is invalid under 35 U.S.C. § 103(a) over TRiLOGI in view of the knowledge that a person of ordinary skill in the art would have had that trend data could be logged to and retrieved from the same file that contains the ladder logic instructions with predictable results, as detailed in such numerous prior art publications.    In the alternative, Claim 3 of the '415 Patent is invalid under 35 U.S.C. § 103(a) over a combination of Chuo and TRiLOGI in view of the knowledge that a person of ordinary skill in the art would have had that trend data could be logged to and retrieved from the same file that contains the ladder logic instructions with predictable results, as detailed in such numerous prior art publications.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."   *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 393-395)

### iv.    Claim 4

| Claim 4 | Chuo | TRiLOGI | Numerous |
|---|---|---|---|
| (*from claim 1*) | X | X | |
| (*from claim 2*) | | | X |
| The system of claim 3, | | | X |
| the one or more industrial control components include at least one of a programmable logic controller (PLC), a communications module, an I/O module, an application, a CAD system, a drive system, a robotic system, and a manufacturing cell. | | | X |

(DPF, ¶ 400)

Claim 4 of the '415 Patent is invalid under 35 U.S.C. § 103(a) over Chuo in view of the knowledge that a person of ordinary skill in the art would have had that data from a recipe file could be logged to and retrieved from the same file that contains the ladder logic instructions with predictable results, as detailed in numerous prior art publications identified above, namely Belotserkovskiy et al. Jang et al., Bhagwat et al., U.S. Patent No. 5,792,483 to Siegrist et al., U.S. Patent No. 5,911,924 to Siegrist et al., Bender et al., and Cotugno et al. .  Similarly, Claim 4 of the '415 Patent is invalid under 35 U.S.C. § 103(a) over TRiLOGI in view of the knowledge that a person of ordinary skill in the art would have had that data from a recipe file could be logged to and retrieved from the same file that contains the ladder logic instructions with predictable results, as detailed in such numerous prior art publications.   In the alternative, Claim 4 of the '415 Patent is invalid under 35 U.S.C. § 103(a) over a combination of Chuo and TRiLOGI in view of the knowledge that data from a recipe file could be logged to and retrieved from the same file that contains the ladder logic instructions with predictable results, as detailed in such numerous prior art publications.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."

*KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 397-399)

**v.      Claim 5**

| Claim 5 | Chuo | TRiLOGI | Numerous |
|---|---|---|---|
| *(from claim 1)* | X | X | |
| The system of claim 5, | | | X |
| the network includes at least one of a local factory network, a wireless network, and a public network. | | | X |

(DPF, ¶ 404)

Claim 5 of the '415 Patent is invalid under 35 U.S.C. § 103(a) over Chuo in view of the knowledge that a person of ordinary skill in the art would have had that the data from a user defined routine file could be logged to and retrieved from the same file that contains the ladder logic instructions with predictable results, as detailed in numerous prior art publications identified above, namely Bourne, Flood et al., Struger et al., and Shearer et al.  .  Similarly, Claim 5 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over TRiLOGI in view of the knowledge that a person of ordinary skill in the art would have had that the data from a user defined routine file could be logged to and retrieved from the same file that contains the ladder logic instructions with predictable results, as detailed in such numerous prior art publications. In the alternative, Claim 5 of the '813 Patent is invalid under 35 U.S.C. § 103(a) over a combination of Chuo and TRiLOGI in view of the knowledge that the data from a user defined routine file could be logged to and retrieved from the same file that contains the ladder logic instructions with predictable results, as detailed in such numerous prior art publications.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 401-403)

-66-

### vi.     Claim 8

| Claim 8 | Chuo | TRiLOGI |
|---------|------|---------|
| The editor of claim 1, | X | X |
| further comprising a plurality of additional instructions that facilitate utilizing file system services of the file system. | | X |

(DPF, ¶ 412)

