IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ROCKWELL AUTOMATION, INC. and
ROCKWELL AUTOMATION TECHNOLOGIES, INC.,

        Plaintiffs,

v.

WAGO CORPORATION and
WAGO KONTAKTTECHNIK GmbH & CO. KG,

        Defendants.

Case No. 10-CV-718-WMC

**PLAINTIFFS' REPLY BRIEF IN SUPPORT OF THEIR
MOTION FOR SANCTIONS UNDER FED. R. CIV. P. 37(C)(1)**

**I.    The Federal Circuit Forbids The Use Of A "Practicing The Prior Art'
Defense To Prove Invalidity Or As A Defense to Literal Infringement**

Defendants do not dispute that offering new opinions based on new prior art references in Defendants' Supplemental Expert Report (the "Second Report") would violate the Court's Preliminary Pretrial Conference Order if those opinions were being offered for the purposes of proving invalidity in this case. Rather, Defendants state that "any reference in the Supplemental Declaration to WAGO-I/O-PRO (1999), CoDeSys 2.2 (2001), and CoDeSys 1.5 (1997) is properly an opinion relating to the *defense* of Plaintiffs' claims of infringement based upon the doctrine of equivalents." See Dkt. No. 45 Defendants' Opposition Brief ("Def. Br.") at 9 (emphasis in original). Indeed, Defendants state, "Dr. Hooper does not supplement his invalidity report, but properly offers opinions on prior art that are a defense to Plaintiff's Infringement claims based upon the doctrine of equivalents." See Def. Br. at 8, Section "A" Heading.

1

Defendants argue that Hooper's new opinions in his Second Report, despite being based on the use of new prior art references, simply show that "Defendants have merely practiced the prior art through their use of prior versions of the alleged infringing products." See. Def. Br. at 8 (emphasis added). Defendants argue that this is permissible because "[u]nder Federal Circuit law, practicing the prior art is an affirmative defense and, thus, is appropriately in Dr. Hooper's Supplemental Declaration." Id. at 10. Defendants concede, however, that the evidence used to support the "practicing the prior art" defense may only be presented in "defense to Plaintiffs' claims of infringement based upon the doctrine of equivalents" and not for proving invalidity or as a defense to literal infringement. Id.; see also id. at 8 (quoting Koito Mfg. Co. v. Turn-Key-Tech, LLC, 381 F.3d 1142, 1153 (Fed Cir. 2004) ("there is no 'practicing the prior art' defense to literal infringement"); quoting Tate Access Floors, Inc. v. Interface Architectural Res., Inc., 279 F.3d 1357, 1367 (Fed. Cir. 2002) ("accused infringers are not free to flout the requirement of proving invalidity by clear and convincing evidence by asserting a 'practicing prior art' defense to literal infringement.")).

The Federal Circuit has repeatedly cautioned against the nonviable "practicing the prior art" defense for proving invalidity. See Nazomi Commc'ns, Inc. v. Arm Holdings, PLC, 403 F.3d 1364, 1371 (Fed. Cir. 2005) (citing Baxter Healthcare Corp. v. Spectramed, Inc., 49 F.3d 1575, 1583 (Fed. Cir. 1995) ("Literal infringement exists if each of the limitations of the asserted claim(s) read on, that is, are found in, the accused device. Questions of obviousness [or anticipation] in light of the prior art go to validity of the claims, not to whether an accused device infringes."). Since Defendants admit that their references to WAGO-I/O-PRO (1999), CoDeSys 2.2 (2001), and CoDeSys 1.5 (1997) in the Second Report should be considered evidence of "practicing the prior art," Defendants should be precluded from using these references as a back

door attempt to prove invalidity or as a defense to literal infringement, which the Federal Circuit clearly prohibits.

Defendants argue that if Hooper's opinions on the WAGO-I/O-PRO (1999), CoDeSys 2.2 (2001), and CoDeSys 1.5 (1997) references are properly limited to rebut infringement under the doctrine of equivalents, then the Court should allow these opinions to remain in his Second Report. Def. Br. at 8–9. However, Defendants have no intention of limiting their use of Hooper's "practicing the prior art" opinions for this purpose, which is apparent by their contradictory argument that "Dr. Hooper Properly Supplemented His Invalidity Report." Def. Br. at 10 (Section B Heading).

