IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ROCKWELL AUTOMATION, INC. and ROCKWELL AUTOMATION TECHNOLOGIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WAGO CORPORATION and WAGO KONTAKTTECHNIK GMBH & CO. KG, <br> Defendant. | Case No. 3:10CV718-WMC |

**DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO COMPEL DISCOVERY
RESPONSES PURSUANT TO FED. R. CIV. P. 37(a)**

Defendants WAGO Corporation ("WCP") and WAGO Kontakttechnik GmbH & Co. KG ("WKT") submit this Brief In Support of Their Motion To Compel Discovery Responses Pursuant To Fed. R. Civ. P. 37(a).

**I.    INTRODUCTION**

While Plaintiffs have been complaining about WCP and WKT's document production, Plaintiffs have simultaneously been withholding documents and refusing to comply with their discovery obligations. As WCP and WKT have repeatedly explained to Plaintiffs, discovery is a two-way street. For the reasons set forth below, WCP and WKT ask the Court to require Plaintiffs to produce documents and information responsive to Defendants' discovery requests. To the extent Plaintiffs claim not to have responsive documents, Defendants respectfully request that the Court order Plaintiffs to explain what they did to search for responsive documents—just as the Court has required Defendants to do at Plaintiffs' behest. (Dkt. 70)

## II. BACKGROUND

### A. Discovery Requests and Responses

On September 16, 2011 WCP and WKT served their First Set of Requests for Production Directed to Plaintiffs, which consisted of 55 documents requests. (Declaration of Robert N. Cook ("Cook Decln."), Exh. A)  On October 17, 2011, Plaintiffs served their objections and responses to Defendants' First Set of Requests. (Cook Decln., Exh. B)  On December 27, 2011, Defendants served Defendants' Third Set of Interrogatories Directed to Plaintiffs, which contained Interrogatory No. 11. (Cook Decln., Exh. C)  On January 26, 2012, Plaintiffs served their "response" to Interrogatory No. 11, declining to answer on the basis of privilege. (Cook Decln., Exh. D)  WCP and WKT served requests for admission on March 9, 2012 (Cook Decln., Exh. E), and Plaintiffs responded on April 9, 2012. (Cook Decln., Exh. F)

### B. Meet-and-Confer Requirement

Defendants have communicated the deficiencies in Plaintiffs' production several times to Plaintiffs' counsel, beginning at least as early as December 19, 2011. (Cook Decln., Exh. I) Platintiffs' counsel has consistently declined to engage in meaningful discussions regarding these deficiencies.  On March 16, 2012, counsel for WCP and WKT wrote to Plaintiffs' counsel regarding the deficiencies of Plaintiffs' discovery responses. (Dkt. 75-5 at 16)  On April 12, counsel for WCP and WKT emailed Plaintiffs' counsel to schedule a meet-and-confer discussion (Cook Decln., Exh. N, underlying email dated April 12), and such a discussion was held with no resolution on April 13 (as Plaintiffs' counsel was unprepared to discuss numerous issues) with a followup email from counsel for WCP and WKT on the same date. (Cook Decln., Exh. N, underlying email dated April 13)  Further email discussion led nowhere. (Cook Decln., Exh. N)

On April 20, the Court heard Plaintiffs' motion to compel. Following the hearing, the Court issued a text-only order regarding the ongoing discovery disputes. (Dkt. 70) In particular, the Court ordered both sides to meet and confer "about the percolating discovery disputes and misunderstandings . . . ." (Dkt. 70)  Counsel for WCP and WKT stated that it was expected that Defendants' issues regarding Plaintiffs' production would be discussed during the parties April 30 meet and confer. (Cook Decln., Exh. O.) At the April 30 meet and confer, however, Plaintiffs were represented solely by a new member of Plaintiffs' trial team who did not have knowledge of the long-percolating discovery issues regarding Plaintiffs' responses to Defendants' document requests and thus was unable to address those issues.

Despite the Court's order regarding "disputes" and "misunderstandings," and Defendants' counsel's email regarding Defendants' issues, Plaintiffs were not available to discuss Defendants' discovery issues.   On May 1, Plaintiffs' counsel emailed Defendants' counsel, stating:

> You have made some indication that there may be some documents that Defendants need from Plaintiff that have not been produced in discovery.  I would like to work with you so we can identify any such documents.  Please provide a description of any such document (and relate them to any particular document requests if possible) and an explanation of how such documents are relevant to the claims or defenses in this case.  Once we have a better understanding of your needs, we can hopefully resolve any remaining discovery issues, to the extent they exist.  Please feel free to continue to work with Plaintiffs' counsel, Lisa Schapira on any discovery issues, as my availability over the next few days will be limited.

