UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ROCKWELL AUTOMATION, INC. AND ROCKWELL AUTOMATION TECHNOLOGIES, INC.,<br><br>                                    Plaintiffs,<br><br>-against-<br><br>WAGO CORPORATION AND WAGO KONTAKTTECHNIK GmbH & CO. KG,<br><br>                                    Defendants. | Case No. 10-CV-718-WMC |

**PLAINTIFFS ROCKWELL AUTOMATION, INC. AND
ROCKWELL AUTOMATION TECHNOLOGIES, INC.'S
MEMORANDUM OF LAW IN OPPOSITION TO
<u>DEFENDANTS' MOTION FOR SUMMARY JUDGMENT</u>**

Plaintiffs Rockwell Automation, Inc. and Rockwell Automation Technologies, Inc.

("Rockwell") respectfully submits this Memorandum of Law in Opposition to Defendants Wago

Corporation and Wago Kontakttechnik GmbH & Co. KG's ("Defendants") Motion for Summary

Judgment.

CHADBOURNE & PARKE LLP
Attorneys for Rockwell
30 Rockefeller Plaza
New York, New York  10112
Tel.: (212) 408-5100
Fax: (212) 541-5369

Scott S. Balber
Paul J. Tanck
Lisa Schapira

Of Counsel

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................. 1

BACKGROUND .................................................................................................. 4

ARGUMENT ....................................................................................................... 6

I. APPLICABLE LEGAL STANDARDS ............................................................ 6

    A.    Summary Judgment Standard ................................................................ 6

    B.    Patent Infringement ............................................................................... 7

    C.    Patent Invalidity .................................................................................... 8

        1.    Anticipation Standard ................................................................ 8

        2.    Obviousness Standard ................................................................ 8

II. DEFENDANTS' PROPOSED FINDINGS OF FACT .................................... 10

    A.    Many of the Facts in Defendants' Proposed Findings of Fact Are Not Appropriate Factual Propositions For Use In A Summary Judgment Motion ................................................................................................. 10

        1.    Defendants' Proposed Findings of Fact Are Not Supported By Admissible Evidence ................................................................ 11

        2.    Defendants Have Failed to Prove that the Asserted "Prior Art" Manuals Qualify as Printed Publications Under 35 U.S.C. § 102(b) ........................................................................................ 14

        3.    The "Prior Art" References Were Not Provided In Defendants' Expert Report On Invalidity and are Inadmissible Pursuant to Rockwell's Motion for Sanctions ................................................ 15

III. PATENT INFRINGEMENT ....................................................................... 16

    A.    The '974 Patent .................................................................................. 16

        1.    Defendants Have Not Shown An Absence of Material Fact Entitling Them to Summary Judgment of Non-Infringement of the Claims of the '974 Patent ............................................................ 16

            a.    Claim 1 - Defendants' Non-Infringement Argument is Based on an Improperly Narrow Construction of the Claim and a Mischaracterization of Rockwell's Theory of Infringement ..................................................................... 17

i

i.     The Intrinsic Evidence and Argument-Based Estoppel Do Not Support Defendants' Narrow Construction of the Recording and Tracking Component of Claim 1 ...........................................18

ii.    Defendants Infringe Claim 1 Even if the Court Construes the Claims To Require Two Separate Recording and Tracking Components ..................22

b.    Claim 24 - Defendants' Non-Infringement Argument Relies on an Improper Narrow Construction and on Alleged Structural Distinctions Where the Claim is Directed to a Method ....................................................................................22

c.    Claim 29 - Defendants' Non-Infringement Argument Is Based on an Improperly Narrow Construction of the Claimed "Data Field" Which is Not Supported By the Record Before the Court ....................................................24

2.    Defendants Cannot Establish That They Are Entitled to Judgment As A Matter of Law That the Claims of the '974 Patent Are Not Infringed or Are Otherwise Anticipated By the CoDeSys 2.2 Reference ...................................................................................28

a.    Under Federal Circuit Law, Defendants Are Not Permitted to Argue No Literal Infringement Based on Their Practicing the Prior Art of the CoDeSys 2.2 Reference.....28

b.    Defendants Have Not Shown That There is No Genuine Issue of Material Fact Regarding Whether They Infringe the Claims of the '974 Patent Under the Doctrine of Equivalents.......................................................................30

B.    The '813 Patent ...........................................................................31

1.    Defendants' Theory Of Non-Infringement Requires A Tortured Construction of the Word "Interpret," Which Is Unsupported By The Language of the Patent ...........................................................33

a.    Defendants' Proposed Constructions Are Completely Divorced from the Specification of the Patent..................34

b.    The Word "Interpret" Should Be Given Its Plain Meaning to One Of Ordinary Skill in the Art In Light of the Patent Specification ....................................................................37

c.    Questions of Fact Remain With Respect to Literal
Infringement, Doctrine of Equivalents, and Indirect
Infringement.................................................................41

    i.    The Runtime System Does Act in an Interpretive
    Manner ................................................................42

d.    Defendants Infringe Under the Doctrine of Equivalents ...44

C.    The '415 Patent ...........................................................................47

1.    Defendants' Only Argument for Summary Judgment on Literal
Infringement of the '415 Patent is Not a Valid Basis of Non-
Infringement and No Supporting Evidence Has Been Cited .........48

2.    Defendants' Argument for Non-Infringement of the '415 Patent
Under the Doctrine of Equivalents is Addressed to a Theory of
Infringement Not Put Forth by Rockwell and Based on an
Unsupported and Assumed Claim Construction............................50

D.    The '232 Patent ...........................................................................53

1.    Defendants Do Not Dispute the Evidence Proffered by Rockwell
that Defendants Infringe All of the Claims of the '232 Patent ......53

2.    Defendants Have Not Shown There Is No Genuine Issue Of
Material Fact Regarding Whether They Infringe the Claims of the
'232 Patent Because There Are Gaps in Defendants' Expert's
Analysis of the Accused Products.................................................54

IV. PATENT INVALIDITY...........................................................................55

A.    The '974 Patent ...........................................................................56

1.    Defendants Have Not Shown the Asserted Claims of the '232
Patent to be Anticipated As a Matter of Law, and There Is
Disagreement Between Rockwell's Expert and Defendants' Expert
as to the Scope and Content of the Cited Art................................56

a.    The Yukutomo and Cimplicity References Fail To
Anticipate Each and Every Claim Element of Each of the
Asserted Claims of the '974 Patent....................................56

b.    Under Federal Circuit Law, Defendants Are Not Permitted
to Argue Invalidity Based on Their Practicing the Prior Art
of the CoDeSys 2.2 Reference ...........................................57

iii

           c.      Defendants' Arguments of Invalidity Based on the CoDeSys 2.2 Reference Are Not Admissible And Are Subject To A Motion For Sanctions ..................................59

    2.      Defendants Have Not Shown the Asserted Claims of the '974 Patent to be Obvious As a Matter of Law, and There Is Disagreement Between Plaintiffs' Expert and Defendants' Expert as to the Scope and Content of the Cited Art and the Knowledge of a Person of Ordinary Skill in the Art .............................................59

    3.      Defendants' Argument that Claim 24 Fails to Comply with the Subject Matter Requirements of 35 U.S.C. § 101 is Unfounded, and Claim 24 Does Not Claim a Mathematical Algorithm, Purely Mental Steps, or Any Similarly Abstract Concept Which Would Preclude Patentability ..................................................................61

B.     The '813 Patent ........................................................................63

    1.      Defendants Have Not Shown the Asserted Claims of the '813 Patent to be Anticipated As a Matter of Law, and There Is Disagreement Between Plaintiffs' Expert and Defendants' Expert as to the Scope and Content of the Cited Art................................63

           a.      The Li Patent Fails to Disclose Each and Every Element of the Asserted Claims of the '813 Patent..............................65

           b.      The Stripf Patent Fails to Disclose Each and Every Element of the Asserted Claims of the '813 Patent ........................66

    2.      Defendants Have Not Shown the Asserted Claims of the '813 Patent to be Obvious As a Matter of Law, and There Is Disagreement Between Plaintiffs' Expert and Defendants' Expert as to the Scope and Content of the Cited Art and the Knowledge of a Person of Ordinary Skill in the Art .............................................69

C.     The '415 Patent ........................................................................72

    1.      Defendants Have Not Shown the Asserted Claims of the '415 Patent to be Anticipated As a Matter of Law, and There Is Disagreement Between Plaintiffs' Expert and Defendants' Expert as to the Scope and Content of the Cited Art................................72

           a.      The Chuo Patent Fails to Disclose Each and Every Element of the Asserted Claims of the '415 Patent ........................73

           b.      The TriLOGI Reference Fails to Disclose Each and Every Element of the Asserted Claims of the '415 Patent ...........74

2.      Defendants Have Not Shown the Asserted Claims of the '415 Patent to be Obvious As a Matter of Law, and There Is Disagreement Between Plaintiffs' Expert and Defendants' Expert as to the Scope and Content of the Cited Art and the Knowledge of a Person of Ordinary Skill in the Art ............................................75

3.      Defendants Argument that Claim 1 Fails to Comply with the Written Description Requirement of 35 U.S.C. § 112, First Paragraph is Based On An Erroneous and Assumed Claim Construction ................................................................................................77

D.    The '232 Patent ........................................................................................79

1.      Defendants Have Not Shown the Asserted Claims of the '232 Patent to be Anticipated As a Matter of Law, and There Is Disagreement Between Plaintiffs' Expert and Defendants' Expert as to the Scope and Content of the Cited Art................................79

a.      The CoDeSys 1.5 Reference Fails to Disclose Each and Every Element of the Asserted Claims of the '232 Patent.81

b.      The Labview Reference Fails to Disclose Each and Every Element of the Asserted Claims of the '232 Patent ...........82

2.      Defendants Have Not Shown the Asserted Claims of the '232 Patent to be Obvious As a Matter of Law, and There Is Disagreement Between Plaintiffs' Expert and Defendants' Expert as to the Scope and Content of the Cited Art and the Knowledge of a Person of Ordinary Skill in the Art ............................................83

CONCLUSION ............................................................................................84

## TABLE OF AUTHORITIES

**Page(s)**

CASES

Abbott Labs. v. Sandoz, Inc.,
  566 F.3d 1282 (Fed.Cir. 2009).....................................................................................8

Anderson v. Liberty Lobby, Inc.,
  477 U.S. 242 (1986).................................................................................6, 7, 58, 81

Atlanta Attachment Co. v. Legget & Platt, Inc.,
  516 F.3d 1361 (Fed. Cir. 2008)...............................................................................6, 7

Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs. Ltd.,
  301 F. Supp.2d 984 (W.D. Wis. 2003) ....................................................................78

Celotex Corp. v. Catrett,
  477 U.S. 317 (1986)...............................................................................................49

Commonwealth v. Buffalo Tech.,
  542 F.3d 1363 (Fed. Cir. 2008).................................................................................9

Cooper v. Ford Motor Co.,
  748 F.2d 677 (Fed. Cir. 1984)..................................................................................9

Curtiss-Wright Flow Control Corp. v. Z & J Technologies GmbH,
  563 F.Supp.2d 1109 (C.D. Cal. 2007) .....................................................................79

Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,
  535 U.S. 722 (2002) ....................................................................................21, 45, 46

Frazier v. Layne Christensen Co.,
  No. 04-C-315-C., 2006 WL 6041120 (W.D.Wis. Feb. 21, 2006) ...........................12

Gessert v. U.S.,
  627 F. Supp. 2d 942 (E.D. Wisc. 2009) ...................................................................13

Graham v. John Deere Co.,
  383 U.S. 1 (1966).................................................................................................9, 80

Group One, Ltd. v. Hallmark Cards, Inc.,
  254 F.3d 1041 (Fed. Cir. 2001)..................................................................................7

Hearing Components, Inc. v. Shure Inc.,
  600 F.3d 1357 (Fed. Cir. 2010)...................................................................20, 22, 47

Honeywell Int'l, Inc. v. Hamilton Sundstrand Corp.,
    523 F.3d 1304 (Fed. Cir. 2008)............................................................46

Impax Labs v. Avemtis Pharma.,
    545 F.3d 1312 (Fed. Cir. 2008)..................................................7, 62, 78

Klein v. Russell,
    86 U.S. 433 (1873)......................................................................79

KSR Int'l Co. v. Teleflex, Inc.,
    550 U.S. 398 (2007).............................................................. passim

L&W, Inc. v. Shertech, Inc.,471
    F.3d 1311 (Fed. Cir. 2006)...............................................................17

Latosky v. Strunc,
    No. 08-C-771, 2009 WL 1073680 (April 21, 2009, E.D.Wis., 2009) ....................................12

Lemelson v. United States,
    752 F.2d 1538 (Fed.Cir. 1985)..........................................................8, 24

Markman v. Westview Instruments, Inc.,
    52 F.3d 967 (Fed. Cir. 1995)............................................................37

Mars, Inc. v. H.J. Heinz Co.,
    377 F.3d 1369 (Fed.Cir. 2004)............................................................7

Metro. Life Ins. Co. v. Bancorp Serv., L.L.C.,
    527 F.3d 1330 (Fed.Cir. 2008)....................................................... passim

Microsoft Corp. v. Ram Distribution, LLC,
    625 F.Supp.2d 674 (E.D.Wis. 2008)......................................................12

Ortho-Mcneil v. Mylan Labs. Inc,
    520 F.3d 1358 (Fed. Cir. 2008).........................................................70

Overhead Door Corp. v. Chamberlain Group, Inc.,
    194 F.3d 1261 (Fed. Cir. 1999).........................................................47

PharmaStem.Therapeutics v. Viacell, Inc.,
    491 F.3d 1342 (Fed. Cir. 2007).......................................................7, 78

Phillips v. AWH Corp.,
    415 F.3d 1303 (Fed. Cir. 2005)................................................35, 38, 52

Power-One, Inc. v. Artesyn Techs., Inc.,
    599 F.3d 1343 (Fed. Cir. 2010).........................................................9

Rambus Inc. v. Infineon Technologies Ag,
    318 F.3d 1081 (Fed. Cir. 2003) ................................................................35

ResQNet.com, Inc. v. Lansa, Inc.,
    594 F.3d 860 (Fed. Cir. 2010) ..........................................................14, 15

Rexnord Corp. v. Laitram Corp.,
    274 F.3d 1336 (Fed. Cir. 2001) ................................................................35

Ruffin–Thompkins v. Experian Info. Solutions, Inc.,
    422 F.3d 603 (7th Cir.2005) ..............................................................61, 84

Scripps Clinic & Research Found. v. Genentech, Inc.,
    927 F.2d 1565 (Fed.Cir. 1991) ............................................................8, 64

SRAM Corp. v. AD Engineering Inc.,
    465 F.3d ..............................................................................................7, 78

SRI Int'l v. Matsushita Elec. Corp. of Am.,
    775 F.2d 1107 (Fed.Cir. 1985) ..................................................................8

Teleflex, Inc. v. Ficosa N. Am. Corp.,
    299 F.3d 1313 (Fed.Cir. 2002) ................................................................35

TriMed, Inc. v. Stryker Corp.,
    608 F.3d 1333 (Fed.Cir. 2010) ..........................................8, 56, 71, 76

Ultramercial, LLC v. Hulu, LLC,
    657 F.3d 1323 (Fed. Cir. 2011) ..........................................................62, 63

Uniloc USA, Inc. v. Microsoft Corp.,
    632 F.3d 1292 (Fed. Cir. 2011) ..........................................................59, 82

United States v. Diebold, Inc.,
    369 U.S. 654 (1962) ................................................................................42

United States v. Phillips,
    596 F.3d 414 (7th Cir. 2010) ..............................................................61, 84

Viskase Corp. v. American Nat. Can Co.,
    261 F.3d 1316 (Fed. Cir. 2001) ..........................................................20, 45

Vitronics Corps. v. Conceptronic, Inc.,
    90 F.3d 1576 (Fed. Cir. 1996) ............................................................52, 79

Wanlass v. Fedders Corp.,
    145 F.3d 1461 (Fed.Cir. 1998) ..................................................................7

Whittaker Corp. v. UNR Indus., Inc.,
    911 F.2d 709 (Fed. Cir. 1990)..................................................................78, 79

Woods v. City of Chicago,
    234 F.3d 979 (7th Cir. 2000) ...........................................................................13

**STATUTES**

35 U.S.C. § 101 ..............................................................................................62, 64

35 U.S.C. § 102 ............................................................................................. passim

35 U.S.C. § 103 ............................................................................................. passim

35 U.S.C. § 112 ..............................................................................................50, 78

35 U.S.C. § 154(a)(1)............................................................................................16

35 U.S.C. § 282 ............................................................................................. passim

U.S.C. § 271 ...................................................................................1, 6, 11, 54

Fed.R.Evid. 901(b)(1) .....................................................................................11, 14

**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| ROCKWELL AUTOMATION, INC. and ROCKWELL AUTOMATION TECHNOLOGIES, INC., <br><br> Plaintiffs, <br><br> v. <br><br> WAGO CORPORATION and WAGO KONTAKTTECHNIK GmbH & CO. KG, <br><br> Defendants. | Case No. 10-CV-718-WMC |

**PLAINTIFFS ROCKWELL AUTOMATION, INC. AND
ROCKWELL AUTOMATION TECHNOLOGIES, INC.'S
MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

**INTRODUCTION**

Defendants have not—and cannot—meet the required legal burden for summary judgment in this case. It is well settled law that summary judgment is proper only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56. Here, genuine issues of material fact abound, and Defendants are not entitled to judgment as a matter of law.

Defendants have raised the full range of noninfringement and invalidity arguments at their disposal, however flimsy, in the hopes that something will stick. Unfortunately, this leaves Rockwell with no choice but to answer in kind to preserve its rights and avoid prejudice, and the result is a morass of disputed facts for which resolution by summary judgment is inappropriate, but also unduly burdensome for the Court, which is left to its own devices to tease out which, if any, of Defendants' numerous positions are viable.

1

There are fundamental fact disputes between Rockwell's expert and Defendants' expert on matters of infringement and invalidity, including many genuine issues of material fact that have not been resolved.   Defendants have also ignored the Federal Rules of Evidence regarding authentication of several documents that Defendants purport support their argument.  More specifically, for their invalidity arguments against at least two of the asserted patents, Defendants rely on references that have not been authenticated and that Defendants have not shown to be printed publications.  These are additional genuine issues of material fact that have not yet been resolved.

In deciding this motion, the admissible evidence should be viewed in the light most favorable to Rockwell, and all reasonable inferences should be drawn in its favor.  For each of the asserted claims for the four asserted patents, Rockwell has made a prima facie case of infringement, and Defendants have offered insufficient and/or inadmissible rebuttal:

**U.S. Patent No. 7,123,974 -** Defendants' arguments as to why the accused products do not infringe the '974 patent hinge on ignoring the specification of the '974 patent and the plain meaning of the terms "recording component," "tracking component," and "data field."  (See § III.A infra.)  These terms, when properly given their plain meaning in light of the specification, offer no support for Defendants' arguments.

**U.S. Patent No. 6,801,813 -** Defendants' arguments against infringement of the '813 patent rely on a improper construction of the phrases "execution engine adapted to interpret code," and "execution engine that interprets instructions," which leverages dubious extrinsic evidence and is completely divorced from the specification of the '813 patent and the plain meaning of the claim terms.  When the claims are properly construed based on the intrinsic evidence and the plain meaning as understood by one of ordinary skill in the art at the time of the

2

invention, Defendants argument of noninfringement is extinguished.  Even if the Court adopts

Defendants' construction, Defendants' arguments are still not dispositive on the issue of

noninfringement, and there remain genuine issues of material fact left unresolved.  (See § III.B

infra.)

**U.S. Patent No. 7,065,415 -** Defendants have presented no argument as to why the

accused products do not literally infringe the asserted claims of the '415 patent, and have only

addressed a theory of infringement under the Doctrine of Equivalents which is not only based on

an assumed construction of claim terms, but is not even a theory of infringement that Plaintiffs

have ever put forth. (See § III.C infra.)  In other words, Defendants have done nothing to rebut

Rockwell's prima facie case of infringement of the '415 patent.

**U.S. Patent No. 6,745,232 -** Defendants have conceded to infringement of the '232

patent, but argue in defense that they are simply "practicing the prior art."  However, it is well

settled law that "practicing the prior art" is not a proper defense to patent infringement.

