IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ROCKWELL AUTOMATION, INC. and<br>ROCKWELL AUTOMATION TECHNOLOGIES, INC.,<br><br>    *Plaintiffs*,<br><br>    v.<br><br>WAGO CORPORATION and<br>WAGO KONTAKTTECHNIK GmbH & CO. KG,<br><br>    *Defendants*. | Civil Action No. 10-cv-718 |

**PLAINTIFF ROCKWELL AUTOMATION, INC.'S AND ROCKWELL AUTOMATION TECHNOLOGIES, INC.'S OPPOSITION TO DEFENDANTS' MOTION TO COMPEL**

**I.   INTRODUCTION**

Plaintiffs Rockwell Automation, Inc. and Rockwell Automation Technologies, Inc. (collectively "Rockwell") submit this opposition to defendants Wago Corporation's ("WCP") and Wago Kontakttechnick & Co, KG's ("WKT"), (collectively, "Defendants") Motion to Compel Discovery Responses ("Motion"). (Dkt. 79). Defendants' motion should be denied because it is wholly deficient on both procedural and substantive grounds. Beyond Defendants' failure to satisfy the meet and confer requirement of Rule 37(a)(1), the Court should deny this Motion because the documents Defendants appear to be seeking are either (1) privileged documents relating to Rockwell's pre-suit investigation, or (2) documents that have already been produced or do not exist.

Defendants' tit-for-tat discovery games are facially apparent given the haste with which they filed this Motion (i.e., the evening before a status update hearing arising out of Rockwell's motion to compel discovery from Defendants and with a pending, but unanswered, invitation from Rockwell to discuss Defendants' concerns). The parties met and conferred regarding

Rockwell's responses to Defendants' document requests in December of last year. Defendants then sat silently for three months, apparently satisfied by Rockwell's explanations regarding its document production. Defendants only began clamoring about purported shortcoming after Rockwell began to question the sufficiency of Defendants' document production. Indeed, it is through this Motion that Rockwell <u>first</u> learned of Defendants' concerns with regards to many of these requests.

## II.   BACKGROUND

### A.   Meet and Confer Exchange

Months ago Rockwell responded to document requests propounded by Defendants. (<u>See</u> Rockwell's Objections and Responses to Defendants' First Set of Document Requests Served on October 17, 2011, Exh. 1.)[1] Defendants' claim that "Plaintiffs' counsel has consistently declined to engage in meaningful discussions" regarding discovery is unfounded. (<u>See</u> Motion at 2.) Following the receipt of Defendants' first inquiry regarding Rockwell's discovery responses on December 19, 2011, the parties scheduled a telephone call to discuss Defendants' concerns. (<u>See</u> December 19, 2011 email from R. Cook to P. Tanck, Attaching Letter and Scheduling Telephone Call., Exh. 4.) On December 20, 2011, the parties had a nearly two hour telephone conversation during which Rockwell's counsel reviewed each of Defendants' discovery requests and Rockwell's responses. (<u>See</u> Tanck Decl., ¶ 6.) Following that call, Defendants' made no further

---

[1] All exhibits are to attached to the Declaration of Paul J. Tanck in Support of Rockwell's Opposition to Defendants' Motion to Compel ("Tanck Decl."). Rockwell also responded to certain interrogatory requests and requests for admission relevant to Defendants' Motion. (<u>See</u> Rockwell's Responses and Objections to Defendants' Third Set of Interrogatories Served on January 26, 2012, Exh. 2; Rockwell's Objections and Responses to Defendants' First Set of Requests for Admission served on April 9, 2012, Exh. 3.)

2

inquiry into Rockwell's production for <u>nearly three months</u>. (<u>See</u> March 16, 2012 Letter from R. Cook to P. Tanck, Exh. 5.) Rockwell can only infer from this silence that Defendants were satisfied with the explanations given during the December meet and confer telephone conversation. Strikingly, any reference to the substance of the December telephone call, or even its occurrence, is absent from Defendants' version of the facts. (<u>See</u> <u>generally</u>, Motion).

