IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

ROCKWELL AUTOMATION, INC. and
ROCKWELL AUTOMATION TECHNOLOGIES,
INC.,

                          Plaintiffs,

                  -against-

WAGO CORPORATION and
WAGO KONTAKTTECHNIK GmbH & CO. KG,

                          Defendants.

Case No. 3:10-CV-718-WMC

---

**PLAINTIFFS' OPPOSITION TO NON-PARTY NATIONAL OILWELL VARCO, L.P.'S MOTION TO QUASH AND MOTION FOR PROTECTION AND PLAINTIFFS' CROSS-MOTION FOR AN ORDER COMPELLING DISCOVERY**

Plaintiffs Rockwell Automation Technologies Inc. and Rockwell Automation Inc. ("Rockwell") respectfully submit this memorandum of law (1) in opposition to National Oilwell Varco L.P.'s ("NOV") Motion to Quash the Subpoenas and for Protection, and (2) in support of Rockwell's Cross-Motion for an Order Compelling Discovery pursuant to Rules 26, 37 and 45 of the Federal Rules of Civil Procedure.

**I.     INTRODUCTION**

On July 13, 2012, NOV filed a motion to quash two subpoenas served by Rockwell (the "Motion").  (See Docket 110.)  By choosing to file its Motion in this Court, and not in the District Court for the Southern District of Texas where the subpoenas were issued, NOV has

voluntarily submitted to the jurisdiction of this Court with regards to the subpoenas at issue.[1] It is not surprising that NOV would voluntarily appear in Western District of Wisconsin as this jurisdiction is better equipped to deal with the merits of the subpoenas because it has a greater familiarity with the underlying litigation than the Southern District of Texas. See generally, Heat and Control, Inc. v. Hester Industries, Inc., 785 F.2d 1017, 1024 (Fed. Cir. 1986) (stating that "courts with jurisdiction over ancillary discovery matters should be cautious in determining what is relevant evidence to the main action…because of their unfamiliarity with the main action"). Rockwell agrees with NOV that this forum is preferred to resolve the issues over the two subpoenas. Moreover, since NOV has voluntarily submitted to the jurisdiction of this Court through its motion to quash, the Court likewise has jurisdiction over NOV to compel its compliance with the subpoenas.

As discussed below, the information sought by the subpoenas is highly relevant, is not unduly burdensome, and has not been prohibited from discovery. Accordingly, NOV's Motion should be denied and NOV should be required to provide the discovery requested by Rockwell.

---

[1] Fed. R. Civ. P. 45(c)(3)(A) requires a motion to quash a subpoena to be brought in the district court from which the subpoena was issued. However, it is recognized that the jurisdiction governing the underlying action has the authority to entertain a motion to quash where the non-party affirmatively seeks relief from that jurisdiction. See Yanaki v. Daniel, No. 2:07-cv-648, 2009 WL 2030287, at *1-*2 (D. Utah, July 9, 2009) ("[N]ormally, disputes over discovery from a non-party are decided by the court which issued the subpoena, *unless the non-party consents that the matter be resolved by a court in another district*.") (emphasis in original).

## II.     RELEVANT FACTUAL BACKGROUND

### A.     Rockwell's Has Asserted Claims Against Wago for Indirect Patent Infringement in the Underlying Lawsuit Which Requires Discovery From Wago's Customers

Rockwell has brought suit against defendants Wago Corporation and Wago Kontakttchnik GmbH & Co. KG ("Wago") alleging patent infringement of four patents relating to industrial control technology.  Rockwell's complaint against Wago includes allegations that Wago has engaged in indirect patent infringement for each of the asserted patents.  (See Complaint, Docket 1, ¶¶ 36, 44, 60, & 68 ("Wago and Wago GmbH have been and now are indirectly infringing the ['232, '813, '415, '974] patent pursuant to 35 U.S.C. § 271(b) and/or (c)".).)  In order to establish Wago's indirect infringement, Rockwell is required to establish direct infringement by Wago's customers.  As a customer *identified by* Wago, NOV's use of the products alleged to infringe is highly relevant to Rockwell's indirect infringement claims against Wago as well as to support Rockwell's calculation of infringement damages under the *Georgia-Pacific* framework.

