# EXHIBIT 3

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

* * * * * * * * * * * * * * * * * * * * * * * * * *

ROCKWELL AUTOMATION, INC.,
ROCKWELL AUTOMATION TECHNOLOGIES, INC.,

       Plaintiffs,
  -vs-                  Case No. 10-CV-718-WMC

WAGO CORPORATION, and WAGO     Madison, Wisconsin
KONTAKTTECHNIK GMBH & CO., KG.,  May 4, 2012
                      10:00 a.m.
       Defendants.

* * * * * * * * * * * * * * * * * * * * * * * * * *

STENOGRAPHIC TRANSCRIPT OF TELEPHONIC HEARING
HELD BEFORE MAGISTRATE JUDGE STEPHEN L. CROCKER,


APPEARANCES:

For the Plaintiff:  Chadbourne & Parke
                 BY:  ATTORNEYS SCOTT BALBER,
                 PAUL TANCK and LISA SCHAPIRA
                 30 Rockefeller Plaza
                 New York, New York  10112

For the Defendant:  Whitham Curtis Christofferson & Cook
                 BY:  ATTORNEY ROBERT COOK
                 11491 Sunset Hills Rd., Ste. 340
                 Reston, Virginia  20190

                 Michael Best & Friedrich
                   BY:  ATTORNEY JOHN SCHELLER
                 1 South Pinckney Street, Ste. 700
                   Madison, Wisconsin  53703


Lynette Swenson   RMR, CRR, CBC
Federal Court Reporter
U.S. District Court   120 N. Henry St., Rm. 520
Madison, WI  53703   (608) 255-3821

1          THE COURT:  Good morning.  This is Magistrate

2     Judge Crocker.  I understand I have the attorneys for

3     the parties in the Rockwell Automation lawsuit against

4     WCP and WKT.  Again, we have a court reporter.  Let me

5     note the case number is 10-CV-718-WMC.

6          And let's get appearances for the record, please.

7     First on behalf of the plaintiff.

8          MR. BALBER:  Good morning, Your Honor.  This is

9     Scott Balber from Chadbourne & Parke.  And with me are

10    my colleagues Paul Tanck and Lisa Schapira.

11         THE COURT:  All right.  Good morning to all of

12    you.  And who have we got on behalf of the defendants

13    today?

14         MR. COOK:  Bob Cook and John Scheller.

15         THE COURT:  Good morning to both of you.

16    Counsel, let's start by me telling you what's not on the

17    table today.  We are not going to discuss the Motion to

18    Compel that the defendants filed yesterday, which the

19    Court docketed as 78.  If the clerk hasn't already set

20    up the usual seven-day response, that will be done and

21    then we'll probably put you on for a hearing on the

22    Wednesday that follows.  That's probably May 16.

23         The only thing I would observe, and it's just a

24    general observation, is that to the extent that the

25    Court might need to see a timeline here, just as we did

1    with the plaintiffs' motion, that might be helpful, but

2    let's wait and see how that one shakes out.  Okay?

3       So let's turn our attention to what's on the agenda

4    today.  The underlying motion was plaintiffs' Motion to

5    Compel docketed as 40.  As you know, we had a hearing on

6    April 20.  We talked for almost an hour.  At the end of

7    the hearing, I gave some instruction about what else

8    needed to happen.  Everybody seems to like the adjective

9    *percolating* because you keep repeating it back to me.

10   So you talked about the percolating discovery disputes

11   and disagreements.  A lot more documents exchanged

12   hands.  I got the reports.  Docketed by us as 73 is the

13   defendants' timeline, followed by docket 74, the update,

14   followed by the, I presume, tongue-in-cheek supplement

15   docketed 77, indicating that two more pieces of paper

16   from 1998 were produced from some employee's file who is

17   quitting.

18      We've also got 76, which is the plaintiffs' report,

19   and of course we have attachments to both updates.  As

20   is my practice, I'm going to give you my preliminary

21   view of where I think we find ourselves and flag for you

22   the questions that I'd like to see each side address as

23   they see fit.  Preliminarily I get the sense that most

24   of the concerns either have been addressed or are not

25   ready for the Court to rule on right now.  Apparently

4

1  thousands of documents changed hands.  Defendants spin

2  on it is that the plaintiffs weren't ready to talk about

3  them.  It may be that plaintiffs are of the view that

4  they don't have anything to complain about yet, but

5  certainly they might complain later.  That's fine.  If

6  there's nothing for the Court to decide in that regard,

7  we're not going there.  I'll take my cue from the

8  plaintiffs' report that there are only two issues left.

