## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ROCKWELL AUTOMATION, INC. and ROCKWELL AUTOMATION TECHNOLOGIES, INC.<br><br>*Plaintiffs,*<br><br>v.<br><br>WAGO CORPORATION and WAGO KONTAKTTECHNIK GMBH & CO. KG<br><br>*Defendants.* | Case No. 3:10CV718-WMC<br><br>The Hon. William M. Conley |

## WAGO'S OPPOSITION TO ROCKWELL'S
## REQUEST FOR A PERMANENT INJUNCTION

The United States Supreme Court has rejected categorically the so-called "general rule" — previously adopted by the Federal Circuit and followed by district courts — "that a permanent injunction will issue once infringement and validity have been adjudged" and "injunctions should be denied only in the 'unusual' case." *eBay v. MercExchange LLC*, 547 U.S. 388, 393–94 (2006). *eBay* mandated that the same rules govern the grant of an injunction in a patent case as in other cases. *Id.* "An injunction is a drastic and extraordinary remedy, which should not be granted as a matter of course." *Monsanto Co. v. Geertson Seed Farms*, 130 S. Ct. 2743, 2761 (2010).

There can be no more compelling a case for denying an injunction than this one. To secure an infringement verdict in this case, Rockwell needed to withhold evidence that invalidated its patent; to advocate repeatedly that the Court sidestep construing "interpret" contrary to Federal Circuit law, *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008); and to urge the jury to dismiss the claim language as mere "word games." (Docket No. 358, Trial Tr. 1-B at 31:17–21; Docket No. 367, Trial Tr. 3-A at 38:16–

23).[1]  Rockwell could not prove a single lost sale, but through a damages expert who misapplied the *Georgia-Pacific* factors and the entire market value rule, Rockwell effectively recovered profits in the guise of a reasonable royalty.  These facts alone justify denying Rockwell's request for injunctive relief.

Even more fundamentally, Rockwell has offered no evidence that it meets the specific criteria for a permanent injunction established by *eBay*.  In particular, the record is unequivocal that:

- Rockwell has shown no irreparable harm resulting from WAGO's conduct.
  - Rockwell waited six years to sue WAGO and then did not seek a preliminary injunction.  *See PGBA, LLC v. U.S.*, 389 F.3d 1219, 1229–31 (Fed. Cir. 2004) (affirming denial of injunction based in part on failure to pursue a preliminary injunction); *MercExchange, LLC v. eBay, Inc*., 500 F. Supp. 2d 556, 573 n.13 (E.D. Va. 2007) ("such significant delay [almost 2 years] in initiating litigation provides substantial evidence that it [the patentee] was not being irreparably harmed by eBay's infringement").
  - Rockwell offered no evidence that it has lost any market share to WAGO, let alone as a result of the '813 technology.
  - Rockwell failed to show that WAGO's $420 product either directly competes with Automation's $3,500 product or otherwise plays any role in the same market as Rockwell.  Indeed, Automation's biggest competitor in the low end of the market, Siemens, does not use the '813 technology, and Rockwell's own witnesses admitted that Rockwell cannot attribute a single lost sale to the use of the '813 technology.
- The hardship to WAGO arising from an injunction will far exceed any benefit to Rockwell of precluding WAGO from servicing its customers.
  - Enjoining WAGO from servicing its customers that use the accused products will disrupt the business of WAGO and of its customers without any proof that they are using the features purportedly created by the infringing technology.

---

[1] "Rockwell" shall refer collectively to Plaintiffs Rockwell Automation, Inc. ("Automation") and Rockwell Automation Technologies, Inc. ("Technologies").  "WAGO" shall refer collectively to Defendants WAGO Corporation and WAGO Kontakttechnik GmbH & CO. KG.  "The '813 technology" shall refer to the technology described and claimed in United States Patent No. 6,801, 813 ("the '813 patent").  "Trial Tr." shall refer to the transcript of the trial of this matter.  "Artmann Decl." shall refer to the Declaration of Thomas J. Artmann being filed concurrently with this Opposition.

– The jury's verdict did nothing to clarify the meaning of "adapted to interpret code," which leaves WAGO to guess how to avoid infringement.