Claim 8 of the '415 is invalid over Chuo under 35 U.S.C. §102(e), because each of the elements of Claim 8 is disclosed by Chuo.   Claim 8 of the '415 is invalid over TRiLOGI under 35 U.S.C. §102(b), because each of the elements of Claim 8 is disclosed by TRiLOGI.  Claim 8 of the '415 Patent is invalid over Chuo and/or TRiLOGI under 35 U.S.C. § 103(a), because each of the elements of Claim 8 may be found in Chuo TRiLOGI.   In the alternative, Claim 8 of the '232 Patent is invalid over a combination of Chuo and TRiLOGI under 35 U.S.C. § 103(a), because each of the elements of Claim 8 is met by combining Chuo with TRiLOGI according to known function and with predictable results.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 405-411)

### b.     Invalidity Under 35 U.S.C. § 112, First Paragraph

Claim 1 of the '415 patent recites "to log data to a file containing ladder logic instructions", with the phrase "containing ladder logic instructions" having been added during prosecution in response to the first office action.  That is, original claim 1 merely recited "to log data to a file".  When applicants presented the amended claim 1, in their accompanying Remarks section at page 6, where they mentioned that the claim was being amended, they omitted to cite any part of their specification.  Indeed, their specification as originally filed omits to expressly disclose "to log data to a file containing ladder logic instructions".  Nor is this inherently

disclosed.

The '415 specification includes a sentence, "The editor 48 is also adapted to allow a user to insert and edit instructions for logging and retrieval of measurement data 58 and trend data 54 in the ladder logic instructions." ('415 patent, our emphasis.) Claim 1 is not supported by this disclosure "to insert … instructions … in the ladder logic instructions". The '415 specification lacks support for "data" being logged to the file containing ladder logic instructions. In the '415 figures, there is no part number that is defined in the specification as "ladder logic instructions", and when "ladder logic instructions" are mentioned in the specification's text, the mention lacks reference to a part number in the patent figures. The '415 specification is without support for the concept of putting anything other than "instructions" into the file with the "ladder logic instructions". There is no figure, nor written example, in the '415 patent that purports to illustrate a file containing ladder logic instructions AND logged data. Data 118, 120 are illustrated in Fig. 6 of the '415 patent, and there is no sign of "ladder logic instructions" even generally being in the same drawing (much less being illustrated in the same "file" as) that "data". The claim amendment during prosecution, entered over only the signature of the patent practitioner and without the inventors' signature, overreached and the claims of the '415 patent are invalid at least for non-compliance with the written description requirement.

Accordingly, Claim 1 of the '415 patent is invalid for failure to comply with the written description requirement of 35 U.S.C. 112, first paragraph.

### 6.    Count Six: U.S. Patent No. 7,123,974

Regarding Count Six, Plaintiffs are asserting (according to their Rule 26(a)(2) disclosure) Claims 1-3, 9, 10, 14, 16, 25 and 29 of the '974 Patent.

### a.      Invalidity Under 35 U.S.C. § 101

Independent Claim 24 of the '974 patent is directed to a "method for verifying an industrial control process" and avoids explicitly reciting any step that must be performed by a machine:

> A method for verifying an industrial control process, comprising:
> monitoring activity data directed to one or more control components;
> tagging at least one file that is related to the or more control components;
> logging the activity data in at least one of a local and a remote location; and
> aggregating the logged activity data in the at least one file.

(DPF, ¶ 428)  As discussed above, abstract ideas are not patentable, and mental processes are a subcategory of unpatentable abstract ideas.  *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d at 1371.  Claim 24 covers an abstract idea of verifying an industrial control processing making use of data and a file.  In claim 24, none of the "activity data", "file", nor the "logged activity data" is limited to what is machine-readable; the method could also be performed with pencil and paper.  Claim 24 is without an explicit recitation that a machine must perform the "monitoring" step; a human could monitor activity data as recited in the step.  Claim 24 is without an explicit recitation that a machine must perform the "tagging" step; a human could tag a file as recited in the step.  Claim 24 is without an explicit recitation that a machine must perform the "logging" step; a human could log activity data as recited in the step.  Claim 24 is without an explicit recitation that a machine must perform the "aggregating" step; a human could aggregate the logged data as recited in the step.  Because Claim 24 of the '974 patents attempt to capture unpatentable abstract subject matter, it is invalid under 35 U.S.C. § 101.