Likewise, Defendants' Brief in Support of their Motion for Summary Judgment argues invalidity based on the new references cited in the Second Report. See Dkt. No. 52 ("Def. Sum. Jud. Br."). For example, Defendants summary judgment brief concludes that if "Plaintiffs were to carry their burden of proving that these CoDeSys features [perform] every step of the asserted claims of the '974 Patent, the result would be the Plaintiffs would have proven the asserted claim of the '974 Patent to be anticipated by or obvious in view of the CoDeSys 2.2 (2001)." See Tanck Declaration ("Tanck Dec."), ¶ 3, Exh. 1 (Def. Sum. Jud. Br. at 36) (emphasis added). To support this conclusion, Defendants state in the preceding sentence of their brief that "a simple comparison of the 'Log' command section of the CoDeSys 2.3 (2007) manual and the CoDeSys 2.2 (2001) manual makes clear the substantial similarity between the two." See id. (citing Defendants Proposed Findings of Fact ("DPF"), Dkt. No. 53, ¶ 436). The evidence put forth in the DPF by Defendants to prove this theory of invalidity based on the CoDeSys 2.2 (2001) reference is nothing other than one of the "practicing the prior art" opinions proffered by Hooper in the Second Report. See id., ¶ 4, Exh. 2 (DPF, ¶ 436) ("The ability of CoDeSys 2.3 (2007) to

3

create a log file was also present in CoDeSys 2.2 (2001) (CoDeSys 2.2 (2001) at 4-75 – 4-78; Hooper II (Mar. 22 2012), ¶¶ 152-54)") (emphasis added).  Despite Defendants' admission that the CoDeSys 2.2 (2001) reference was never cited in their opening expert report on invalidity (see Def. Br. at 10), Defendants are now attempting to offer it as evidence of invalidity of the patents in suit under the guise of the "practicing the prior art" defense to the doctrine of equivalents.

Defendants' tactics are particularly egregious because they "flout the requirement of proving invalidity by clear and convincing evidence by asserting a 'practicing prior art' defense to literal infringement."  See Tate Access Floors, 279 F.3d at 1367.  Indeed, at his deposition, when asked whether "the Codesys 2.2 manual serves as prior art to invalidate the '974 patent," Dr. Hooper stated, "I didn't do an invalidity type of analysis on Codesys 2.2."  See Tanck Dec., ¶ 5, Exh. 3 (Hooper Dep. Tr. at 129:13–22).  Thus, despite Hooper's admission that he has not conducted a proper invalidity analysis on the Codesys 2.2 reference, Defendants still offer his "practicing the prior art" opinion from his Second Report to attempt to prove invalidity of the claims of the '974 patent.  The Federal Circuit has repeatedly warned that the "proper framework for challenging the validity of a patent is not for the accused to show that it is practicing the prior art, but to show that every element of the patent claims reads on a single prior art reference."  Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1322–23 (Fed. Cir. 2011).  Defendants hope that by simply alluding to a dual nature of the new opinions in the Second Report they can side step the Federal Circuit's framework for proving invalidity.  Defendants are attempting to quietly slip untimely invalidity opinions unnoticed through the back door by dressing them up as infringement opinions on the doctrine of equivalents.  This should not be allowed.  Not only would these opinions flout the requirement of proving invalidity by clear and convincing

evidence by asserting a "practicing the prior art" defense, they are also untimely and prejudicial, as outlined in Rockwell's opening brief.

**II.     Defendants' Arguments that Hooper Properly Supplemented His Invalidity Report Are Not Justifiable And Do Not Comport With The Court's Rules on Supplementation Set Forth In the Court's Preliminary Pretrial Conference Order**

Hooper's Second Report impermissibly veers into new territory by offering new invalidity opinions based on one previously undisclosed reference—CoDeSys 2.2 (2001)—and two references that were already of record: WAGO-I/O-PRO (1999) and CoDeSys 1.5 (1997). Defendants assert that these three software manuals cover prior versions of one of the accused products—CoDeSys 2.3 (2007)—and therefore "the three products all have the same functionality as CoDeSys 2.3 (2007)." See Def. Br. at 8.  Despite repeating this incantation several times in its response, Defendant has not shown this statement to be true.  In fact, Defendants' expert stated unequivocally in his deposition that he never even tested the functionality of any of the CoDeSys 2.2 (2001), WAGO-I/O-PRO (1999) or CoDeSys 1.5 (1997) products.  See Tanck Dec., ¶ 5, Exh. 3 (Hooper Dep. Tr. 127:18–22).  And even if this statement were true, it wouldn't solve the Defendants' problem here. The Second Report does not correct mistakes and oversights; it includes new examples and illustrations that could have been included in the original expert report.  This is not permitted. See Eugene Baratto v. Brushstrokes Fine Art, Inc., 701 F. Supp 2d 1068, 1071 (W.D. Wis. 2010).  Defendants' new opinions on invalidity presented in their Second Report are untimely.