(Dkt. 75-5 at 2 of 24 (underlying email))  In response, Defendants' counsel provided copies of various recent communications on the discovery issues.  (Dkt. 75-5)  Subsequently, on May 2, Plaintiffs' counsel stated that the meet-and-confer requirement with regard to these discover issues had been satisfied.   (Cook Decln., Exh. P)

**III.   ARGUMENT**

A party may "obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense." Rule 26(b)(1).  For discovery purposes, relevancy is broadly construed to encompass "any matter that bears on, or that reasonably could lead to other matter[s] that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

To date, Plaintiffs have made the following productions of documents in response to Defendants' document requests:

- Production of documents with page ranges ROCK0000001-1007 via FedEx by letter dated October 17, 2012.  (Cook Decln., Exh. G)  The documents consisted of Plaintiffs' files relating to the prosecution and maintenance of the patents in suit, plus a copy of a document retention policy.

- Production of documents with page ranges ROCK0001008-6759 via FedEx by letter dated December 15, 2011.  (Cook Decln., Exh. H)  The documents are briefly described in an attachment to a December 19 letter to Plaintiffs' counsel from counsel for WCP and WKT.  (Cook Decln., Exh. I)

- Production of documents with page ranges ROCK0006760-67 by email from Plaintiffs' counsel to counsel for WCP and WKT.  (Cook DeclnExh. J)   This production consisted of eight pages of product literature for one of Plaintiffs' products produced in connection with Plaintiffs' Amended Responses to Defendants' First Set of Interrogatories.

- Production of documents with page ranges ROCK0006768-9797 via FedEx by letter dated January 25, 2012.  (Cook Decln., Exh. K)   These documents consisted of material downloaded by Plaintiffs' from the web sites of WCP andWKT, some of which was used as exhibits at the January 26, 2012 Rule 30(b)(6) deposition of Dr. Thomas Albers on behalf of WKT.  (*See* Dkt. 63 at 3, lines 11 and 14, Exhibit List)

- Production of documents, including documents with page ranges ROCK0009798-10406 along with various other documents that had previously been produced, in a series of nine consecutive emails on March 23, 2012.  (Cook Decln., Exh. L)  These documents consist of various patents and patent-related materials and were produced in connection with Plaintiffs' service of the March 23, 2012 Expert Report of Arthur Zatarain in Opposition to February 24, 2012 Declaration of Richard Hooper.  (Dkt. 59-18)

- Production of documents with page ranges ROCK0050325-660 via FedEx by letter dated Friday April 20, 2012. (Cook Decln., Exh. M) These documents appear to consist of documentation relating to the use of Plaintiffs' Logix5000 Controller products.

### A. Plaintiffs' Correspondence and Emails Should Be Produced, or Plaintiffs Should Explain How They Searched for Responsive Emails.

<u>Conspicuously absent from Plaintiffs' production is a single email</u>. Plaintiffs state that they gathered emails "using many relevant search terms related to Defendants, the patents-in-suit, and the accused products" but that not a single one of tens of thousands of emails was responsive. (Dkt. 42 at 4 n.1.)

To understand why no responsive emails were uncovered, WCP and WKT asked Plaintiffs for information on to how emails were searched, such as what search terms were used, what folders were searched, and how far back the search went. (Cook Decln., Exh. N, underlying email) Plaintiffs provided no meaningful answer. Instead, Plaintiffs' counsel parroted back the questions of WCP and WKT's counsel regarding Defendants' production. (Cook Decln., Exh. N) It is respectfully submitted that Plaintiffs should, at a minimum, be required to explain their search process in order to account for the dearth of emails and other communications produced to Defendants. (*Cf*. Dkt. 70) WCP and WKT may seek additional relief based upon what is learned concerning the searches Plaintiffs have conducted.