Rockwell thoroughly debunks this argument in this opposition (See § III.A infra.) and in its

motion for sanctions (see PPF, ¶ 22.)  Consequently, Defendants have put forth no viable defense

to literal infringement of the '232 patent.  Even for infringement under the Doctrine of

Equivalents, Plaintiffs show that Defendants arguments are not based on the accused products

themselves, and genuine issues of material fact associated with the gaps in Defendants' analysis

remain.

Similarly, Defendants' invalidity arguments rely on presumptuous interpretations of cited

references, many of which are unauthenticated and of questionable qualification as prior art.

Even if these open issues of authenticity and qualification are decided in Defendants' favor, the

3

invalidity issues reduce, at best, to a battle of the experts where summary judgment would still be inappropriate.

Given these circumstances, granting Defendants' motion for summary judgment is improper, and Rockwell requests that the motion be denied on all grounds.

## BACKGROUND

Rockwell filed this lawsuit because the Defendants have been infringing and continue to infringe the claims of four of Rockwell's patents relating to industrial control systems. These industrial control systems are used to monitor and control industrial processes, manufacturing equipment, and other factory automation. (PPF, ¶ 7 (Exh. AA, ¶ 21).) At the core of the industrial control system is a logic processor, typically termed a Programmable Logic Controller ("PLC"). (PPF, ¶ 7 (Exh. AA, ¶ 22).) A PLC uses a control program to measure one or more physical process inputs or other data variables reflecting the status of the industrial control system. (PPF, ¶ 7 (Exh. AA, ¶ 22).) This control program is a user-designed logic program that is created using a software editor residing on a personal computer, separate from the PLC. (PPF, ¶ 7 (Exh. AA, ¶ 24).) Once the instructions for the logic program are written by the user on the editor, the personal computer converts these instructions into a format compatible with that particular PLC's logic processor. (PPF, ¶ 7 (Exh. AA, ¶ 24).) The converted logic program is then downloaded from the personal computer to the PLC where it is stored in memory and eventually executed to perform one or more industrial control tasks. (PPF, ¶ 7 (Exh. AA, ¶ 24).)

### The '974 Patent - United States No. 7,123,974

Given the programmable nature of PLC systems, changes in operating conditions can easily be made to various aspects of the industrial control system. (PPF, ¶ 10.) Even the smallest change to the PLC or process data can place an immediate and significant consequence on the system. (PPF, ¶ 10.) The '974 patent (PPF, ¶ 1.) that is asserted in this lawsuit, addresses

4

this problem with an invention that automatically records and tracks relevant interactions with an industrial control system such as a PLC. (PPF, ¶ 10.) The ability to record and track control system interactions in real time represents improved process management for industrial control systems. (PPF, ¶ 10.)

### The '813 and '415 Patents - United States Nos. 6,801,813 and 7,065,415

PLCs typically had internal memory storage devices and data formats that were not readily accessible to the standard file systems of external computer systems. (PPF, ¶ 11.) Data storage was typically very limited on PLCs compared to typical computer systems. (PPF, ¶ 1, 11.) Rockwell's '813 and '415 patents provide for the use of an onboard file system to load and save data directly by the PLC. (PPF, ¶ 1.) This includes data exchange using removable storage media such as a USB drive or Compact Flash card. (PPF, ¶ 11.) The use of a standard file system now allowed direct exchange of PLC data with other computers using a compatible file system. The new file system increases PLC flexibility. The '813 patent, *inter alia*, covers systems and methods of employing the PLC file system to log and retrieve data to files using the PLC file system. (PPF, ¶ 12.) The '415 patent is a continuation of the '813 patent application and covers systems and methods directed to the software editor that allows a user to write control programs that utilize the file system on the PLC to log and retrieve data to files using the PLC file system. (PPF, ¶ 7 (Exh. AA, ¶ 20).)

### The '232 Patent - United States No. 6,745,232

Logic programs running within a PLC normally operate in a continuous cyclic manner. (PPF, ¶ 14.) Examination of the program while it is running requires the attachment of an online access tool. (PPF, ¶ 14.) However, examination of a running logic program using this access tool is especially difficult when the PLC is experiencing continuous and rapid changes in values.

(PPF, ¶ 14.)  The '232 patent (PPF, ¶ 1) covers, *inter alia*, an improved way of examining and providing runtime debugging and diagnostics of the PLC control program.  (PPF, ¶ 13-15.)

**The Defendants' Accused Products**

Defendants market and sell an industrial control system in the United States known as the WAGO-I/O-SYSTEM.  (PPF, ¶ 16.)  The WAGO-I/O-SYSTEM includes infringing PLCs that are used to control industrial systems.  (PPF, ¶ 17.)  The WAGO-I/O-SYSTEM also includes infringing software known as the WAGO-I/O-PRO CAA that users use to create control programs for the PLCs.  (PPF, ¶ 18.)  These infringing systems, devices, and software make up the products accused of infringement in this lawsuit (the "accused products").  (PPF, ¶ 19.).

**ARGUMENT**

**I.**

**APPLICABLE LEGAL STANDARDS**

**A.    SUMMARY JUDGMENT STANDARD**

Summary judgment is proper only if "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c).  A "material" fact is one that could affect the outcome of the case under the governing substantive law, and an issue of material fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); see Atlanta Attachment Co. v. Legget & Platt, Inc., 516 F.3d 1361, 1365 (Fed. Cir. 2008).

In determining whether a genuine issue of material fact exists, the court must not make credibility determinations or weigh conflicting evidence.  Anderson, 477 U.S. at 255.  Rather, the court must view the evidence in the light most favorable to the non-moving party, drawing all "justifiable inferences" in its favor.  Id. (internal citation omitted); see Atlanta Attachment Co.

516 F.3d at 1365; Group One, Ltd. v. Hallmark Cards, Inc., 254 F.3d 1041, 1045 (Fed. Cir. 2001) (internal citations omitted).  Where the party opposing summary judgment raises a genuine issue of material fact by proffering expert testimony in conflict with the positions of the moving party, summary judgment is properly denied.  See, e.g., Metro. Life Ins. Co. v. Bancorp Serv., L.L.C., 527 F.3d 1330, 1338-39 (Fed.Cir. 2008) (holding the "conflict in [expert] declarations created a genuine issue of material fact that made summary judgment inappropriate"). In determining whether summary judgment is appropriate, "credibility determinations may not be made, and the evidence must be viewed favorably to the non-movant, with doubts resolved and reasonable inferences drawn in the non-movant's favor."  Wanlass v. Fedders Corp., 145 F.3d 1461, 1463 (Fed.Cir. 1998).

Finally, patents are presumed to be valid.  35 U.S.C. § 282; see also Impax Labs v. Avemtis Pharma., 545 F.3d 1312, 1314 (Fed. Cir. 2008).  The party asserting the invalidity of a patent has the steep burden of proving invalidity "by clear and convincing evidence." PharmaStem.Therapeutics v. Viacell, Inc., 491 F.3d 1342, 1360 (Fed. Cir. 2007); see also SRAM Corp. v. AD Engineering Inc., 465 F.3d at 1357 ("a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of facts underlying invalidity that no reasonable jury could find otherwise").

**B.   PATENT INFRINGEMENT**

Determination of patent infringement requires a two-step analysis: (1) the scope of the claims must be construed; and (2) the allegedly infringing device must be compared to the construed claims to determine whether all of the claim limitations are present literally or by a substantial equivalent.  Mars, Inc. v. H.J. Heinz Co., 377 F.3d 1369, 1373 (Fed.Cir.  2004); Renishaw PLC v. Marposs Societa' per Azioni, 158 F.3d 1243, 1247-48 (Fed.Cir. 1998).  The patent-holder bears the burden of proving infringement by a preponderance of the evidence.

Lemelson v. United States, 752 F.2d 1538, 1547 (Fed.Cir. 1985).  Infringement, whether literal

or by equivalents, is a question of fact.  SRI Int'l v. Matsushita Elec. Corp. of Am., 775 F.2d

1107, 1125 (Fed.Cir. 1985) (citing Graver Tank & Mfg. Co. v. Linde Air Prods. Co., 339 U.S.

605 (1950)).

## C.    PATENT INVALIDITY

Under 35 U.S.C. § 282, issued patents are presumed valid. "[A] moving party seeking to

invalidate a patent at summary judgment must submit such clear and convincing evidence of

facts underlying invalidity that no reasonable jury could find otherwise." TriMed, Inc. v. Stryker

Corp., 608 F.3d 1333, 1340 (Fed.Cir. 2010) (internal quotation omitted).

### 1.    Anticipation Standard

"Invalidity by anticipation requires that the four corners of a single prior art document

describe every element of the claimed invention, either expressly or inherently."  TriMed, Inc.,

608 F.3d at 1343 (internal alterations and quotations omitted); see also 35 U.S.C. § 102.  In other

words, "[t]here must be no difference between the claimed invention and the reference

disclosure, as viewed by a person of ordinary skill in the field of the invention." Scripps Clinic

& Research Found. v. Genentech, Inc., 927 F.2d 1565, 1576 (Fed.Cir. 1991) (overruled on other

grounds by Abbott Labs. v. Sandoz, Inc., 566 F.3d 1282 (Fed.Cir. 2009).  Determining whether a

prior art reference anticipates a patent claim is a question of fact.  TriMed, Inc., 608 F.3d at

1343.

### 2.    Obviousness Standard

For a patent claim to be invalid as "obvious" (under 35 U.S.C. § 103 of the patent law) it

must be proven by clear and convincing evidence that the invention as a whole would have been

obvious to a person of ordinary skill in the art at the time the invention was made.  KSR Int'l Co.

v. Teleflex, Inc., 550 U.S. 398, 406 (2007).  In making this judgment, the court must step back in

time to the moment the invention was conceived, avoiding the use of hindsight or "ex post reasoning." Id. at 421.

Making an obviousness determination requires consideration of several relevant factual inquiries, including, "1) the scope and content of the prior art; 2) the differences between the prior art and the claimed invention; 3) the level of ordinary skill in the art; and 4) any relevant secondary considerations." Power-One, Inc. v. Artesyn Techs., Inc., 599 F.3d 1343 (Fed. Cir. 2010) (citing Graham v. John Deere Co., 383 U.S. 1, 17-18 (1966)). These so called "Graham factors" provide a framework for determining the obviousness or non-obviousness of the subject matter. Graham, 383 U.S. at 17. The fourth Graham factor includes consideration of secondary indicia of non-obviousness such as "commercial success, long felt but unsolved needs, [or the] failure of others" to achieve comparable results. Id. at 17-18. These secondary considerations can give rise to genuine issues of material fact. See Commonwealth v. Buffalo Tech., 542 F.3d 1363, 1377 (Fed. Cir. 2008) (concluding that "[t]he secondary consideration evidence, like the evidence with regard to the primary considerations, thus presents factual issues for a trier of fact."). While summary judgment in a patent case is certainly permissible, the Federal Circuit has noted that "[m]any, if not most suits for patent infringement give rise to numerous and complex fact issues, rendering those suits inappropriate for summary disposition." Cooper v. Ford Motor Co., 748 F.2d 677, 679 (Fed. Cir. 1984).

Further, when an invention is alleged to be obvious in light of the combination of two or more prior art references, "it can be important to indentify a reason that would have prompted a person of ordinary skill in the relevant field to combine the elements in the way the claimed new invention does." KSR, 550 U.S. at 418. The Supreme Court explained:

> Often, it will be necessary for a court to look to interrelated teachings of multiple patents; the effects of demands known to the design community or present in the

marketplace; and the background knowledge possessed by a person having
ordinary skill in the art, all in order to determine whether there was an apparent
reason to combine the known elements in the fashion claimed by the patent at
issue.

Id. Therefore, if there are disputed issues of fact as to these factors, or as to the reasonable

expectation of success from applying the prior art references to achieve the claimed invention,

which is also a question of fact, see Medichem, 437 F. 3d 1157, 1164-65 (Fed. Cir. 2006),

summary judgment on obviousness of a patent is not appropriate.

The Supreme Court in KSR also addressed the role of expert testimony in considering

summary judgment on obviousness.  Conflicting expert testimony can raise a genuine issue of

material fact precluding summary judgment as to the issue of obviousness.  KSR, 550 U.S. at

427 ("In considering summary judgment on [the] question [of obviousness] the district court can

and should take into account expert testimony, which may resolve or keep open certain questions

of fact").  The Federal Circuit, likewise, has found that, where experts present conflicting

opinions on a factual matter pertinent to a determination of obviousness, summary judgment is

often inappropriate.  See B-K Lighting, Inc., 375 Fed. Appx. 28, 33 (Fed. Cir. 2010) (holding

that a conflict in expert testimony over the content of a certain prior art reference precluded

summary judgment); Optical, 208 F.3d 1324, 1338-39 (Fed. Cir. 2000) (overturning grant of

summary judgment: "[i]n view of the conflicting [expert] testimony, we are not prepared to say

that no reasonable jury would believe [Rockwell's expert]").

## II.

## DEFENDANTS' PROPOSED FINDINGS OF FACT

A.   **MANY OF THE FACTS IN DEFENDANTS' PROPOSED
     FINDINGS OF FACT ARE NOT APPROPRIATE FACTUAL
     PROPOSITIONS FOR USE IN A SUMMARY JUDGMENT MOTION**

Defendants' Proposed Findings of Fact ("DPF"), Dkt. No. 53, proffers 574 paragraphs of

10

disputed facts that are necessary for the Court to decide before determining whether summary judgment is appropriate in this case. These disputed facts are, in many instances, <u>inadmissible</u> to support Defendants' summary judgment motion because they have not been properly authenticated and are otherwise subject to a motion for preclusion under Rule 37 of the Federal Rules of Civil Procedure.

The arguments in Defendants' motion are based on an analysis of "prior art" manuals that Defendants allege (1) disclose the inventions described in the '974 and '232 patents, and (2) were publicly available more than a year prior to the filing dates of these patents. (Def. Brief in Support of Motion for Summary Judgment ("Def. Br."), pp. 37, 70.) Defendants, however, have provided no admissible proof of the source, authenticity, or publication of these manuals. Absent this proof, Defendants have nothing to prove noninfringement and invalidity of the '974 and '232 patents.

1.      **Defendants' Proposed Findings of Fact Are**
        <u>**Not Supported By Admissible Evidence**</u>

Each proposed finding of fact submitted in support of a motion for summary judgment "must be supported by admissible evidence." (<u>PPF</u>, ¶ 20); Fed. R. Civ. P. 56(c) and (e). For evidence to be admissible, it must be authenticated as required by Federal Rule of Evidence 901. Fed.R.Evid. 901(b)(1). While documents may be authenticated by affidavit, "the individual who authenticates the documents must have personal knowledge of their authenticity." <u>Frazier v. Layne Christensen Co.</u>, No. 04-C-315-C., 2006 WL 6041120, *23 (W.D.Wis. Feb. 21, 2006).

While the requisite "personal knowledge" may include reasonable inferences, those inferences must be "grounded in observation or other first-hand personal experience." <u>Microsoft Corp. v. Ram Distribution, LLC,</u> 625 F.Supp.2d 674, 680 (E.D.Wis. 2008) (citing references omitted). On a motion for summary judgment the "court must not consider parts of an affidavit

11

that are not based on personal knowledge" and "may strike portions of an affidavit that do not meet the personal knowledge requirements of Rule 56(e)." Id. (citing references omitted).

Defendants have asked the Court to consider the following inadmissible evidence:

- excerpts of a GE Fanuc Automation's Cimplicity manual (Ex. 5),

- excerpts of a 3-S Smart Solutions's ("3-S") CoDeSys version 1.5 manual (Ex. 6);

- excerpts of a 3-S's CoDeSys version 2.2 manual (Ex 7);

- excerpts of a National Instruments' LabVIEW manual (Ex. 11);

- excerpts of Triangle Research's programmer's reference to TriLogi (Ex. 15);

- excerpts of a WAGO Kontakttechnik's WAGO-I/O-PRO manual (Ex. 39)

(collectively, the "manuals").

The manuals, however, are not self authenticating and are unsupported by an affidavit of a person having first hand knowledge and in a position to testify as to their authenticity. See Dkt. Nos. 57-59. Instead, the manuals were attached to the declaration of Defendants' counsel, who avers no personal knowledge regarding these documents. See Dkt. Nos. 57 and 59. It is without question, that an affidavit from an attorney simply stating that he has attached a true and correct copy of a document is wholly insufficient to authenticate that document. See Latosky v. Strunc, No. 08-C-771, 2009 WL 1073680, * 4 (April 21, 2009, E.D.Wis., 2009) (stating that a declaration from a movant's attorney attaching a police report alone is insufficient to authenticate a document as the attorney is not a "witness" or a "custodian of the report" and "has no personal knowledge of the incident reported."); Gessert v. U.S., 627 F. Supp. 2d 942, 945 n.1 (E.D. Wisc. 2009) (striking summary exhibits submitted in support of summary judgment motion because there was no "testimony through affidavit or otherwise properly authenticating these documents").

Exhibits 5-7, 11 and 15 do not appear to be documents created by Defendants, but instead are third party documents, making the leap regarding personal knowledge even greater.  See Dkt. No. 57, Exhs. 5-7, 11 & 15.  Moreover, Defendants cannot save their submissions by arguing that the manuals are business records, as such records still need to be authenticated.  See Woods v. City of Chicago, 234 F.3d 979, 988 (7th Cir. 2000) (At the summary judgment stage, a "party seeking to offer the business record must attach an affidavit sworn to by a person who would be qualified to introduce the record as evidence at trial, for example, a custodian or anyone qualified to speak from personal knowledge that the documents were admissible business records.").

Further, Rockwell served multiple discovery requests on Defendants requesting that Defendants admit that the manuals that they produced in discovery were authentic or otherwise admissible into evidence at trial.  (PPF, ¶ 21.)  Defendants' response stated denied these requests and stated:

> **Defendants Objections and Response to Plaintiffs' Request for Admission No. 8:**
>
> "[T]he vast majority, and perhaps all, of the material produced by Defendants in discovery lack indicia of authenticity as set forth in Federal Rules of Evidence 901 and 902.
>
> Accordingly, Defendants deny 'that all of the documents and things sent to Plaintiffs by Defendants pursuant to Plaintiffs' requests for documents and things in this litigation are authentic as that term is defined in Federal Rules of Evidence 901(a).'" (PPF, ¶ 21.)

Rockwell requested that Defendants admit that the manuals produced in discovery are: (1) "genuine and authentic"; (2) "admissible into evidence at the trial of this proceeding"; (3) "are business records of the party or person that created them"; and (4) "authentic as that term is defined in Federal Rule of Evidence 901(a)".  (PPF, ¶ 21.)  Defendants denied each and every one of these requests to admit.  (PPF, ¶ 21.)  Defendants also stated that "Defendants deny 'that the document, manuals, data sheets and other materials that are maintained and available for

view or download on Defendants' websites (www.wago.us and www.wago.com) are genuine and

authentic as that term is dfeined in Federal Rule of Evidence 901(a)" and that that they are <u>not</u>

"admissible into evidence at a trial in this proceeding.'" (<u>PPF</u>, ¶ 21.)

Thus, in Defendants own words, the "prior art" manuals attached to Defendants Proposed

Findings of Fact at Exhibits 5-7, 11, 15 and 39 "lack indicia of authenticity" and "are not

admissible into evidence."  Absent this proof Defendants are left with nothing to support their

arguments of invalidity and noninfringement of the '974 and '232 patents.

### 2. Defendants Have Failed to Prove that the Asserted "Prior Art" Manuals Qualify as Printed Publications Under 35 U.S.C. § 102(b)

Even if Defendants had properly authenticated Exhibits 5-7, 11, 15 and 39 and had shown

the documents are true and correct by an affidavit from a person in a position to testify about the

authenticity of the documents, there remains a question of fact as to whether these documents

actually qualify as printed publications under the patent statute.  Defendants bear the burden of

establishing by clear and convincing evidence that these references were publicly available prior

to the invention dates of the asserted patents.  <u>ResQNet.com, Inc</u>. v. <u>Lansa, Inc</u>., 594 F.3d 860,

865 (Fed. Cir. 2010) ("Public accessibility is the touchstone in determining whether a reference

constitutes a printed publication. . . .") (internal quotation marks omitted).  Defendants have

failed to carry this burden.

Defendants' proposed findings of fact state, without any support whatsoever, that the

various references "pre-date" the filing dates of the asserted patents.  <u>See</u> DPF Nos. 22, 33, 370,

437, 471.  There is a genuine issue of material fact as to whether any of these references are

"printed publications" in terms of 35 U.S.C. § 102, and thus available as evidence of anticipation

or obviousness.  The lack of any evidence to authenticate these documents raises genuine issues

of material fact as to the source, publication, and public accessibility of these references.  <u>See</u>

14

ResQNet, 594 F.3d at 865.  No witness has testified about the circulation and availability of these references, nor has any evidence been presented that any of these documents were ever published or disseminated to the public.  See id.  Accordingly there remains a disputed question of fact as to whether these references qualify as printed publications under the patent statute.