On March 16, 2012, after three months of radio silence and after Rockwell had raised concerns over deficiencies in Defendants' production, Defendants decided to renew their concern over Rockwell's production. (Exh. 5.) That letter resulted in a second telephone conversation occurring on April 13, 2012, where the parties again discussed Rockwell's discovery responses. (Tanck Decl., ¶ 8.) Following that call, Defendants sent Rockwell a confirming letter. (April 13, 2012 email from J. Scheller to P. Tanck, Exh. 6.) On April 20, 2012, Counsel for Rockwell responded providing information and requesting that Defendants let counsel for Rockwell know "[i]f you feel that a specific document or categories of documents that Defendants believe were not produced in this action." (April 20, 2012 Letter from P. Tanck to J. Scheller, Exh. 7.) Rockwell's April 20 letter reiterated Rockwell's position that documents relating to its pre-suit investigation were privileged and cited authority to that effect. (<u>Id</u>.) To this date, Defendants have neither countered Rockwell's position regarding privilege nor have they articulated particular categories of documents that were not produced.

On April 20, 2012, a hearing was held on Rockwell's Motion to Compel. (Dkt. 40.) The focus of this hearing was deficiencies in Defendants' document production. (<u>See</u> Transcript of April 20, 2012 Telephone Hearing before Magistrate Judge Crocker, Exh. 8.) Pursuant to the Court's Order, the parties met and conferred on April 30, 2012 to discuss Rockwell's concerns

3

stemming from its motion to compel. (See Tanck Decl., ¶ 12.) At the time of the April 30, 2012 meet and confer, Defendants still had not responded to Rockwell's April 20, 2012 letter. (Id.)

After learning that Defendants wished to discuss Rockwell's discovery, on May 1, 2012, Counsel for Rockwell sent an email to Defendants seeking to work with Defendants and again asked for clarification as to what was deficient in Rockwell's production. (May 1, 2012 email from P. Tanck to R. Cook, Exh. 9.) Specifically, Rockwell asked that Defendants identify documents they thought had not been produced and their relevance. (Id.) Rockwell's letter concluded that: "[o]nce we have a better understanding of your need, we can hopefully resolve any remaining discovery issues to the extent they exist." (Id.) Defendants wished to continue the meet and confer by telephone the day before Rockwell's opposition to Defendants' Motion for Summary Judgment was due. (May 2, 2012 email from R. Cook to P. Tanck, Exh. 10,) Counsel for Rockwell responded as follows:

> I am not available tomorrow or Friday. I am available next week after Monday (traveling on Monday).
>
> In order to have a productive discussion, could you please outline the specific issues you have regarding Plaintiffs' document production? As you know, we have already met and conferred (twice) on the old letters you have attached to previous emails requesting a meet and confer, and I am not sure I understand what issues or what new ground Defendants want to cover.
>
> Please provide any explanation of any documents Defendants are seeking (and relate them to any particular document requests if possible) and an explanation of how such documents are relevant to the claims or defenses in this case. I think proceeding in this manner will make any future meet and confers productive for all parties.

(May 2, 2012 email from P. Tanck to R. Cook, Exh. 11.) No response was received to this email. (Tanck Decl., ¶ 15.) Defendants' instead chose to involve the Court.

4

### B. Rockwell's Search Methodology

Although Rockwell has explained its search methodology to Defendants multiple times, Rockwell repeats it here. Rockwell has identified the following individual custodians: Steven Blech, Gregory Majcher, John Caspers, Jeffrey Hamilton, James Kay, David Johnston, Shelly Urdaneta, Stuart Sigel, Samuel Malizia, Jr., John Weisenberger, Steven Hickcox, Ron Bliss, and Bob Kretschmann. (Tanck Decl., ¶ 16.) In addition to searching for paper files, Rockwell has searched for electronic documents, including the email of the aforementioned custodians. (Id.) The collected documents were reviewed and documents responsive to Defendants' discovery requests were produced if they were not privileged or otherwise objectionable.[2] (Id.) This resulted in the production of ROCK0000001 to ROCK0050660 and ROCK0100000-ROCK0100002. (Id.)

## III. ARGUMENT

Rockwell has fully complied with its discovery obligations and has produced all requested "non-privileged matter that is relevant to any party's claim or defense." See FED. R. CIV. PROC. 26(b)(1). Defendants' concerns over what specific types of documents Rockwell has failed to produce in response to Document Requests 2, 3, 7, 8, 9, 17, 18, 19, 20, 21, 32, 33, 35,

---

[2] It should be noted that documents retained by Rockwell are subject to its document retention policy. Rockwell's document retention policy which was produced in discovery, (ROCK0000998-ROCK0001007), dictates that email should only be retained for at most one year. (Exh. 12, at 9.) Moreover, in their Rule 26(f) Report, the parties agreed that an explicit request and court approval was needed to require a party to suspend its routine recycling or deletion practices. (Exh. 13, Dkt. 21 at 6-7.)