### B.     Rockwell Has Engaged In Numerous Meet and Confers With NOV

On May 22, 2012,[2] NOV was served with two subpoenas – a records only subpoena requiring the production of documents on June 13, 2012 ("Records Subpoena") and a testimony and records subpoena setting the deposition of NOV for June 20, 2012 ("Deposition Subpoena"), (collectively, the "Subpoenas").  (See Subpoenas, Motion, at Exhs. C & D.)

---

[2]   NOV incorrectly states that the Subpoenas were served on June 20, 2012.  (Motion, at 4.)  The Subpoenas were in fact served on May 22, 2012.  (See Proofs of Service, Declaration of Lisa Schapira filed in support of Rockwell's Opposition to NOV's Motion ("Schapira Decl."), Exh. 1.)

Since the service of the Subpoenas, nearly two months ago, NOV expressed a willingness to provide at least some of the requested information and NOV and Rockwell worked cooperatively on this effort. (See Schapira Decl., at ¶ 5.) Indeed, Rockwell proposed to reevaluate the need for a deposition after reviewing the documents produced by NOV and granted NOV extensions for its date of compliance with the Subpoenas in good faith based on NOV's willingness to cooperate. (Id.) Suddenly and apparently at the urging of Wago, NOV abandoned its promise to produce discovery, and filed its Motion. (Id.) NOV made its filing without responding to inquiries regarding what categories of documents could more easily be produced or the specific burdens of locating and producing responsive documents. (Id.) Indeed, absent from NOV's Motion is any hint that Rockwell had been willing to work with NOV to narrow the scope of the subpoenas or its consent to pay copying costs. (Id.) Rockwell remains willing to do so. (Id.)

In late May and early June, Rockwell had at least two conversations with Robert Bowick – Counsel for NOV. (Id.) During these conversations, Rockwell consented to extending the response deadline for the Records Subpoena to June 29, 2012 and agreed to adjust the deposition date to July 11, 2012. (Id.) On the phone, NOV also provided information on its operations and use of the accused products and some explanation as to why additional time was required to determine how and where the accused products were being used by NOV. (Id.) On June 28, 2012, NOV sought a three week extension from the Court to respond to the Subpoenas. (See Motion for Extension, Docket 106.) The Court granted NOV a two week extension – making NOV's responses due on July 13, 2012. (See Order, Docket 107.) Following that motion Rockwell met and conferred with NOV through its counsel Brad Laney. (Id.) During a telephone conversation on July 9, 2012, Rockwell again responded to inquiries regarding the

4

relevance of the documents and entertained a request regarding copying costs. (Id.) On July 11, 2012, NOV and Rockwell met and conferred again. (Id.) Counsel for NOV indicated that he recently had a conversation with Wago's counsel and understood that Rockwell was not entitled to discovery regarding Wago's customers. (Id.) During this time, NOV and Rockwell also discussed the stipulations considered by Rockwell and Wago regarding proof of infringing use. (Id.) Rockwell also provided NOV with transcripts regarding the hearings on its motion to compel discovery from Wago. (Id.) Rockwell had another telephone call with NOV on July 12, 2012 to discuss NOV's objections and the relevance of the material. (Id.) In response to an inquiry as to whether documents would be produced on Friday, NOV represented that the production of documents on July 13, 2012 was unlikely because NOV had not yet taken steps to collect the documents. (Id.) Rockwell again stated that it was willing to work with NOV regarding its response to minimize the burden of responding to the Subpoenas. (Id.) On July 13, 2012, NOV consented to the jurisdiction of the Western District of Wisconsin by filing its Motion, and subjected itself to orders from this Court regarding the Subpoenas.

### III.   ARGUMENT

It is well settled that the Federal Rules of Civil Procedure permit liberal discovery. Rule 45 governs the discovery from non-parties by subpoena, and looks to Rule 26 to set the scope of discovery. Teton Homes Europe v. Forks RV, No. 1:10–CV–33, 2010, at * 3715566, 2 (N.D. Ind. Sept. 14, 2010) (denying motion to quash and compelling non-party to comply with subpoena). Rule 26(b)(1) permits discovery into "any non-privileged matter that is relevant to any party's claim or defense . . . ." FED R. CIV. PROC. 26(b)(1). Relevant information need not be admissible at trial so long as the discovery "appears reasonably calculated to lead to the discovery of admissible evidence." Id.