9       The one issue that plaintiff flagged was that

10  according to plaintiff, WCP and WKT have identified

11  databases that include responsive financial and product

12  information that has not been provided and defendant

13  won't produce it without a court order.  I don't know

14  what that means.  I'll need the defendants to explain

15  that to me.  If it's just a matter of the Court putting

16  an order in so that you've got a Court requirement that

17  you do it, fine.  If it's something more substantive,

18  I'd like to hear about that.  But right now, I don't

19  have enough information to say which way I'm headed on

20  that.

21       With regard to the dispute over whether defendants

22  stripped the functionality out of the nonsource code

23  documents that accompanied the CoDeSys source code, if

24  I'm pronouncing that correctly, from what I've read I

25  don't think this is very important.  It's certainly not

1 something that irritates or flags any problems for the

2 Court.  I would like a little bit more objective

3 characterization of the number of documents at issue.

4      The defendant characterizes them as a small portion

5 or a few documents.  Defendant also reports that this is

6 the way they got the documents from the actual provider,

7 the third party, who is guarding them jealously and that

8 the PDF format in which they've been provided that with

9 complies with 34(b)(2)(E)(2) and (3).  That certainly

10 resonates with the Court.  I'm not sure what else the

11 plaintiff is asking me to do.  I haven't heard any

12 information that indicates that the defendants'

13 characterization of why it did this and how it did it is

14 wrong, but I'm prepared to be educated otherwise.

15      That said, why don't we start with the plaintiff.

16 It's your motion.  I'd certainly like to hear about the

17 PDF documents, and to the extent that you want to be

18 heard also on the first issue raised, I'll hear anything

19 you've got for me today.  So who's got the point today?

20      MR. BALBER:  This is Scott Balber, Your Honor.

21 Thank you for hearing us this morning, and I think you

22 have this pretty much dead on.  Let me kind of

23 recharacterize, if I may.  You are correct that a

24 universe of documents has been produced by defendants

25 since last we spoke.  We are in the process of reviewing

1   that.  As of this moment, you're right, we have no

2   complaints.  We reserve our right to complain if

3   anything comes to light that we need to complain about.

4       My understanding from the defendants is that in the

5   aftermath of our call with Your Honor, they have now

6   agreed to produce and have in fact produced or are in

7   the process of producing all documents responsive to our

8   requests, and the issues that we were debating before

9   Your Honor about the specific requests and what was

10  captured have now been mooted by their agreement to

11  produce.  So assuming I'm right about that, I think that

12  whole bucket of issues is resolved.

13      You have identified what I think are the two issues

14  that remain.  One is these financial and product

15  databases.  Candidly we don't understand what the issue

16  is and why they're not being produced.  If it simply is

17  a matter of them needing an order from Your Honor, as

18  you indicated that can be resolved.  I'm curious to hear

19  what the explanation is beyond that.

20      As to the searchable format, I think there are two

21  categories.  The first is a source code, and I agree,

22  Your Honor, to the extent they receive the source code

23  from a third party, we don't have any expectation that

24  the defendant is going to be required to put that in

25  searchable format.  I think we're okay.

7

1          What we do have an issue with is their own emails.

2     It is common practice and often the rule in -- lots of

3     local rules in different jurisdictions that emails be

4     produced in a searchable format.  It's something which

5     can be done by a vendor and in my experience it's

6     typically done by a vendor being paid by or retained by

7     the producing party.

8               THE COURT:  Let me interrupt for a

9     clarification question.

10              MR. BALBER:  Sure.

11              THE COURT:  When you say *the emails*, is this

12    just a small subset of the emails related to this

13    particular CoDeSys source code or is it something

14    broader?

15              MR. BALBER:  No, Your Honor, it's broader.

16    It's all emails.  Again, in my experience emails are

17    produced in a searchable format, either by rule of court

18    or by agreement of parties.  I'm not understanding why

19    there's an issue with it being produced in that way in

20    this case.

21              THE COURT:  And another point of information,

22    please.  Give me an order of magnitude on the number of

23    documents that were produced in this fashion that you

24    want put in searchable format.

25              MR. BALBER:  We quite frankly don't know the

1  number, Your Honor.

2           THE COURT:  Well, I'm just looking for a

3  ballpark estimate.  Are we talking a 1,000?  10,000?

4  100,000?