▪ An injunction would serve no public interest; in fact, an injunction would undermine the public interest.  Granting an injunction in this case would enforce an invalid patent that will never be enforced against another party.

Moreover, even though Rockwell has lumped together the separate Rockwell entities, Automation and Technologies, Rockwell never proved that Automation is the exclusive licensee of the '813 patent.  Thus, Automation has no standing to enforce that patent (Docket Nos. 386, 387), and any speculative harm to Automation is irrelevant.  Conversely, Technologies has suffered no harm that warrants an injunction because Technologies makes no products.

Finally, granting an injunction will be inequitable because it will reward Rockwell for concealing prior art that invalidates the '813 patent and punish WAGO, the very party that uncovered that prior art.

Accordingly, WAGO respectfully requests that the Court deny Rockwell's request for a permanent injunction.

## ARGUMENT

Upon the return of the damages verdict, Rockwell asked orally that this Court grant a permanent injunction.  (Docket No. 384, Trial Tr. 5-B at 4:2–5.)  Rather than submit additional evidence in support of an injunction, Rockwell chose to rely on the trial record as it exists.  But nothing in that record supports injunctive relief.[2]

In *eBay*, the Supreme Court held that a patentee seeking a permanent injunction must make the same showing as a plaintiff in other types of cases (547 U.S. at 391):

> According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief.  A plaintiff must demonstrate:

---

[2] The Court granted WAGO leave to file this opposition to Rockwell's request.  (Docket No. 384, Trial Tr. 5-B at 4:25–5:5.)

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

Accordingly, Rockwell bears the burden of showing that the evidence establishes each of these four factors before this Court can exercise its discretion to grant such relief.  At all times, the exercise of that discretion must be consistent with equitable principles.  *MercExchange, LLC v. eBay, Inc.*, 500 F. Supp. 2d 556, 569 (E.D. Va. 2007).

The Court must make findings in applying the traditional four-factor test based upon evidence in the record.  In particular, Rule 65(d) of the Federal Rules of Civil Procedure requires that "[e]very order granting an injunction . . . (A) state the reasons why it issued; (B) state its terms specifically; and (C) describe in reasonable detail — and not by referring to the complaint or other document—the act or acts restrained or required."  Given the severe impact of a permanent injunction, these four factors must be analyzed and correctly applied based upon factual findings.  *Ecolab, Inc. v. FMC Corp.*, 569 F.3d 1335, 1352 (Fed. Cir. 2009) (injunction improper where the district court "failed to consider any of the *eBay* factors and failed to make any factual findings regarding those factors").

I.    **ROCKWELL CANNOT SATISFY THE FOUR *eBAY* FACTORS**

The analysis must begin with the four factors set forth in *eBay*.  None are present here.

A.    **Evidence Regarding Automation Is Irrelevant Because It Lacks Standing Before This Court As It Has No Legal Interest In The '813 Patent**

By their terms and as required by governing Federal Circuit precedent, the *eBay* factors apply only with respect to a plaintiff with standing to seek relief for patent infringement.  As explained in connection with WAGO's Motion Pursuant To Rule 12(h)(3) To Dismiss Rockwell Automation, Inc. For Lack Of Standing (Docket Nos. 386, 387), Automation has no standing to

seek any relief in this matter, injunctive or otherwise.  The record is devoid of any evidence that Automation has any interest whatsoever in the '813 patent.

The Federal Circuit has held that the *eBay* factors account only for the interests of the party that seeks to exclude the infringer.  In *ActiveVideo Networks, Inc. v. Verizon Comm., Inc.*, Case No. 2011-1538, 2012 U.S. App. LEXIS 18032 (Fed. Cir. Aug. 24, 2012), the district court found irreparable harm because Cablevision, the patent owner's non-exclusive licensee, competed with the defendants and would lose market share if an injunction did not issue.  The Federal Circuit reversed because the district court had abused its discretion and committed legal error by basing its finding of irreparable harm on the consequences to the patent owner's licensee.  *Id.* at **61–70.  In *Voda v. Cordis Corp.*, 536 F.3d 1311, 1329 (Fed. Cir. 2008), the Federal Circuit held that a plaintiff cannot establish irreparable harm with respect to his exclusive licensee rather than to himself.  "Nothing in *eBay* eliminates the requirement that the party seeking a permanent injunction must show that '*it* has suffered irreparable injury.'"  *Id.* (quoting *eBay*, 547 U.S. at 393).