### b.      Invalidity Under 35 U.S.C. §§ 102, 103

Invalidity on the basis of anticipation (35 U.S.C. § 102) is a question of fact, while invalidity on the basis of obviousness (35 U.S.C. § 103) is a matter of law.  *See Titanium Metals*

*Corp. v. Banner*, 778 F.2d 775, 780 (Fed. Cir. 1985).  The factual predicate for determining

obviousness is "the content of the prior art, the scope of the patent claim, and the level of

ordinary skill in the art."  *Id.* at 427.  The prior art relevant to determining the invalidity of the

'974 Patent comprises U.S. Patent No. 5,469,352 to Yukutomo and the Cimplicity commercial

system.   The April 15, 1994 filing date of the Yukutomo Patent and the 1999 date of Cimplicity

predate the November 19, 2002 filing date of the '974 Patent.   There is no dispute as to the

content of the U.S. Patent No. 5,469,352 disclosure or the Cimplicity manual.  (DPF, ¶¶ 464-

472)

i.      **Claim 1**

| Claim 1 | Cimplicity | Yukutomo |
|---|---|---|
| An electronic audit system for an industrial control environment… | X | X |
| a recording component to log real time interactions… | X | X |
| a tracking component to aggregate… | X | X |

(DPF, ¶ 485)

Claim 1 of the '974 is invalid over Yukutomo under 35 U.S.C. §102(e), because each of

the elements of Claim 1 is disclosed by Yukutomo.   Claim 1 of the '974 is invalid over

Cimplicity under 35 U.S.C. §102(b), because each of the elements of Claim 1 is disclosed by

Cimplicity.   Claim 1 of the '974 Patent is invalid over Yukutomo and/or Cimplicity under

35 U.S.C. § 103(a), because each of the elements of Claim 1 may be found in Yukutomo and

Cimplicity.    In the alternative, Claim 1 of the '415 Patent is invalid over a combination of

Yukutomo and Cimplicity under 35 U.S.C. § 103(a), because each of the elements of Claim 1 is

met by combining Yukutomo with Cimplicity according to known function and with predictable

results.   "The combination of familiar elements according to known methods is likely to be

obvious when it does no more than yield predictable results."  *KSR International Co. v. Teleflex*

*Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 473-484)

## ii.     Claim 2

| Claim 2 | Cimplicity | Yukutomo |
|---|---|---|
| The system of claim 1, | X | X |
| at least one of the recording component and the tracking component are associated with an access tool that interacts with the one or more industrial control components via a network | X | X |

(DPF, ¶ 491)

Claim 2 of the '974 is invalid over Yukutomo under 35 U.S.C. §102(e), because each of the elements of Claim 2 is disclosed by Yukutomo.   Claim 2 of the '974 is invalid over Cimplicity under 35 U.S.C. §102(b), because each of the elements of Claim  is disclosed by Cimplicity.  Claim 2 of the '974 Patent is invalid over Yukutomo and/or Cimplicity under 35 U.S.C. § 103(a), because each of the elements of Claim 2 may be found in Yukutomo and Cimplicity.    In the alternative, Claim 2 of the '415 Patent is invalid over a combination of Yukutomo and Cimplicity under 35 U.S.C. § 103(a), because each of the elements of Claim 2 is met by combining Yukutomo with Cimplicity according to known function and with predictable results.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 486-490)

### iii.   Claim 3

| Claim 3 | Cimplicity | Yukutomo |
|---|---|---|
| *(from claim 1)* | X | X |
| The system of claim 2, | X | X |
| the access tool includes at least one of an editing tool, a programming tool, a communications component, a monitoring component, a maintenance component, a browser, a graphical user interface (GUI), and a database application that interacts with the one or more industrial control components. | X | X |

(DPF, ¶ 497)