    A.     *Nothing Prevented Defendants from Timely Presenting the New Invalidity Opinions In The First Report*

Defendants knew of the references on which their expert, Hooper, based the new opinions in his Second Report long before the First Report was filed.  Hooper's use of known references

5

in a new way to form a new opinion is not appropriate in a supplemental report, which "must be an actual supplement, not a new and different set of opinions." Z Trim Holdings, Inc. v. Fiberstar, Inc., 2007 WL 5462414, *2 (W.D. Wis. Sep. 26, 2007). Defendants argue that Hooper "provided a detailed analysis" of CoDeSys (1997) in his First Report. See Def. Br. at 10. But this "detailed analysis" was for an opinion applied to the '232 patent, not the other patents in suit. In his Second Report, the CoDeSys 1.5 (1997) reference was applied—for the first time— to the '415 patent. See Rockwell's Opening Brief ("Rck. Br.") at 5.

Similarly, the WAGO-I/O-PRO (1999) reference, which the Defendants knew about well before they filed the First Report, was not used as a basis for any invalidity opinion in the First Report. See Rck. Br. 3-6. Yet, in the Second Report, it was applied to all four of the patents in suit. Id. Just because the references were disclosed somewhere in the record does not make them fair game for new opinions in a supplemental report. See Fujitsu Ltd. v. NetGear, Inc., 2009 WL 2341810, at *1 (W.D. Wis. Jul. 29, 2009) (granting motion to strike, noting that "the presence of the information and data in the reports does not mean that the opinions and explanations were present").

Hooper's use of a reference that had never been disclosed before his Second Report is also problematic. Hooper cites to the CoDeSys 2.2 (2001) reference for the first time in the Second Report. Defendants assert that they "did not locate an English language copy of CoDeSys 2.2 (2001) until *after* Dr. Hooper drafted his Invalidity Report." See Def. Br. at 10. Defendants contend that this addition of a new reference in a supplemental report "falls squarely within supplements contemplated by Rule 26(e)(1)" because the information "was not located" at the time of Hooper's first report. See id. at 11. But Defendants knew about the CoDeSys 2.2 system and its potential relevance to this case long before Hooper drafted his First Report. In

6

fact, in a letter sent to Rockwell's counsel dated March 28, 2012, Defendants take the position that they knew of the potential relevance of CoDeSys 2.2 to this case as early as January 26, 2012. See Dkt. No. 37, Exh. 4. Moreover, Defendants' argument that they did not understand the relevance of the CoDeSys 2.2 (2001) reference because they had only located a German version of the manual is unfounded. Defendant Wago Kontakttechnik, the entity that belatedly produced the CoDeSys 2.2 reference, is a German company whose chief technical manager and 30(b)(6) deponent regarding the accused products, speaks and reads German. See Tanck Dec., ¶ 6, Exh. 4 (Albers Dep. Tr. at 10:7-17; 32:12-18). Despite having located the German version of the manual, and understanding the relevance, Defendants chose not to produce the document or locate the English version until after the opening round of expert reports. This is particularly alarming since Defendants had no problem producing their other German software manuals well in advance of their First Report. Defendants' attempt to "sandbag" Rockwell by holding back production of this German manual and by producing it with an opinion from their expert after Rockwell had provided their expert's opinion on infringement should not be allowed and certainly does not justify a new round of expert reports on the subject.

  B. *<u>Defendants' Addition of New Invalidity Opinions Prejudices Rockwell</u>*

Defendants dedicate a significant portion of their response arguing that "there is no real burden or prejudice" caused by their untimely invalidity opinions because the three references "are simply prior version of the alleged infringing products, which contain the same functionality." See Def. Br. at 12. This is simply not the case. Rockwell has spent a significant amount of time, resources and effort preparing a rebuttal report challenging the invalidity opinions set forth in Defendants' First Report. In addition, should these new opinions on invalidity be allowed, Rockwell will suffer the unnecessary, significant expense of (1) engaging

7

its expert to draft a new rebuttal expert report on patent validity and (2) re-deposing Defendants' expert on invalidity. Moreover this rebuttal will not be prepared in time for Rockwell's response to Defendants' Motion for Summary Judgment, which is due May 4, 2012.