### B. Information Concerning Plaintiffs' Inspection of Products Related to Its Infringement Claims Should be Produced Because It Is Relevant to the Possible Award of Attorneys' Fees Under 35 U.S.C. § 285

Plaintiffs have failed to provide meaningful responses to discovery requests related to Plaintiffs' pre-complaint inquiry into the factual basis for the patent infringement claims that are the subject of this lawsuit. For example, Defendants' Interrogatory No. 11 seeks the following information:

> For each and every allegation of patent infringement contained in the Complaint in the above-captioned matter, identify each and every product of a Defendant inspected by or on behalf of either Plaintiff for the purpose of inquiring into the factual support for any allegation of patent infringement contained in such Complaint.

(Cook Decln., Exh. C) In response to this interrogatory, which seeks only a list of products, Plaintiffs have declined to answer on the basis of privilege:

> Subject to its objections, Rockwell states that other than the information in "Plaintiffs Rockwell Automation, Inc. and Rockwell Automation Technologies, Inc.'s Infringement Contentions" and associated Exhibits A-F served on Defendants on September 16, 2011, the information requested by this interrogatory calls for information protected by the attorney-client privilege, work product doctrine, common interest privilege, and/or other applicable privileges and immunities.

(Cook Decln., Exh. D) The referenced Exhibits A-F to Plaintiffs' Infringement Contentions (Dkt. 24-4 through 24-9 do not show any products as having been inspected by Plaintiffs; to the contrary, Plaintiffs' infringement contentions are a smokescreen consisting of endless repetition of a small set of screen shots from readily available product literature regarding WCP and WKT's products. (*Id.*) There is nothing to indicate that Plaintiffs inspected any of the accused products prior to receiving samples from WCP and WKT in discovery.

Similarly, the absence of documents produced by Plaintiffs in response to Defendants' Document Requests No. 18, 19, 20, 33, 35, 36, 37, 38, 39 and 44 support the inference that no infringement analysis of WCP and WKT's accused products was done prior to the commencement of this lawsuit. Those document requests seek:

> 18. If you contend that any Industrial Controller or other product or service made, used, sold or provided by a Defendant directly or indirectly infringes any claim of a Patent in Suit, literally or under the doctrine of equivalents, then produce all Records in your possession, custody or control relating to such infringement, including, but not limited to,
>
> > (a) All Records identifying or otherwise discussing or relating to each claim of such Patent in Suit which you contend to be infringed;

  (b) All legal and/or factual bases for any such contention of infringement and/or any defenses or potential defenses thereto; and

  (c) The identity of each Industrial Controller or other product or service which you contend to be infringing.

19. Produce all Records in your possession, custody or control relating to any statement, assertion, or suggestion by any person that any Industrial Controller or other product or service made, used sold or provided by either Plaintiff may be a direct or indirect infringement any of the Patents in Suit.

20. Produce all Records in your possession, custody or control relating to (i) any statement, assertion, suggestion or suspicion by any person that any claim of any of the Patents in Suit is or has ever been infringed by Defendants or any third-party and/or (ii) any decision to pursue or not pursue action against any such potential infringer.

\*  \*  \*

33. Produce all Records in your possession, custody or control relating to any infringement analysis of any the following products or product lines as they are identified in the Complaint (dated Nov. 16, 2011) in the above-captioned civil action or any subsequent amendments thereto: (a) WAGO-I/O-System 750; (b) I/O-IPC; (c) WAGO-I/O-IPC; (d) WAGO-I/O-IPC-G2; and WAGO-I/O-IPC (Series 758).

\*  \*  \*

35. Produce all Records in your possession, custody or control relating to any infringement analysis of any the following products or product lines as they are identified in the Plaintiffs' First Request for the Production of Documents and Things (Sept. 7, 2011) in the above-captioned civil action: (a) WAGO-I/O-System; (b) WAGO-I/O-System 750; (c) WAGO-I/O-System 753; (d) WAGO-I/O-System 755; (e) WAGO-I/O-System 757; (f) WAGO-I/O-IPC (758 Series); (g) I/O-Software (Series 759); (h) WAGO 758-860 Controller; (i) WAGO 748-870/000-110 Controller; (j) WAGO 750-841 Ethernet Controller; (k) WAGO TO-PASS; and (l) WAGO-I/O-PRO CAA.

36. Produce all Records in your possession, custody or control relating to any steps taken or analysis performed to determined whether any Industrial Controller or other product or service made, used, sold or distributed by either Defendant directly or indirectly infringes any of the Patents in Suit, whether literally or under the doctrine of equivalents, including, but not limited to, any tests, experiments or technical analyses performed to determine whether any such Industrial Controller or other product or service infringes a Patent in Suit in connection with Plaintiffs' alleging of infringement in the above-captioned civil action.