      **3.**     **The "Prior Art" References Were Not Provided In Defendants' Expert Report On Invalidity and are Inadmissible Pursuant to Rockwell's Motion for Sanctions**

Moreover, Defendants' invalidity arguments regarding the CoDeSys 1.5, CoDeSys 2.2 and WAGO-I/O-PRO 1999 manuals are supported by belated, unrebutted testimony from their expert.  This expert testimony was not included in Defendants' expert's opening report on invalidity and is subject to Rockwell's pending motion for sanctions.  See Dkt. No. 35. Defendants should be precluded from supplying this belated, prejudicial evidence on a motion, at a hearing, or at trial which is in violation of the Court's Preliminary Pretrial Order and Rule 26 of the Federal Rules of Evidence.[1]  (PPF, ¶ 22.)

---

[1]    Defendants' "Proposed Findings of Fact" (Dkt. No. 53) include facts supported by "Hooper II" that relate to arguments of invalidity, such as, paragraph 26 of the DPF, which Defendants cite in support of arguments under the heading VI(B)(2)(a) "Invalidity Under 35 U.S.C. § 102, 103" in Defendants brief. Since these arguments are supported by Hooper II, which violates the Court's rules, these proposed findings of fact should be stricken from the record. If the Court were to allow these untimely opinions from Hooper II, Rockwell would need to be given a chance to respond to these new opinions, which would create a new round of expert reports that would be extremely costly and prejudicial to Rockwell in light of the schedule in this case.

## III.

## PATENT INFRINGEMENT

As owner of the '974, '813, '415, and '232 patents (the "patents-in-suit"), Rockwell has the right to exclude others from making, using, offering for sale, selling, and importing the inventions covered by these patents.  35 U.S.C. § 154(a)(1).  Rockwell's expert has provided opinions and evidence that Defendants' accused products infringe the claims of the patents-in-suit by comparing the accused products with each and every one of the requirements of the asserted claim and determining that the products are covered by at least one claim of each of these patents.  (PPF, ¶ 23.)  Rockwell's expert found the requirements of the claims in the accused products exactly as it is in the claims (literal infringement) and in a manner equivalent to what is in the claims (infringement by equivalence). (PPF, ¶ 23.)  For the reasons set forth herein Defendants have failed to show the absence of a genuine issue of material fact on the issue of noninfringement and their motion should be denied.

## A.     THE '974 PATENT

### 1.     Defendants Have Not Shown An Absence of Material Fact Entitling Them to Summary Judgment of Non-Infringement of the Claims of the '974 Patent

Defendants' argue that Rockwell has failed to show that "each element of a claim is material and essential" and that "for a court to find infringement, the plaintiff must show the presence of every element or its substantial equivalent in the accused device." (Def. Br., p. 33, ¶ 1 quoting Lemelson v. United States, 752 F.2d 1538, 1551 (Fed. Cir. 1985)). Rockwell, however, has met this burden by presenting evidence that the accused products contain each and every element, or the substantial equivalent, of claims 1-3, 5, 6, 9, 10, 14, 16, 24 and 29 of the '974 patent.  (PPF, ¶ 25.); Once a patentee with the burden of proof makes a prima facie showing of infringement as to each accused device, the burden shifts to the accused infringer to offer

16

contrary evidence.  L&W, Inc. v. Shertech, Inc., 471 F.3d 1311, 1318 (Fed. Cir. 2006).

The basis for Defendants' noninfringement arguments is two-fold.  First, they contend that the claimed "recording component" and "tracking component" of claim 1 and the logging and aggregating step of Claim 24, in each case, require two separate and distinct components. (Def. Br., pp. 33–34).  As shown below, these contentions are unsupported by the intrinsic evidence of the patent. Even if these contentions were true, which they are not, Rockwell has shown that the accused products would still infringe the claims of the '974 patent.  (See infra at § III.A.(2).)  Second, Defendants contend that even though their accused products may infringe the patent, they are simply practicing the prior art as seen in the CoDeSys 2.2 reference.  (Def. Br., pp. 35–36)  The Federal Circuit, however, has repeatedly held that this sort of "practicing the prior art" defense is not a viable defense.  See Zenith Electronics v. PDI Communications Systems., 522 F.3d 1348, 1363 (Fed. Cir. 2008); (citing Tate Access Floors v. Interface Architectural Resources, 279 F.3d 1357, 1367 ("[A]ccused infringers are not free to flout the requirement of proving invalidity by clear and convincing evidence by asserting a "practicing prior art" defense to literal infringement. . . .").  Accordingly, summary judgment regarding noninfringement of the asserted claims of the '974 patent should not be granted.

     a.    *Claim 1 - Defendants' Non-Infringement Argument is Based on an Improperly Narrow Construction of the Claim and a Mischaracterization of Rockwell's Theory of Infringement*

Rockwell has presented evidence showing that every element of claim 1 is present in the accused software products.  (PPF, ¶ 26).  Claim 1 reads as follows:

    1.  An electronic audit system for an industrial control environment, comprising:

        a recording component to log real time interactions with one or more industrial control components; and

> a tracking component to aggregate the real time interactions to facilitate generation of audit data relating to the one or more industrial control components.

Rockwell's expert tested the accused products, compared the functionality of the products to the claim, and found that the accused products include both a recording component  and a tracking component (PPF, ¶ 27.), as recited in the claim.

    i.  *The Intrinsic Evidence and Argument-Based Estoppel Do Not Support Defendants' Narrow Construction of the Recording and Tracking Component of Claim 1*

Defendants argue that during prosecution Rockwell "described the 'recording component' and the 'tracking component' as being distinct features," implying that the accused products do not infringe claim 1 because, according to Defendants (incorrectly), the recording component and tracking component are provided by "the same software feature."  See (Def. Br., p. 33, ¶ 3).

Defendants are asking—in a roundabout way—that the Court construe the "recording component" and the "tracking component" of claim 1 to be two separate and distinct components.  This construction is at direct odds with the '974 patent specification which describes that the recording and tracking component can be the same component.  Tellingly, Defendants do not attempt to argue that the '974 specification discloses otherwise, but instead base their argument on the prosecution history of the '974 patent.

The specification of the '974 patent states: "One or more components may reside within a process and/or thread of execution and a component may be localized on one computer and/or distributed between two or more computers."  '974 patent, col. 4, lines 45–49.

Figure 2 of the patent provides a diagram of the "RECORDING & TRACKING COMPONENT" at item 170 representing the two as a single component. (PPF, ¶ 28.)

18



Excerpts of figures from the '415 Patent

Fig. 2

Fig. 8

Likewise, Figure 8 of the patent diagrams the "RECORDING AND/OR TRACKING COMPONENT" as a single component.  (PPF, ¶ 28.) The description for figure 8 explains that the recording and tracking functions can reside in the same component known as the RT component:

> "FIG. 8 is a diagram 700 illustrating various applications that can be employed with a recording and/or tracking component 710 (also referred to as an RT component 710) in accordance with an aspect of the present invention.  The RT component 710 is employed to record and track interaction data and control access to a database server."

(PPF, ¶ 29.) '974 Patent, col. 10, lines 18-23.   The specification states that "[i]n accordance with one aspect of the present invention, a recording and tracking component 170 (can be separate

components as described above) is provided to record and store data associated with the

interactions . . . ."  (PPF, ¶ 30.) '974 Patent, col. 6, lines 23-29.  It could not be any clearer that

the specification contemplates that the recording component and tracking component of claim 1

can be the same component or "can be separate components.  (PPF, ¶ 30.)

Since it is clear that the '974 specification states that the recording and tracking functions

can either be one component or separate components, and it would be hopeless to argue

otherwise, Defendants instead argue that arguments Rockwell made during the prosecution of the

'974 patent act to limit the scope of the claims to require two, separate and distinct components.

(Def. Br., p. 33–34).  Rockwell has done no such thing and its arguments do not conflict with the

scope of the recording and tracking component in the specification.  In fact, Rockwell's

arguments during prosecution had nothing to do at all with whether the recording component and

the tracking component are required to be two, separate and distinct components; Rockwell's

arguments during prosecution merely pointed out the differences between a reference cited by

the examiner, which taught periodic updating of a customer server, versus the real-time

interactions recited in the claims:

> The Examiner attempts to compensate for the deficiencies of Mizuno *et al.* by
> providing Kambharnmettu *et al.,* which allows for auditing and tracking changes
> to various applications to maintain changes in a database. On Page 4 of the Office
> Action, the Examiner erroneously attempts to equate the real-time industrial
> interactions as taught in the claimed invention with periodic updating of a
> customer server as in Kambhammettu *et al.* Under the conditions of
> Kambhammettu *et al.,* a program change is recorded as part of a check-in
> procedure to a database. However, this change reflects the final result of such
> changes, and does not record all changes as they are occurring. Consequently,
> intermediate changes or other program interactions *may* go unrecorded — thus, the
> electronic audit system of Kambhanunettu *et al.* does not provide for the
> comprehensive industrial interaction analysis that the claimed feature of logging real-
> time interactions does. Moreover, the claimed invention discloses a recording
> component to log real time interactions and a tracking component to aggregate real-
> time interactions. Thus, the claimed invention is recording and aggregating all changes
> as they are taking place. To the contrary, Kambhammettu et al. requires suspending

audits between check out and check in procedures — an inconvenience that the
claimed invention in part strives to mitigate.

(PPF, ¶ 31. (emphasis added).)

In context, it is clear that Rockwell was arguing a point related to logging interaction in

"real time" versus "periodic", which is unrelated to whether or not the recording component and

tracking component are distinct, separate components.  Here, whatever territory—if any—

surrendered by Rockwell's during prosecution has nothing to do with whether the recording

component and the tracking component are distinct and there is nothing in the patent specification

or the prosecution history to support Defendants' argument.[2] See Festo Corp. v. Shoketsu Kinzoku

Kogyo Kabushiki Co., 535 U.S. 722, 733–34 (2002) (noting that when the "patentee originally claimed

the subject matter alleged to infringe but then narrowed the claim in response to a rejection, he may not

argue that the surrendered territory comprised unforeseen subject matter that should be deemed

equivalent to the literal claims of the issued patent").  Accordingly, the Court should not narrow the

scope of this claim to require the recording and tracking components to be two separate and distinct

components.  Once the claims are construed in light of the intrinsic evidence, Defendants have no

remaining argument of noninfringement of claim 1 of the '974 patent and summary judgment must be

denied.

---

[2] Since there is no argument-based estoppel with regard to the recording and tracking component,
infringement under the doctrine of equivalents is still available to Rockwell and has been shown by
Rockwell's expert.  (PPF 25, 26.)

ii.   *Defendants Infringe Claim 1 Even if the Court*
*Construes the Claims To Require Two Separate*
<u>*Recording and Tracking Components*</u>

Even if this Court were to accept Defendants' contention that the recording and tracking

features are required to be two separate, and distinct components, Defendants have still not rebutted

Rockwell's infringement arguments.  Defendants contend that Rockwell's theory of infringement of

Claim 1 of the '974 patent accuses "the CoDeSys log file" itself as both the recording component and

the tracking component.  (Def. Br., at 32).  This is not Rockwell's theory of infringement.

Rockwell's expert explained at his deposition that the recording component of the accused

products "would be in the CoDeSys user interaction feature where it's monitoring what [user] is

doing.  And if it falls into a certain category, it will record that interaction."  (<u>PPF</u>, ¶ 32.).

Rockwell's expert further explains that through his testing he observed that the accused products

provide a component to monitor and record various user actions, internal actions, status changes

and exceptions in real time.  (<u>PPF</u>, ¶¶ 33-34.)  Rockwell's expert's does not state that the "log

file" itself serves as the recording component.  (<u>PPF</u>, ¶¶ 33-34.)  Accordingly, Defendants have

mischaracterized Rockwell's theory of infringement in an attempt to create a controversy where

none exists.  Accordingly, there remains a genuine issue of material fact whether the accused

products contain a recording and tracking component as described in Claim 1 of the '974 patent.

b.   *Claim 24 - Defendants' Non-Infringement Argument*
*Relies on an Improper Narrow Construction and*
*on Alleged Structural Distinctions Where the Claim is*
<u>*Directed to a Method*</u>

Defendants have not shown that they are entitled to judgment as a matter of law with

respect to claim 24 either.  Rockwell's expert has presented evidence showing every element of

claim 24 is present in the accused products.  (<u>PPF</u>, ¶ 35.).  Claim 24 reads as follows:

24. A method for verifying an industrial control process, comprising:
monitoring activity data directed to one or more control components;

22

tagging at least one file that is related to the or more control components;
logging the activity data in at least one of a local and a remote location; and
aggregating the logged activity data in the at least one file.

Rockwell's expert has tested the accused products, compared the accused products to claim 24, and presented evidence showing that each of the elements in claim 24 is found in the accused products.  (PPF, ¶ 36.)  Defendants' expert, by contrast, has not relied on testing results of the accused products and has done nothing more than make conclusory statements that the accused product "simply includes basic logging functionality" (DPF, ¶ 11 (Dkt. No. 61, ¶ 186).) and cites without any support that the accused product "includes no notion of tagging a file" (DPF, ¶ 11 (Dkt. No. 61, ¶ 191).) and "no functionality for aggregating."  (DPF, ¶ 11 (Dkt. No. 61,¶ 195).)  Defendants' expert provides no support or explanation for his opinions that the accused products cannot tag files or aggregate data in the file as required by Claim 24.  Since there is no support for their noninfringement position, Defendants try a different tack in their opening brief.  Defendants contend that Rockwell has argued during prosecution that claims 1 and 24 "recite similar limitations," and because the accused products' "log file does not meet claim 1's requirement of having a distinct 'recording component' and 'tracking component', claim 24 must also require "having distinct steps of 'logging the activity data in at least one of a local and a remote location' and 'aggregating the logged activity data in the at least one file.'" (Def. Br., p. 34, ¶ 2.)

There are at least three problems with Defendants argument.  First, Rockwell has shown above that neither the specification nor the claim language of claim 1 requires that the recording component and the tracking component be distinct; if the argument fails for claim 1, it fails for

claim 24.[3]  Second, claim 24 is a method claim, while claim 1 is a system claim.  The limitations

in claim 1 and claim 24 may be similar, but they are not identical.  There is nothing in the '974

specification or the language of claim 24 that requires that the logging of activity data and the

aggregating of the logged activity data be distinct and Defendants have not cited anything

contrary.  Third, regardless of how it's accomplished, if the accused products perform each of the

recited steps in the method claim, as Rockwell's expert has clearly shown, the products infringe

the claim, whether the steps are distinct or not.  If the accused products contain every element of

a patent claim or its substantial equivalent, there is infringement.  Lemelson v. United States, 752

F.2d 1538, 1551 (Fed. Cir. 1985).  For all of these reasons, Defendants are not entitled to

judgment as a matter of law regarding noninfringement of independent claim 24.

> c.  *Claim 29 - Defendants' Non-Infringement Argument Is Based on an Improperly Narrow Construction of the Claimed "Data Field" Which is Not Supported By the Record Before the Court*

Defendants are also not entitled to judgment as a matter of law with regard to claim 29.

Rockwell's expert has presented evidence showing every element of claim 29 is present in

Defendants' software products.  (PPF, ¶ 37.).  Claim 29 reads as follows:

> 29. A computer readable medium having stored thereon a data structure, comprising:
>
> a first data field representing real time access data to an industrial control component;

---

[3]  Similar to their arguments for claim 1, Defendants are careful not to argue, nor could they, that the specification supports their narrow construction that would require the Court to limit the logging step and the aggregating step to be achieved by two, separate and distinct components.  The specification provides no such limitations.

a second data field representing a tag name to store and aggregate the real time access data; and

a third data field to categorize the real time access data.

The accused products include a data structure with the first, second, and third data fields, as recited in claim 29.  (PPF, ¶ 38.)  Defendants argue that the log file is a binary file and therefore cannot have data fields. (Def. Br., p. 34, ¶ 4), (DPF, ¶ 11 (Dkt. No. 61,¶ 199.)).  They reach this conclusion by applying a narrow definition to the term "data field" that is not supported by the plain meaning of the term nor by the specification of the '974 patent.  Moreover, the definition now proposed by Defendants, is completely different than the definition they proposed pursuant to the parties' exchange of terms and proposed constructions" under the Court's Preliminary  Pretrial Conference Order.  (PPF 5.)  As shown in the table below:

| Proposed Definitions of **"Data Field"** | |
|---|---|
| Defendants' Currently Proposed Definition (IBM Dictionary of Computing, 1987) | In IMS/VS, any designated portion of a data base segment. A segment may contain one or more data fields. |
| Defendants' Initial Proposed Definition (Plain Meaning) | a subdivision of a computer record treated as a distinct unit and constituting part of the computer record for purposes of input, processing, output, or storage |
| Rockwell's Proposed Definition (Plain Meaning) | a subdivision of a computer record or a computer program where data can be entered or stored |

Initially, Defendants argued that the term "data field" should be given its "plain meaning," which Defendants offered as:

a subdivision of a computer record treated as a distinct unit and constituting part of the computer record for purposes of input, processing, output, or storage

(PPF, ¶ 39.)  Defendants' proposed definition was based on plain meaning, the disclosure of the '974 patent, and a common dictionary definition. (PPF, ¶ 40.)

In response to Defendants' proposed construction, pursuant to the Court's Pretrial Conference Order, Rockwell also proposed that "data field" be given its plain meaning and offered the following definition:

> a subdivision of a computer record or a computer program where data can be entered or stored

(PPF, ¶ 41.).  Under either "plain meaning" definition provided by the parties, the data structures in the accused software products have data fields, and thus infringe claim 29 of the '974 patent. (PPF, ¶ 42.)  Defendants, faced with this reality, are now changing their tune and now argue that "data field" is "not a term that would be understandable to a layperson." (Def. Br., p. 34, ¶ 4), but rather is "specialized terminology relating to databases."  (Id. at pp. 34–35.)  As support for this argument, Defendants point to a definition from the IBM Dictionary of Computing, published in 1987:

> **data field**  In IMS/VS, any designated portion of a data base segment. A segment may contain one or more data fields.

(PPF, ¶ 43.)

Defendants have not explained why an IBM Dictionary published in 1987—fifteen years before the filing date of the '974 patent—would be the best guide to understanding what the term "data field" meant to a person of ordinary skill in the art at the time of the invention.  Nor have they explained why this definition, which is applicable to a specific IBM product, the IMS/VS product, should be applied to the claims of the '974 patent.

Defendants have abandoned their previous definition and cherry picked a new definition that better suits them.  But that definition clearly states that it is limited to "IMS/VS" which stands for Information Management System/Virtual Storage, a proprietary database product sold by IBM.  (PPF, ¶ 47.)

26

Defendants' proposed definition of "data field" is an IBM-specific term and has no applicability here.  Defendants strain to show the applicability of the IBM-specific definition by asserting that the '974 patent makes a connection between a database and a tracking component, noting that the patent discloses that "a tracking component aggregates such interactions in a file or record stored in a local or remote database."  (Def. Br., p. 35 ¶ 1, quoting the Abstract of the '974 patent.)  This language merely states that a file may be stored in a database—it does not transform the claimed invention into an IBM-specific product to which the 1987 IBM definition would apply.

Defendants' citation to the 1987 dictionary is questionable for other reasons.  Defendants have chosen to cite to the 1987 edition when a more recent edition of the IBM Dictionary of Computing, published in 1994—closer to the filing date of the '974 patent—is widely available. The back cover of the 1994 edition notes that the dictionary was being made available to the general public for "the first time ever," meaning that the 1987 version *was not* available to the general public.  (PPF, ¶¶ 49-50.)  It was an IBM-specific publication. (PPF, ¶ 48.)   The 1994 edition further states in the preface:  "Although this is the tenth edition of the *IBM Dictionary of Computing*, it is the first edition to be made generally available to the public."  (PPF, ¶ 50.) Even more damning, in the 1994 edition, the IBM-specific definition of "data field" cited by Defendants is the second listed definition.  (PPF, ¶ 51.) The first listed definition of "data field" in the 1994 edition is much broader—consistent with the plain meaning of the term:

**data field**  A component of a record corresponding to an attribute.

(PPF, ¶ 51.)