36, 37, 38, 39, 44, 48, 50, 52, 53, and 54 are vaguely, if at all, articulated.[3] The documents Defendants appear to be seeking are either (1) privileged documents relating to Rockwell's pre-suit investigation, or (2) documents that have already been produced or do not exist.

### A. Defendants Are Not Entitled to Rockwell's Pre-Suit Investigation

Defendants are seeking discovery related to Rockwell's pre-suit investigation of WCP and WKT products. (See Motion at 5-8,12 &13, referencing Document Requests 2, 3, 18. 19, 20, 33, 35, 36, 37, 38, 39, 44 and 48; see also Exh. 1.) This information is privileged and Defendants have provided no basis to compel production of such documents. Rockwell has asked Defendants to articulate why these documents are not privileged, but Defendants have failed to do so. (See, e.g., Exs. 7 & 11.)

Defendants now contend that disclosure of Rockwell's communications regarding its pre-suit investigation is relevant to an award of attorneys' fees under 35 U.S.C. § 285 if Rockwell acted in bad faith in filing suit. (Motion at 9.) As discussed below, Defendants are not entitled to discovery of Rockwell's privileged pre-suit investigation.

### 1. Pre-Suit Investigation and Testing of Defendants' Products Are Protected by Attorney-Client Privilege or the Attorney Work Product Doctrine

Federal Rule of Civil Procedure 26(b)(3) protects from discovery information that was prepared at the behest of an attorney in anticipation of litigation. FED. R. CIV. PROC. 26(b)(3). Scientific testing performed at the request of counsel for this litigation, which will not be relied

---

[3] Although Defendants identify Requests 32 and 50 in their string list of document requests for which they seek to compel compliance, there is no substantive discussion of either of these Requests in Defendants' Motion.

6

upon to prove infringement at trial, "falls within the textbook definition of work product." Vardon Golf Co, Inc. v. BBMG Golf Ltd., 156 F.R.D. 641, 648-9 (N.D. Ill. 1994). Indeed, courts around the country, including within this judicial district, have squarely held that scientific tests conducted for purposes of patent infringement litigation are work product, absent limited circumstances. See 3M Co. v. Kerr Corp. , No. 07-C-87-C, 2007 WL 5462430, *2 (March 12, 2007, W.D.Wis.) (refusing to compel "information about scientific testing performed at the request of [plaintiff's] counsel that [plaintiff] (and its experts) will not be relying upon to provide infringement"); Sicurelli v. Jeneric/Pentron Inc., No. 03-CV-4934, 2006 WL 1329709 *2-*6 (E.D.N.Y. May 16, 2006) (denying accused infringer's motion to compel the patentee to produce discovery related to testing of the accused product); Phillips Elec. North America Corp. v. Universal Elec. Inc., 892 F. Supp. 108, 110 (D. Del. 1995) (denying motion to compel documents related to patent infringement investigations, tests or analyses performed by plaintiff's employees for its counsel); AK Steel Corp. v. Sollac & Ugine, 234 F. Supp. 2d 711, 715-16 (S.D. Ohio 2002) (denying a motion to compel test results and reports because they were protected work product). In patent infringement litigation, testing conducted upon the direction of counsel is only waived if that testing is relied upon in the case, or relied upon by that party's expert. See 3M Co., 2007 WL 5462430, *2 (finding that testing performed at the request of counsel and not relied upon by a testifying expert "qualifies as work product to which no exceptions (waiver or substantial need) apply"); Sicurelli, 2006 WL 1329709, at *4-5 ("Whether plaintiffs have placed their pre-litigation testing and testing commissioned by their counsel at issue depends on whether that information was considered by [the patentee's testifying expert] in formulating his expert opinion and report or whether plaintiffs otherwise intend to rely on that

7

information"); see also AK Steel, 234 F. Supp. 2d at 715 (holding that the privilege of the test results was not waived because the testing was not relied on by an expert).

In its April 20, 2012 letter, Rockwell cited authority to support its position that pre-suit investigations are privileged, but Defendants never commented on this authority. (See Exs. 7 & 11.) Defendants have provided no argument as to why the well established protection over pre-suit investigations should be disregarded. (See id.)

### 2. Rockwell Has Produced Evidence of Pre-Suit Testing

Defendants' accuse Rockwell of not performing a proper pre-suit investigation and state that Rockwell's Infringement Contentions are a "smokescreen consisting of endless repetition of a small set of screen shots from readily available product literature regarding WCP and WKT products". (See Motion at 6.) This is simply not true. As evidenced by Rockwell's Infringement Contentions, Rockwell has conducted a through examination of Defendants' infringing products prior to brining this action. (See Exh. 14.)