In its Motion, NOV argues that that Rockwell's Subpoenas are unduly burdensome and seek information that is not relevant or has otherwise been prohibited from discovery by rulings from this Court. (Motion, at 5.) However, as discussed in detail below and as explained to NOV over multiple meet and confers, NOV's arguments lack merit.

### A.      Rockwell's Discovery Requests Are Not Unduly Burdensome

"The burden of proving that a subpoena is oppressive is on the party moving to quash and is a heavy one." Heat and Control, Inc., 785 F.2d 1017 at 1025.  The factors required to be balanced by the trial court in determining the propriety of a subpoena are the relevance of the discovery sought, the requesting party's need, and the potential hardship to the party subject to the subpoena.  See Deitchman v. E.R. Squibb & Sons, Inc., 740 F.2d 556, 559 (7th Cir. 1984). "To meet this burden, the objecting party must 'specifically detail the reasons why each [request] is irrelevant. . . .'" Id.; see also Ferrell v. IBP, Inc., No. C98-4047-MJM, 2000 WL 34032907, at * 1 (N.D. Iowa, Apr. 28, 2000) (denying motion to quash subpoenas to provide testimony at trial and stating that "[m]ere assertions that compliance would be burdensome are insufficient to satisfy such a burden").  Moreover, even where a subpoena is overbroad, the duty of the court "is not to deny any discovery, but to reduce the demand to what is reasonable, considering the discoverer's needs and the discoveree's problems." See Deitchman, 740 F.2d at 560.

NOV has not established that it will suffer an undue burden.  For as many times as NOV claims that Rockwell's Subpoenas impose an undue burden, it fails to support that conclusion with any evidence or a description of any actual burden. (See generally, Motion.); see also, Teton Homes Europe, 2010 WL 3715566, at *2 (conclusory objections that discovery is "'overly broad, burdensome, oppressive and irrelevant' are too generic to warrant a protective order") (citing references omitted).

6

Indeed, there is no argument that the information sought is sensitive, privileged or difficult to obtain. The only details regarding NOV's burden are as follows: "NOV would be required to locate and produce thousands of documents as well as prepare and produce a deponent about these documents." (Motion, at 6.) From the outset, Rockwell has been willing to work with NOV to ease the burden of compliance. (Schapira Decl., ¶ 5.) This cooperation spanned from providing extensions so that NOV could locate documents – which apparently was never undertaken – to a willingness to discuss obstacles to the production of responsive documents by NOV. (Id.) NOV has yet to state – despite inquiries – that information is difficult to obtain because it would require the restoration of backup tapes, or some cumbersome restoration process. (Id.)

In addition, its argument that the Subpoenas are unduly burdensome because the information sought by Rockwell can be dealt with by stipulation between Rockwell and Wago or because it is irrelevant is overly simplified, nonsensical or unfounded. (See Motion, at 5-7.) Since NOV fails to provide anything more than conclusory statements regarding its burden, it cannot satisfy the standard to quash the Subpoenas.

  **B.** **Rockwell's Discovery Requests Are Relevant**

Under Rule 26, a plaintiff is entitled to discovery relevant to its claims and defenses. See FED. R. CIV. PROC. 26(b). "[R]ule 45(b)(1) must be read in light of Rule 26(b)." Heat and Control, Inc., 785 F.2d at 1023. Where there is "doubt over relevance, the rule indicates that the court should be permissive." Id., citing Deitchman, 740 F.2d at 566.

  **1.** **The Subpoenas Seek Information Regarding NOV's Use of the Controllers, Which Is Directly Related to Rockwell's Claims For Indirect Infringement**

Rockwell's litigation against Wago involves the use of industrial controllers that control machinery. (See Complaint, Docket 1.) Through the Subpoenas, Rockwell seeks information

7

regarding NOV's communications with Wago regarding the accused products, sales or licenses of the accused products, discussions of Rockwell in connection with Wago or the accused products, the use of the accused products, marketing analysis regarding the accused products, and communications regarding the Patents-In-Suit or this lawsuit. (See Subpoenas, Motion, at Exhs. C & D.)