5           MR. BALBER:  Yeah.  I mean the problem, Your

6  Honor, is because they are produced as PDF, I can't give

7  you a number.  I would certainly suspect it's in the

8  thousands.  Whether it's 3,000 or 10,000, I don't know

9  and I don't want to -- I certainly don't want to give

10  you false information.  But my team is kind of

11  struggling to come up with a number.

12           THE COURT:  Well, I'm just looking for an

13  estimate.  If you say around 3 to 10,000, that's

14  sufficient and I'm not going to hold you to a specific

15  number.  All right, please continue.

16           MR. BALBER:  Yeah.  I'm told even my 3 to

17  10,000 might be overstated, Judge.  I just don't know,

18  so I apologize about that.  And I think that's it.  That

19  really is more perspective of the last issue:  The two

20  issues being these proprietary databases being searched

21  and the second one is the searchability of emails.

22           THE COURT:  All right.

23           MR. BALBER:  I think that's what's left.

24           THE COURT:  Well, thank you.  Mr. Cook,

25  Mr. Scheller, who'd like to give me your input?

1        MR. COOK:  This is Bob Cook.  Let me start with

2   the databases.  These -- first I would -- let's remember

3   that the reason these come up is there are document

4   requests for all documents used to create responses to

5   interrogatories.  And the term *document* is defined in

6   the document request such that it brings in all

7   electronic data compilations.  The databases at issue

8   here are the company's fundamental financial database

9   that they use, their accounting database and their

10  product database that they use for managing their

11  company that has all product information.  Most of their

12  products have nothing to do with this case and aren't

13  even in the industrial control area, and that's -- but

14  they had to use the databases to put together responses

15  to interrogatories.

16       THE COURT:  Well, let me interrupt to make sure

17  I understand what you're telling me.  Would it be

18  correct to surmise from what you just said that the

19  relevant information from these databases already has

20  been disclosed.  What you haven't provided is the

21  foundational database so that somebody could, if they

22  chose to, cross reference the accuracy of your

23  production.

24       MR. CROSS:  Well, I guess that's one way to

25  characterize it, but I think that that may even

1  overstate it.  Because they ask for numbers and we gave

2  them numbers and we have the numbers in the database.

3  They asked then for the documents that the numbers came

4  from and that would be, you know, the company's

5  financial database that they're very sensitive about.

6          THE COURT:  Well, let me hone in a little bit

7  more tightly with my question then.  Apart from the

8  decision or not to or the reluctance to provide the

9  databases whence the information was taken, is it your

10 position that the substantive information responsive to

11 the discovery requests all has been provided?

12         MR. COOK:  Yes.

13         THE COURT:  Okay.  Thank you.  Please continue.

14         MR. COOK:  Sure.  So that's really, on the

15 database, that's it.  On the text searchability, I would

16 have to check.  I do not believe that it's correct to

17 state that all emails were provided in nonsearchable

18 format.  I'm aware of a handful of emails that were

19 provided from Germany where the lawyer from Germany

20 printed them out and PDF'd them.  Other than that, we

21 would have to check.  But I don't think that it's

22 correct that as a regular thing we provided

23 nonsearchable documents.  I think it's more a question

24 of that just providing a searchable PDF may not be

25 enough for what the plaintiffs want to do with their

1   vendor with the documents.

2          THE COURT:  Well, let me ask you this, and I

3   don't want you to speculate and perhaps you're not in a

4   position to answer this question, but to the extent that

5   there may be a larger group here, would there be any

6   reason not to have provided emails in a searchable

7   format just as a matter of routine?  In other words, to

8   the extent that there might be emails that are not

9   searchable, is it defendants' position that that's how

10  you got them?  That there was no change and that it's a

11  very small number?

12         MR. COOK:  Well, I think so.  And the reason I

13  say that is because I asked when this issue first came

14  up and it would have been more trouble to process them

15  in a nonsearchable format than to just process them,

16  review them, and then download the ones that were

17  responsive.

18         THE COURT:  Understood.  And I interrupted you.

19  Was there more you wanted to tell me?

20         MR. COOK:  No.  I would be surprised if there

21  were thousands or even in the high hundreds of emails

22  involved.  I think it's a much smaller number.

23         THE COURT:  Okay.  Thank you.  I'll entertain a

24  brief reply and I'm particularly interested in any reply

25  regarding the need to look at databases from which the

1   relevant information already has been provided.