Here, Automation has no standing to seek relief, so only evidence of harm to Technologies can be considered by the Court.  The assessment of irreparable harm and whether the remedy at law is adequate in this case must be made solely with respect to Technologies.  Likewise, in balancing the harms, the balance is between the impact an injunction would have on WAGO, on the one hand, and Technologies, on the other, without regard to Automation.

### B.      Even If Automation Is Considered, Rockwell Cannot Show That It Will Suffer Irreparable Harm Without A Permanent Injunction

Rockwell has offered no evidence of any harm to Technologies and for good reason.  Technologies is, at most, a patent holding entity that does not manufacture or sell industrial controllers and does not compete at any level in the marketplace.  (Docket No. 1 at ¶ 2, Docket

No. 137 at 46:9–21.)  Accordingly, Rockwell is unable to identify any harm to Technologies that can, by any stretch of the imagination, be considered irreparable.  Nothing in the record provides a basis for a permanent injunction arising from Technologies' role as the patent owner.

As explained above, any harm to Automation is irrelevant because it lacks standing.  But even if the impact of WAGO's activities on Automation is considered, there is no evidence of irreparable harm.

> **1.    Rockwell Has Offered No Evidence That It Has Lost A Single Sale, Let Alone Any Market Share, To WAGO Based On The '813 Technology**

In determining whether the plaintiff has shown irreparable harm, the emphasis is on "irreparable."  *Sampson v. Murray*, 415 U.S. 61 (1974).  Harm considered irreparable is typically lost market share or substantial lost profits.  *See Acumed LLC v. Stryker Corp*., 551 F.3d 1323, 1328-30 (Fed. Cir. 2008).  Decreased revenues and dilution of brand recognition can also be relevant to irreparable harm.  *i4i Ltd. P'ship v. Microsoft Corp.*, 598 F.3d 831, 861 (Fed. Cir. 2010.)  Rockwell has offered no evidence of these types of harm.

For example, Rockwell has not offered a shred of evidence that it has lost market share to WAGO as a result of the use of the '813 technology.  Rockwell has no evidence that it has lost a single sale or customer to WAGO as a result of WAGO infringing the '813 patent.  As Mr. Bliss, a marketing manager for Automation, testified (Docket No. 369, Trial Tr. 3-C at 85:9–11): "[W]e sell through a distribution channel.  We don't have direct knowledge of which customers are buying which products."  Mr. Bliss had no knowledge of any potential customer buying a WAGO product over a Automation product.  (*Id.* at 73:10–13.)  Mr. Bliss was unequivocal that, because Automation has many patents that cover its products, it is impossible to determine the extent to which any patent contributes to a sale.  (*Id.* at 76:22–77:8.)

6

What is more, Automation has been the undisputed market leader in the United States for high-end industrial controllers before, during, and after WAGO's entry into the controller market. (*See* Docket No. 369, Trial Tr. 3-C at 93:9–13.)  Rockwell has offered no evidence that WAGO's conduct has affected the revenues of Rockwell in any material way.

Rather than establishing lost profits or loss of market share, the evidence establishes beyond doubt that Automation and WAGO are at different ends of a segmented market. Automation is the market leader on the premium end of the market for controllers. (Docket No. 369, Trial Tr. 3-C at 92:19–23.)  WAGO sells its products at the lower end of the controller market. (*Id.* at 71:4–8.)  This is confirmed by comparing the prices of WAGO products that Rockwell contends are comparable to Automation's products: WAGO sells its infringing products for about $420 on average, while Automation sells its comparable products for around $3,500. (Docket No. 375, Trial Tr. 4-B at 80:25–81:11.)  Automation's high prices hamper its ability to sell its products to the low end of the market, where Siemens is Automation's main competitor. (Docket No. 369, Trial Tr. 3-C at 84:10–17.)  Indeed, Siemens has a larger share of the lower-end market than Automation, even though Siemens does not use the '813 technology. (*Id.* at 93:6–21.)