Claim 3 of the '974 is invalid over Yukutomo under 35 U.S.C. §102(e), because each of the elements of Claim 3 is disclosed by Yukutomo.   Claim 3 of the '974 is invalid over Cimplicity under 35 U.S.C. §102(b), because each of the elements of Claim  is disclosed by Cimplicity.   Claim 3 of the '974 Patent is invalid over Yukutomo and/or Cimplicity under 35 U.S.C. § 103(a), because each of the elements of Claim 3 may be found in Yukutomo and Cimplicity.    In the alternative, Claim 3 of the '415 Patent is invalid over a combination of Yukutomo and Cimplicity under 35 U.S.C. § 103(a), because each of the elements of Claim 3 is met by combining Yukutomo with Cimplicity according to known function and with predictable results.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 492-496)

iv.      **Claim 5**

| Claim 5 | Cimplicity | Yukutomo |
|---|---|---|
| *(from claim 1)* | X | X |
| The system of claim 2, | X | X |
| the network includes at least one of a local factory network, a wireless network, and a public network | X | X |

(DPF, ¶ 503)

Claim 5 of the '974 is invalid over Yukutomo under 35 U.S.C. §102(e), because each of the elements of Claim 5 is disclosed by Yukutomo.   Claim 5 of the '974 is invalid over Cimplicity under 35 U.S.C. §102(b), because each of the elements of Claim  is disclosed by Cimplicity.  Claim 5 of the '974 Patent is invalid over Yukutomo and/or Cimplicity under 35 U.S.C. § 103(a), because each of the elements of Claim 5 may be found in Yukutomo and Cimplicity.    In the alternative, Claim 5 of the '415 Patent is invalid over a combination of Yukutomo and Cimplicity under 35 U.S.C. § 103(a), because each of the elements of Claim 5 is met by combining Yukutomo with Cimplicity according to known function and with predictable results.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 498-502)

v.      **Claim 6**

| Claim 6 | Cimplicity | Yukutomo |
|---|---|---|
| *(from claim 1)* | X | X |
| The system of claim 2, | X | X |
| the recording component logs interaction data that has been directed to the one or more industrial control components during a current application session associated with the access tool. | X | X |

(DPF, ¶ 510)

Claim 6 of the '974 is invalid over Yukutomo under 35 U.S.C. §102(e), because each of the elements of Claim 6 is disclosed by Yukutomo.   Claim 6 of the '974 is invalid over Cimplicity under 35 U.S.C. §102(b), because each of the elements of Claim  is disclosed by Cimplicity.  Claim 6 of the '974 Patent is invalid over Yukutomo and/or Cimplicity under 35 U.S.C. § 103(a), because each of the elements of Claim 6 may be found in Yukutomo and Cimplicity.    In the alternative, Claim 6 of the '415 Patent is invalid over a combination of Yukutomo and Cimplicity under 35 U.S.C. § 103(a), because each of the elements of Claim 6 is met by combining Yukutomo with Cimplicity according to known function and with predictable results.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 504-509)

### vi.    Claim 9

| Claim 9 | Cimplicity | Yukutomo |
|---|---|---|
| The system of claim 1, | X | X |
| the tracking component aggregates activities logged by the recording component in at least one of a local storage and a remote storage location. | X | X |

(DPF, ¶ 516)

Claim 9 of the '974 is invalid over Yukutomo under 35 U.S.C. §102(e), because each of the elements of Claim 9 is disclosed by Yukutomo.   Claim 9 of the '974 is invalid over Cimplicity under 35 U.S.C. §102(b), because each of the elements of Claim  is disclosed by Cimplicity.  Claim 9 of the '974 Patent is invalid over Yukutomo and/or Cimplicity under 35 U.S.C. § 103(a), because each of the elements of Claim 9 may be found in Yukutomo and Cimplicity.    In the alternative, Claim 9 of the '415 Patent is invalid over a combination of Yukutomo and Cimplicity under 35 U.S.C. § 103(a), because each of the elements of Claim 9 is

met by combining Yukutomo with Cimplicity according to known function and with predictable results.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416. (DPF, ¶¶ 511-515)