In a tightly scheduled patent case like this one, where the Court has provided early, clear warnings about its stringent procedures regarding expert reports, "any unconsented delay is presumptively unnecessary, unreasonable, and prejudicial." See Z Trim Holdings, 2007 WL 5462414 at *2. This Court has made it clear that "in the interests of fairness and predictability, absent the parties' agreement to the contrary, [it] strictly will enforce the expert disclosure deadlines and the disclosure requirements of Rule 26(a)(2)." Id. Moreover, the cases cited by Defendants in their attempt to show that Rockwell would not be prejudiced by the late invalidity opinions are inapposite.[1] For patent lawsuits filed in this Court, "moving targets are highly disfavored, late-presented moving targets are anathemas." Id.

Thus, Defendants' untimely, unjustified and prejudicial new opinions on invalidity that were presented for the first time in the Second Report, which fail to comply with the Federal Circuit's framework for proving invalidity, should not be permitted by this Court.

---

[1] Maritime Ontario Freight Lines v. STI Holdings, Inc., 481 F. Supp. 2d 963. 972 (W.D. Wis. 2007) is a products liability case - not a patent case. There, the Court ruled that failure to designate an expert was harmless because the defendants had sufficient time to both depose the expert and have their own expert prepare another supplemental report if needed.

In Sandisk Corp. v. Kingston Tech. Co., 2011 WL 7121190 at *3 (W.D. Wis. Oct. 27, 2011) a supplemental report was allowed as harmless because it did "not supply new evidence, arguments, or theories; it identifie[d] only witnesses that should be otherwise available for trial."

Ashley Furniture Indus., Inc. v. Lifestyle Enter., Inc., 574 F. Supp. 2d 920, 933 (W.D. Wis. 2008) was a design patent case where the additional material was "several catalogue pictures offered as secondary prior art" that were not included in the expert report. (emphasis added). The Court allowed this secondary prior art because it was a "minor supplementation of the original report, raising no substantial new issues or opinion." See id at 933 (emphasis added). Here, the opinions added in the Second Report were not minor elaborations of Hooper's initial opinions; they were completely new examples, illustrations, and opinions on invalidity, each based on documents that Defendants had access to long before the First Report was filed.

**III.     Conclusion**

Rockwell respectfully requests that the Court preclude Defendants from supplying evidence on a motion, at a hearing, or at a trial on any new matters of patent invalidity raised in the March 23, 2012 "Supplemental Declaration of Richard Hooper, Ph.D., P.E." that were not raised in Defendants' opening expert report served on February 24, 2012.

Further, based on Defendants' own admission that "any reference in the Supplemental Declaration to WAGO-I/O-PRO (1999), CoDeSys 2.2 (2001), and CoDeSys 1.5 (1997) is properly an opinion relating to the *defense* of Plaintiffs' claims of infringement based upon the doctrine of equivalents," Defendants should be precluded from supplying evidence on a motion, at a hearing, or at a trial based on the WAGO-I/O-PRO (1999), CoDeSys 2.2 (2001), and CoDeSys 1.5 (1997) references for anything other than support of a "practicing the prior art" defense to infringement under the doctrine of equivalents.

In addition to the sanction of preclusion under Rule 37(c)(1) the Court also has the option to impose other sanctions, including payment of attorney's fees. Rockwell respectfully requests that the Court impose this sanction for any fees related to preparing this motion and related to preparing any additional expert reports related to this matter.

Dated:  April 16, 2012            /s/ Paul Tanck

Paul J. Tanck (admitted in W.D. Wis.)
Chadbourne & Parke LLP
30 Rockefeller Plaza
New York, NY  10112
Tel.:  (212) 408-5100
Fax:  (212) 541-5369
Email:  ptanck@chadbourne.com

COUNSEL FOR PLAINTIFFS ROCKWELL
AUTOMATION, INC.
and ROCKWELL AUTOMATION TECHNOLOGIES, INC.