      37.    Produce all Records in your possession, custody or control supporting, contradicting, or otherwise relating to any contention that Defendants are or have ever been willfully or deliberately infringing any Patent in Suit.

      38.    Produce all Records in your possession, custody or control supporting, contradicting, or otherwise relating to Plaintiffs' allegation that Defendants are directly or indirectly infringing any of the Patents in Suit pursuant to Section 271(a), 271(b) or 271(c) of Title 35 of the United States Code, 35 U.S.C. § 271(a), (b) and (c), as alleged in the Complaint in the above-captioned civil action, or any subsequent amendments thereto.

      39.    Produce all Records in your possession, custody or control supporting, contradicting, or otherwise relating to any allegation that either Plaintiff has been damaged or injured by Defendants' alleged infringement of any of the Patents in Suit as alleged in the Complaint in the above-captioned civil action, or any subsequent amendments thereto.

      \*    \*    \*

      44.    For each Defendant, produce all Records in your possession, custody or control relating to either Plaintiff's first awareness of any allegedly infringing activities by such Defendant.

(Cook Decln., Exh. A)

Noting (i) the absence of documents in response to Defendants' Document Requests No. 18, 19, 20, 33, 35, 36, 37, 38, 39, 44 and (ii) the lack of a meaningful response to Defendants' Interrogatory No. 11, WCP and WKT sought to clarify this matter by propounding Defendants' Request for Admission No. 2, which stated:

> During the period prior to the filing of the Complaint in the above-captioned civil action, none of Defendants' products accused of patent infringement in the above-captioned civil action was inspected by or on behalf of either Plaintiff for the purpose of inquiring into the factual support for any allegation of patent infringement contained in such Complaint.  (*Support*: Absence of records produced by Plaintiffs in response to Defendants' Document Requests No. 18, 19, 20, 33, 35, 36, 37, 38, 39, 44;  Plaintiffs' refusal to make an unequivocal response to Defendants' Interrogatory No. 11)

(Cook Decln., Exh. E)  Plaintiffs responded:

> Rockwell objects to this request because it calls for information protected by the attorney-client privileged, work product doctrine, common interest privilege,

>and/or other applicable privileges and immunities. <u>Subject to these objections, the request is denied</u>.

(Cook Decln., Exh. F, emphasis added) The assertion of privilege in this context is incomprehensible.

Thus, based on Plaintiffs' response to Defendants' Request for Admission No. 2 in juxtaposition to Plaintiffs' response to Defendants' Interrogatory No. 11, Plaintiffs assert that a pre-complaint investigation of the accused products was done but that they do not have to identify the products that were examined. <u>There is absolutely no basis for asserting privilege in response to Defendants' Interrogatory No. 11 or Document Requests 18, 20, 33, 35, 36, 37, 38, 39 and/or 44. Plaintiffs should be required to answer the interrogatory and provide documents responsive to the document requests.</u>

These discovery requests are perfectly reasonable and are relevant to WCP and WKT's potential ability to obtain attorneys' fees under the Patent Act, 35 U.S.C § 285. Attorneys fees may be awarded under the Patent Act "in exceptional cases." 35 U.S.C. § 285. Exceptional cases may include, for example, "unjustified, and otherwise bad faith litigation; [or] a frivolous suit." A plaintiff that "reasonably believed" its patent to be "valid and infringed when it filed suit" would not be found to have engaged in frivolous or unjustified litigation. *Q-Pharma, Inc. v. The Andrew Jergens Co.*, 360 F.3d 1295, 1300-01 (Fed. Cir. 2004). Conversely, therefore, a plaintiff that did not have a reasonable basis for believing its patent to be infringed prior to brining a lawsuit may have engaged in frivolous or unjustified litigation.

WCP and WKT's interest in Plaintiffs' pre-complaint inquiry is all the more important considering Plaintiffs' motion to dismiss Counts One and Four (Dkt. 33) based on the circumstance that Plaintiffs had filed their Complaint without bothering to determine if the product of interest relative to Counts One and Four was in fact being sold in the United States.