The accused products would infringe claim 29 under this more current IBM definition of "data field."  Thus, Defendants' argument that the "binary" log files created by the accused products cannot have data fields is contrary to the plain meaning of the term "data fields" and

contrary to the specification of the '974 patent, which notes that there are many ways to transfer data to and from a database or control component, including "in the form of binary or other type data packets that convey configuration and/or status information." (PPF, ¶ 52.)  Furthermore, formatting specifications for log files associated with the accused products clearly exhibit segmentation into data fields, despite also stating that, "The format of the CoDeSys log file is binary," thus undermining Defendants' argument that binary files cannot have data fields. (PPF, ¶ 53.)  Therefore, the Court should not adopt Defendants definition of "data field" and should adopt the plain meaning of the term which is "a subdivision of a computer record or computer program where data can be entered or stored."  Because Defendants have offered nothing more than conclusory statements and ill-fitting definitions as support for their noninfringement position, summary judgment of noninfringement is inappropriate.[4]

>   **2.     Defendants Cannot Establish That They Are Entitled to Judgment As A Matter of Law That the Claims of the '974 Patent Are Not Infringed or Are Otherwise Anticipated By the CoDeSys 2.2 Reference**

>>     a.     *Under Federal Circuit Law, Defendants Are Not Permitted to Argue No Literal Infringement Based on Their Practicing the Prior Art of the CoDeSys 2.2 Reference*

Rockwell's expert has proffered detailed evidence demonstrating that the Defendants literally infringe claims 1-3, 5, 6, 9, 10, 14, 16, 24 and 29 of the '974.  (PPF, ¶ 55.)  To rebut this evidence, Defendants argue "Plaintiffs' theory of infringement of the '974 Patent is based on features of [the accused product] which are carried over from an earlier version of CoDeSys."

---

4     Even if the Court were to adopt Defendants' latest definition, there remains a question of fact as to whether Defendants' accused log files could be considered to have these "data fields".  (PPF  54.)

(Def. Br. at 35.)  The basis for Defendants' argument results solely on Defendants' expert's comparison of the features of a manual related to the accused products (CoDeSys 2.3) and the CoDeSys 2.2 manual.  (Def. Br. at 35-35 (citing DPF, ¶ 436).)  Defendants have characterized their expert's "manual comparison" exercise as showing that Defendants are simply "practicing the prior art."  (PPF, ¶ 22.)  Defendants have conceded that the evidence used to support their "practicing the prior art" defense may only be presented in "defense to Plaintiffs' claims of infringement based upon the doctrine of equivalents" and that "there is no 'practicing the prior art' defense to literal infringement."  (PPF, ¶ 22. (quoting Koito Mfg. Co. v. Turn-Key-Tech, LLC, 381 F.3d 1142, 1153 (Fed Cir. 2004).)  Defendants again concede that the Federal Circuit has "made [it] unequivocally clear . . . that there is no 'practicing the prior art' defense to literal infringement."  Tate, 279 F. 3d 1357, 1365 (Fed. Cir. 2002) (emphasis added) (squarely rejecting Defendants' argument "that regardless of the proper claim construction, its panels cannot literally infringe because they merely practice the prior art, or that which would have been obvious in light of the prior art.").)

In Zenith, the Federal Circuit explained that "the defense of noninfringement cannot be proved by comparing an accused product to the prior art."  Zenith, 522 F.3d 1348, 1363 (Fed. Cir. 2008); (citing Tate, 279 F.3d 1357, 1367 ("[A]ccused infringers are not free to flout the requirement of proving invalidity by clear and convincing evidence by asserting a "practicing prior art" defense to literal infringement. . . .").)  For this reason, Defendants cannot rely on a comparison of the manuals of the accused products to the CoDeSys 2.2 manual to show no literal infringement.  Accordingly, Defendants have failed to show that there is no genuine issue of material fact regarding whether they literally infringe the claims of the '974 patent.

      b.    *Defendants Have Not Shown That There*
            *is No Genuine Issue of Material Fact*
            *Regarding Whether They Infringe the Claims*
            <u>*of the '974 Patent Under the Doctrine of Equivalents*</u>

Rockwell's expert has proffered evidence that Defendants infringe claims 1-3, 5, 6, 9, 10, 14, 16, 24, and 29 of the '974 patent under the doctrine of equivalents. (<u>PPF</u>, ¶ 56.)  Defendants' brief provides no analysis or evidence to argue against Rockwell's claims and instead simply argue that a comparison of the manual for the infringing product is somewhat similar to the CoDeSys 2.2 reference.  Rockwell is not asserting that Defendants manuals infringe the asserted claims of the '974 patent, rather they are asserting that the accused products themselves infringe the claims.  Moreover, simply because two manuals state that they have similar names for <u>features</u> does not prove that they perform those features in the same manner whatsoever. Tellingly, as explained at his deposition Defendants' expert conceded that his noninfringement analysis for the '974 patent amounted to nothing other than comparing sections of manuals:

> 3    Q. So the CoDeSys 2.2 product contains a recording
> 4  component to log real-time interactions with one or more
> 5  industrial components, correct?
>
> 6    A. No, I did not -- I did not opine that that was
> 7  correct, and I would have to do further analysis to opine
> 8  in that regard.
>
> 9    Q. So you don't know whether or not the CoDeSys 2.2
> 10  or the CoDeSys 2.3 indeed contain functionality that meets
> 11  the claim element, a recording component to log real-time
> 12  interactions with one or more industrial control
> 13  components, correct?
>
> 14    A. That's correct.

(<u>PPF</u>, ¶57; <u>see also</u> <u>PPF</u>, ¶ 58 (explaining that he never tested any prior versions of the accused products.).)

Accordingly there remains a genuine issue for trial whether Defendants' infringe the claims of the '974 patent under the doctrine of equivalents.

**B.**   **THE '813 PATENT**

Asserted independent claims 1 and 21 of the '813 patent recite,

> 1.   An industrial controller system, comprising:
>
> a file system residing in a program memory of an industrial controller, the file system having a plurality of file system services; and
>
> an execution engine residing in the program memory of the industrial controller, the execution engine adapted to interpret code from an industrial control program, the industrial control program including at least one instruction utilizing one or more of the plurality of file system services.

and,

> 21. A method for providing an industrial controller with the functionality associated with utilizing a file system residing in the industrial controller, the method comprising:
>
> developing a file system and loading the file system on an industrial controller, the file system having a plurality of file system services; and
>
> developing an execution engine that interprets instructions of an industrial control program that utilizes at least one of the plurality of file system services.

Rockwell has alleged infringement of these claims, as well as of dependent claims 2-7, 10-17, 20 and 22, by the accused products. (PPF, ¶ 59.)

Defendants' sole argument regarding noninfringement of the '813 patent requires a construction of the terms "execution engine," "adapted to interpret code," and "interprets instructions" found in claims 1 and 21 of the '813 patent. Defendants argue that the term "execution engine" should be narrowly construed to mean "code interpreter" and that the terms "adapted to interpret code" and "interprets instructions" should be narrowly construed to mean "the operation of interpreted computer code as excluding the operation of compiled computer code." (Def. Br., p. 28, ¶ 2.) As shown below, Defendants' proposed constructions are based on extrinsic evidence, specifically a draft definition from a dictionary preceding filing of the '813 patent by 14 years and which, according to the dictionary itself, is disputed.  (PPF, ¶ ¶ 44, 46.)

By contrast, Rockwell asserts that these terms should be given their plain meaning in light of the specification of the '813 patent, as shown in the following table:

| Proposed Claim Constructions of: "…execution engine adapted to interpret code…" "…execution engine that interprets instructions…" | | |
| --- | --- | --- |
| Party | Source | Construction |
| Defendants | Extrinsic Evidence | A run-time system, limited to a code interpreter, that transforms one statement of code/instructions at a time of a program written in an interpreted language into a sequence of machine actions and executes the statement immediately in a program before going on to transform the next statement |
| Rockwell | Plain Meaning Intrinsic Evidence (e.g., '813 patent, col. 6, lines 38-41.) | Hardware and/or software that understands and executes code/instructions |

| Exchange of Terms and Proposed Constructions Pursuant to Court's Preliminary Pretrial Conference Order (DKT No. 22) | | |
| --- | --- | --- |
| Proposed Term | Party / Source | Construction |
| "Execution Engine" | Defendant / Plain Meaning (PPF, ¶ 60.) | A run-time system comprised of hardware or software, including a computer program that transforms one statement at a time of a program written in an interpreted language into a sequence of machine actions and executes the statement immediately in a program before going on to transform the next statement, including such a run-time system employed by a computer program used for industrial automation equipment. |
| | Rockwell / Plain Meaning Intrinsic Evidence | Hardware and/or software that interprets and implements computer instructions (e.g., '813 patent, col. 6, lines 38-41.) |

| | (PPF, ¶ 61.) | |
|---|---|---|
| "Interpret Code" & "Interprets Instructions" | Defendants / Plain Meaning (PPF, ¶ 62.) | Analyze and execute an interpreted computer language which is not in the form of precompiled executables. |
| | Rockwell / Plain Meaning (PPF, ¶ 63.) | No construction required, because it has a plain meaning. |

As discussed below, Defendants construction is unjustifiably narrow in view of the intrinsic and extrinsic evidence before the Court, and the proper construction of these terms should be the plain meaning in light of the patent's specification, which (as admitted by Defendants' expert) encompasses both the operation of compiled computer code and interpreted computer code. Adoption of Rockwell's construction by the Court would obviate the only argument for noninfringement that the Defendants have put forth. However, even if the Court adopts the Defendants' proposed construction, there are still genuine issues of material fact to be resolved that would preclude granting summary judgment in Defendants' favor.

## 1. Defendants' Theory Of Non-Infringement Requires A Tortured Construction of the Word "Interpret," Which Is Unsupported By The Language of the Patent

The Defendants' argument for noninfringement is based solely on the recitations of the independent claims and rests squarely on an issue of claim construction (Def. Br., at 24.) Defendants target the phrases "the execution engine adapted to interpret code from an industrial program" from Claim 1 and "developing an execution engine that interprets instructions of an industrial control program" from Claim 21 as requiring the Court's claim construction. (Def. Br. at 24.)

Specifically, the Defendants have indicated that they believe, "A person of ordinary skill in the art would thus understand the claim terms 'adapted to interpret code' (Claims 1-7, 10-17,

33

and 20) and 'interprets instructions' (Claims 21-22) as referring to the operation of interpreted computer code and as excluding the operation of compiled computer code." (Def. Br., at 28.) Based on this construction, the Defendants have argued that:

> Because the accused CoDeSys 2.3 software creates programs that must be compiled before they are loaded into the controllers, the accused products do not have either "the execution engine adapted to interpret code from an industrial control program" ... of independent Claim 1 (and dependent Claims 2-7, 10-17 and 20) ... or the method for "developing an execution engine that interprets instructions of an industrial control program . . ." ... of independent Claim 21 (and dependent Claim 22).

(Def. Br., at 28; original emphasis and internal citations omitted.)

With respect to all other elements of the independent claims, as well as all elements of all asserted dependent claims, the Defendants have not set forth any noninfringement arguments and have therefore conceded infringement for the purposes of evaluating their motion for summary judgment. Furthermore, Defendants have not otherwise requested construction of any other claim terms than those already indicated, and Rockwell submits that no further claim terms require construction beyond their plain meaning.

Defendants' construction limits the "execution engine" found in Claims 1 and 21 to mean a "code interpreter". In doing so, Defendants are not reading the claim language in light of the patent specification, are improperly limiting the "execution engine" of the claims to one extremely particular type of embodiment, and are taking a narrow view of the word interpret that is inconsistent with how one of ordinary skill in the art would understand the term. Construing the claims as Defendants suggest invites the Court to commit error.

> a.   *Defendants' Proposed Constructions Are Completely*
> *Divorced from the Specification of the Patent*

When construing claims, courts must look to so-called intrinsic evidence: the claims themselves, then the patent specification and ultimately the prosecution history. Teleflex, Inc. v.

<u>Ficosa N. Am. Corp.</u>, 299 F.3d 1313, 1325 (Fed.Cir. 2002).  Construction of any disputed terms

begins, firstly, with the ordinary and customary meaning of the language of the claims, that is,

the meaning that a person of ordinary skill in the art would have understood the claim term to

have as of the filing date of the patent application.  <u>Phillips</u> v. <u>AWH Corp.</u>, 415 F.3d 1303, 1313

(Fed. Cir. 2005); <u>Rexnord Corp.</u> v. <u>Laitram Corp.</u>, 274 F.3d 1336, 1342 (Fed. Cir. 2001).  "As a

general rule, claim language carries the meaning of the words in their normal usage in the field

of the invention." <u>Rambus Inc.</u> v. <u>Infineon Technologies Ag</u>, 318 F.3d 1081, 1088 (Fed. Cir.

2003).  In fact, "unless compelled to do otherwise, a court will give a claim term the <u>full range of</u>

<u>its ordinary meaning</u> as understood by an artisan of ordinary skill."  <u>Rexnord</u>, 274 F.3d at 1342

(emphasis added).

     The '813 specification does not limit the "execution engine" to a code interpreter.

Rather, the specification explains that the "execution engine" acts to execute instructions

provided to it from the program editor.  The patent explains that:

> An editor is provided that allows a user to develop, load, unload, edit, or delete
> one or more ladder logic programs to the industrial controller.  The editor is
> adapted to allow a user to insert and edit instructions for employing one or more
> file system services."

(<u>PPF</u>, ¶ 64.)  Next, the patent explains that "[t]he editor can then convert the instructions in the

ladder logic into instructions understandable and executable by the execution engine." (<u>PPF</u>, ¶

65.)  In other words the instructions written by the programmer in the editor are converted into

the specific format necessary so that the "execution engine" can understand and execute them.

Each Programmable Logic Controller ("PLC") (which is a type of industrial controller) will have

a specific type of processor that requires it to be fed a particular type of instruction code.  (<u>PPF</u>,

¶¶ 66, 88.)  The '813 patent explains this process of converting the instructions into code that

will be understandable by the PLC:

> The execution engine is adapted to interpret instructions supplied by the
> application program including instructions that perform access to one or more
> files services in the file system.  Typically, these instructions are written by an
> editor in ladder logic, which is then converted to programmable logic controller
> (PLC) instruction code.

(PPF, ¶ 67.)  Once the instructions are converted into instruction code understandable by the

execution engine, the "execution engine" will execute the instruction code to perform the file

service functions.

Defendants' expert stated that the "execution engine" in the specification is "not limited

to a code interpreter, but could also be a processor or anything that interprets and executes the

industrial control program instructions."[5]  (PPF, ¶ 71.)  Thus, the crux of Defendants' argument

is that the word "interpret" following "execution engine" acts to limit the broader definition of

"execution engine" to one narrow type of engine, specifically a code interpreter.   In

circumstances where the Court is compelled to limit a term presented in the claims from its full

range of ordinary meaning as understood by an artisan of ordinary skill, the Court may look to

the patent specification for guidance. Markman v. Westview Instruments, Inc., 52 F.3d 967, 979

(Fed. Cir. 1995).  In doing so, the Court should be mindful that, "(a) one may not read a

limitation into a claim from the written description, but (b) one may look to the written

description to define a term already in a claim limitation, for a claim must be read in view of the

specification of which it is a part."  Renishaw, PLC v. Marposs Societa' per Azioni, 158 F.3d

1243, 1248 (Fed. Cir. 1998).  Thus, limiting the phrase "the execution engine adapted to interpret

---

[5]   Defendants' expert was referring to the "execution engine" in the '415 patent, but it is undisputed that
      the '813 and '415 patents share the exact same patent specification.  (PPF, ¶¶ 68, 69. (The '415 patent
      issued from a continuation application from the '813 patent application, and has the same
      specification as the '813 patent.);  (PPF, ¶ 70.).)

code from an industrial program" from Claim 1 and "developing an execution engine that interprets instructions of an industrial control program" from Claim 21 to mean "operation of interpreted computer code and as excluding the operation of compiled computer code" as Defendants suggest, would read a limitation into a claim based on extrinsic evidence, and would not read this phrase in view of the specification of which it is a part.

   b. *The Word "Interpret" Should Be Given Its Plain*
     *Meaning to One Of Ordinary Skill in the Art In*
     <u>*Light of the Patent Specification*</u>

  Defendants' advocacy of a narrow view of the word "interpret" to support their claim construction, diverges from the meaning a person of ordinary skill in the art would give to the term in light of the specification.  Moreover, Defendants' argument in support is not based on intrinsic evidence, but rather on extrinsic evidence in the form of dictionaries and expert testimony.  While a court may consult extrinsic evidence, such as dictionaries, treatises and expert testimony for background information and to "shed useful light on relevant art," this type of evidence is less reliable than intrinsic evidence in determining the meaning of claim terms and is "unlikely to result in a reliable interpretation of patent claim scope unless considered in the context of the intrinsic evidence."  <u>Phillips</u>, 415 F.3d at 1317–19 (internal citations omitted). "[A] court should discount testimony that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history." <u>Id</u>. at 1318 (internal quotation omitted).

  Rockwell proposes an alternative construction of the disputed claim terms set forth in independent claims 1 and 21, as outlined below, which Rockwell believes is closer than Defendants' construction to the plain meaning of the terms given by one having ordinary skill in the art, the meaning as supported by the patent specification and prosecution history, and the meaning as supported by the extrinsic evidence of record.  If the Court adopts Rockwell's

construction, then Defendants have no argument for noninfringement of the '813 patent and the motion for summary judgment on this ground must fail. On the other hand, if the Court adopts Defendants' construction, Rockwell will show that there still remain genuine issues of material fact that would still preclude granting summary judgment for Defendants on these grounds.

Defendants have cited to the 1987 edition of the IBM Dictionary of Computing, which defines "interpret" as, "To translate and execute a statement in a source program before translating and executing the next statement." (PPF, ¶ 72.) Rockwell notes, first, that there is a genuine issue of material fact as to whether this resource represents the understanding of one of ordinary skill in the art at the time of the invention and, thus, whether it is relevant to the construction of disputed claim terms. The 1987 IBM Dictionary of Computing was not generally available to the public. (PPF, ¶¶ 49, 50.) Furthermore, the definition of "interpret" set forth in the 1987 edition is indicated as being "from draft international standards, draft proposals, and working papers in development by the ISO/TC97/SC1 vocabulary subcommittee," wherein "final agreement has not yet been reached among participating members." (PPF, ¶ 45 46, 72 (emphasis added).) Notably, the 1994 IEEE Standard Glossary of Computer Hardware Terminology does not list any specialized definition of the term "interpret," (PPF, ¶ 73) and Rockwell' expert has confirmed that, in the scope of his experience and familiarity with the viewpoint of a person of ordinary skill in the art, there is no basis to unnaturally limit the definition of "interpret" to less than its plain meaning. (PPF, ¶ 74.) Essentially, Defendants have asked the Court to look to a definition "from draft international standards, draft proposals, and working papers ... [where] final agreement has not yet been reached among participating members," provided in a dictionary that was not generally available to the public and that precedes the filing date of the '813 patent by 14 years, to inform its construction of the disputed

claim terms.  Rockwell submits that substantial questions exist as to whether the Defendants'
proposed basis of claim construction is a reasonable representation of the understanding of one
of ordinary skill in the art.