Defendants have either failed to examine Rockwell's Infringement Contentions, or paid them so little attention as to have overlooked the fact that they identify testing of "CoDeSys" using the "WAGO 758-870 Controller." (See, e.g., Exhibit A to Rockwell's September 16, 2011 Infringement Contentions, Exh. 14 at 9, 10, 11-14, 16, 17, 19, 23, 25, 26, 28, 30, 31, 41-44, 46, 50, 51, 53, 54 and 56.) For example, one reference to the testing preformed by Rockwell as evidenced in its Infringement Contentions is the following:

> The screenshot below shows the process of logging into a WAGO-I/O-System device via an "online mode" where a WAGO-I/O-System device stores a program, written in Ladder Logic.



(Id. at 8-9, emphasis added.)

### B. The Other Relevant Information Defendant Appears to Seek Has Already Been Produced or Does Not Exist

#### 1. All Records Regarding the Rockwell's Industrial Controllers

Request 3 broadly seeks "all records" relating to Rockwell's industrial controllers that are capable of running on an operating system. (Exh. 1, at 5.) This has absolutely nothing to do with any claim or defense in this action and seeks completely irrelevant information.

While Rockwell has produced a substantial amount of information to Defendants, including but not limited manuals, marketing materials, press releases, and sales figures relating to Rockwell's patented products, the scope of Request 3 is without reasonable bounds. It is far broader than what Defendants are reasonably entitled to and beyond what they need to make their defense. While Defendants generally contend that they are entitled to learn "a considerable

9

amount" about Rockwell's products, (see Motion at 12), a considerable amount has already been produced. (See Tanck Decl., ¶ 16.)

What is at issue in this lawsuit is the design and development of Defendants' infringing products, not Rockwell's products. The design specifications of Rockwell's products is nothing more than a fishing expedition and defendants have not articulated any basis for these documents despite Rockwell's multiple requests for an explanation. (See Exs. 7, 9 & 11.) Should Defendants believe that some specific category of documents has not been produced, Rockwell remains willing to discuss those issues.

### 2. The Circumstances Surrounding Rockwell's Invention

Requests 8, 9, 17 & 21 generally seek documents relating to the circumstance that led to the conception, invention, design efforts and other documentation regarding the patents-in-suit. (Exh. 1, at 8, 9, 12 & 14.) Defendants contend that Rockwell has only "made a bare-bones production consisting of PowerPoint type sets" or that it failed to produce any documents. (Motion at 13.) Rockwell, however, has produced all non-privileged documents in its control that are responsive to these Requests. As a practical matter, the patents-in-suit were filed in or around 2000, and much of what Defendants seek, including email, no longer exists within Rockwell's custody. (See §II.B supra.) To the extent documents existed, they were produced. (See Tanck Decl., ¶ 16.)

### 3. Sales Information

Defendants raise concerns over Requests 52, 53 and 54 which generally deal with the sale of Rockwell products. (See Exh. 1 at 31-34; Motion at 10-11.) Defendants point to Rockwell's response to Request for Admission 4 to demonstrate that there are products covered by the patents-in-suit for which Rockwell obtained a profit. (Motion at 12.) Defendants contend that no information for these products has been produced. (Id.). This is simply not true. Rockwell

10

has produced manuals, marketing materials, press releases and sales numbers for Rockwell's products that incorporate the patents-in-suit. (Tanck Decl., ¶ 16.)

### 4. Documents Related to Patent Applications

Request 7 seeks documents related to "U.S. and foreign patents or patent applications that identify or disclose the invention of such Patents in Suit or which claim priority in or through any of the Patents in Suit or otherwise discuss the subject matter of the Patent in suit." (Exh. 1, at 7-8.) Defendants' Motion does not articulate why such documents are relevant and this is the first time Defendants have raised a concern about this Request. (Motion at 13.) In any event, it is Rockwell's understanding that the materials sought are a matter of public record and can be obtained by Defendants if they choose.

### 5. Rockwell's Motivation to File Suit

Defendants argue that Request 48 "asks for documents regarding Plaintiffs' decision to file this lawsuit." (Motion at 13.) Defendants contend that this information is potentially relevant to attorneys' fees. (Id.) This however, is not what is sought by Request 48. (Exh. 1, at 29.) Specifically, Request 48 demands that Rockwell: "Produce Records sufficient to identify each Person responsible for the decision to commence the above captioned civil action, including, but not limited to each person who participated in such decisions." (Id.) Using Defendants' skewed interpretation of what is sought by Request 48, the only documents responsive to Request 48 are privileged. Regarding documents sufficient to show who was involved in the decision to file suit, Rockwell does not have any non-privileged document listing these individuals, and Rockwell is not required to create such a document. Should Defendants want a list of these individuals, they can serve Rockwell with an interrogatory to that effect.