NOV's use of these controllers establishes direct infringement by NOV, which is a predicate for Rockwell's indirect infringement claim against Wago. It has long been the law that an act of indirect infringement cannot occur without an underlying at of direct infringement. Aro Mfg. Co. v. Convertible Top Replacement Co., 365 U.S. 336, 341 (1961) ("In a word, if there is no infringement of a patent there can be no contributory infringer."). This principle is based on Supreme Court precedent: "if the purchaser and user could not be amerced as an infringer, certainly one who sold to him cannot be amerced for contributing to a non-existent infringement." Id. The Federal Circuit Court of Appeal has reaffirmed through the years that "absent direct infringement of the patent claims, there can be neither contributory infringement nor inducement of infringement." Met-Coil Sys. Corp. v. Korners Unlimited, Inc., 803 F.2d 684, 687 (Fed. Cir. 1986) (citations omitted). Further, any interaction or communication between NOV and Wago regarding the accused product is also relevant to inducement of or contribution to infringement. What training is provided on accused products or whether the accused products compare to Rockwell's products, for example inform the scope of Rockwell's infringement claims against Wago.[3]

---

[3] NOV is not a simple distributor, but used the accused products either to build components for oil-rigs or incorporated the accused products into those rigs. It is NOV, or perhaps NOV's

(Cont'd on following page)

## 2. The Subpoenas Seek Information Directly Related To Rockwell's Claim for Damages For Patent Infringement

The other specific objection raised by NOV is that NOV's sales information is not relevant to the question of damages. (Motion, at 6-7.) Information relating to sales and use of the accused products by NOV are relevant to Rockwell's determination of damages. Rockwell does not dispute NOV's argument that double recovery for the sale of an infringing product is not permitted. (Motion, at 7.) However, the information sought is relevant to determining a reasonable royalty to adequately compensate Rockwell for the infringement of its patents. NOV's use and sales information will identify the scope of the infringing use of the accused products which is an important and relevant factor needed to determine damages under the *Georgia-Pacific* framework. See Georgia-Pacific Corp. v. U.S. Plywood Corp., 318 F. Supp. 116, 1129 (S.D.N.Y. 1970). In particular, this information is relevant to *Georgia-Pacific* factor 11 – "The extent to which the infringer has made use of the invention; and any evidence probative of the value of that use." (Id.) The magnitude and scope of NOV's use is important because it "may provide information that the parties would frequently have estimated during the negotiation." See Lucent Technologies, Inc. v. Gateway, Inc., 580 F.3d 1301, 1335 (Fed Cir. 2009). For example, if the infringing products were being used in connection with numerous multi-billion dollar oil drilling projects as opposed to smaller projects, this would potentially

---

(Cont'd from preceding page)

    customers, that can provide competent evidence regarding how these products are used and their value. This is information that cannot be obtained from Wago. While some of the information sought by the Subpoenas – like product manuals or email communication – are documents that are theoretically in the possession of Wago, the fact that NOV received these documents, and how the information was perceived and acted upon by NOV, is information uniquely within the control of NOV.

impact the value of the product during a hypothetical sales negotiation in a *Georgia Pacific* analysis. See id. Accordingly, discovery on NOV's sales and use of the accused products will provide relevant information regarding the value of the invention and the accused products in the marketplace.

      **C.    Rockwell's Requests For Discovery of NOV Has Not Been Prohibited by This Court**

NOV argues that Rockwell's Subpoenas are a "litigation tactic" to harass Wago's customers. (Motion, at 7.) NOV argues that a stipulation between Rockwell and Wago would eliminate the need for discovery from NOV. (Motion, at 5-7.) NOV also argues that the Court has ordered that discovery of Wago's customers is prohibited. (Motion, at 2-3.) These conclusions are incorrect.

Specifically, Rockwell is not required to enter into an unfavorable stipulation with Wago regarding the proof of Rockwell's claims. NOV argues that Rockwell and Wago have the ability to enter into a stipulation regarding the issues of indirect patent infringement and that such a stipulation would eliminate the need to obtain information from NOV. Rockwell, however is entitled to prove its case by evidence of its own choice and is not required to stipulate away the full evidentiary force of its lawsuit. See, e.g., In re Gabapentin Patent Litigation, No. 00-2931, 2011 WL 1807448, at *11 (D.N.J. May 12, 2011) ("Defendants cannot force Plaintiff to stipulate to facts simply because Defendants would prefer those facts not go before the jury) (citing Hill v. Wilson, 519 F.3d 366, 369 (7th Cir. 2008)).