2           MR. BALBER:  Let me address that, Judge, if I

3   may.  What I don't want is a copy of the database.  What

4   I want is to have the databases searched, just like all

5   other documents are being -- universe of documents are

6   being searched for responsive documents.  If it is the

7   case that defendants relied on data or documents from

8   the database in crafting their interrogatory responses,

9   I believe I'm entitled to see the documents and the data

10  from the database.  I don't think I'm required to rely

11  on defendant telling me that the numbers they are giving

12  me in the interrogatory are accurate and are reflected

13  in the company records.

14      So I guess I would frame the question a little

15  differently which is why are these databases different

16  than a file cabinet or an email log or something on

17  somebody's desk?  It's just another universe of

18  documents of data that needs to be searched for

19  responsive material.  That's it.

20          THE COURT:  Well, now you had me up until that

21  last observation, so let me ask a clarifying question,

22  please.

23          MR. BALBER:  Then I'll withdraw it, Judge.

24          THE COURT:  Then you lose.  So let me ask the

25  question because then maybe you'll win.  I would agree

1   with you to the extent that you don't have to rely on a
2   letter or an affidavit that simply says the number
3   responsive to what you're asking is "X," and if we
4   include additional information the number is "Y."
5   You're entitled to look at the actual documents from
6   which "X" and "Y" were derived.  I thought from what I
7   read and from what the parties had told me previously
8   this morning that you really were looking for something
9   beyond that; that you just wanted to be able to look in
10  the actual database to make sure that you got it.
11       And to the extent you're analogizing that to
12  getting to look in the whole file cabinet, no, you can't
13  do that.  But to the extent that you haven't actually
14  seen the piece of data or the document from which they
15  derived the answer they gave you, I would tend to agree
16  with you.
17       Now here's -- so let's make sure we're not talking
18  past each other.  But then the actual question is is
19  your team in a position to point to specific answers for
20  which you want this documentation or are you simply
21  saying we want to look at the databases and determine
22  this for ourselves?
23            MR. BALBER:  No, Judge.  You have it right.
24  And let me kind of rearticulate it if I can.  I am not
25  asking to look in their file cabinet.  I am asking them

1   to look in their own file cabinet and produce to me the

2   documents that they relied upon in crafting their

3   interrogatory responses, one, or any other documents in

4   the file cabinet, which I'm using as a code word for

5   database, which is responsive to other requests.  That's

6   it.

7       So they have acknowledged that they have used

8   information from the database in crafting their

9   interrogatory responses --

10          THE COURT:  Let me stop you -- let me stop.

11  Mr. Cook, do you understand now what they're looking

12  for?  Is this objectionable?  Is this something

13  different from what you thought they were asking or is

14  this something you don't like?

15          MR. COOK:  This is, I think, where they're

16  mischaracterizing or maybe misunderstood I think is a

17  better term what I said about the interrogatories.

18  There's no intermediate document, intermediary document

19  between the database and the response.  To provide these

20  responses to their interrogatories, somebody queried the

21  database and got this printout and that's what we

22  provided.

23          THE COURT:  Okay.  I understand what you're

24  saying.  So let's go back to the plaintiffs.  What more

25  are you entitled to under Rule 26?  Do you want to be

1    able to verify for yourself?  Are you looking for the

2    actual search performed?  Or in light of what Mr. Cook

3    just proffered, does that solve your problem?

4              MR. BALBER:  It doesn't, Judge.  I'm operating

5    at a little bit of a disadvantage, and I don't think I

6    misunderstand.  So let me frame it again, and I

7    apologize for repeating myself, but I'm really not

8    understanding the issue.  There is a universe of

9    information on a database, okay?  My view is that

10   defendants must search that database for responsive

11   documents to all of our requests and the fact that now I

12   know for certain that one request as to which responsive

13   documents may be derived from that database is the

14   request "please produce all documents which you relied

15   on in crafting your interrogatory responses."  But there

16   may be other requests.  So that's it.

17      I don't want their database.  I want the data, the

18   information, the documents that are contained in those

19   databases, and by the way, their own product databases

20   and financial databases that are responsive to our

21   requests generally.

22             THE COURT:  Well, but see, this is where we've

23   circled right back to where we were on April 20, because

24   you want documents that Mr. Cook has just proffered

25   don't exist.  What he's saying is there is no set of

1  documents.  Now I can't pick between these two

2  contentions over the phone.  The only thing I can

3  require, and this puts the burden back on the plaintiff,

4  is that you point to the specific discovery request you

5  made where you think there are underlying documents that

6  you did not get.