This Court has recognized that two companies do not directly "compete" merely because they offer similar products.  In *Douglas Dynamics, LLC v. Buyers Prods. Co.*, Case No. 09-cv-261-wmc (W.D. Wis. Feb. 28, 2011 (Docket No. 530)), this Court denied plaintiff's request for a permanent injunction after a finding of infringement.  This Court acknowledged that plaintiff and defendant generally competed for sales of snowplow truck assemblies, along with other manufacturers, but the plaintiff sat in the position of power. Slip Op. (Docket No. 530) at 6.  The evidence showed that the parties' respective snowplow assemblies were "hardly fungible."  *Id.*

at 3.  The Court likened the competition to that of a Ford Taurus and Mercedes Benz S550 —

they both compete in the market for sedan-sized cars, but it was unlikely someone in the market

for an S550 would consider purchasing a Taurus.  *Id.*

The same is true here.  Rockwell has not shown any lost sale or lost market share as a

result of WAGO selling its $420 controllers against Automation's $3,500 controllers.  As

Thomas Artmann, WAGO's president, testified, WAGO "really [has] a hard time competing

against the big automation guys," such as Rockwell.  (Docket No. 374, Trial Tr. 4-A at 94:6–7.)

It would be "extremely rare" for a customer to choose a WAGO product over an Automation

product because many of the customers Automation sells to have specifications that require the

company to buy Automation products.  (*Id.* at 94:18–24.)  Robert Vigil testified at length that, as

an economic matter, any token competition that exists is not meaningful.  (Docket No. 375, Trial

Tr. 4-B at 80:20–84:4.)

The Court should reach the same conclusion that it reached in *Douglas Dynamics*.

Rockwell has failed to show any harm, much less "irreparable" harm, as required by *eBay*.  *See*

*also Advanced Cardiovascular Sys. v. Medtronic Vascular, Inc.*, 579 F. Supp. 2d 554, 560 (D.

Del. 2008) (no irreparable harm where plaintiff could not identify any customers lost as a result

of defendant's infringement and where plaintiff had recaptured nearly all of the market share it

lost to defendant).  Injunctive relief should be denied.

> **2.      Rockwell Cannot Show A Causal Nexus Between The Harm To
>             Rockwell, If Any, And WAGO's Purported Use Of The '813
>             Technology**

Irreparable harm, even if it were found, must be shown to have a nexus to the patented

features.  *Apple, Inc. v. Samsung Elec. Co., Ltd.*, 678 F.3d 1314, 1324 (Fed. Cir. 2012):

> To show irreparable harm, it is necessary to show that the
> infringement caused harm in the first place.  Sales lost to an
> infringing product cannot irreparably harm a patentee if consumers

> buy that product for reasons other than the patented feature. If the patented feature does not drive the demand for the product, sales would be lost even if the offending feature were absent from the accused product.

Here, Rockwell has not shown and cannot show that the '813 technology drives demand for either WAGO's or Automation's products.

The only relevant evidence shows that the infringing features do not drive demand for WAGO's controllers. As Mark DeCramer testified, less than 5% of customers use the file system on WAGO's controllers. (Docket No. 375, Trial Tr. 4-B at 55:5–9, 14–15.) Many witnesses, including WAGO's expert, Robert Vigil, confirmed that customers buy WAGO products for many, many different reasons and that most of these reasons are unrelated to the '813 technology. (*Id.* at 76:15–18.) They include price, warranties, and customer service. (*Id.* at 76:24–77:6.) Rockwell did not dispute this evidence. Rockwell has not and cannot tie consumer demand to the '813 patent and therefore cannot establish a nexus between any infringement by WAGO and harm suffered by Rockwell.

Again, Mr. Bliss established convincingly that Rockwell cannot allocate the extent to which the '813 patent influences sales of Automation's controllers. (Docket No. 369, Trial Tr. 3-C at 76:22–77:8.) Mr. Murtha confirmed in response to the Court's question that he could not determine the extent to which profits on controllers are attributable to the '813 patent. (Docket No. 375, Trial Tr. 4-B at 16:9–17:15.) In light of such evidence, Rockwell is unable to establish the nexus necessary to justify a permanent injunction.