### vii.   Claim 10

| Claim 10 | Cimplicity | Yukutomo |
|---|---|---|
| *(from claim 1)* | X | X |
| The system of claim 9, | X | X |
| the tracking component aggregates transaction data by creating at least one of a file, schema, and a data structure in the local or remote storage locations, and tags the file, schema, and data structure with an identifier relating to the one or more industrial control components that have been accessed. | X | X |

(DPF, ¶ 522)

Claim 10 of the '974 is invalid over Yukutomo under 35 U.S.C. §102(e), because each of the elements of Claim 10 is disclosed by Yukutomo.   Claim 10 of the '974 is invalid over Cimplicity under 35 U.S.C. §102(b), because each of the elements of Claim  is disclosed by Cimplicity.  Claim 10 of the '974 Patent is invalid over Yukutomo and/or Cimplicity under 35 U.S.C. § 103(a), because each of the elements of Claim 10 may be found in Yukutomo and Cimplicity.    In the alternative, Claim 10 of the '415 Patent is invalid over a combination of Yukutomo and Cimplicity under 35 U.S.C. § 103(a), because each of the elements of Claim 10 is met by combining Yukutomo with Cimplicity according to known function and with predictable results.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results." *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 517-521)

### viii.    Claim 14

| Claim 14 | Cimplicity | Yukutomo |
|---|---|---|
| The system of claim 1, | X | X |
| at least one of the recording component and the tracking component are employed to generate an audit report that describes interactions that have occurred with the one or more industrial control components. | X | X |

(DPF, ¶ 528)

Claim 14 of the '974 is invalid over Yukutomo under 35 U.S.C. §102(e), because each of the elements of Claim 14 is disclosed by Yukutomo.   Claim 14 of the '974 is invalid over Cimplicity under 35 U.S.C. §102(b), because each of the elements of Claim  is disclosed by Cimplicity.   Claim 14 of the '974 Patent is invalid over Yukutomo and/or Cimplicity under 35 U.S.C. § 103(a), because each of the elements of Claim 14 may be found in Yukutomo and Cimplicity.    In the alternative, Claim 14 of the '415 Patent is invalid over a combination of Yukutomo and Cimplicity under 35 U.S.C. § 103(a), because each of the elements of Claim 14 is met by combining Yukutomo with Cimplicity according to known function and with predictable results.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 523-527)

### ix.    Claim 16

| Claim 16 | Cimplicity | Yukutomo |
|---|---|---|
| *(from claim 1)* | X | X |
| The system of claim 14, | X | X |
| the audit report includes 1 to N fields, N being an integer, the fields displaying various types of auditing information. | X | X |

(DPF, ¶ 535)

Claim 16 of the '974 is invalid over Yukutomo under 35 U.S.C. §102(e), because each of the elements of Claim 16 is disclosed by Yukutomo.   Claim 16 of the '974 is invalid over Cimplicity under 35 U.S.C. §102(b), because each of the elements of Claim  is disclosed by Cimplicity.  Claim 16 of the '974 Patent is invalid over Yukutomo and/or Cimplicity under 35 U.S.C. § 103(a), because each of the elements of Claim 16 may be found in Yukutomo and Cimplicity.    In the alternative, Claim 16 of the '415 Patent is invalid over a combination of Yukutomo and Cimplicity under 35 U.S.C. § 103(a), because each of the elements of Claim 16 is met by combining Yukutomo with Cimplicity according to known function and with predictable results.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 529-534)

x.      **Claim 24**

| Claim 24 | Cimplicity | Yukutomo |
|---|---|---|
| A method for verifying an industrial control process, comprising: | X | X |
| monitoring activity data directed to one or more control components; | X | X |
| tagging at least one file that is related to the or more control components; | X | X |
| logging the activity data in at least one of a local and a remote location; and | X | X |
| aggregating the logged activity data in the at least one file | X | X |

(DPF, ¶ 554)