(Dkt. 33) And it took Plaintiffs 15 months to figure that out — from November of 2010 (Dkt. 1) until February of 2012. (Dkt. 33) This circumstance, coupled with Plaintiffs' failure to respond to discovery requests on the topic, suggests that an adequate inquiry was never undertaken

### C. Information Relating to Plaintiffs' Profits from and Sales of Industrial Controllers Should Be Produced Because It is Relevant to Damages

Plaintiffs have failed to produce documents in response to Defendants' Document Requests Nos. 52, 53 and 54, which relate to the profits and sales Plaintiffs generate from the products that incorporate the features of the patents in suit:

> 52. For each Industrial Controller or other product or service identified or described in response to Interrogatory No. 5 as being one from which a Plaintiff has at any time directly or indirectly obtained any profit as a result of features covered by any claim of a Patent in Suit, produce all Records in your possession, custody or control referring or relating to cost or pricing analyses or comparisons, made by or for Plaintiffs, between each such Industrial Controller and any other products or services.
>
> 53. For each Industrial Controller or other product or service identified or described in response to Interrogatory No. 5 as being one from which a Plaintiff has at any time directly or indirectly obtained any profit as a result of features covered by any claim of a Patent in Suit, produce Records sufficient to show:
>
>> (a) The manner of distribution of each such Industrial Controller or other product or service in the United States;
>>
>> (b) All sales of each such Industrial Controller or other product or service in the United States;
>>
>> (c) Plaintiffs' revenues obtained from sales of each such Industrial Controller or other product or service in the United States;
>>
>> (d) The costs and expenses associated with sales of each such Industrial Controller or other product or service in the United States;
>>
>> (e) The profit, whether described as gross, marginal, net, or any other term, earned by Plaintiffs on sales of each such Industrial Controller or other product or service in the United States; and

    (f)    Summaries of the sales and/or profitability of each such Industrial Controller or other product or service in the United States.

54. For each Industrial Controller or other product or service identified or described in response to Interrogatory No. 5 as being one from which a Plaintiff has at any time directly or indirectly obtained any profit as a result of features covered by any claim of a Patent in Suit, produce all Records in your possession, custody or control:

    (a)    Identifying, discussing or otherwise relating to such profit, including, but not limited to, Records distinguishing such profit from the overall profit on any such Industrial Controller or other product or service;

    (b)    Identifying, discussing or otherwise relating to such Industrial Controller or other product or service;

    (c)    Identifying, discussing or otherwise relating to any patent claim covering a feature of the Industrial Controller or other product or service from which such profit was obtained;

    (d)    Identifying, discussing or otherwise relating to the patented features of the Industrial Controller from which such profit was obtained; and/or

    (e)    Identifying, discussing or otherwise relating to any patent other than such Patent in Suit (regardless of whether the other patent is or is not one of the Patents in Suit) covering any feature(s) of such Industrial Controller or other product or service and, for each such patent other than such Patent in Suit, produce all Records in your possession, custody or control

        (i)    Identifying, discussing or otherwise relating to the patent,

        (ii)    Identifying, discussing or otherwise relating to any feature(s) covered by the patent which contributes to profit of at least one Plaintiff from any Industrial Controller or other product or service incorporating such feature(s), and

        (iii)    Identifying, discussing or otherwise relating to the amount of profit contributed by any feature(s) of any such Industrial Controller or other product or service covered by the patent.

(Cook Decln. Exh. A)

As with discovery relating to Plaintiffs' pre-complaint investigation, discussed above, Plaintiffs' response to a request for admission shows that something is being withheld. Defendant's Request for Admission No. 4 states:

> Neither of the Plaintiffs has obtained profit as a result of features covered by any claim of any of the Patents in Suit. (*Support*: Absence of records produced by Plaintiffs in response to Defendants' Document Request No.54; Plaintiffs' Response to Defendants Interrogatory No. 5)

(Cook Decln., Exh. E) Plaintiffs responded:

> To the extent the products listed in Plaintiffs' Amended Repsonse to Interrogatory No. 5 (January 9, 2012) are "covered by any claim of any of the Patents in Suit", this Request is denied.

(Cook Decln., Exh. F) Thus, there are products on which Plaintiffs claim to have obtained profit as a result of features covered by the claims of the patents in suit; however, Plaintiffs refuse to produce requested discovery relating to those products.