However, even under the dubious assumption that this represents the understanding of
one of ordinary skill in the art, the Defendants' proposed construction, aggressively narrowing
the meaning of the claimed, "adapted to interpret code" and "interprets instructions" "to the
operation of interpreted computer code as excluding the operation of compiled computer code"
(Def. Br., p. 28, ¶ 2), is *still* unsupported by the record before the Court.  As noted above, both
parties agree that the patent specification supports an "execution engine" encompassing
execution environments suitable for both compiled computer code and interpreted computer
code.  (PPF, ¶ 71.)  Nevertheless, Defendants have advocated a narrow construction of the
claimed, "execution engine" to only include interpreted computer code because it is followed by
the word "interpret."  The word "interpret," however, has many meanings in computer and
software contexts, and there are many operations, instrumentalities and facilities, unrelated to
interpreted computer code, that also "interpret".  For example, the same IBM Dictionary of
Computing cited by Defendants defines a "processor," the ubiquitous central computing
component of essentially all computer systems, as "a functional unit that interprets and executes
instructions." (PPF, ¶ 75 (emphasis added).).  Application of the Defendants' construction of
"interpret" to the definition of a "processor" would compel the preposterous conclusion that a
processor can only facilitate "the operation of interpreted computer code," and that no computer
that contains a processor could run compiled computer code.  Defendants' expert Dr. Richard

Hooper[6] avoided this outlandish conclusion by sensibly conceding that "a processor is a device that interprets and executes instructions," and that compiled machine code "[w]ould be interpreted and executed by the processor," despite also opining that "an interpreter ... is a different device than a processor." (PPF, ¶¶ 76, 77.) Thus, even the Defendants' own expert has acknowledged that a device that is different than a code interpreter can "interpret[] and execute instructions," and that even compiled computer code (as opposed to interpreted computer code) is "interpreted and executed by the processor." (PPF, ¶¶ 76, 77.) This position is directly contravened by the Defendants' proposed construction which seeks, for no articulated reason, to further narrow the claimed, "adapted to interpret code" and "interprets instructions" to a narrow subset of all operations, instrumentalities and facilities that involve interpreting, i.e., "to the operation of interpreted computer code as excluding the operation of compiled computer code" (Def. Br., at 28. It should be noted that, although the word "interpret" or related words are used several times in the specification of the '813 patent, the phrases "interpreter," "interpretive code," "interpretive routine," "interpreted code," "interpreted computer code," and the like appear nowhere. (PPF, ¶ 78.) Similarly, there is nothing in the prosecution history of the '813 patent that would limit the claim term "interpret(s)" "to the operation of interpreted computer code as excluding the operation of compiled computer code," (PPF, ¶¶ 96, 97) nor have the Defendants made any allegations in this regard by way of their brief. Finally, Rockwell's expert Arthur Zatarain has opined in sworn testimony that the term "interpret(s)" does not distinguish

---

[6]    Defendants have mistakenly referred to Dr. Hooper as "Plaintiff's expert" at least once in the Defendants' Brief. ( Def. Br. at p. 25.)  Plaintiffs would like to unambiguously clarify that Dr. Hooper is the Defendants' expert, and Arthur Zatarain is Rockwell's expert.

between interpreted computer code and compiled computer code, applying equally to both (PPF, ¶¶ 74, 79.)  Based on all of these considerations, Rockwell proposes that, instead of distorting the claim terms according to the Defendants' unjustifiably restrictive construction rooted in a limited read of extrinsic evidence, the claimed term "interpret(s)" requires no special or unusual construction beyond its plain meaning.  However, should the Court decide that further construction is necessary, Rockwell proposes that the claimed, "interpret(s)" be construed to mean "understand(s)", which is consistent with the intrinsic evidence and how one of ordinary skill in the art would construe that term.  This definition is consistent with the plain meaning of the word interpret and does not serve to limit the "execution engine" in a manner that would improperly read limitations into the claims.  As Defendants have based their entire argument for noninfringement of the '813 patent on this term, adoption of the Rockwell's proposed construction by the Court would preclude granting summary judgment of noninfringement of the '813 patent for the Defendants.

        c.    *Questions of Fact Remain With Respect*
                *to Literal Infringement, Doctrine of Equivalents,*
                *and Indirect Infringement*

Even if the Court chooses to adopt the Defendants' severely narrow construction of the claim terms, there are still genuine issues of material fact left unresolved that would preclude granting summary judgment of noninfringement of the '813 patent for the Defendants.  "[On] summary judgment the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  Questions of material fact remain regarding whether the accused products include an interpretive execution environment or its equivalent.

i.    *The Runtime System Does Act in*
      *an Interpretive Manner*

There remains a genuine issue of material fact regarding whether the "runtime system",

which is the execution environment used in the accused products, acts in an interpretive manner.

Rockwell has proffered evidence that the runtime system, employed by the accused products,

satisfies the claimed "execution engine" recited by the asserted claims of the '813 patent. (PPF, ¶

59.) Rockwell's expert explained that his testing confirmed that the accused product's "runtime

system is adapted to interpret code from an industrial control program."  (PPF, ¶ 80.)

The Defendants' entire argument for noninfringement of the '813 patent, which rests on

their restrictive claim construction as discussed above, is as follows:

> Because the accused CoDeSys 2.3 software creates programs that must be
> compiled before they are loaded into the controllers, the accused products do not
> have either "the execution engine adapted to interpret code from an industrial
> control program" (emphasis added) of independent Claim 1 (and dependent
> Claims 2-7, 10-17 and 20) (DPF, ¶¶ 157-175) or the method for "developing an
> execution engine that interprets instructions of an industrial control program . . ."
> (emphasis added) of independent Claim 21 (and dependent Claim 22) (DPF, ¶¶
> 157-164, 176-186.)

(Def. Br., at 28)  The DPF paragraphs cited by Defendants in this context are also oriented to

distinguishing interpreted computer code from compiled computer code and arguing that the

accused products do not infringe by virtue of utilizing only compiled computer code.  However,

Defendants have avoided any direct discussion of the accused runtime system in their brief,

instead choosing to focus on the distinction between interpreted computer code and compiled

computer code, and relying heavily on the deposition testimony of Defendants' expert Dr.

Richard Hooper.  Rockwell notes that Dr. Hooper has testified that his report (DPF, ¶ 11 (Dkt.

No. 61).), upon which Defendants have repeatedly relied in their factual contentions in support

of noninfringement (DPF ¶¶ 157-186), only addresses "the functionality that was described in

the -- manuals for the controller," (PPF, ¶ 81) and that his familiarity with the accused runtime

42

system is based on "reading through manuals." (PPF, ¶ 82.)  Based on Dr. Hooper's testimony, Rockwell submits that the Defendants' noninfringement position, in particular as it pertains to the accused runtime system, is based chiefly on Dr. Hooper's analysis of manuals related to the accused products.  However, it is not the manuals which Rockwell has cited for infringement, but rather the accused products themselves, and Rockwell's expert, Arthur Zatarain, has opined that the claims of the '813 patent are in fact infringed by the accused products based on tests actually conducted by Dr. Zatarain on those instrumentalities themselves.  ("Looking at the specific elements of each claim and trying to see if those features existed in the accused products," (PPF, ¶ 83); "using the 870 as an example, I did find where it has a runtime system which would be the execution engine that interprets the instructions," (PPF, ¶ 84.)

Furthermore, evidence exists that the accused products support the very interpreted computer code that the Defendants have so adamantly tried to distinguish.  For example, in Frequently Asked Questions related to the accused products, there is an indication that the accused products' runtime system supports all of "native code, C code or interpreter code," and that the particular implementation will include "code generation plus a customized run time system" appropriate for the type of code (PPF, ¶ 87 (emphasis added).)  Indeed, documentation for the CoDeSys Runtime System itself indicates that the accused runtime system allows project files "to be easily interpreted on various hardware platforms."  (PPF, ¶ 89 (emphasis added).) This would suggest either that the use of the term "interpret" is broader than the Defendants' proposed construction, as evidence by documentation related to their own accused products, or that the accused products do in fact operate with interpreted computer code, either of which would manifest a genuine issue of material fact precluding summary judgment of noninfringement.  Accordingly, even if the Defendants' position on claim construction is

adopted, there remains a genuine issue of material fact as to the extent to which the features and operation of the accused products are fully and accurately reflected in the manuals reviewed by Dr. Hooper, which form the basis of the Defendants' noninfringement position and on which all of Dr. Hooper's opinions about noninfringement of the '813 patent are founded.  In particular, there is a lingering question of fact as to whether the runtime system employed by the accused products constitutes or employs an interpretive execution environment.  Dr. Hooper himself has indicated that he would "have to do further research to -- to know precisely how [the accused runtime system] worked."  (PPF, ¶ 91.)

d.    *Defendants Infringe Under the Doctrine of Equivalents*

Defendants argue that Rockwell's doctrine of equivalents arguments have been extinguished because the disputed term "goes to the core of what is claimed in the '813 Patent," and that equivalents were "foreseeable at the time of patent prosecution."  (Def. Br. at 27-28).

The Supreme Court has noted that "the nature of language makes it impossible to capture the essence of a thing in a patent application," and therefore, "[t]he scope of a patent is not limited to its literal terms but instead embraces all equivalents to the claims described."  Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co., 535 U.S. 722, 731-732 (2002).  To analyze infringement under the Doctrine of Equivalents, "[t]he factual question of equivalency requires determination of whether the accused composition is only insubstantially changed from what is claimed, applying appropriate criteria to the determination of insubstantial change."  Viskase Corp. v. American Nat. Can Co., 261 F.3d 1316, 1324 (Fed. Cir. 2001).  In an attempt to short-circuit this factual analysis, the Defendants have alleged, "The distinction between compiled and interpreted computer languages goes to the core of what is claimed in the '813 Patent." (Def. Br., at  27, (original emphasis).)  However, this is merely attorney argument, and no citation to any evidentiary support in the record before the Court has been made to support that argument.  In

44

contrast with the Defendants' bare and unsubstantiated assertion that the claim term "interpret(s)" "goes to the core of what is claimed in the '813 Patent," Rockwell notes that the '813 patent is entitled, "Method for Consistent Storage of Data in an Industrial Controller," and describes, "A system and method for employing a file system and file system services on the industrial controller." (PPF, ¶ 92.) Noting problems associated with storage and data retrieval limitations of prior art systems (PPF, ¶ 93), the specification describes how "[t]he present invention provides a system and method for providing a file system on an industrial controller." (PPF, ¶ 94.) Moreover, the "Technical Field" recited by the '813 patent is, "industrial control systems and in particular to providing a file system on an industrial controller and a system and method for employing the file system." (PPF, ¶ 95.) Accordingly, the Defendants' assertion that the claimed, "interpret(s)" "goes to the core of what is claimed in the '813 patent" is at odds with the intrinsic evidence of record, and the Defendants have not pointed to <u>any</u> evidence, intrinsic or otherwise, to support the bold allegation they have made in this regard.

With regard to the issue of foreseeability, Rockwell submits that Defendants have mischaracterized the applied legal authority. Defendants cite to <u>Honeywell Int'l, Inc</u>. v. <u>Hamilton Sundstrand Corp</u>., 523 F.3d 1304, 1313 (Fed. Cir. 2008) to support the notion that the Doctrine of Equivalents is foreclosed on all equivalents that were "foreseeable when the application resulting in the '813 Patent was filed." (Def. Br. at 27-28.) Rockwell submits that the holding in <u>Honeywell</u> in fact echoes the rule first set forth by the Supreme Court in <u>Festo Corp</u>. v. <u>Shoketsu Kinzoku Kogyo Kabushiki Co</u>. 535 U.S. 722 (2002) regarding the foreclosure of the Doctrine of Equivalents for claim scope surrendered by amendments to the claims. At issue in <u>Honeywell</u> were "three asserted independent claims [that] were rewritten from dependent form," and the Court held as dispositive on the presumption of surrender of claim

scope whether the alleged equivalents of disclaimed matter were "unforeseeable at the time of the amendments during the prosecution process." Honeywell at 1313 (emphasis added). No amendment was made to independent claim 1 during the prosecution history of the '813 patent, and only a minor typographical amendment, unrelated to the disputed term, was made to independent claim 21. (PPF, ¶¶ 96, 97.) Accordingly, Rockwell submits that the Defendants' argument for foreclosure of the Doctrine of Equivalents is overly broad and inapplicable with respect to the disputed terms of the '813 patent claims.

Furthermore, Rockwell's expert explains that the distinction "between a compiled and interpreted computer language" does not "have any effect on how [one] should understand this requirement" and "whether it's compiled or interpreted or pseudo code or anything, a micro code it doesn't matter." (PPF ¶ 98.) Defendants have failed to rebut this evidence of interchangeability between these types of code and the insubstantial differences between them along with the evidence that the runtime system of the accused products "would perform substantially the same function in substantially the same way to yield substantially the same result, and thus infringe under the doctrine of equivalents." (PPF ¶ 99.) The Federal Circuit has stated that "[e]vidence of known interchangeability between structure in the accused device and the disclosed structure has ... been considered an important factor" in determining equivalence. Hearing Components, Inc. v. Shure Inc., 600 F.3d 1357, 1370 (Fed. Cir. 2010). Defendants attempt to convert this known interchangeability and insubstantial difference between compiled and interpreted computer languages into a factor weighing against equivalence by stating that "the use of compiled languages to program industrial controllers was foreseeable when the application resulting in the '813 Patent was filed (i.e. July 30, 2001)." (Def. Br. at 27-28). This alleged "foreseeability" is not supported with any evidence, and is simply attorney argument.

46

Moreover, the Federal Circuit has recognized that in order to be interchangeable an equivalent will inevitably be foreseeable, stating "that is necessarily the case with known interchangeability, which nevertheless can support a finding of equivalence." Hearing Components, 600 F.3d at 1371; see also, Overhead Door Corp. v. Chamberlain Group, Inc., 194 F.3d 1261, 1270 (Fed. Cir. 1999) ("[T]he Supreme Court has acknowledged that interchangeability can be one of the hallmarks of an equivalent."—reversing summary judgment of noninfringement under the doctrine of equivalents because the inferences required to be drawn in favor of the patentee from its expert's declaration averring that, to one of ordinary skill in the art, a switch made from software was interchangeable with the claimed mechanical switch raised a genuine issue of material fact). Based on all of these considerations, Rockwell submits that substantial questions of material fact remain as to the scope, interchangeability and foreseeability of alleged alterations over the claims of the '813 Patent, and request that Summary Judgment be denied at least on these grounds.

## C.  THE '415 PATENT

Asserted independent claims 1 of the '415 patent recites,

> 1.  An editor for developing ladder logic programs that control operation of an industrial controller system, the editor comprising:
>
> a first instruction that employs a file system that resides on an industrial controller to log data to a file containing ladder logic instructions;
>
> a second instruction that employs the file system to retrieve the data from the file containing ladder logic instructions; and
>
> an implementation for converting the ladder logic instructions into instructions understandable and executable by an execution engine in the industrial controller.

Rockwell has alleged infringement of this claim, as well as of dependent claims 2-5 and 8 by the accused products. (PPF ¶ 100.) The Defendants' have raised two arguments for

noninfringement.  First, Defendants have proffered that Rockwell has not clearly articulated a

theory of infringement, and that "summary judgment on the issue of noninfringement should be

granted on that basis alone."  (Def. Br., at. 29).  Notably, this is Defendants' only argument

addressing literal infringement of the '415 patent.  Second, Defendants appear to have assumed a

particular construction of the claim terms without justification, have assumed that Rockwell is

asserting a particular Doctrine of Equivalents theory of infringement on the basis of that

construction, and have argued foreclosure of the Doctrine of Equivalents by prosecution history

estoppel. (Def. Br., p. 29 - 31.)  Rockwell will address each of Defendants' arguments in kind.

> **1.**   **Defendants' Only Argument for Summary
> Judgment on Literal Infringement of the '415
> Patent is Not a Valid Basis of Non-Infringement
> and No Supporting Evidence Has Been Cited**

The Defendants, as the party moving for summary judgment, bear the initial burden of

"identifying those portions of the pleadings, depositions, answers to interrogatories, and

admissions on file, together with the affidavits, if any, which it believes demonstrate the absence

of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The

entirety of Defendants' first argument for summary judgment of noninfringement of the '415

patent is reproduced here:

> Plaintiffs' theory of infringement of the '415 Patent has not been clearly
> articulated.  Without an explanation as to why Plaintiffs assert that the accused
> products perform each and every step of Claim 1 (which is incorporated by
> reference in Claims 2-5 and 8) of the '415 Patent, Plaintiffs cannot carry their
> burden of proof on the issue of infringement, and summary judgment on the issue
> of noninfringement should be granted on that basis alone.

(Def. Br., p. 29, ¶ 3).

Rockwell submits that Defendants' vague yet conclusory assertion that "Plaintiffs' theory

of infringement ... has not been clearly articulated," having no argument or citation to the record

before the Court to support that assertion, is manifestly inadequate to satisfy the Defendants'

initial burden of "identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact." Celotex, 477 U.S. at 323. Rockwell also notes that Defendants have had ample time and opportunity to request or otherwise seek clarification regarding any aspect of Rockwell's case on which they are unclear, to question Rockwell's expert, to request and review Rockwell's disclosures, and to otherwise properly prepare themselves to put forth a complete argument to the Court, supported by the record, in furtherance of their motion for summary judgment.

Instead, the Court has been presented here with little more than a bare and undeveloped assertion of legal conclusion. Moreover, in contrast with Defendants' allegation that Rockwell has not provided "an explanation as to why Plaintiffs assert the accused products perform each and every step of ... [the asserted claims] of the '415 Patent," Rockwell submits that ample explanation has been provided, including clear correspondences shown between each and every element of each and every asserted claim and specific aspects of the accused products.  (PPF, ¶¶ 100, 101. (wherein Zatarain provides numerous specific citations from Albers' deposition testimony as "admission of infringement of each and every element of the asserted claims of the '415 patent").)

Defendants have not alleged that the claims themselves are unclear, such as to argue invalidity on the basis of indefiniteness under 35 U.S.C. § 112, nor have they heretofore objected to the adequacy of Rockwell's infringement contentions.  Instead, Defendants simply invite the Court to grant summary judgment in their favor on the basis of their own lack of understanding of the issues in the case.  This is not a valid ground on which to grant summary judgment and, as this is the only ground raised by the Defendants that pertains to literal infringement of the '415

patent, Rockwell submits that there remains a genuine issue of material fact as it relates to literal infringement of the '415 patent.  Accordingly, Rockwell requests that the Court deny Defendants' motion for summary judgment for at least these reasons.

**2.      Defendants' Argument for Non-Infringement of the '415 Patent Under the Doctrine of Equivalents is Addressed to a Theory of Infringement Not Put Forth by Rockwell and Based on an Unsupported and Assumed Claim Construction**

Defendants' second argument for summary judgment of noninfringement of the '415 patent centers on a theory of infringement under the Doctrine of Equivalents, and is based on an assumed construction of terms in the independent claim that the Defendants have not supported by any facts, argument or explanation.  The '415 patent is generally related to PLC's (PPF, ¶ 104.), and the programs for such PLC's are written in an editor application, often in the form of so-called ladder logic instructions, which may then convert the written code into programmable logic controller instructions and then transferred to the controller for execution.  (PPF, ¶ 105.)  In particular, the '415 patent is directed to employing a file system on the PLC to log data to and retrieve data from a file.  (PPF, ¶ 106.)  The specification describes how "The editor 48 is also adapted to allow a user to insert and edit instructions for logging and retrieval of measurement data 58 and trend data 54 in the ladder logic instructions."  (PPF, ¶ 107 (emphasis added).)  Thus, as repeatedly stated in the specification, the '415 patent is directed to an editor for writing instructions in ladder logic in order to use the industrial controller's file system to log and retrieve data to a file.  (PPF, ¶ 108.)

Asserted independent claim 1 of the '415 patent explicitly recites, *inter alia*, "a first instruction that employs a file system that resides on an industrial controller to log data to a file containing ladder logic instructions," and, "a second instruction that employs a file system to retrieve the data from the file containing ladder logic instructions."  The Defendants' assumed

construction is that the claimed data "file" itself contains "ladder logic instructions," and they

have addressed infringement under the Doctrine of Equivalents based on the assumed

"infringement theory that *logging data to a file* is equivalent to *logging data to a file containing*

*ladder logic instructions*." (Def. Br., p. 30).  However, Defendants are addressing a theory of

infringement that Rockwell has never put forth.  In fact, Rockwell has expressed a *different*

claim construction to Defendants, where it is the claimed "first instruction" and "second

instruction" that contain "ladder logic instructions," and not the "file" (see, e.g.  PPF, ¶ 109), and

have articulated theories of direct infringement, indirect infringement, and infringement under

the Doctrine of Equivalents based on that construction throughout the pending litigation.

Furthermore, Rockwell submits that its construction is the correct one in view of the

intrinsic and extrinsic evidence of record.  "It is well-settled that, in interpreting an asserted

claim, the court should look first to the intrinsic evidence of record, i.e., the patent itself,

including the claims, the specification and, if in evidence, the prosecution history." Vitronics

Corps. v.  Conceptronic, Inc., 90 F.3d 1576, 1582 (Fed. Cir. 1996).  The Court may also consider

extrinsic evidence, which "consists of all evidence external to the patent and prosecution history,

including expert and inventor testimony, dictionaries, and learned treatises."  Phillips, 415 F.3d

at 1317.  "[E]xtrinsic evidence in the form of expert testimony can be useful to a court for a

variety of purposes, such as to provide background on the technology at issue, to explain how an

invention works, to ensure that the court's understanding of the technical aspects of the patent is

consistent with that of a person of skill in the art." Id. at 1312.  Nevertheless, the Federal Circuit

has "viewed extrinsic evidence in general as less reliable than the patent and its prosecution

history in determining how to read claim terms," that "unsupported assertions by experts as to

the definition of a claim term are not useful to a court," and that, "a court should discount

testimony that is clearly at odds with the claim construction mandated by the claims themselves, the written description, and the prosecution history."  Id. at 1318 (internal quotation omitted). Rockwell submits that the intrinsic evidence of record supports the construction that the claimed "first instruction" and "second instruction," not the claimed "file," contain the claimed "ladder logic instructions."  For example, as noted above, the patent specification describes the capability to "log and retrieve measured data and trend data to files at local or remote locations,"  (PPF, ¶ 106.)  and that, "[t]he editor 48 is also adapted to allow a user to insert and edit instructions for logging and retrieval of measurement data 58 and trend data 54 in the ladder logic instructions." (PPF, ¶ 110 (emphasis added).)