## IV. THE COURT SHOULD AWARD ROCKWELL ITS ATTORNEYS' FEES AND COSTS INCURRED RESPONDING TO DEFENDANTS' MOTION

Defendants' request for relief is a clear example of unnecessary motion practice and wasted resources. Indeed, there was a pending invitation for a telephone call to work through Defendants' concerns which was never accepted by Defendants. (Exh. 11.) Moreover, the first time Rockwell learned that Defendants had specific concerns about certain requests was upon reading Defendants' Motion. Defendants' actions cannot reasonably be viewed as sufficient to meet Rule 37(a)(1)'s requirement that the parties meet and confer in an effort to avoid motion practice. FED. R. CIV. PROC. 37(a)(1).

Pursuant to Rule 37(a)(5)(B), the Court "must after giving Defendants and opportunity to be heard" require Defendants and/or its counsel to pay Rockwell its reasonable expenses, including reasonable attorneys' fees incurred to defeat this motion only if Defendants affirmatively demonstrate that the Motion was "substantially justified or other circumstances make an award of expenses unjust" should the court refrain from awarding Rockwell its expenses and fees. FED. R. CIV. PROC. 37(a)(5)(B); Adv. Comm. Notes to 1970 Amendment to former Rule 37(a)(4) (burden is on the loosing party to demonstrate substantial justification).

In light of Defendants' failure to meaningfully meet and confer with Rockwell, this Court should find that Defendants were not substantially justified in making the Motion and that no other circumstances make an award of expenses unjust. Accordingly, the Court should award Rockwell fees and expenses in the reasonable amount of $9,393.60. (See Tanck Decl., ¶¶ 21-21.)

## V. CONCLUSION

Defendants have failed to meet and confer on several requests identified in their motion, raising several issues for the first time in their Motion. For the contested requests, Rockwell has

12

produced all relevant, non-privileged documents responsive to those requests. Absent a clear articulation from Defendants regarding what they think is missing from the production or why they think certain requests are relevant, the parties cannot move forward. As Rockwell stated in its May 2 email (Exhibit 11) -- sent the day before Defendants filed this Motion -- Rockwell is willing to work with Defendants to remedy any deficiencies. That offer remains open.

Dated:   May 10, 2012

    /s/ Scott S. Balber_____

Scott S. Balber (*admitted in W.D. Wisconsin*)
Paul J. Tanck (*admitted in W.D. Wisconsin*)
Lisa Schapira(*admitted in W.D. Wisconsin*)

CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, NY  10112
Tel.:  (212) 408-5100
Fax:  (212) 541-5369
Email:  sbalbler@chadbourne.com

**ATTORNEYS FOR PLAINTIFFS ROCKWELL AUTOMATION, INC. AND ROCKWELL AUTOMATION TECHNOLOGIES, INC.**

## CERTIFICATE OF SERVICE

I certify that on May 10, 2012, I caused the foregoing documents: plaintiffs Rockwell Automation, Inc.'s and Rockwell Automation Technologies, Inc.'s Opposition to Defendants' Motion to Compel; Declaration of Paul J. Tanck in Support of plaintiffs Rockwell Automation, Inc.'s and Rockwell Automation Technologies, Inc.'s Opposition to Defendants' Motion to Compel to be electronically filed with the Clerk of Court using the Court's Case Management/Electronic Case Filing ("CM/ECF") SystBem.  All parties are represented by attorneys of record registered with CM/ECF and will receive service electronically.  There is no party requiring a different form of service under this Court's electronic filing procedures.

Dated:  May 10, 2012               /s/      Lisa Schapira

Scott S. Balber (*admitted in W.D. Wisconsin*)
Paul J. Tanck (*admitted in W.D. Wisconsin*)
Lisa Schapira(*admitted in W.D. Wisconsin*)
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, NY  10112
Tel.:  (212) 408-5100
Fax:  (212) 541-5369
Email:  lschapira@chadbourne.com

**ATTORNEYS FOR PLAINTIFFS
ROCKWELL AUTOMATION, INC. AND
ROCKWELL AUTOMATION TECHNOLOGIES, INC.**