Moreover, Rockwell's attempt at negotiating a proper stipulation with Wago on the issue of indirect infringement has been repeatedly unsuccessful. (See Email Exchange between Rockwell and Wago, Exh. 1 to Cook Declaration Opposing Motion to Compel, Docket 50-1.) NOV contends, however, that the mere possibility of entering into such a stipulation makes the

Subpoenas too burdensome and the documents sought irrelevant. (Id.) Rockwell is unaware of any case law supporting NOV's proposition. NOV is also mistaken when it argues that the Court held that Rockwell was not entitled to information about Wago's customers. (See Motion, at 2-3.) The Court has not prohibited discovery of Wago's customers. (See April 20, 2012 Hearing Transcript, Schapira Decl., Exh. 2 at 5-6 and 43-46 (explaining if the parties wanted the Court to resolve the dispute over the stipulations, they would need to seek the guidance of the District Court Judge); see also May 4, 2012 Hearing Transcript, Schapira Decl., Exh. 3 (wherein there was no discussion of the customer information issue).) The Court even stated, "I think that the plaintiff is entitled to some sort of information or stipulation about [the customer information]." (See April 20 2012 Hearing Transcript, Schapira Decl., Exh. 2 at 5-6.) Both Wago and Rockwell have since declined to put forth their stipulations to the Court.

Since Rockwell is not obligated to accept Wago's stipulation, especially in light of the fact that Wago's proposal would not establish indirect patent infringement if the accused products were found to have infringing functionality, the discovery requested by the Subpoenas should be produced. Moreover, neither stipulation sidesteps the need for the information sought from NOV which would still be relevant to the calculation of damages under *Georgia-Pacific* as described above.[4] See § III.B.2, supra.

---

[4] NOV notes that a stipulation eliminating the need for Rockwell to prove direct infringement by Wago's customers would make NOV's use of the accused products irrelevant. (Motion, at 5 n. 20.) This is incorrect. Whether NOV burns the industrial controllers, or finds them key to the creation of oil-rig components or the component's operation will provide evidence as to how the market values these products, which relates to Rockwell's calculation of damages.

IV.  CONCLUSION

For the foregoing reasons, Rockwell respectfully requests that NOV's Motion be denied, and that NOV be ordered to comply with the subpoenas.

Dated:  July 19, 2012                              /s/  Paul J. Tanck

                                                        Scott S. Balber (admitted in W.D. Wis.)
Paul Tanck (admitted in W.D. Wis.)
Lisa Schapira (admitted in W.D. Wis.)
CHADBOURNE & PARKE LLP
30 Rockefeller Plaza
New York, NY  10112
Tel.:  (212) 408-5100
Fax:  (212) 541-5369
Email: sbalbler@chadbourne.com
        ptanck@chadbourne.com
        lschapira@chadbourne.com

COUNSEL FOR PLAINTIFFS
ROCKWELL AUTOMATION, INC.
& ROCKWELL AUTOMATION
TECHNOLOGIES, INC.

Case: 3:10-cv-00718-wmc Document #: 113 Filed: 07/20/12 Page 12 of 13

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 19th day of July, 2012, pursuant to a written agreement between the parties' counsel governing service in this action, a copy of this document is being served by electronic mail on Defendants' counsel listed below at the email addresses listed below:

    Robert Cook, Esq.
    Whitham, Curtis, Christofferson & Cook, P.C.
    11491 Sunset Hills Road, Suite 340
    Reston, Virginia 20190
    Tel.: (703) 787-9400, ext. 122
    Fax: (703) 787-7557
    Email: bob@wcc-ip.com

    John C. Schaller, Esq. (SBN 1031247)
    David DeBruin, Esq.
    Michael Best & Friedrich LLP
    One South Pinckney Street – Suite 700
    Madison, WI 53703
    Tel.: (608) 257-3501
    Fax: (608) 283-2275
    Email: jcscheller@michaelbest.com
    Email: dldebruin@michaelbest.com

                                                               /s/ Lisa Schapira
                                                               Lisa Schapira