7      Now I haven't gone back and looked at all the

8  discovery requests.  There was no reason for that.  I

9  don't think this is one of those cases where there's an

10  out of control number.  But absent some specificity as

11  to what you think you don't have, there's nothing for me

12  to order Mr. Cook to do.

13      I would agree with you, and I agreed with you the

14  first time you said it, that if there were a set of

15  documents that were responsive to or the basis or

16  foundation for the information you were requesting in

17  your discovery request, you would be able to see it.

18  But what Mr. Cook is saying is there aren't any; that it

19  was a query made to a database and the answer popped up.

20  If you don't think that answer is entirely correct or

21  accurate, then you've got to be more specific to point

22  out to Mr. Cook and his colleagues why that can't be

23  true.

24          MR. BALBER:  It's not my practice to make -- to

25  ask a question to opposing counsel with a judge on the

1   line.  It's certainly not my practice to ask a question

2   to the judge.

3          THE COURT:  I'll let you cross talk today.

4          MR. BALBER:  I'm going to ask the question, and

5   this may be put it to bed one way or the other.  My

6   question is this:  Were those databases searched for

7   documents responsive to our requests or not.  If they

8   were searched, just like email archives were searched,

9   and the answer is "there are no responsive documents,"

10  then we have nothing to say.  But I haven't heard the

11  answer that those databases were searched in the same

12  way as a file cabinet or an email archive or anything

13  else.  So that's kind of my pointed question, Judge.

14         THE COURT:  Okay.  Well, I understand it.

15  Mr. Cook, are you in a position to answer that?

16         MR. COOK:  I think we have a definitional

17  problem.  I make a distinction between a database and a

18  file server.  File servers have documents and can be

19  searched and were searched.  Databases are different.

20  They don't contain documents.  They contain data, and

21  structured data, and you search them to answer

22  questions.  That's what we're talking about here.  And

23  the way that the definition of *document* appears in these

24  document requests, any compilation of data would be a

25  document and it would include the financial database --

18

1  say the fundamental accounting database of a company

2  would be a document, and that's what we don't think we

3  should be required to produce, and I don't think that

4  kind of thing is ever required to be produced.

5        THE COURT:  Well, and let's be sure at least

6  the Court understands what you're saying and I'm sure

7  that the plaintiffs understand it too, but to the extent

8  that you searched the databases, you searched for the

9  responsive information.  But of course using your

10  distinction between a file server and a database, the

11  search requests provided the answer and there's no

12  intermediary set of information that could be

13  characterized as a document.

14        MR. COOK:  Correct.  That's what we're saying.

15        THE COURT:  Okay.

16        MR. BALBER:  If I can draw an analogy, Your

17  Honor, to a circumstance I'm more familiar with and I

18  suspect the Court might be as well to maybe put this to

19  bed one way or the other.  A company has a general

20  ledger as a database; information regarding the

21  company's finances.  The fact that it is a database

22  doesn't mean that I can't search for entries reflecting

23  payment to Company XYZ, and that would result in a

24  report which the defendants would be required to

25  produce.  So if that's what we're talking about, I do

1  believe it is the case that searches can be run on a

2  database, such as a general ledger, and documents

3  generated which reflect the data that is responsive and

4  contained therein.

5          MR. COOK:  And where that was done, where

6  interrogatories require that to be done it was done.

7          THE COURT:  And that's certainly the way I

8  understand the defendants' response.  So bottom line is

9  the Court is not going to order further production on

10 that one.  That request is denied.

11     So let's turn our attention to the PDF emails.

12 Again, I hate to make this the death of a thousand cuts,

13 but again, I'm not seeing anything for the Court to

14 order here.  It sounds like the people I'm talking to

15 cannot provide me with concrete objective information

16 about what's the actual problem here, you know.  And

17 again, I don't want to delve into minutia for no good

18 reason, but if we're talking about 300 documents from

19 Germany that weren't in the database and were just PDF'd

20 and sent over in hard copy form, well, from the Court's

21 perspective that's not a big problem.

22     If we're talking about 3,000 documents that were

23 taken off of some electronic storage medium rather than

24 provided in electronic form, well, then maybe we do have

25 a problem.  But I get the sense that it's the former,

1  not the latter, and I would never underestimate the cost

2  of a hand search.  But if all we've got here is a couple

3  hundred documents that were produced in PDF form because

4  that's the way they were kept, there's nothing for me to

5  order.  And certainly based upon the information I've

6  got, I have no reason to believe otherwise today.