### 3.      Rockwell's Failure To Act Refutes Any Finding Of Irreparable Harm

There is no dispute that any infringement in this case would have begun in 2004, yet Rockwell waited until 2010 to file this action. Notably, Automation remained at the top of the market during these six years. Rockwell's delay in bringing suit negates any assertion of

irreparable harm.  *See High Tech Medical Instrumentation, Inc. v. New Image Industries, Inc.*, 49 F.3d 1551, 1557 (Fed. Cir. 1995) (a mere 17-month delay in bringing suit weighed against injunctive relief).  Had Rockwell been irreparably harmed by WAGO's infringement, Rockwell would have brought this lawsuit much sooner.

Similarly, once it filed suit, Rockwell never sought preliminary injunctive relief. *MercExchange, LLC v. eBay, Inc.*, 500 F. Supp. 2d 556, 573 (E.D. Va. 2007) (citing *PGBA, LLC v. U.S.*, 389 F.3d 1219, 1229–31 (Fed. Cir. 2004)) (plaintiff's failure to pursue a preliminary injunction is a factor in determining whether the plaintiff has been irreparably harmed).  If WAGO's conduct was inflicting irreparable harm, Rockwell would have moved quickly to enjoin the conduct.  Rockwell failed to do so because no irreparable harm exists here.

### C.    Rockwell Has Not Shown That The Remedies Available At Law Are Inadequate

As noted above, Rockwell did not produce evidence of a single sale lost to WAGO.  Nor did Rockwell produce any evidence that it lost any market share or suffered any other harm as a result of WAGO's infringement.  Accordingly, a reasonable royalty is a complete and thus fully adequate remedy.

Rockwell's expert, Mr. Murtha, stated that his assignment for Rockwell was to determine "adequate compensation" for Rockwell for WAGO's infringement.  (Docket No. 374, Trial Tr. 4-A at 125:9–14.)  He concluded this adequate compensation would be achieved by applying a unit royalty to each WAGO controller sold.  (*Id.* at 127:16–25.)

In short, Rockwell has no evidence to suggest its remedies at law are in any way inadequate.  A party is "not entitled to injunctive relief simply because the damages recovered are imperfect."  *Taurus IP, LLC v. DaimlerChrysler Corp.*, 559 F. Supp. 2d 947, 959 (W.D. Wis. 2008).  "The damages award must be seriously deficient as a remedy for the harm suffered."  *Id.*

Rockwell has not identified, and cannot identify, any way in which a monetary award of damages is insufficient.[3]

### D.   The Hardship Of A Permanent Injunction On WAGO And Its Customers Dwarfs Any Potential Hardship That Rockwell Might Experience Without An Injunction

As stated in the declaration of Mr. Thomas Artmann being filed with this Opposition, a permanent injunction will inflict severe and irreparable harm on WAGO and its customers.  In contrast, nothing in the record indicates that denying Rockwell's request for an injunction will impose any hardship on Rockwell.  Automation will continue to be the market leader in industrial controllers with or without an injunction.  Similarly, with or without an injunction, Automation will continue to be faced with competition from companies like Siemens that do not use the '813 technology and companies like Beckhoff and SoftPLC that do.

### 1.   A Permanent Injunction Will Disrupt The Business Of WAGO And Its Customers

Since 2000, and in particular during the six years that Rockwell failed to bring suit, WAGO invested significant resources to develop a product that customers have integrated into their industrial control systems.  (Artmann Decl. at ¶¶ 3, 4.)  Over the years, WAGO has developed relationships with these customers creating invaluable goodwill and establishing WAGO's reputation in the industrial control market.  (*Id.* at ¶ 4.)  Had Rockwell asserted the '813 patent earlier, WAGO could have addressed the patent as WAGO's customer relationships grew.  Rockwell's inaction in enforcing the '813 patent between 2004 and 2010 has magnified the harm that WAGO will endure if an injunction issues at this late date.  Moreover, WAGO's competitors at the lower end of the market, such as Beckhoff, Phoenix Contact, and B&R, will

---

[3] To the extent the Court concludes that an on-going royalty is necessary here, WAGO reserves the right to address the form and amount of any such royalty pursuant to the procedure endorsed by the  Federal Circuit.  *Paice LLC v. Toyota Motor Corp.*, 504 F.3d 1293, 1316 (Fed. Cir. 2007) (Rader, J., concurring); *see Paice LLC v. Toyota Motor Corp.*, 609 F. Supp. 2d 620, 622–23 (E.D. Tex. 2009).

continue to sell industrial controllers that have files systems, which will impose on WAGO an unfair competitive disadvantage as to companies other than Rockwell.  (*Id.* at ¶ 5.)