Claim 24 of the '974 is invalid over Yukutomo under 35 U.S.C. §102(e), because each of the elements of Claim 24 is disclosed by Yukutomo.   Claim 24 of the '974 is invalid over Cimplicity under 35 U.S.C. §102(b), because each of the elements of Claim 24 is disclosed by Cimplicity.  Claim 24 of the '974 Patent is invalid over Yukutomo and/or Cimplicity under 35 U.S.C. § 103(a), because each of the elements of Claim 24 may be found in Yukutomo and Cimplicity.    In the alternative, Claim 24 of the '415 Patent is invalid over a combination of Yukutomo and Cimplicity under 35 U.S.C. § 103(a), because each of the elements of Claim 24 is met by combining Yukutomo with Cimplicity according to known function and with predictable results.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416. (DPF, ¶¶ 536-553)

### xi.    Claim 29

| Claim 29 | Cimplicity | Yukutomo |
|---|---|---|
| A computer readable medium having stored thereon a data structure, comprising: | X | X |
| first data field representing real time access data to an industrial control component; | X | X |
| a second data field representing a tag name to store and aggregate the real time access data; and | X | X |
| a third data field to categorize the real time access data | X | X |

(DPF, ¶ 573)

Claim 29 of the '974 is invalid over Yukutomo under 35 U.S.C. §102(e), because each of the elements of Claim 29 is disclosed by Yukutomo.   Claim 29 of the '974 is invalid over Cimplicity under 35 U.S.C. §102(b), because each of the elements of Claim 29 is disclosed by Cimplicity.  Claim 29 of the '974 Patent is invalid over Yukutomo and/or Cimplicity under 35 U.S.C. § 103(a), because each of the elements of Claim 29 may be found in Yukutomo and Cimplicity.    In the alternative, Claim 29 of the '415 Patent is invalid over a combination of Yukutomo and Cimplicity under 35 U.S.C. § 103(a), because each of the elements of Claim 29 is met by combining Yukutomo with Cimplicity according to known function and with predictable results.   "The combination of familiar elements according to known methods is likely to be obvious when it does no more than yield predictable results."  *KSR International Co. v. Teleflex Inc.*, 550 U.S. at 416.  (DPF, ¶¶ 555-572)

## VI.     CONCLUSION

For the foregoing reasons, Defendants WAGO Corporation and WAGO Kontakttechnik

GmbH & Co. KG respectfully request summary judgment for Defendants on all counts.

Date: April 13, 2012                           Respectfully submitted,

                                               /s/  Robert N. Cook
                                               _____
                                               Robert N. Cook
                                               Whitham, Curtis, Christofferson & Cook, P.C.
                                               11491 Sunset Hills Road, Suite 340
                                               Reston, Virginia 20190
                                               (703) 787-9400 (voice)
                                               (703) 787-7557 (fax)
                                               bob@wcc-ip.com

                                               John C. Scheller
                                               Michael Best & Friedrich LLP
                                               One South Pinckney Street, Suite 700
                                               Madison, Wisconsin 53703
                                               (608) 283-2276 (voice)
                                               (608) 283-2275 (fax)
                                               jcscheller@michaelbest.com

                                               Counsel for Defendants
                                               WAGO CORPORATION and
                                               WAGO KONTAKTTECHNIK GMBH & CO. KG

**CERTIFICATION**

I certify that on April 13, 2012, I caused the foregoing BRIEF IN SUPPORT OF

DEFENDANTS' MOTION FOR SUMMARY JUDGMENT to be electronically filed with the

Clerk of Court using the Court's Case Management/Electronic Case Filing ("CM/ECF").  All

parties are represented by attorneys of record registered with CM/ECF and will receive service

electronically.  There is no party requiring a different form of service under the Court's

electronic filing procedures.

/s/  Robert N. Cook
_____
Robert N. Cook
Whitham, Curtis, Christofferson & Cook, P.C.
11491 Sunset Hills Road, Suite 340
Reston, Virginia 20190
(703) 787-9400 (voice)
(703) 787-7557 (fax)
bob@wcc-ip.com