Similarly, Plaintiffs have failed to produce documents responsive to Request Nos. 2 and 3 (Cook Decln., Exh. A), which are relevant to damages because WCP and WKT must learn a considerable amount about Plaintiffs' products in order to be able to determine, in a hypothetical lost profits analysis, how much value is added to Plaintiffs' products by the patents in suit, as opposed to value that is added by other features of the products. *See, e.g., Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1332 (Fed. Cir. 2009) (noting that the amount of damages is related to the value of the feature that incorporates the infringed patent). If Plaintiffs do not produce documents related to the value of the features of their products that incorporate the patents-in-suit (and the profits derived from those features), then WCP and WKT will be impeded in their ability to respond to Plaintiffs' evidence on asserted damages.

### D. The Court Should Require Plaintiffs to Produce Documents Responsive to Requests 7, 8, 9, 17, 21 and 48, Because Such Documents Are Relevant

Request No. 7 asks for documents related to "U.S. and foreign patents or patent applications that identify or disclose the invention of such Patent in Suit or which claim priority in or through any of the Patents in Suit or otherwise discuss the subject matter of the Patent in Suit." (Cook Decln., Exh. A) Plaintiffs have failed to produce foreign patent applications even though there is reason to believe the patents-in-suit have non-U.S. counterparts. Plaintiffs should be required to produce foreign patent applications or explain what it has done to search for foreign patent applications.

Request Nos. 8 and 9 seek documents relating to circumstances that led to the invention of the products and the design efforts by persons identified in Plaintiffs' initial disclosures as individuals possessing relevant information regarding the patents-in-suit. (Cook Decln., Exh. A) To date, Plaintiffs have made a bare-bones production consisting of PowerPoint-type slide sets. Plaintiffs should be required to produce all responsive materials or explain what it has done to search for responsive materials.

Request Nos. 17 and 21 request invention documents such as notebooks, memos and any other documents related to the invention of the patents in suit. Plaintiffs have failed to produce such documents. (Cook Decln. Exh. A) Plaintiffs should be required produce documents responsive to Requests Nos. 17 and 21 or explain what it has done to search for responsive materials.

Request No. 48 asks for documents regarding Plaintiffs' decision to file this lawsuit. Exh. A) Such documents are potentially relevant to attorneys' fees and should be produced (or, if they are not produced, an explanation should be provided as to why they are not being produced).

## IV. CONCLUSION

For the foregoing reasons, WAGO Corporation and WAGO Kontakttechnik GmbH & Co. KG respectfully request that the Court grant their motion to compel Plaintiffs to produce all emails, correspondence and other documents responsive to Defendants' Document Requests Nos. 2, 3, 7, 8, 9, 17, 18, 19, 20, 21, 32, 33, 35, 36, 37, 38, 39, 39, 44, 48, 50, 52, 53 and 54, as well as to respond to Defendants' Interrogatory No. 11. To the extent Plaintiffs claim that they have already produced responsive documents or that they do not have any documents in their possession, custody or control, WAGO Corporation and WAGO Kontakttechnik GmbH & Co. KG respectfully request that the Court order Plaintiffs to explain what they did to search for responsive documents.

May 3, 2012                                             Respectfully submitted,

/s/ Robert N. Cook

Robert N. Cook
Whitham, Curtis, Christofferson & Cook, P.C.
11491 Sunset Hills Road, Suite 340
Reston, Virginia 20190
(703) 787-9400 (voice)
(703) 787-7557 (fax)
bob@wcc-ip.com

John C. Scheller
Michael Best & Friedrich LLP
One South Pinckney Street, Suite 700
Madison, Wisconsin 53703
(608) 283-2276 (voice)
(608) 283-2275 (fax)
jcscheller@michaelbest.com

Counsel for Defendants
WAGO CORPORATION and
WAGO KONTAKTTECHNIK GMBH & CO. KG

**CERTIFICATION**

I certify that on May 3, 2012, I caused the foregoing DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO COMPEL DISCOVERY RESPONSES PURSUANT TO FED. R. CIV. P. 37(a) to be electronically filed with the Clerk of Court using the Court's Case Management/Electronic Case Filing ("CM/ECF"). All parties are represented by attorneys of record registered with CM/ECF and will receive service electronically. There is no party requiring a different form of service under the Court's electronic filing procedures.

/s/ Robert N. Cook
_____

Robert N. Cook
Whitham, Curtis, Christofferson & Cook, P.C.
11491 Sunset Hills Road, Suite 340
Reston, Virginia 20190
(703) 787-9400 (voice)
(703) 787-7557 (fax)
bob@wcc-ip.com