Rockwell also notes that, during the prosecution history of the '415 patent, Rockwell amended the claims to incorporate the limitation "containing ladder logic instructions," and stated in remarks to the Examiner that the claim "has been amended to recite that the first and second instructions *contain ladder logic instructions*."  (PPF, ¶ 111. (emphasis added).) Accordingly, Defendants' construction is plainly at odds with the intrinsic evidence associated with the '415 patent, while Rockwell's construction is fully consistent therewith.  Furthermore, Rockwell's expert Arthur Zatarain has opined that, based on his own experience and knowledge of the related art in view of the patent specification, that "[t]he instruction to do the logging is in the ladder logic file.  But the data that's being stored is not in the ladder logic file in regards to this claim element."  (PPF, ¶ 112.)  Based on this construction, Rockwell has put forth theories of direct infringement, indirect infringement, and infringement under the Doctrine of Equivalents.  (PPF, ¶ 100.)

Rather than entertain Rockwell's actual theories of infringement, the Defendants' awareness of which is clearly exhibited in the record before the Court, Defendants have chosen

to selectively ignore them and set up a strawman in their place, in the hopes that summary judgment will be granted in their favor by knocking that strawman down.  As Defendants' argument for summary judgment of noninfringement under the Doctrine of Equivalents is addressed to a theory of infringement that Rockwell has never advocated, and based on an assumed construction of the claims that is at odds with both intrinsic and extrinsic evidence, Rockwell submits that this argument is moot, submit that there remain genuine issues of material fact in view of Rockwell's actual theories of infringement, and request that the Court deny the motion for summary judgment on these grounds.

**D.    THE '232 PATENT**

       **1.    Defendants Do Not Dispute the Evidence
        Proffered by Rockwell that Defendants Infringe
        All of the Claims of the '232 Patent**

Rockwell's has alleged infringement of claims 1, 2, 3, 5, 10, 11 and 14 of the '232 patent against Defendants for (1) literal infringement under 35. U.S.C. § 271(a); (2) infringement under the doctrine of equivalents; and (3) indirect infringement under 35. U.S.C. § 271(b) and (c). (PPF, ¶ 113.)  Rockwell's expert has proffered an opinion to support each of these assertions. (PPF, ¶ 114.)  Rockwell's expert's report provides detailed evidence showing that users of the accused products practice each and every element of the asserted claims.  Nowhere in Defendants' summary judgment brief do the Defendants attempt to dispute this evidence. Likewise, when Defendants' expert was asked at his deposition whether or not the accused products contain every element of the claims of the '232 patent, he responded "I have not performed that analysis"  (PPF, ¶ 115) and "I have not performed the overall analysis of whether [the accused products] would infringe or not infringe."  (PPF, ¶ 116.).  Accordingly, Defendants have conceded literal infringement of the asserted claims of the '232 patent by failing to proffer any evidence against Rockwell's assertion that each and every element of the asserted claims is

practiced through the use of the accused products.  Moreover, Defendants fail to proffer any

evidence or argument refuting Rockwell's claims that Defendants infringe under the doctrine of

equivalents and indirectly infringe each of the claims of the '232 patent.

Instead, the crux of Defendants argument is that the infringing features in their accused

products "were carried over from earlier versions" of the product.  (Def. Br. at 2 and 23).  As

discussed earlier with the '974 patent, the Federal Circuit has repeatedly held that this sort of

"practicing the prior art" defense is not a defense to literal infringement. See Zenith, 522 F. 3d at

1363 (holding "the defense of noninfringement cannot be proved by comparing an accused

product to the prior art."). Viewing the evidence in the light most favorable to the non-moving

party and drawing all justifiable inferences in its favor, Rockwell has shown affirmative and

specific evidence regarding Defendants infringement of the '232 patent and has shown that there

is a genuine issue for trial.

> **2.     Defendants Have Not Shown There Is No Genuine Issue Of
> Material Fact Regarding Whether They Infringe the Claims of
> the '232 Patent Because There Are Gaps in Defendants'
> Expert's Analysis of the Accused Products**

Similar to arguments made above with respect to the '974 patent (Supra § III.A.(2)(b)),

Rockwell submit that, again here, Defendants have failed to eradicate a genuine issue of material

fact as to whether the accused products infringe the claims of the '232 patent at least because

they have based their arguments not on the operation of the accused products themselves, but

rather on the manuals for those products.  Indeed, Defendants' only argument for

noninfringement of the '232 patent is that, "a simple comparison of the 'Online' command

section of the CoDeSys 2.3 (2007) manual and the CoDeSys 1.5 (1997) manual makes clear the

substantial similarity between the two."  (Def. Br. at 23).  However, it is not the manuals which

Rockwell has cited for infringement, but rather the accused products themselves, and Rockwell's

expert, Arthur Zatarain, has opined that the claims of the '232 patent are in fact infringed by the accused products themselves based on tests that he actually conducted on those products (PPF, ¶ 117.)  On the other hand, when Defendants' expert was asked if he agreed that the accused products infringe each and every element of the claims of the '232 patent, his reply was, "I really didn't perform the analysis to agree or disagree."  (PPF, ¶ 118.)  Instead, the only analysis performed by Dr. Hooper with regard to these claims was whether there were similar features recited in manuals of earlier products as those recited in a manual of the accused products. (DPF, ¶ 11 (Dkt. No. 61, ¶¶ 9-48).).  The same features in two product manuals can represent different underlying functionalities in the products themselves, which may yield different dispositions in infringement and/or invalidity analyses.  Accordingly, even if the Court were to accept Defendants' dubious defense of practicing the prior art, there would remain genuine issues of material fact as to what functionalities underlie the features reflected in the manuals of earlier products and manuals of the accused products.  Under such circumstances, Rockwell submits that summary judgment of noninfringement would be inappropriate.

## IV.

## PATENT INVALIDITY

Defendants bear a high evidentiary burden on their motion for summary judgment of invalidity.  Each claim of an issued patent carries a presumption of validity.  35 U.S.C. § 282. To overcome this presumption, an accused infringer must prove invalidity by clear and convincing evidence.  TriMed, 608 F.3d at 1340.  Thus, in order to prevail on this motion, Defendants must have shown by clear, convincing, and unrebutted evidence that they have established every single element of their invalidity defenses, even after all reasonable inferences are drawn in favor of Rockwell.  Defendants have fallen way short of carrying their heavy burden, leaving far too many complex factual issues regarding the prior art, the knowledge of

one of ordinary skill in the art, the differences between the prior art, etc., to permit the relatively rare grant of summary judgment on patent invalidity.

Since the factual inquiries that are material to the outcome of the validity of the four patents-in-suit are in dispute, this motion should be denied because genuine issues of material fact exist regarding invalidity.

## A.    THE '974 PATENT

### 1.    Defendants Have Not Shown the Asserted Claims of the '232 Patent to be Anticipated As a Matter of Law, and There Is Disagreement Between Rockwell's Expert and Defendants' Expert as to the Scope and Content of the Cited Art

Defendants contend that Claims 1-3, 5-6, 9-10, 14, 16, 24 and 29 are anticipated by United States Patent No. 5,469,352 ("Yukutomo") under 35 U.S.C. § 102(e).  (Def. Br. at 69-79.) Defendants also contend that these claims are anticipated by the Cimplicity commercial system under 35 U.S.C. § 102(b).  (Def. Br. at 69-79.)  As discussed supra at II(A)(1)-(2), there is a dispute as to whether the Cimplicity reference attached as Exhibit 5 to the Defendants' DPF is admissible as evidence and whether it qualifies as prior art under 35 U.S.C. § 102(b).

> a.    *The Yukutomo and Cimplicity References Fail To Anticipate Each and Every Claim Element of Each of the Asserted Claims of the '974 Patent*

Defendants' brief in support of their anticipation arguments does not provide any explanation of the contents of the Yukutomo or Cimplicity references.  Instead, Defendants brief simply provides conclusory statements that each element of the asserted claims is found in each reference.  Defendants' support these conclusory statements with general citations to their expert's opening report on (DPF, ¶ 10 (Dkt. No. 60).),  Rockwell has disputed Defendants' expert's opinions regarding the contents of the Yukutomo and Cimplicity references and whether they serve to anticipate the '974 patent through its competing expert opinion.  (PPF, ¶ 9.)

56

Defendants brief provides no rebuttal to Rockwell's expert opinion that none of the claims are anticipated by the Yukutomo or Cimplicity reference.  Thus there is a direct conflict between the parties' expert opinions as to the whether the four corners of the Yukutomo and Cimplicity references describe every element of each of the asserted claims of the '974 patent.

Defendants ask the Court to dismiss this conflict by crediting their expert's opinion and to resolve the dispute in their favor.  "Resolving such credibility disputes, however, is not appropriate on summary judgment."  Metro. Life Ins. Co., 527 F.3d. at 1338-39 (holding the "conflict in [expert] declarations created a genuine issue of material fact that made summary judgment inappropriate"). Where the party opposing summary judgment raises a genuine issue of material fact by proffering expert testimony in conflict with the positions of the moving party, summary judgment is properly denied.  Id.; Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences form the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict.")

Accordingly, there remains a genuine issue of material fact as to the scope and content of the Yukutomo and Cimplicity references and whether they serve to anticipate any of the claims of the '974 patent.

> b. *Under Federal Circuit Law, Defendants Are*
> *Not Permitted to Argue Invalidity Based on Their*
> *<u>Practicing the Prior Art of the CoDeSys 2.2 Reference</u>*

Defendants argue that "[i]f Plaintiffs were to carry their burden of proving that [the accused products] perform[] every step of the asserted claims of the '974 Patent, the result would be the Plaintiffs would have proven the asserted claims of the '974 Patent to be anticipated by or obvious in view of CoDeSys 2.2 (2001)"  (Def. Br. at 36.).  Regardless of whether Defendants statement is correct, which it is not, the Federal Circuit has held that "anticipation cannot be

proved by merely establishing that one 'practices the prior art.'" Zenith, 522 F.3d 1348, 1363 (Fed. Cir. 2008)  In Zenith, the Federal Circuit explained that "the defense of noninfringement cannot be proved by comparing an accused product to the prior art." Id. (citing Tate, 279 F.3d 1357, 1367 ("[A]ccused infringers are not free to flout the requirement of proving invalidity by clear and convincing evidence by asserting a 'practicing prior art' defense to literal infringement. . . ."). The Federal Circuit further stated, "mere proof that the prior art is identical, in all material respects, to an allegedly infringing product cannot constitute clear and convincing evidence of invalidity."  The Federal Circuit has repeatedly warned that the "proper framework for challenging the validity of a patent is not for the accused to show that it is practicing the prior art, but to show that every element of the patent claims reads on a single prior art reference." Uniloc USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1322–23 (Fed. Cir. 2011)  Neither Defendants' expert nor Defendants' summary judgment brief provides this framework.

Under Federal Circuit law, Defendants' alleged "evidence" that the "CoDeSys 2.3 (2007) manual and the CoDeSys 2.2 (2001) manual [are] substantial[ly] similar[]" simply cannot satisfy Defendants' burden of proving invalidity by clear and convincing evidence.  Defendants admittedly have proffered no evidence whatsoever that the CoDeSys 2.2 reference satisfies each of the limitations of the claims of the '974 patent.  Indeed, when Defendants' expert was asked if he performed a proper invalidity analysis of the '974 patent based on the CoDeSys 2.2 reference, Defendants' expert stated, "I didn't do an invalidity type analysis on CoDeSys 2.2."  (PPF, ¶ 119.)  For the reasons stated above, Defendants have failed to carry their heavy burden of showing by clear and convincing evidence that each of the asserted claims of the '974 patent are invalid based on the CoDeSys 2.2 reference.  Accordingly there remains a genuine issue for trial.

58

      c.     *Defendants' Arguments of Invalidity Based on*
                  *the CoDeSys 2.2 Reference Are Not Admissible*
                  *And Are Subject To A Motion For Sanctions*

Moreover, Defendants' arguments that the '974 patent is invalid in light of the CoDeSys 2.2 reference are based on untimely opinions proffered by their expert in a supplemental expert report. (Def. Br. 35-36.) As set forth in Rockwell's Motion for Sanctions (Dkt. No. 36), Defendants have violated the Preliminary Pretrial Conference Order by "sandbagging" Rockwell by improperly attempting to add new expert opinions on invalidity after the close of expert reports on the issue. As outlined in the motion, these new opinions were not minor elaborations of Defendants' initial opinions on invalidity; rather it is undisputed that these new opinions argue invalidity based on an entirely new CoDeSys 2.2 reference, which was not disclosed in discovery. Defendants' decision to "sandbag" Rockwell by adding untimely new expert opinions on invalidity after Rockwell had prepared its rebuttal report on invalidity has unfairly prejudiced Rockwell's expert from formulating his opinions and reports in this case. Because Defendants' supplemental expert report fails to comply with this Court's clear rules as set forth in the Preliminary Pretrial Conference Order and Rule 26 of the Federal Rules of Civil Procedure, and because Defendants actions have prejudiced Rockwell in preparing its expert opinions in this case, Defendants should be precluded from supplying this evidence as outlined in Rockwell's motion for sanctions. See Docket No. 45 at 9.

**2.**     **Defendants Have Not Shown the Asserted Claims of the '974 Patent to be Obvious As a Matter of Law, and There Is Disagreement Between Plaintiffs' Expert and Defendants' Expert as to the Scope and Content of the Cited Art and the Knowledge of a Person of Ordinary Skill in the Art**

Like their anticipation arguments, all of Defendants' obviousness arguments concerning 1-3, 5-6, 9-10, 14, 16, 24 and 29 of the '974 patent require the Court to weigh the expert opinions and determine that their expert is right and Rockwell's expert is wrong. For the reasons stated

above, this is not proper on summary judgment and when the Court views the evidence in the

light most favorable to the non-moving party, drawing all "justifiable inferences" in its favor,

summary judgment on obviousness of the asserted claims must be denied.

Defendants' entire obviousness argument in their brief consists of one single sentence

that is cut and pasted repeatedly throughout their invalidity analysis of the '974 patent:

> "In the alternative, Claim [x] of the '415 Patent is invalid over a combination of
> Yukutomo and Cimplicity under 35 U.S.C. § 103(a), because each of the elements
> of Claim [x] is met by combining Yukutomo with Cimplicity according to known
> function and with predictable results."

[Def. Br. at 70-79].[7]  The above conclusory statement is insufficient for the Court to determine,

as a matter of law, that any of the claims of the '974 patent are obvious.  Moreover, Defendants'

expert report provides no obviousness analysis to support this statement.  See United States v.

Phillips, 596 F.3d 414, 417–18 (7th Cir. 2010) (not responsibility of the court to make arguments

for the parties); see also Ruffin–Thompkins v. Experian Info. Solutions, Inc., 422 F.3d 603, 609–

10 (7th Cir.2005) (district court not required to search the record to find evidence to support

arguments).  In addition, Defendants have failed to rebut Rockwell's expert's opinion that none

of the claims of the '974 patent are obvious in light of the Yukutomo and Cimplicity references.

(PPF, ¶ 9 (Exh. CC, ¶ 217).)  For example, it is impossible to determine from Defendants'

obviousness argument if any combination of the Yukutomo and Cimplicity references share a

common objective, the known functions of those references, or any predictable result of their

combination.  (PPF, ¶ 7 (Exh. AA, ¶ 226).) Defendants also fail to identify any reason that would

_____

[7]   We note that Defendants' hasty cut and paste job fails to assert a claim for obviousness
against the '974 patent, but instead repeatedly claims that the "'415 Patent" is invalid for
obviousness."

have prompted a person of ordinary skill in the art to combine the elements in the way the claimed invention of the '974 patent does.  KSR, 550 U.S. at 418.

Since Defendants have failed to provide evidence from which a reasonable jury could find that the Yukutomo reference in combination with the Cimplicity reference renders any of the claims of the '974 patent invalid for obviousness, their motion for summary judgment should be denied.

### 3.    Defendants' Argument that Claim 24 Fails to Comply with the Subject Matter Requirements of 35 U.S.C. § 101 is Unfounded, and Claim 24 Does Not Claim a Mathematical Algorithm, Purely Mental Steps, or Any Similarly Abstract Concept Which Would Preclude Patentability

Defendants argue that claim 24 of the '974 patent is an abstract idea that is not patentable under 35 U.S.C. § 101.  [Def. Br. at 69].  To prove abstractness, as a disqualifying characteristic for patentability, "it should exhibit itself so manifestly as to override the broad statutory categories of eligible subject matter and the statutory context that directs primary attention on the patentability criteria of the rest of the Patent Act."  See Ultramercial, LLC v. Hulu, LLC, 657 F.3d 1323, 1327-28 (Fed. Cir. 2011) (finding that the "breadth and lack of specificity" of a "broadly claimed method" that did "not specify a particular mechanism for delivering media content to the consumer" "does not render the claimed subject matter impermissibly abstract.").

The claimed invention of the '974 patent is presumed valid. 35 U.S.C. § 282; see also Impax Labs, 545 F.3d at 1314.  The invention "relates to a system and methodology to provide electronic audit recording and tracking of interactions with an industrial control system in order to facilitate access to such systems in a controlled manner while automatically generating records that document such access."  (PPF, ¶ 1 (Exh, A, 2:41-46). Thus, as a method, it satisfies § 100's definition of "process" and thus falls within a § 101 category of patent-eligible subject matter.

61

See Ultramercial, LLC v. Hulu, LLC, 657 F.3d 1323, 1327-28 (Fed. Cir. 2011).  The '974 patent

seeks to remedy problems with prior computer systems and their problem with recording and

tracking "real time changes that can occur in PLC driven systems" by introducing "an automated

system[] or component[] that can document changes in a more real time and controlled manner."

(PPF ¶ 120.)   By its terms, the claimed invention purports to improve existing technology in the

marketplace.  By its terms, the claimed invention refers to recording and tracking via

components that "are intended to refer to a computer-related entity, either hardware, a

combination of hardware and software, software, or software in execution."  (PPF, ¶ 121.)  Thus,

unlike the Cybersource case cited by Defendants, the claims indicate that computers as a

practical matter are required to perform the disclosed methods.  See Cybersource, 654 F.3d at

1376 ("This is entirely unlike cases where, as a practical matter, the use of a computer is required

to perform the claimed method.")  Distinguishing the claims in Cybersource, the Federal Circuit

in Ultramercial stated that "the claims here require, among other things, controlled interaction

with a consumer . . . something far removed from purely mental steps."  657 F.3d at 1330.  As

discussed below, claim 24 requires monitoring, tagging, logging and aggregating all with the aid

of computer hardware and or software, thus taking the methods outside of Cybersource and far

removed from purely mental steps.  Moreover, the '974 patent discloses and claims practical

methods and specific applications.  "Inventions with specific applications . . . are not likely to be

so abstract that they override the statutory language and framework of the Patent Act."  Id. at

1328.

  Claim 24 does not claim a mathematical algorithm, a series of purely mental step, or any

similarly abstract concept.  See Ultramercial, 657 F.3d 1323.  Reading Claim 24 of the '974

patent, it is not difficult to conclude that the method would be impracticable but for significant

and complex computer programming permitting the real time monitoring, tagging, logging and

aggregating of the PLC-based interactions.  See id. ("Many of these steps are likely to require

intricate and complex computer programming.").  Defendants' contention that it is theoretically

possible that the claimed monitoring, logging, tracking and aggregating steps could be completed

by a human, which it can not, has been admonished, by the Cybersource case cited by

Defendants.  Id. at 1329-30 ("[t]he eligibility exclusion for *purely* mental steps is particularly

narrow") (emphasis in original). The claimed invention of the '974 patent is not "so manifestly

abstract as to override the statutory language of section 101"  Research Corp., 627 F.3d at 869.