7      Now I will agree with the plaintiff that to the

8  extent that there might have been a database that was

9  searchable and the documents were taken out of that,

10 that would not be appropriate and the Court would not

11 countenance that.  But there's no proof here that that's

12 what actually happened, and I haven't heard anything

13 today to convince me that that is what has happened.

14 I've just got this sense that there's a suspicion that

15 something nefarious must have happened because emails

16 just aren't produced in PDF anymore.  That's so old

17 school that it must be something sinister.

18     I don't mean to mischaracterize this.  I don't

19 think that plaintiff is claiming that this was a

20 malicious or intentional way to hide data, although you

21 come pretty close to implying it, but I'm not seeing

22 anything for me to order.  That said, I'll give the

23 plaintiff one more chance to persuade me that there's

24 something I need to do today based on what you've told

25 me.  But absent that, you've got to go back and sort

1  this one out between the attorneys again, maybe putting

2  a low-level associate on each side in a room with the

3  box full of documents to do it one at a time.

4       So any sur-reply by the plaintiff at this point?

5       MR. BALBER:  Yes, Your Honor.  Just to be

6  clear, I did not mean to suggest one bit that there was

7  any maliciousness at all.  That was not my intention.  I

8  don't believe that's the case.  The problem is that we

9  received 188,000 pages of documents, and because they're

10 not searchable, to go through and count them and tell

11 you how many there are would obviously be a difficult

12 exercise.  So what I would suggest is I've heard your

13 ruling and I think that's reasonable, Judge.  If it

14 turns out the number ends up being materially higher

15 than what we all think at the moment, I'd like the right

16 to come back to you and let you know.  But otherwise, I

17 appreciate your time this morning.

18      THE COURT:  Sure.  And that is the Court's

19 ruling, but let's add another qualifier there.  It's not

20 just the number of documents, but it's whether or not

21 there really was some searchable database in electronic

22 form from which they were taken.  I'm hearing from the

23 defendant that that's not at all what happened.  But if

24 that were the case and you could prove to me that that's

25 the case, well then of course you're entitled to relief.

1    But I haven't gotten any evidence that that's actually

2    what occurred here.  So you're free to go back and look

3    into that further and come back to court if that's what

4    happened.

5         MR. BALBER:  Thank you, Your Honor.  We

6    appreciate that.

7         THE COURT:  All right.  I think that covers it.

8    So essentially what we've got is I will now deny what

9    remains of the motion docketed by the Court as 40 as

10   mostly academic, mostly mooted by what's happened

11   between the filing of the motion and today, and then

12   denying the residual disputes for reasons stated on the

13   record today.  And I'm not going to shift costs today.

14       One last observation on that point and then I'll

15   check in with each side before I let you go.  We try not

16   to keep score here, but sometimes it's kind of like a

17   football game where the guy who throws the second punch

18   gets the flag.  If we come back and it turns out that

19   somebody didn't do what they were supposed to on this

20   new Motion to Compel docketed as 78, then that might be

21   a cost-shifting motion and it might also be a 37(b)

22   motion.  I don't think we'll get there from here, but

23   we've already had one fairly lengthy set of discovery

24   discussions and disputes and rulings.  If we can narrow

25   that down or eliminate it before you have to get on the

1   phone with me, that would be great.  But I'm here to

2   throw the flag if I need to, okay?

3        That's all I've got for you.  Anything else on

4   behalf of plaintiff?

5            MR. BALBER:  No, Your Honor.  Thank you for

6   your time and have a nice weekend.

7            THE COURT:  Thank you.  You also.  Anything

8   else on behalf of the defendants today?

9            MR. COOK:  No, Your Honor.  Thank you for your

10  time.

11           THE COURT:  You're also welcome, and you guys

12  have good weekends too.  With that we're done.  Thank

13  you all.

14       (Proceedings concluded at 10:34 a.m.)

15                    *  *  *  *  *

16       I, LYNETTE SWENSON, Certified Realtime and Merit
    Reporter in and for the State of Wisconsin, certify that
17  the foregoing is a true and accurate record of the
    proceedings held on the 4th day of May 2012 before the
18  Honorable Stephen L. Crocker, Magistrate Judge for the
    Western District of Wisconsin, in my presence and
19  reduced to writing in accordance with my stenographic
    notes made at said time and place.
20  Dated this 12th day of July 2012.

21                    /s/_____

22                    Lynette Swenson, RMR, CRR, CBC
                         Federal Court Reporter
23

24  The foregoing certification of this transcript does not
    apply to any reproduction of the same by any means
25  unless under the direct control and/or direction of the
    certifying reporter.