An injunction barring WAGO from continuing to provide the controllers that its customers have been using for years in their control systems would disrupt the operation of WAGO's customers thereby irreparably inflicting on WAGO the loss of goodwill and reputation. The industrial controllers offered by WAGO's competitors are not substitutes that can replace the WAGO controllers because the competitive controllers either lack the features offered by WAGO controllers or, worse, are incompatible with the installed WAGO systems.  (Artmann Decl. at ¶ 5.)  Most important, however, WAGO is unable to identify which customers employ the WAGO controllers in an infringing manner without expending significant resources.

WAGO's hardship is particularly acute because the absence of a construction of "interpret" makes it more difficult to sort out before appeal how to avoid infringement while still remaining in the controller business.  Given that Rockwell succeeded in convincing the Court not to construe the term "adapted to interpret code," WAGO is left with the unfair burden of having to guess whether any redesigned product contains this element.  Rule 65(d) requires that the acts prohibited be described in reasonable detail so that the enjoined party knows what it may or may not do without violating the injunction.  It is inequitable to mandate that WAGO retool its entire business without more guidance.

>        **2.**        **Despite Having The Burden Of Proof, Rockwell Has Offered No Evidence Of Hardship In Support Of Its Request For A Permanent Injunction**

Before asking the Court for a permanent injunction, Rockwell offered no evidence that it will experience hardship if a permanent injunction does not enter.  Thus, Rockwell has failed to carry its burden in this regard.

In the absence of a permanent injunction, Technologies' role as a patent owner will remain unchanged.  An injunction would have no impact on Technologies.  Similarly, there is no evidence in the record that Automation will experience hardship if an injunction does not enter. As noted above, WAGO operates at the lower end of the market; Rockwell operates at the premium end.  Accordingly, the balance of hardships weighs overwhelmingly in favor of denying Rockwell's request for a permanent injunction.

###### E.    A Permanent Injunction Will Not Serve The Public Interest

Finally, the public interest is served by not enforcing an invalid patent.  While WAGO was prohibited due to timing issues from presenting to the jury the invalidity case WAGO had prepared, the Court heard testimony establishing that the excluded prior art, particularly Rockwell's own 1747 Open Controller, invalidates the '813 patent.  Regardless of how the Court rules on WAGO's unclean hands defense, the record is uncontroverted that Rockwell's 1747 Open Controller invalidates the '813 patent.  Rockwell has never articulated any theory, or put forward any evidence, to refute WAGO's evidence because Rockwell cannot do so.  There is a strong public interest against enforcing invalid patents.  *Cardinal Chem. Co. v. Morton Int'l*, 508 U.S. 83, 100 (1993).  Indeed, the public is harmed by the enforcement of invalid patents.  *Lear, Inc. v. Adkins*, 395 U.S. 653, 670 (1969); *Pope Mfg. Co. v. Gormully*, 144 U.S. 224, 234 (1892). Rockwell's failure to disclose the 1747 Open Controller to WAGO and the United States Patent and Trademark Office raises serious questions regarding unclean hands and validity.  The public interest factor weighs against issuance of a permanent injunction.

## II.    OTHER EQUITABLE FACTORS RENDER A PERMANENT INJUNCTION INAPPROPRIATE HERE

It is axiomatic that "he who asks for equity must do equity; that a party coming into a court of equity must come in with clean hands, free from wrong himself in relation to the matter

in which they ask equitable relief." *Beermart, Inc. v. Stroh Brewery Co.*, 804 F.2d 409, 413 (7th Cir. 1986) (quotations omitted). Here, Rockwell has not done equity. Instead, Rockwell has repeatedly misled WAGO and the Court on various aspects of the case resulting in a large jury verdict on an invalid patent based on an unknown construction of a highly disputed and material term in the claim. Given that these facts justify judgment in WAGO's favor or, in the alternative, a new trial, it would be inequitable to grant a permanent injunction in their wake.