Defendants have not met their burden of establishing that the claimed process of Claim 24 of the

'974 patent is purely mental.  The Court cannot conclude on the evidence before it that

Defendants are entitled to judgment as a matter of law on patent eligibility, i.e. that the claimed

invention in Claim 24 of the '974 patent is so "manifestly abstract" that they fail to pass through

the "coarse filter" of Section 101.  In light of the foregoing, Defendants' motion for summary

judgment pursuant to Section 101 should be denied.

**B.**      **THE '813 PATENT**

> **1.**      **Defendants Have Not Shown the Asserted Claims of the '813**
> **Patent to be Anticipated As a Matter of Law, and There Is**
> **Disagreement Between Plaintiffs' Expert and Defendants'**
> **Expert as to the Scope and Content of the Cited Art**

Defendants do not contend that all of the claims of the '813 patent that are being asserted

against them in this lawsuit are anticipated.  Rather, Defendants contend only that Claims 1-4,

10, 21 and 22 of the "813 patent are anticipated by United States Patent No. 6,519,594 ("Li")

under 35 U.S.C. § 102(e) and that claims 1-4, 10, 20-22 are anticipated by the by United States

Patent No. 6,263,487 ("Stripf") under 35 U.S.C. § 102(e).  (Def. Br. at 45-60.)  While there is no

dispute that the Li and Stripf patent references pre-date the '813 invention, there remains a

dispute as to whether the four corners of either of those patent references discloses each and every element of the above listed claims of the '813 patent.

Defendants brief in support of their anticipation arguments once again does not provide any analysis of the cited Li or Stripf references.  Instead, Defendants brief simply provides conclusory statements that each element of the claims is found in each reference.  Defendants' support these conclusory statements with general citations to their expert's opening report on invalidity (DPF, ¶ 10 (Dkt. No. 60)).  Rockwell has disputed Defendants' expert's opinions regarding the scope and content of the disclosure provided by the Li and Stripf references and whether they serve to anticipate the '813 patent through the opinions provided by Rockwell's expert (PPF, ¶ 9), and those opinions are hereby incorporated by reference.  Moreover, Rockwell has submitted in support of this opposition brief a detailed response to Defendants' Proposed Findings of Facts which addresses, inter alia, the expert opinions by both experts on anticipation. Once again there is a direct conflict between the parties' expert opinions as to the whether the four corners of the Li and Stripf references describe every element of any of the asserted claims of the '813 patent.  "Resolving such credibility disputes between experts, however, is not appropriate on summary judgment."  Metro. Life, 527 F.3d 1338-39.  As explained in the opinions provided by Rockwell's expert, as well as detailed in the responses to Defendants' DPF statement, submitted herewith, neither Li nor Stripf anticipate each and every element of any of the claims of the '813 patent; , viewing the evidence in the light most favorable to the non-moving party, drawing all "justifiable inferences" in its favor, there certainly remains a genuine issue of material fact as to the whether these references anticipate any of the claims of the '813 patent.

a.     *The Li Patent Fails to Disclose Each and Every*
*Element of the Asserted Claims of the '813 Patent*

In particular, Rockwell submits that Li fails to anticipate or render obvious at least the

claimed, "a file system residing in a program memory of an industrial controller, the file system

having a plurality of file system services," recited by independent claim 1 and, by incorporation,

by all asserted claims depending therefrom, at least because it provides no disclosure that it

applies to full service file management in a control program, or that any file system resides on

the type of industrial controller disclosed in the '813 patent (PPF, ¶ 9 (Exh. CC, ¶ 137).  Li also

fails to anticipate or render obvious at least the claimed, "an execution engine residing in the

program memory of the industrial controller, the execution engine adapted to interpret code from

an industrial control program, the industrial control program including at least one instruction

utilizing one or more of the plurality of file system services," recited by independent claim 1 and,

by incorporation, by all asserted claims depending therefrom, at least because Li does not discuss

a file system on an industrial controller in general and, in particular, fails to discuss any

industrial control program utilizing file system services. (PPF, ¶ 9 (Exh. CC, ¶ 138).)  In fact,

Defendants have pointed to Li's "class mapper" as allegedly corresponding to the claimed "file

system" and "file system services," (Hooper I, ¶ 230) however there is no indication, nor have

Defendants shown, that the "Java Virtual Machines" cited as allegedly corresponding to the

claimed "execution engine" (Hooper I, ¶ 233) manipulate any code that utilizes any file services

associated with the class mapper, and thus the Defendants' proposed interpretation of the

reference is inconsistent with the content and arrangement of claim elements. (PPF ¶ 9 (Exh. CC

¶ 138).)

Rockwell also submits that Li fails to anticipate or render obvious at least the claimed,

"the file system and the execution engine being adapted to load user defined routine files upon

65

loading an industrial control program having one or more header instructions for including a user defined routine file, the included user defined routine file being loaded into the same program space as the industrial control program," recited by claims 2-3, at least because the cited Java Classes are unrelated to any industrial control program, and Li does not disclose file services used by an execution engine in relation to a header instruction. (PPF ¶ 9 (Exh. CC ¶ 139).)

Li also fails to anticipate or render obvious at least the claimed, "A method for providing an industrial controller with the functionality associated with utilizing a file system residing in the industrial controller," "developing an execution engine that interprets instructions of an industrial control program that utilizes at least one of the plurality of file system services," and "developing an industrial control program including at least one instruction that utilizes one or more file system services and downloading the industrial control program to the industrial controller," recited by claims 21-22, at least because any file system discussed in Li is not disclosed as being accessed by instructions within a control program, nor is any such file system in Li disclosed as residing on the type of industrial controller disclosed in the '813 patent. (PPF ¶ 9 (Exh. CC ¶¶ 142-144).)

Rockwell also submits that Li fails to anticipate or render obvious at least the claimed, "the file system and the execution engine being adapted to log measured data into a file upon executing an instruction in an industrial control program to record the measured data," recited by claims 10-13, at least because Li contains no discussion of logging or retrieving measured data. (PPF ¶ 9 (Exh. CC ¶¶ 149).)

b.    *The Stripf Patent Fails to Disclose Each and Every Element of the Asserted Claims of the '813 Patent*

The Stripf reference cited by Defendants fails to anticipate or render obvious at least the claimed, "a file system residing in a program memory of an industrial controller, the file system

having a plurality of file system services," recited by independent claim 1 and, by incorporation, by all asserted claims depending therefrom, at least because Stripf, which is directed to exchanging software blocks among controllers on a network, has no mention of files, file systems, or any plurality of file system services, let alone a file system residing in a program memory of an industrial controller.  (PPF ¶  9 (Exh. CC ¶¶159.)  Stripf also fails to anticipate or render obvious at least the claimed, "an execution engine residing in the program memory of the industrial controller, the execution engine adapted to interpret code from an industrial control program, the industrial control program including at least one instruction utilizing one or more of the plurality of file system services," recited by independent claim 1 and, by incorporation, by all asserted claims depending therefrom, at least because Stripf makes no mention of any facility to adapted to interpret code related to file system services. (PPF, ¶  9 (Exh. CC, ¶ 160).

Rockwell also submits that Stripf fails to anticipate or render obvious at least the claimed, "the file system and the execution engine being adapted to load user defined routine files upon loading an industrial control program having one or more header instructions for including a user defined routine file, the included user defined routine file being loaded into the same program space as the industrial control program," recited by claims 2-3, at least because Stripf merely discusses loading Java routines without any context relevant to files or file services, does not address loading of user defined routines upon loading an industrial control program, and provides no specific reference to header instructions. (PPF, ¶  9 (Exh. CC, ¶ 161).

Stripf also fails to anticipate or render obvious at least the claimed, "the user defined routine files being stored at a memory device separate from the program memory," recited by claim 3, at least because Stripf does not inherently include the use of file services on an industrial controller.  (PPF, ¶  9 (Exh. CC, ¶ 162).

67

Rockwell also submits that Stripf fails to anticipate or render obvious at least the claimed, "developing a file system and loading the file system on an industrial controller, the file system having a plurality of file system services," recited by claims 21-22, at least because Stripf, which is directed to exchanging software blocks among controllers on a network, has no mention of files, file systems, or any plurality of file system services, let alone a file system residing in a program memory of an industrial controller. (PPF, ¶ 9 (Exh. CC, ¶ 163).)  Stripf also fails to anticipate or render obvious at least the claimed, "developing an execution engine that interprets instructions of an industrial control program that utilizes at least one of the plurality of file system services," recited by claims 21-22, at least because Stripf has no discussion of any execution engine on an industrial controller that interprets instructions of an industrial control program to utilize file services.  (PPF, ¶ 9 (Exh. CC, ¶ 164).)

Rockwell further submits that Stripf fails to anticipate or render obvious at least the claimed, "developing an industrial control program including at least one instruction that utilizes one or more file system services and downloading the industrial control program to the industrial controller," recited by claim 22, at least because Stripf does not disclose an industrial control program having at least one instruction utilizing file services.  (PPF, ¶ 9 (Exh. CC, ¶ 165).)

Rockwell also submits that Stripf fails to anticipate or render obvious at least the claimed, "the file system and the execution engine being adapted to log measured data into a file upon executing an instruction in an industrial control program to record the measured data," recited by claims 10-13, at least because Stripf contains no discussion of logging or retrieving measured data, inasmuch as Stripf is unrelated to storing measured data using file services on a controller. (PPF, ¶ 9 (Exh. CC, ¶ 172)).

Rockwell has also raised the question of the sufficiency of the Li and Stripf references,

particularly as to whether they contain substantive representation of the claimed invention in such full, clear, and exact terms as to enable a person of ordinary skill in the art to make, construct, and practice the invention.  (PPF, ¶ 9 (Exh. CC, ¶¶ 136 and 158).)  This issue has been left unaddressed in Defendants' brief, and there exists a genuine issue of material fact in this regard that would preclude a finding of summary judgment on invalidity grounds over these references.

> **2.    Defendants Have Not Shown the Asserted Claims of the '813 Patent to be Obvious As a Matter of Law, and There Is Disagreement Between Plaintiffs' Expert and Defendants' Expert as to the Scope and Content of the Cited Art and the <u>Knowledge of a Person of Ordinary Skill in the Art</u>**

Defendants assert that various claims of the '813 patent are obvious under 35 U.S.C. § 103(a).  [Def. Br. a 44-60.]  Defendants' obviousness arguments result from four categories of combinations of prior art (the "obviousness combinations"): (1) combining the Li and Stripf Reference; (2) combining the Li and Stripf patent along with a various assortment of other patents; (3) combining the Li patent with an assortment of patents; (4) combining the Stripf patent with an assortment of patents.

Defendants' motion seems to assume that it can prove obviousness merely by trying to show that each individual element of a patent claim was known somewhere in the prior art.  This is fundamentally incorrect.  Obviousness requires more than a mere showing that the prior art includes separate references covering each separate limitation in a claim under examination.  <u>KSR</u>, 550 U.S. at 418. Rather, obviousness requires the additional showing that a person of ordinary skill at the time of the invention would have selected and combined those prior art elements in the normal course of research and development to yield the claimed invention.  <u>KSR</u> 550 U.S. at 421.  Defendants fail to make this "additional showing" and provide no actual evidence why a person of ordinary skill in the art would have modified the prior art to create the

claimed invention. Indeed, this requirement, flexibly applied, "remain the primary guarantor against a non-statutory hindsight analysis." Ortho-Mcneil v. Mylan Labs. Inc, 520 F.3d 1358, 1364 (Fed. Cir. 2008).

None of the "obviousness combinations" provided by Defendants in support of their obviousness arguments, however, are supported by any explanation, analysis or argument in Defendants' brief. Rather, Defendants cite broadly to their Proposed Findings of Fact, which in turn cite to various portions of their expert's opinions. Notably, many of the "obviousness combinations" are not supported by any analysis or opinion proffered by Defendants' expert. See, e.g., Defendants' expert's invalidity analysis of Claim 5 of the '813 Patent at Hooper I at ¶¶ 250-254 which never applies the "obviousness combination" of combining the Li and Stripf references or combining the Li and Stripf references with a various assortment of other references. Defendants' arguments are just *ipse dixit*. "Merely saying that an invention is a logical, commonsense solution to a known problem does not make it so." TriMed, 608 F.3d at 1343. Moreover, Defendants have failed to rebut the evidence that contradicts Defendants' *ipse dixit* argument, that the invention "represented an important step away from the limited data capabilities" (See PPF, ¶ 9 (Exh. CC, ¶ 118).) of the prior art and that a "PHOSITA at the time of the invention could not have combined [the references] with his own knowledge to make the claimed invention." (PPF, ¶ 9 (Exh. CC, ¶¶ 126-127).) Defendants have also failed to rebut the evidence that their own marketing materials "have identified the long felt need of the '813 invention, namely a PLC with an on board file system that could easily interface to off-the-shelf devices." (PPF, ¶ 9 (Exh. CC, ¶ 118); PPF, ¶ 122) This unrebutted evidence, which in part show relevant considerations of non-obviousness, creates a genuine issue of material fact for trial.

In any event, regardless of whether the "obvious combinations" that Defendants now

assert in their brief were supported by any opinions in their expert report, they all are insufficient for the Court to determine, as a matter of law, that any of the claims of the '813 patent are obvious.  It is simply impossible to determine from Defendants' obviousness arguments if any combinations of the various references share a common objective, the known functions of those references, or any predictable result of their combination.  (PPF, ¶ 9 (Exh. CC, ¶¶ 129, 132).) Defendants also fail to identify any reason that would have prompted a person of ordinary skill in the art to combine the elements in the way the claimed invention of the '813 patent does.  KSR, 550 U.S. at 418.  Defendants obviousness arguments provide no analysis of the relevant "Graham" factors and are nothing more than an exercise of pointing to various elements in the prior art without anything more.  See KSR, 550 U.S. at 418 (In deciding obviousness, "a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art.")  Since the content of the art cited by Defendants and the scope of the patent claim are a material dispute, summary judgment is not appropriate.  See KSR, 550 U.S. at 427.

Since Defendants have failed to provide evidence from which a reasonable jury could find that the "obviousness combinations" render any of the claims of the '813 patent invalid for obviousness, their motion for summary judgment should be denied.  In addition, all of Defendants' obviousness arguments concerning the claims of the '813 patent are based on its erroneous belief that the Li and Stripf patents anticipate claims 1 and 21 of the '813 patent.  In other words, Defendants' obviousness arguments fail because they fail to provide a piece of prior art that teaches "an execution engine residing in the program memory of the industrial controller, the execution engine adapted to interpret code from an industrial control program, the industrial control program including at least one instruction utilizing one or more of the plurality of file

system services" of Claim 1 and "developing an execution engine that interprets instructions of an industrial control program that utilizes at least one of the plurality of file system services" of Claim 21.  Thus Defendants have failed to provide evidence from which a reasonable jury could find that the Li or Stripf references teach the above limitations which are required by all of the challenged claims.

In light of the reasons set forth above, Defendants are not entitled to summary judgment regarding invalidity of any of the claims of the '813 patent.

**C.**     **THE '415 PATENT**

> **1.**     **Defendants Have Not Shown the Asserted Claims of the '415 Patent to be Anticipated As a Matter of Law, and There Is Disagreement Between Plaintiffs' Expert and Defendants' Expert as to the Scope and Content of the Cited Art**

Defendants contend that Claims 1 and 8 of the '415 patent are anticipated by United States Patent No. 5,764,507 ("Chuo") under 35 U.S.C. § 102(e) and by the TRiLOGI commercial product ("TRiLOGI") under 35 U.S.C. § 102(b).  [Def. Br. at 61].  As discussed supra at II(A)(1)-(2), there is a dispute as to whether the TRiLOGI reference attached as Exhibit 15 to the Defendants' DPF is admissible as evidence and whether it qualifies as prior art under 35 U.S.C. § 102(b).  While there is no dispute that the Chuo reference pre-dates the '415 invention, there remains a dispute as to whether the four corners of this reference, as well as the TRiLOGI reference, disclose each and every element of the above-listed claims of the '415 patent.

Yet again, Defendants' brief in support of its anticipation arguments fails to provide any discussion or analysis of the cited Chuo and TRiLOGI references.  Instead, Defendants' brief merely offers conclusory statements that each element of the claims can be found in each reference, providing only general citations to their expert's opening report on invalidity (Hooper I).  Rockwell has disputed Defendants' expert's opinions regarding the scope and content of the

disclosure provided by the Chuo and TRiLOGI references, including whether they serve to anticipate the claims of the '415 patent, through the opinions provided by Rockwell's expert (PPF, ¶ 9), and those opinions are hereby incorporated by reference.  Moreover, Rockwell has submitted in support of this opposition brief a detailed response to Defendants' Proposed Findings of Facts which addresses, *inter alia*, the expert opinions by both experts on anticipation. Once again there is a direct conflict between the parties' expert opinions as to whether the four corners of the Chuo and TRiLOGI references describe each and every element of the asserted claims of the '415 patent.  "Resolving such credibility disputes between experts, however, is not appropriate on summary judgment."  Metro. Life, 527 F.3d at 1338-39.

As explained in the opinions provided by Rockwell's expert as well as detailed in the responses to Defendants' Proposed Findings of Fact, submitted herewith, neither Chuo nor TRiLOGI anticipate each and every element of any of the claims of the '415 patent.  Once the evidence is viewed in the light most favorable to the non-moving party, drawing all "justifiable inferences" in its favor, there certainly remains a genuine issue of material fact as to the whether these references anticipate any of the claims of the '415 patent.

       a.    *The Chuo Patent Fails to Disclose Each and Every <u>Element of the Asserted Claims of the '415 Patent</u>*

In particular, Rockwell submits that Chuo fails to anticipate or render obvious at least the claimed, "a first instruction that employs a file system that resides on an industrial controller to log data to a file containing ladder logic instructions," and, "a second instruction that employs the file system to retrieve the data from the file containing ladder logic instructions," recited by independent claim 1 of the '415 patent at least because Chuo discusses citing the program containing instructions itself, and not using a program containing ladder logic instructions to log data to a storage file.  (DPF, ¶ 11 (Dkt. No. 61, ¶¶ 195-196).)  Furthermore, Chuo has no

discussion of any "file system that resides on an industrial controller." (*Id.*).  Rockwell also notes that Chuo does not anticipate or render obvious the claimed, "a plurality of additional instructions that facilitate utilizing file system services of the file system," recited by claim 8, and that Defendants have not even cited to any aspect of Chuo as allegedly anticipating this element (See Claim 8 table, Def. Br. at 67; see also, PPF, ¶ 9 (Exh. CC, ¶ 197).)  However, this hasn't discouraged Defendants from asking the Court to grant summary judgment in their favor on invalidity of claim 8 over Chuo.

> b.  *The TriLOGI Reference Fails to Disclose Each and* *Every Element of the Asserted Claims of the '415 Patent*

The TRiLOGI reference cited by Defendants fails to anticipate or render obvious at least the claimed, "a first instruction that employs a file system that resides on an industrial controller to log data to a file containing ladder logic instructions," and, "a second instruction that employs the file system to retrieve the data from the file containing ladder logic instructions," recited by independent claim 1 of the '415 patent at least because the reference, including the cited "Save" function, is not relevant to a file system that resides on an industrial controller, but rather to one on a program development computer.  (DPF, ¶ 11 (Dkt. No. 61, ¶ 202).).  Furthermore, there is no discussion in TRiLOGI of retrieving data from any file, let alone of instructions for such retrieval that contain ladder logic instructions.  (*Id.*, ¶ 203)  Rockwell also notes that TRiLOGI does not anticipate or render obvious the claimed, "a plurality of additional instructions that facilitate utilizing file system services of the file system," recited by claim 8 at least because the file services discussed in TRiLOGI refer to a file system that resides on a program development computer, and not on an industrial controller.  (*Id.*, ¶ 204).

Rockwell has also raised the question of the sufficiency of the Chuo and TRiLOGI references, particularly as to whether they contain substantive representation of the claimed

invention in such full, clear, and exact terms as to enable a person of ordinary skill in the art to make, construct, and practice the invention.  (PPF ¶ 9, (Exh. CC ¶¶ 198 and 205).)  This issue has been left unaddressed in Defendants' brief, and there exists a genuine issue of material fact in this regard that would preclude a finding of summary judgment on invalidity grounds over these references.