Moreover, as has been discussed throughout pretrial proceedings and during WAGO's unclean hands defense, Rockwell failed to produce documents related to the 1747 Open Controller. Rockwell's intent in withholding this prior art is apparent from the obvious significance of this prior art and the lengths to which Rockwell's counsel in this case went to misrepresent it (for example, by stating that the 1747 Open Controller was not "rugged" when the documentary evidence stated the exact opposite). Rockwell submitted no evidence to refute the testimony of WAGO's expert regarding how the 1747 Open Controller anticipates the '813 patent. Unlike the highly technical patent prior art that WAGO might have otherwise used in its invalidity case, the Open Controller was "killer prior art" that would have established as a matter of law that the '813 patent was anticipated and invalid. (Docket No. 385, Trial Tr. 5-A at 95:5–12.) Rockwell itself acknowledges that, in a calculated fashion, Rockwell "extracted" information related to the 1747 Open Controller from its discovery responses. (*Id.* 76:10–20; *see also* Docket No. 301 at 33:11–16.) Now, after Rockwell consciously withheld highly probative — in fact dispositive — evidence, Rockwell asks this Court to permanently enjoin WAGO from selling its products without any factual basis for that request. Rockwell has not "done equity" in these proceedings and should not be allowed to invoke this Court's equitable powers.

## CONCLUSION

For the foregoing reasons, WAGO respectfully requests that the Court deny Rockwell's request for a permanent injunction.

Dated:  October 25, 2012                           Respectfully submitted,

*/s/ Marshall J. Schmitt*
David L. De Bruin, SBN 1016776
MICHAEL BEST & FRIEDRICH LLP
100 East Wisconsin Avenue, Suite 3300
Milwaukee, WI  53202-4108
T:  (414) 271-6560; F:  (414) 277-0656
Email:  dldebruin@michaelbest.com

Marshall J. Schmitt
Gilberto E. Espinoza
MICHAEL BEST & FRIEDRICH LLP
Two Prudential Plaza
180 N. Stetson Avenue, Suite 2000
Chicago, Illinois  60601-6710
T: 312.222.0800; F: 312.222.0818
Email: mjschmitt@michaelbest.com
Email: geespinoza@michaelbest.com

John C. Scheller
MICHAEL BEST & FRIEDRICH LLP
One South Pinckney Street, Suite 700
P.O. Box 1806
Madison, Wisconsin  53701-1806
T: 608.283.2276; F: 608.283.2275
Email: jcscheller@michaelbest.com

*Attorneys for Defendants*
*WAGO CORPORATION and*
*WAGO KONTAKTTECHNIK GMBH & CO. KG*

**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| ROCKWELL AUTOMATION, INC. and ROCKWELL AUTOMATION TECHNOLOGIES, INC. <br><br> *Plaintiffs,* <br><br> v. <br><br> WAGO CORPORATION and WAGO KONTAKTTECHNIK GMBH & CO. KG <br><br> *Defendants.* | Case No. 3:10CV718-WMC <br><br> The Hon. William M. Conley |

**Certificate Of Service**

     I HEREBY CERTIFY that on this 25th day of October, 2012, a copy of the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system and was served on the following counsel as indicated below.

| | |
|---|---|
| Scott S. Balber <br> **COOLEY LLP** <br> The Grace Building <br> 1114 Avenue of the Americas <br> New York, NY 10036-7798 | ☒ Via CM/ECF Service <br> ☐ Via First Class Mail <br> ☐ Via E-mail: <br>    sbalber@cooley.com |
| Paul Tanck <br> Lisa Schapira <br> **CHADBOURNE & PARKE LLP** <br> 30 Rockefeller Plaza <br> New York, NY 10112 | ☒ Via CM/ECF Service <br> ☐ Via First Class Mail <br> ☐ Via E-mail: <br>    ptanck@chadbourne.com <br>    lschapira@chadbourne.com |
| Kristin Graham Noel <br> Matthew J. Duchemin <br> **QUARLES & BRADY LLP** <br> 33 East Main Street, Suite 900 <br> Madison, WI 53703 | ☒ Via CM/ECF Service <br> ☐ Via First Class Mail <br> ☐ Via E-mail: <br>    kgn@quarles.com <br>    matthew.duchemin@quarles.com |

*/s/ Gilberto E. Espinoza*
Gilberto E. Espinoza

16