> **2.  Defendants Have Not Shown the Asserted Claims of the '415 Patent to be Obvious As a Matter of Law, and There Is Disagreement Between Plaintiffs' Expert and Defendants' Expert as to the Scope and Content of the Cited Art and the Knowledge of a Person of Ordinary Skill in the Art**

Defendants contend that Claims 1-5 and 8 of the '415 patent are obvious under 35 U.S.C. § 103(a) [Def. Br. at 61-67].  Defendants' obviousness arguments result from four categories of combinations of prior art (the "obviousness combinations"): (1) combining the Chuo and TRiLOGI references; (2) combining the Chuo and TRiLOGI references along with a various assortment of other references; (3) combining the Chuo patent with an assortment of references; and (4) combining the TRiLOGI reference with an assortment of references.

None of the combinations and modifications of cited references proposed by Defendants in support of its obviousness arguments, however, are supported by any explanation, analysis or argument in Defendants' brief.  Rather, Defendants cite broadly to their Proposed Findings of Fact, which in turn cite to various portions of their expert's opinions.  Notably, many of the combinations and modifications of cited references proposed by Defendants are not supported by any analysis or opinion proffered by Defendants' expert.  For example, Defendants' expert's invalidity analysis of claim 1 of the '415 patent never suggests as obvious the combination of Chuo and TRiLOGI with respect to claim 1 (Hooper I, pp. 76-81).  Nevertheless, Defendants have asked the Court to grant summary judgment on invalidity in their favor on the basis of this very combination for claim 1 and all other asserted claims of the '415 patent.  [Def. Br. at 61-

67].  Defendants' arguments are just *ipse dixit*.  "Merely saying that an invention is a logical, commonsense solution to a known problem does not make it so."  *TriMed, Inc. v. Stryker Corp.*, 608 F.3d 1333, 1343 (Fed. Cir. 2010).  Moreover, Defendants have failed to rebut the evidence contradicting Defendants' *ipse dixit* arguments, including that the invention satisfied the " long felt need for software editor to program the use of the file system on those PLC's" (PPF, ¶ 9 (Exh. CC,  ¶ 182).), that the cited references teach away from the combination proposed by Defendants (e.g., *Id.* ¶ 207) and that a "PHOSITA at the time of the invention could not have combined [the references] with his own knowledge to make the claimed invention."  (*Id.*, ¶¶ 199 and 207).  This unrebutted evidence, which in part show relevant considerations of non-obviousness, creates a genuine issue of material fact for trial.

In any event, regardless of whether the "obvious combinations" that Defendants now assert in their brief were supported by any opinions in their expert report, they all are insufficient for the Court to determine, as a matter of law, that any of the claims of the '415 patent are obvious.  It is simply impossible to determine from Defendants' obviousness arguments if any combinations of the various references share a common objective, the known functions of those references, or any predictable result of their combination. (PPF, ¶ 9 (Exh. CC, ¶ 185).) Defendants also fail to identify any reason that would have prompted a person of ordinary skill in the art to combine elements in the way the claimed invention of the '415 patent does.  KSR, 550 U.S. at 418.  Defendants obviousness arguments provide no analysis of the relevant "Graham" factors and are nothing more than an exercise of pointing to various elements in the prior art without anything more.  See KSR, 550 U.S. at 418 (In deciding obviousness, "a patent composed of several elements is not proved obvious merely by demonstrating that each of its elements was, independently, known in the prior art.").  Since the content of the art cited by Defendants and the

76

scope of the patent claims are a material dispute, summary judgment is not appropriate.  See KSR, 550 U.S. at 427.

Since Defendants have failed to provide evidence from which a reasonable jury could find that the "obviousness combinations" render any of the claims of the '415 patent invalid for obviousness, their motion for summary judgment should be denied.

> **3.     Defendants Argument that Claim 1 Fails to Comply with the Written Description Requirement of 35 U.S.C. § 112, First Paragraph is Based On An Erroneous and Assumed Claim Construction**

Defendants contend that Claim 1 of the '415 patent is invalid for allegedly failing to comply with the written description requirement of 35 U.S.C. § 112, first paragraph. Specifically, Defendants have assumed that the claimed, "a first instruction that employs a file system that resides on an industrial controller to log data to a file containing ladder logic instructions," and, "a second instruction that employs a file system to retrieve the data from the file containing ladder logic instructions," should be construed such that the "file" itself contains the "ladder logic instructions," and have then argued that the patent specification "omits to expressly disclose" or "inherently disclose[]" the concepts embodied in Defendants' construction.  (Def. Br. at 67-68).

Patents are presumed to be valid.  35 U.S.C. § 282; see also *Impax Labs*, 545 F.3d 1312, 1314 (Fed. Cir. 2008).  The party asserting the invalidity of a patent has the burden of demonstrating that invalidity "by clear and convincing evidence."  *PharmaStem*, 491 F.3d 1342, 1360 (Fed. Cir. 2007); see also *SRAM Corp.*, 465 F.3d at 1357 ("a moving party seeking to invalidate a patent at summary judgment must submit such clear and convincing evidence of facts underlying invalidity that no reasonable jury could find otherwise").  When construction of claim terms is at issue in determining claim validity, "claims are generally construed so as to

77

sustain their validity, if possible." Whittaker Corp. v. UNR Indus., Inc., 911 F.2d 709, 712 (Fed. Cir. 1990).  This Court itself has noted that, "Claims amenable to more than one construction should be construed to preserve their validity when it is reasonably possible to do so." Bruno Indep. Living Aids, Inc. v. Acorn Mobility Servs. Ltd., 301 F. Supp.2d 984 (W.D. Wis. 2003) (citing Wang Labs. Inc. v. America Online, Inc., 197 F.3d 1377, 1383 (Fed. Cir. 1999); Athletic Alternatives, Inc. v. Prince Mfg., Inc., 73 F.3d 1573, 1581 (Fed. Cir. 1996)).  The principle of choosing a claim construction that preserves claim validity, to the extent possible, dates back over 100 years in American patent jurisprudence. See Klein v. Russell, 86 U.S. 433, 466-467 (1873).  At least one Court has specifically noted that, "[i]n particular, claims should be interpreted to be consistent with the enablement and written description requirements." Curtiss-Wright Flow Control Corp. v. Z & J Technologies GmbH, 563 F.Supp.2d 1109, 1120 (C.D. Cal. 2007).

Defendants have proposed a particular construction in order to destroy validity based on the argument that their construction is inconsistent with the patent specification.  This is in direct conflict with the explicit prescription of governing authority, to construe claims "so as to sustain their validity, if possible." Whittaker Corp., 911 F.2d at 712 .  Instead, Rockwell has proposed an alternative construction that is fully consistent with all intrinsic evidence, including the specification and prosecution history.  "It is well-settled that, in interpreting an asserted claim, the court should look first to the intrinsic evidence of record, i.e., the patent itself, including the claims, the specification and, if in evidence, the prosecution history." Vitronics, 90 F.3d at 1582.  According to Rockwell's proposed construction, it is the claimed "first instruction" and "second instruction" that contain "ladder logic instructions," and not the "file."  (See, e.g., Zatarain Deposition Transcript, p. 257, line 22 to p. 258, line 18).  The patent specification supports this

construction, describing the capability to "log and retrieve measured data and trend data to files at local or remote locations," ('415 patent, Abstract) and that, "[t]he editor 48 is also adapted to allow a user to insert and edit instructions for logging and retrieval of measurement data 58 and trend data 54 in the ladder logic instructions." ('415 Patent, col. 6, lines 45-48).  Rockwell also notes that, during the prosecution history of the '415 patent, Rockwell amended the claims to incorporate the limitation "containing ladder logic instructions," and stated in remarks to the Examiner that the claim "has been amended to recite that the <u>first and second instructions <i>contain ladder logic instructions</i></u>."  <u>PPF</u> ¶ 111 (emphasis added).)  Thus, it is not only possible to construe the claims so as to sustain their validity, but in fact Rockwell's proposed construction is fully consistent with the intrinsic evidence associated with the '415 patent, while Defendants' construction is plainly at odds therewith.  Accordingly, Rockwell requests that summary judgment be denied at least on these grounds.

**D.   THE '232 PATENT**

**1.   Defendants Have Not Shown the Asserted Claims of the '232 Patent to be Anticipated As a Matter of Law, and There Is Disagreement Between Plaintiffs' Expert and Defendants' Expert as to the Scope and Content of the Cited Art**

Defendants contend that Claims 1, 2, 3, 5, 10, 11, and 14 of the '232 patent are anticipated by the "CoDeSys 1.5 (1997)" reference and by the "LabVIEW 1999" reference under 35 U.S.C. ¶ 102(b).  [Def. Br. at 37-43]  As discussed supra at II(A)(1)-(2), there is dispute as to whether the CoDeSys 1.5 reference, attached as Exhibit 6 to the Defendants' DPF, and the LabVIEW reference, attached as Exhibit 11 to the Defendants' DPF, is admissible as evidence.  Moreover, as discussed there is a genuine issue of material fact as to whether either reference qualifies as prior art under 35 U.S.C. § 102(b).

Defendants brief simply provides conclusory statements that each element of the asserted

claims is found in each reference and cites generally to <u>DPF</u> ¶¶ 26-66, 68-74, 76-83, 85-90, 98

92-97, 99-147.  Neither Defendants brief, nor the cited portions of the DPF in support of its

anticipation arguments provide any discussion of how a person of ordinary skill in the art would

understand the claims at the time of the invention.  <u>Graham</u> v. <u>John Deere Co.</u>, 383 U.S. 1, 17-18

(1966)).   Moreover, Defendants' DPF attempting to explain the scope and content of the

CoDeSys 1.5 and Labview references and the differences between the prior art and the claimed

invention are supported by nothing more than conclusory statements from Defendants' expert.

Since Rockwell has disputed Defendants' expert's opinions regarding the contents of the

CoDeSys 1.5 and Labview  references and whether they serve to anticipate the '232 patent

through its competing expert opinion and since Defendants brief provides no substantive rebuttal

to Rockwell's expert opinion, there remains a direct conflict between the parties' expert opinions

as to the whether the four corners of these references describe every element of each of the

asserted claims of the '232 patent.  "Resolving such credibility disputes, however, is not

appropriate on summary judgment."  <u>Metro. Life Ins. Co.</u>, 527 F.3d at 1338-39 (holding the

"conflict in [expert] declarations created a genuine issue of material fact that made summary

judgment inappropriate"). Where the party opposing summary judgment raises a genuine issue of

material fact by proffering expert testimony in conflict with the positions of the moving party,

summary judgment is properly denied.  <u>Id.</u>; <u>Anderson</u> v. <u>Liberty Lobby, Inc.</u>, 477 U.S. 242, 255

("Credibility determinations, the weighing of the evidence, and the drawing of legitimate

inferences form the facts are jury functions, not those of a judge, whether he is ruling on a

motion for summary judgment or for a directed verdict.")

    Since there remains a genuine issue of material fact as to the scope and content of the

CoDeSys 1.5 and Labview references and whether they serve to anticipate any of the claims of

the '974 patent, Defendants' request for summary judgment of the claims of the '232 patent based on anticipation should be denied.

<ol type="a">
<li>*The CoDeSys 1.5 Reference Fails to Disclose Each and
Every Element of the Asserted Claims of the '232 Patent*</li>
</ol>

Defendants argue that "Claim 1 of the '232 [patent] is invalid over CoDeSys 1.5 (1997) under 35 U.S.C. § 102(b) because each of the elements of Claim 1 is disclosed by CoDeSys 1.5 (1997)." [SJ Br. at 37]. However, Defendants fail to show that this reference teaches "the control device receives a message," and, "the message includes instructions to suspend execution," recited by independent claim 1 of the '232 patent. The cited portions of the CoDeSys 1.5 reference provided by Defendants' expert do not disclose the control device receiving a message. (PPF, ¶ 9 (Exh. CC, ¶ 71).) Defendants' citations to "serial port cable" and "serial interface" point to a physical communications medium that does not disclose the "message" required by the claims. (PPF ¶ 9 (Exh. CC ¶ 71).) Similarly, the citations provided by Defendants never disclose "the message includes instructions to suspend execution" or any of the other messages that are required in Claim 1. (PPF, ¶ 9 (Exh. CC, ¶ 72-75).) Furthermore, Defendants' expert argues that the "online stop" feature of the CoDeSys 1.5 teaches the claimed element "suspending execution of the stored program according to the instructions" of claim 1 of the '232 patent. (Hooper I, ¶ 165) However, the "online stop" simply teaches suspending the program between program cycles and not at a particular location in the program as required by claim 1. Rockwell's expert provides a host of other reasons why Claims 1-3, 5, 10, 11 and 14 are not anticipated by the CoDeSys 1.5 reference. (PPF, ¶ 9 (Exh. CC, ¶¶ 69-89).) Moreover, Defendants "practicing the prior art" defense, which compares certain similarities between the CoDeSys 1.5 and CoDeSys 2.3 manuals (See, generally, 35-37 DPF ¶¶ 37, 41, 46, 51,56-58, 61-62), violates Federal Circuit law of proving invalidity by clear and convincing evidence. Uniloc

USA, Inc. v. Microsoft Corp., 632 F.3d 1292, 1322–23 (Fed. Cir. 2011) ("proper framework for challenging the validity of a patent is not for the accused to show that it is practicing the prior art, but to show that every element of the patent claims reads on a single prior art reference.").  For these reasons and for the reason that there is conflicting testimony between Rockwell's and Defendants' expert on the scope of the teachings in the CoDeSys 1.5 reference, there remains a genuine issue of material fact for trial.

b.    <em>The Labview Reference Fails to Disclose Each and<br>Every Element of the Asserted Claims of the '232 Patent</em>

Defendants argue that "Claim 1 of the '232 [patent] is invalid over LabVIEW 1999 under 35 U.S.C. § 102(b) because each of the elements of Claim 1 is disclosed by LabVIEW 1999." [SJ Br. at 37].  Rockwell has raised the issue that the Labview reference is "not even directed to the same subject matter as the '232 invention, which involves debugging control devices, i.e. PLCs.  Rather, the cited LabVIEW references describe data acquisition (DAQ) systems that are not control devices as disclosed in '232."  (PPF, ¶ 9 (Exh. CC, ¶ 95).)  Rockwell has also raised the question of the sufficiency of the Labview reference, particularly as to whether they contain substantive representation of the claimed invention in such full, clear, and exact terms as to enable a person of ordinary skill in the art to make, construct, and practice the invention.  (PPF, ¶ 9 (Exh. CC, ¶ 93).)  The issues above have been left unaddressed in Defendants' brief, and Rockwell submits that for this reason alone there exists a genuine issue of material fact in this regard that would preclude a finding of summary judgment on invalidity grounds over these references.

Moreover, Rockwell's expert opined that the LabVIEW reference does not disclose a control device as defined by claim 1's element of "storing a program in a control device".  (PPF, ¶ 9 (Exh. CC, ¶ 96).)  Moreover, Labview does not disclose the messages required by the various

82

elements in claim 1.  (<u>PPF</u>, ¶ 9 (Exh. CC, ¶¶ 97-101).)  Rockwell's expert also provides a host of

other reasons why Claims 1-3, 5, 10, 11 and 14 are not anticipated by the CoDeSys 1.5 reference,

which remain unrebutted by Defendants.  (<u>PPF</u>, ¶ 9 (Exh. CC, ¶¶ 95-113).)

> **2.      Defendants Have Not Shown the Asserted Claims of the '232
> Patent to be Obvious As a Matter of Law, and There Is
> Disagreement Between Plaintiffs' Expert and Defendants'
> Expert as to the Scope and Content of the Cited Art and the
> <u>Knowledge of a Person of Ordinary Skill in the Art</u>**

Defendants' obviousness arguments concerning 1-3, 5, 10 and 11 of the '232 patent

require the Court to weigh the expert opinions and determine that Defendants' expert is more

credible than Rockwell's expert.  For the reasons stated above, this is not proper on summary

judgment and viewing the evidence in the light most favorable to the non-moving party, drawing

all "justifiable inferences" in its favor, summary judgment on obviousness of the asserted claims

must be denied.

Defendants' obviousness argument in their brief consists of one single sentence that is cut

and paste repeatedly throughout their invalidity analysis of the '232 patent:

> "In the alternative, Claim [x] of the '232 Patent is invalid over a combination of
> CoDeSys 1.5 (1997) and Labview 1999 under 35 U.S.C. § 103(a), because each
> of the elements of Claim [x] is met by combining CoDeSys 1.5 (1997) and
> Labview 1999 according to known function and with predictable results."

[Def. Br. at 38-43].  The above conclusory statement is insufficient for the Court to determine, as

a question of law, that any of the claims of the '232 patent are obvious.  In addition, Defendants'

expert report provides no obviousness analysis to support this statement.  <u>See</u> <u>United States</u> v.

<u>Phillips</u>, 596 F.3d at 417–18 (not responsibility of the court to make arguments for the parties).

<u>See</u> <u>also</u> <u>Ruffin–Thompkins</u> v. <u>Experian Info. Solutions, Inc.</u>, 422 F.3d 603, 609–10 (7th

Cir.2005) (district court not required to search the record to find evidence to support arguments).

In addition, Defendants have failed to rebut Rockwell's expert's opinion that none of the claims

of the '232 patent are obvious in light of CoDeSys 1.5 (1997) and Labview 1999, which is hereby incorporated by reference.  (PPF, ¶ 9 (Exh. CC, ¶ 66).)

For example, Defendants fail to identify any reason that would have prompted a person of ordinary skill in the art to combine the elements in the way the claimed invention of the '232 patent does.  KSR, 550 U.S. at 418.  Since Defendants have failed to provide evidence from which a reasonable jury could find that the CoDeSys 1.5 (1997) reference in combination with the Labview 1999 reference render any of the claims of the '232 patent invalid for obviousness, their motion for summary judgment should be denied.

In addition, Defendants' obviousness arguments concerning the claims of the '232 patent are based on its erroneous belief that the CoDeSys 1.5 (1997) and Labview 1999 references each anticipate claims 1 and 14 of the '232 patent.  Since those reference fail to teaches the disclosed messages in "the control device receives a message," and, "the message includes instructions to suspend execution," as well as "suspending execution of the stored program according to the instructions" of Claim 1 and of Claim 14, Defendants have failed to provide evidence from which a reasonable jury could find that CoDeSys 1.5 (1997) and Labview 1999 references render the asserted claims of the '232 patent obvious.

In light of the reasons set forth above, Defendants are not entitled to summary judgment regarding invalidity of any of the claims of the '232 patent.

## CONCLUSION

For the foregoing reasons, Rockwell respectfully requests that the Court deny Defendants' motion for summary judgment in its entirety.

Dated:  May 4, 2012                          /s/ Scott S. Balber
                                             Scott S. Balber (admitted in W.D. Wis.)
                                             Paul J. Tanck (admitted in W.D. Wis.)
                                             Lisa Schapira (admitted in W.D. Wis.)
                                             Chadbourne & Parke LLP

30 Rockefeller Plaza
New York, NY  10112
Tel.:  (212) 408-5100
Fax:  (212) 541-5369
Email:  ptanck@chadbourne.com
COUNSEL FOR PLAINTIFFS ROCKWELL
AUTOMATION, INC.
and ROCKWELL AUTOMATION
TECHNOLOGIES, INC.

**CERTIFICATE OF SERVICE**

I certify that on May 4, 2012, I caused the foregoing Plaintiffs' Memorandum of Law In Opposition to Defendants' Motion for Summary Judgment; the declaration of Paul . Tanck J. In Support of Plaintiffs' Opposition to Motion for Summary Judgment; and the Declaration of Arthur Zatarain In Support of Plaintiffs' Opposition to Motion for Summary Judgment; and the Declaration of to be electronically filed with the Clerk of Court using the Court's Case Management/Electronic Case Filing ("CM/ECF") SystBem.  All parties are represented by attorneys of record registered with CM/ECF and will receive service electronically.  There is no party requiring a different form of service under this Court's electronic filing procedures.


Dated:  May 4, 2012                              /s/      Lisa Schapira

                                                 Scott S. Balber (*admitted in W.D. Wisconsin*)
                                                 Paul J. Tanck (*admitted in W.D. Wisconsin*)
                                                 Lisa Schapira(*admitted in W.D. Wisconsin*)
                                                 CHADBOURNE & PARKE LLP
                                                 30 Rockefeller Plaza
                                                 New York, NY  10112
                                                 Tel.:  (212) 408-5100
                                                 Fax:  (212) 541-5369
                                                 Email:  sbalber@chadbourne.com

                                                 ATTORNEYS FOR PLAINTIFFS
                                                 ROCKWELL AUTOMATION, INC. AND
                                                 ROCKWELL AUTOMATION TECHNOLOGIES, INC.