UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN

---

ROCKWELL AUTOMATION, INC. and ROCKWELL
AUTOMATION TECHNOLOGIES, INC.,

                       Plaintiffs,

           -against-

WAGO CORPORATION and WAGO
KONTAKTTECHNIK GmbH & CO. KG,

                    Defendants.

Case No. 3:10-CV-718-WMC

---

**MEMORANDUM OF LAW IN FURTHER SUPPORT OF THE AWARD OF
PERMANENT INJUNCTIVE RELIEF IN FAVOR OF PLAINTIFFS**

     Plaintiffs Rockwell Automation, Inc. ("RAI") and Rockwell Automation Technologies,

Inc. ("RATI") (together, "Rockwell" or "Plaintiffs"), respectfully submit this memorandum of

law in support of their request for entry of a permanent injunction enjoining defendants WAGO

Corporation ("WCP") and WAGO Kontakttechnik GmbH & Co. KG ("WKT") (together

"WAGO" or "Defendants") from infringing U.S. Patent No. 6,801,813 (the "'813 patent")

pursuant to 35 U.S.C. § 283 (2006).

**PRELIMINARY STATEMENT**

     Rockwell is entitled to a permanent injunction preventing any further infringement of its

'813 patent.  WAGO's opposition to Rockwell's application relies heavily on an effort to

undermine determinations already made by the jury and by this Court, which can be disturbed

only through an appeal that has yet even to be filed.  For example, WAGO seeks to re-argue the

issues of invalidity and claim construction; both of which have been finally resolved by the

Court and by the jury.  WAGO also asserts that RAI lacks standing in this action, an issue which was raised at trial and rejected by this Court, and which is now the subject of another post-trial motion filed by WAGO.  WAGO also attempts to revive its motion in limine challenging Rockwell's damages expert, Emmet Murtha, which was denied prior to the commencement of trial and then rejected again when WAGO renewed it at trial.  WAGO cannot in its opposition to a request for a permanent injunction obtain what amounts to appellate relief on issues decided in Rockwell's favor before or during trial.

Further, with respect to WAGO's arguments that actually apply to Rockwell's request for a permanent injunction, WAGO ignores the record, including testimony that WAGO elicited from its own witnesses, and the applicable law.  In particular, WAGO's claim that it will suffer great hardship if a permanent injunction is entered flies in the face of WAGO's claim throughout trial that the technology embodying the '813 patent is not integral to the infringing products.  Indeed, notwithstanding WAGO's oft-repeated mantra that less than 5 percent of WAGO's customers actually use the patented technology, that the products embodying the patented technology represent a small fraction of its sales, and the testimony from WAGO's damages expert that it would take merely a week to remove the patented technology from WAGO's infringing products, WAGO now claims that an injunction preventing the use of the patented technology will inflict "severe and irreparable harm" on both WAGO and its customers.  For those reasons, and the reasons set forth below, WAGO's opposition lacks merit.

The narrow issue to be decided by this Court on this motion is whether Rockwell is entitled to a permanent injunction preventing WAGO from any further infringement of the '813 patent.  It is Rockwell's burden to demonstrate to this Court that it is entitled to that prospective

2

relief and Rockwell respectfully submits that based on the evidence adduced at trial and the

verdicts rendered by the jury on both liability and damages, its request for a permanent

injunction should be granted.

**ARGUMENT**

**I.    WAGO'S ARGUMENTS CONCERNING INVALIDITY, CLAIM
        CONSTRUCTION, EXPERT OPINION, AND STANDING
        ARE NOT RELEVANT TO THIS MOTION**

WAGO attempts to insert into its opposition brief arguments that have already been

decided either by this Court or the jury, and which do not bear on Rockwell's entitlement to

injunctive relief.  This kind of argument in opposition to a motion for injunctive relief has been

flatly rejected by this Court.  Extreme Networks, Inc. v. Enterasys Networks, Inc., No. 07-cv-

229-bbc, 2008 WL 4756498, at *2 (W.D. Wisc. Oct. 29, 2008) (disregarding reargument of the

merits that are unrelated to the four-part test from eBay v. MercExchange LLC, 547 U.S. 388,

391 (2006), and granting injunction where "it is undisputed that plaintiff and defendant are

competitors in the router market and that plaintiff's routers embody the patented technology").

First, WAGO claims that Rockwell is not entitled to injunctive relief because "Rockwell

needed to withhold evidence that invalidated its patent."  (See WAGO's Opposition to

Rockwell's Request for a Permanent Injunction ("Br." ), Dkt. 388 at 1.)  WAGO, however, had

multiple opportunities to argue invalidity of the '813 patent in this action, including at trial, but

chose not to do so.  In fact, WAGO voluntarily elected not to pursue its invalidity case.  (See

Dkt. 363 (DeBruin) Tr. 2-C-6:14-16 ("We have not put on an invalidity case . . . ."); Dkt. 385 Tr.

5-A-93:2-4 (noting WAGO's failure to pursue invalidity).)  Moreover, when the jury rendered its

verdict on liability in this action, finding for Rockwell on each and every claim, the issue of

3

invalidity was firmly and finally put to rest.  (Dkt. 378.)  WAGO cannot now claim invalidity as a defense to Rockwell's application for a permanent injunction.

Second, WAGO claims that Rockwell is not entitled to injunctive relief because Rockwell had to "advocate repeatedly that the Court sidestep construing 'interpret' contrary to Federal Circuit law", suggesting that this Court permitted Plaintiffs to somehow dupe the jury with "word games." (Br. at 1.)  This argument is utterly without merit.  In the first instance, claim construction was a matter settled by this Court's opinion and order on summary judgment prior to trial after extensive briefing and argument.  (Dkt. 333.)  Furthermore, WAGO sought a construction of the word "interpret" throughout the trial.  The Court ultimately proffered – at WAGO's behest – a construction of the term "interpret," which WAGO then promptly challenged, requesting instead that the Court allow the jury to apply the word's "plain and ordinary meaning." (See Dkt. 367 Tr. 3-A-16:14-17:24.)  WAGO should not be permitted to raise, re-raise, and then raise again arguments that have been decided by the Court; and certainly not in the context of a request for injunctive relief.

Third, WAGO claims that Rockwell is not entitled to injunctive relief because Rockwell's damages expert "misapplied the *Georgia-Pacific* factors and the entire market value rule . . . effectively recover[ing] profits in the guise of a reasonable royalty." (Br. at 2.)  The Court has also dealt with this issue on multiple occasions, rejecting each time – including at trial – WAGO's argument that Rockwell's damages theory was one for lost profits. (See Dkt. 341 Tr. 17:8-20:13; Dkt. 343; Dkt. 352 Tr. 7:15-12:6; Dkt. 375 Tr. 4-B-90:14-25.)  Furthermore, during the trial Mr. Murtha testified as to his opinion on Rockwell's damages, WAGO's counsel cross-examined him, and WAGO then proffered two of its own expert witnesses to testify regarding

Rockwell's damages, including testimony specifically addressing Mr. Murtha's opinion. (Dkt. 375 (Bero) Tr. 4-B-69:11-18.)  Thereafter, at the close of the damages portion of the trial, the Court provided clear instructions to the jury, including in connection with the Georgia-Pacific factors concerning reasonable royalties.  (See Dkt. 369 Tr. 3-C-29:19-33:19.)  The jury then deliberated and rendered its verdict, awarding $10,100,223.00 to Rockwell.  (Dkt. 380.)  WAGO's argument – amounting to a premature appeal or an after-the-fact motion for a judgment as a matter of law under Rule 50 of the Federal Rules of Civil Procedure – has no place whatsoever in WAGO's opposition to a request for injunctive relief.

Fourth, WAGO claims that RAI (referred to by WAGO as "Automation") lacks standing to seek relief for patent infringement and thus, has no standing to seek injunctive relief here. (Br. at 4-5.)  WAGO raised this issue for the first time during trial.  (Dkt. 374 Tr. 4-A-117:11-121:5.)  The Court rejected WAGO's argument, indicated that it would not take up the jury's time with the issue, but permitted WAGO to brief the issue post-verdict.  (Id.)  WAGO has done just that in a separate Motion to Dismiss for Lack of Standing, which was made on October 25, 2012.  (Dkt. 387.)  Rockwell's opposition to that motion is due on November 15, 2012.  As such, Rockwell will not address WAGO's standing argument herein, but contends that RAI unequivocally has standing in this action, and will make arguments in support of that contention in its opposition to WAGO's motion to dismiss, on November 15, 2012.

II.   **WAGO SHOULD BE PERMANENTLY ENJOINED**
      **FROM ANY FURTHER INFRINGEMENT OF THE '813 PATENT**

Section 283 of the Patent Act authorizes district courts, upon a finding of infringement, to impose a permanent injunction "in accordance with principles of equity to prevent violation of any right secured by patent, on such terms as the court deems reasonable."  See 35 U.S.C. § 283. Consistent with those traditional equitable principles, a patentee seeking a permanent injunction must satisfy the four-factor test for injunctive relief:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

eBay Inc., 547 U.S. at 391; see also Robert Bosch LLC v. Pylon Mfg. Corp., 659 F.3d 1142, 1148 (Fed. Cir. 2011).  It is within the discretion of the district court whether to grant or deny injunctive relief.  See eBay, 547 U.S. at 394.  As set forth below, an application of those four factors to the facts of this case demonstrate that Plaintiffs are entitled to permanent injunctive relief.

A.   **Plaintiff Has Suffered and Will Continue to Suffer Irreparable Harm**

The very purpose of and benefit of a patent is the right to exclude others from manufacturing and/or selling the patented product.  See Bendix Commercial Vehicle Sys., LLC v. Haldex Brake Prods. Corp., No. 1:09-cv-176, 2011 WL 14372, at *5 (N.D. Ohio Jan. 3, 2011) (citing 35 U.S.C. § 154(a)(1)).  When a competing company acts in violation of a patent holder's right to the exclusive use of an invention or product, the patent holder suffers an immediate and irremediable harm to the patent holder.  Robert Bosch LLC, 659 F.3d at 1149 ("[E]ven though a successful patent infringement plaintiff can no longer rely on presumptions or other short-cuts to

support a request for a permanent injunction, it does not follow that courts should entirely ignore the fundamental nature of patents as property rights granting the owner the right to exclude."); Richardson v. Suzuki Motor Co., 868 F.2d 1223, 1246-47 (Fed. Cir. 1989) ("Infringement having been established, it is contrary to the laws of property, of which the patent law partakes, to deny the patentee's right to exclude others from use of his property.").  Post-eBay, the "statutory right to exclude," standing alone, is insufficient to justify permanent injunctive relief following a verdict of infringement.  eBay, 547 U.S. at 392.  However, it remains the case that **"the violation of the right of exclusion during the limited term of the patent grant is an injury not easily repaired by damages at law**."  See Trading Tech. Int'l, Inc. v. eSpeed, Inc., No. 04-C-5312, 2008 WL 4531371, at *3 (N.D. Ill. May 22, 2008) (citing eBay, 547 U.S. at 394) (emphasis added).  This is particularly so where, as here, (1) the patentee and adjudged infringer both practice the patented technology and (2) the patentee and adjudged infringer are competitors in the same market and the patented technology is core to Plaintiffs' business.  Id.; Robert Bosch LLC, 659 F.3d at 1149.

Contrary to WAGO's claims, the historical preference for granting injunctions to prevailing plaintiffs in patent cases still has significant weight "where the patentee and adjudged infringer both practice the patented technology."  Robert Bosch LLC, 659 F.3d at 1150 (citing eBay, 547 U.S. at 396-97 (Kennedy, J., concurring) (contrasting the relevant considerations in traditional patent infringement actions with certain cases arising now "in which firms use patents not as a basis for producing and selling goods, but, instead, primarily for obtaining licensing fees")).  There is no dispute that Rockwell practices the patented technology in that it actually manufactures and sells products embodying the '813 patent.  (See Dkt. 369 Tr. 3-C-49:15-

50:12.)  Likewise, there is no dispute that WAGO also manufactures and sells products that embody the features of the '813 patent.  In addition to testimony and other evidence introduced at trial (see e.g. Dkt. 361(Zatarain) Tr. 2-A-64:22-65:4), in rendering its verdict on liability, the jury determined, unequivocally, that WAGO practiced the patented technology in that it was required to find that "[e]very requirement in the particular asserted claim [it] consider[ed] is found in defendants' product," and that "Defendants made, used, sold, offered for sale within or imported into the United States the infringing products."  (Dkt. 367 Tr. 3-A-27:11-16.)

        Moreover, the evidence adduced at trial, including testimony from both Rockwell and WAGO witnesses, as well as documentary evidence, demonstrates unequivocally that Rockwell and WAGO are competitors.  (See e.g. Dkt. 362 (Artmann) 2-B-36:15-19 (testifying that Rockwell is a WAGO competitor); Dkt. 369 (Bliss) Tr. 3-C-64:13-65:8 (identifying WAGO as a direct competitor in the market for the patented technology, as well as in the broader global PLC market); Dkt. 374 (Norton) Tr. 4-A-21:1-7 (testifying that he prepared "marketing materials that directly compare the ControlLogix system to the WAGO I/O system"); 22:21-23:4 (testifying that he prepared the marketing materials comparing the Rockwell ControlLogix system to the WAGO I/O system "as competing products in marketing materials because [he] believe[s] they are competing products").)  In addition, Rockwell respectfully submits that the jury, in rendering its verdict on damages using the Georgia-Pacific factors, concluded that Rockwell and WAGO are competitors.  (See Dkt. 369 Tr. 3-C-32:10-11 (listing Georgia-Pacific factor no. 5, "[w]hether or not the patent owner and infringer are competitors").)  This factor weighs heavily in favor of granting permanent injunctive relief to Rockwell.  Trading Tech. Int'l, 2008 WL 4531371 at *3 (affirming permanent injunction holding that "where a patentee has built a successful business

8

around core patented technology, an infringing competitor in the same marketplace causes
irreparable harm to the patentee"); see also Robert Bosch LLC, 659 F.3d at 1151; i4i Ltd. P'ship
v. Microsoft, 598 F.3d 831, 861 (Fed. Cir. 2012).[1]  This is true regardless of whether the
competition is direct or indirect.  See Broadcom Corp. v. Qualcomm Inc., 543 F.3d 683, 703
(Fed. Cir. 2008); Mytee Prods., Inc. v. Harris Research, Inc. 439 Fed. App'x. 882, 887 (Fed. Cir.
2011).  It is also true even if competitors have limited success.  Bosch, 659 F.3d at 1153.

Notwithstanding the foregoing admissions by, among others, WAGO's own witnesses,
WAGO contends that Rockwell and WAGO were not competitors because "WAGO sells its
products at the lower end of the controller market." (Br. at 7.)  First, that WAGO disputes the
extent of the competition between it and Rockwell does not negate the evidence that the parties
are in fact competitors.  Indeed, courts have found irreparable harm notwithstanding a dispute as
to the extent of the competition between parties.  See e.g. Robert Bosch LLC, 659 F.3d at 1152-
1153.  Further, WAGO's argument that the parties are not competitors because WAGO's
infringing products are less expensive than Rockwell's products is disingenuous in light of the
testimony at trial, including testimony of WAGO's witnesses, that WAGO's marketing strategy
was to tout the infringing products as a cheaper alternative to the Rockwell products that embody
the '813 patent.  (See Dkt. 374 (Norton) Tr. 4-A-34:18-35:11 (testifying that the purpose of

---

[1]    The record is clear that the '813 patent and the products embodying the '813 patent are core
to Rockwell's business, which has been extremely successful.  (See e.g. Dkt. 358
(Kretschmann) Tr. 1-B-53:7-12 ("Our programmable logic controllers are core to our
business"; Dkt. 369 (Bliss) Tr. 3-C-62:1, 63:11-21; (Zacharias) Tr. 3-C-101:8-12.)

putting prices on the comparison of the Rockwell ControlLogix product to the WAGO controller was to highlight the fact that the WAGO product is cheaper, for the purpose of selling the WAGO product in the marketplace); see also Dkt. 369 (Bliss) Tr. 3-C-71:6-8 (identifying WAGO as "a lower price competitor where they use price as a primary driver to gain business").)  This marketing strategy supports a finding of irreparable harm and the issuance of a permanent injunction.  See Merial Ltd. v. Cipla Ltd., 681 F.3d 1283, 1306 (Fed. Cir. 2012) (affirming permanent injunction against adjudged infringer and finding irreparable harm prong satisfied in view of evidence that infringer's marketing strategy involved touting the infringing product as a cheaper but otherwise equal alternative).

Finally, WAGO admitted at trial that it actually succeeded in competing with Rockwell as it was able to get customers that had been using Rockwell's products to switch over to WAGO's I/O system.  (See Dkt. 374 (Norton) Tr. 4-A-39:15-23 (testifying that "WAGO has succeeded in getting customers that had been using Rockwell products to switch over to WAGO Corporation's I/O system"); id. (Norton) Tr. 4-A-48:16-49:1 (confirming that WAGO sells programmable logic controllers and additional I/O system-related products to Rockwell customers in the United States).)  Not only does this undermine WAGO's argument that Rockwell and WAGO are not competitors, but it also undermines WAGO's argument that Rockwell has failed to show any loss of sales or market share.  While past loss of sales or market share are relevant to the irreparable harm factor, plaintiffs are not required to provide quantifiable evidence of lost sales or market share to obtain injunctive relief.  See i4i Ltd., 598 F.3d at 862.  This is particularly true here because testimony was adduced at trial that protecting Rockwell's patented technology is critical to protecting Rockwell's market share.  (See Dkt. 369

(Bliss) Tr. 3-C-52:20-53:20, 61:18-62:9, 63:1-19; Dkt. 358 (Kretschmann) Tr. 1-B-32:7-12);

Trading Tech. Int'l, 2008 WL 4531371 at *3 (in the absence of actual evidence of market share

erosion, court found that trial testimony that protecting the patented technology was critical to

plaintiff's protection of its market share was sufficient evidence of irreparable harm).

WAGO's two remaining arguments challenging irreparable harm are also without merit.

WAGO argues that Rockwell cannot show a causal nexus between the harm to Rockwell, if any,

and WAGO's "purported" use of the '813 patent.  However, WAGO's use of the '813 patent is

hardly "purported."  The jury's determination that WAGO infringed the '813 patent is based on

its conclusion that "Defendants made, used, sold, offered for sale within or imported into the

United States the infringing products."  (Dkt. 367 Tr. 3-A-27:14-16.)  Indeed, to make this

argument, WAGO relies entirely on Apple, Inc. v. Samsung Elec. Co. Ltd., 678 F.3d 1314, 1324

(Fed. Cir. 2012), a case which addresses the question of whether to grant a ***preliminary***

***injunction*** – not a permanent injunction.  This is a meaningful distinction, one which WAGO

does not address anywhere in its argument.  See Mytee Prods., 439 Fed. App'x. at 888 ("There

are significant differences in the requirements and uses of preliminary and permanent

injunctions.").  Moreover, the jury's finding that WAGO infringed the '813 patent conclusively

establishes the causal nexus between Rockwell's harm and WAGO's use of the '813 patent.

WAGO also argues that Rockwell "failed to act" by waiting to sue WAGO until 2010

and by not seeking a preliminary injunction at the start of the case and therefore cannot establish

irreparable harm.  (Br. at 9-10.)  In support of its argument that Rockwell cannot demonstrate

irreparable harm because it purportedly waited to bring this lawsuit, WAGO relies entirely on

High Tech Med. Instrumentation, Inc. v. New Image Indus., Inc., 49 F.3d 1551, 1557 (Fed. Cir.

1995).  That case, however, also concerns a request for ***preliminary injunctive relief*** and is not applicable here.  See Mytee Prods., 429 Fed. App'x. at 888.  WAGO's argument that Rockwell is not entitled to a permanent injunction because it did not seek a preliminary injunction is equally without merit.  In fact, the Federal Circuit has flatly rejected any requirement that a party seeking a permanent injunction must have previously sought preliminary injunctive relief:

> While we have held that delay in seeking an injunction is a factor to be considered in determining whether to issue a preliminary injunction, we have never held that failure to seek a preliminary injunction must be considered as a factor weighing against a court's issuance of a permanent injunction.
>
> Moreover, adopting a rule such as that proposed by Mytee would likely result in a substantial increase in the number of requests for preliminary injunctions; in many cases, such requests would be filed not because of the need for preliminary injunctive relief, but merely to protect the patent owner's ultimately right to a permanent injunction.

Mytee Prods., 439 Fed. App'x. at 888 (citations omitted) (granting permanent injunctive relief to prevailing plaintiff in patent case).

### B.   Rockwell Has No Adequate Remedy at Law

In addition to the factors set forth in Section II.A. supra, a permanent injunction is appropriate here because Rockwell (1) has never licensed the patented technology and, in fact, has a policy against doing so, and (2) generates substantial pull-through sales from sales of the patented technology which, if lost to WAGO, could not be compensated by a mere royalty on the

patented products.[2]  Those factors strongly support a finding that Rockwell has no adequate remedy at law.

First, Rockwell has never licensed the patented technology.  (See Dkt. 369 (Bliss) Tr. 3-C-61:18-62:9, 63:1-10.  ("[W]e do not license [the core ControlLogix] technology;" "We will not license that technology to anyone").)  In fact, Rockwell actually has a policy against licensing the patented technology.  (Id.)  To be certain, this is not the case with all Rockwell technology, but is specific to the '813 patent because of its significance to Rockwell's business.  (See e.g. id. 62:10-25.)  Nor has Rockwell ever received any kind of royalty payment from anyone for the technology embodied in the '813 patent.  (Id. 63:7-10.)  Under these circumstances, where Rockwell has retained exclusive right to use the '813 patent, traditional money damages are insufficient to compensate Plaintiffs for the harm inflicted by WAGO's infringement.  See i4i Ltd., 598 F.3d at 862 (affirming district court decision that money damages would be inadequate where there was "no evidence that i4i had previously licensed the patent, instead finding it had sought to retain exclusive use of its invention"); Broadcom, 543 F.3d at 702 (finding that "the district court correctly considered Broadcom's general policy of not licensing its patents").

-------

[2]   In light of the close relationship between the first two eBay factors – irreparable harm and inadequate remedy at law – they are frequently addressed together, on the same evidence.  See e.g. Acumed LLC v. Stryker Corp., 551 F.3d 1323, 1327-28 (Fed. Cir. 2008); Trading Tech. Int'l, 2008 WL 4531371 at *3 ("Consideration of [the inadequate remedy at law factor] overlaps considerably with that of irreparable injury, in that an inadequate remedy at law can cause irreparable harm.").

Second, an injunction is appropriate under these circumstances because the harm to Rockwell by WAGO's infringement extends beyond just the sale of the patented product.  (Dkt. 369 (Bliss) Tr. 3-C-50:13-53:20, 60:4-11, 61:18-62:9.)  As Mr. Bliss testified, if Rockwell were to license the patented technology, it would lose, among other things, all of its pull-through business:

> [I]f I were to license somebody else to that controller technology, I'm not just giving away that controller sale, I'm giving away all the other pull-through business that goes with it:  All the I/O modules, network modules, drives, motors. The list goes on.

(Id. 3-C-62:5-9.)  This factor weighs heavily in favor of awarding permanent injunctive relief. See Bendix Commercial Vehicle Sys., LLC, 2011 WL 14372 at *6 (granting permanent injunction and holding that "[t]he ancillary business that may come from converting customers of a competitor cannot be compensated by a mere royalty on the patented product"); ePlus, Inc. v. Lawson Software, Inc., No. 3:09-cv-620, 2011 WL 2119410, at *11 (E.D. Va. May 23, 2011) (finding irreparable harm where plaintiff also "lost the opportunity to cross-sell and up-sell" its ancillary products); Baker Hughes Inc. v. Nalco Co., 676 F. Supp. 2d 547, 553 (S.D. Tex. 2009) (granting preliminary injunction where exclusive sales of patented services generated "pull through sales" for functionally related products).

Particularly applicable in this case is the court's observation in Bendix that "[c]ustomers often choose to do all of their business with one supplier, therefore, the ability to attract customers with exclusive access to an innovative product is often relied on to increase the sales of other products and services as well."  Bendix Commercial Vehicle Sys., LLC, 2011 WL 14372 at *6.  This observation highlights the risk to Rockwell in loss of sales and market share if WAGO is permitted to continue selling its infringing controllers.  Consistent with Mr. Bliss's

14

testimony, the loss of a programmable controller sale means the loss of all of the ancillary sales as well. (See Dkt. 369 (Bliss) Tr. 3-C-53:14-20.)  The concern for loss of substantial market share to WAGO is justified in light of WAGO's testimony about its marketing strategies, including that it has in the past given away the infringing products, along with promotional gifts, with the goal of attracting long-term customers who would then buy all of the component parts – or "pull-through" – from WAGO's I/O system.  (Dkt. 374 (Norton) Tr. 4-A-26:18-27:2; 28:16-24.)  WAGO's head of marketing testified unequivocally that WAGO's goal is to sell as many component parts as possible from its suite of products known as the I/O system, which includes the infringing products, and that WAGO actually sells I/O system products to Rockwell customers. (Id. (Norton) Tr. 4-A-18:19-23; 20:6-25, 48:16-25.)

In light of the foregoing, it is not surprising that WAGO fails in its opposition to advance any legitimate argument that the remedies available at law adequately compensate Rockwell for WAGO's infringement of the '813 patent.  Instead, WAGO appears to conclude, without any basis, that a reasonable royalty is a complete and fully adequate remedy because, WAGO contends, Rockwell did not produce any evidence of a sale lost to WAGO or that Rockwell lost any market share as a result of WAGO's infringement.  (Br. at 10.)  WAGO ignores the testimony of Mr. Norton that WAGO has, in fact, obtained business from Rockwell customers and does in fact sell programmable logic controllers to Rockwell customers.  (Dkt. 374 (Norton) Tr. 4-A-39:15-23, 48:16-25.)  Moreover, there is no requirement – and WAGO cites to none – that Rockwell produce evidence of lost sales or market share to prove that remedies available at law are inadequate.  To the contrary, courts have held that the difficulty in quantifying lost market share will actually support a finding that remedies at law are inadequate.  See i4i Ltd.,

598 F.3d at 862 ("Difficulty in estimating money damages is evidence that remedies at law are inadequate.") (citing Broadcom, 543 F.3d at 683).

### C.      Balancing of the Hardships Between Plaintiffs and Defendants

WAGO boldly claims that a permanent injunction "will inflict severe and irreparable harm on WAGO and its customers."  (Br. at 11.)  In the first instance, the law is clear that the hardship to WAGO's customers, if any, is irrelevant to this inquiry.  See Acumed, 551 F.3d at 1330 ("[T]he balance considered is only between a plaintiff and a defendant, and thus the effect on customers . . . is irrelevant under this prong of the injunction test.").   WAGO's claim that a permanent injunction would "inflict severe and irreparable harm" on WAGO, plainly contradicts the testimony of WAGO's own witnesses at trial.  Indeed, throughout the trial, WAGO's witnesses took every possible opportunity to advance their story that the patented technology is not integral to the infringing products.  For example:

- "The file system is used, from my experience,  by less than 5 percent of our customers."  (Dkt. 375 (DeCramer) Tr. 4-B-55:5-15; see also id. (Vigil) Tr. 4-B-105:21-24);

- "[T]he evidence that I have seen in this case suggests that the '813 technology, as I understand it, is more of a *bells and whistle* type feature than a feature that enables the core functionality of the products at issue."  (Id. (Vigil) Tr. 4-B-75:14-18);

- Disagreeing with premise that "if WAGO couldn't use the '813 patent, then it would not be able to sell another product in the marketplace" (Id. (Vigil) Tr. 4-B-77:11-18.)

Incredibly, while claiming that a permanent injunction would cause severe harm and disruption, WAGO simply ignores the testimony that it elicited from its expert witness, Dr. Vigil, who claimed that removing the patented technology from the infringing products would be a simple task:

> WAGO could have taken out the '813 technology pretty easily and still offered a
> product in the marketplace that was basically the same except for the fact that it
> didn't have the '813 technology. ***And the evidence that I saw suggested that in
> order for WAGO to do that, it would have taken a week or roughly a week to do
> and the cost involved of doing that would have been very very small.***

(Id. Tr. 4-B-79:5-13 (emphasis added).)

Further, WAGO's witnesses not only claim that the '813 patent is not integral to the

infringing products, but they also claim that the infringing products constitute only a small part

of WAGO's much larger portfolio of products.  Specifically, WAGO's witnesses testified that

the infringing products apparently are not "the main thrust" of what WAGO sells and represent

just "a small percentage of items" out of WAGO's portfolio of products, roughly "13-14

products [out of] 13 to 14,000 total products."  (See Dkt. 374 (Norton) Tr. 4-A-43:11-14 ("So

PLCs are not the main thrust of what we have to sell.  I mean it is one thing, but there are plenty

of other things that we have"); (Artmann) Tr. 4-A-86:23-88:14.)  Yet, WAGO now asks this

Court to accept the notion that WAGO would suffer "severe" hardship should an injunction issue

preventing any further infringement of the '813 patent.  WAGO's position is not credible and

should not be countenanced by this Court.  Moreover, even if WAGO had provided any

indication of legitimate hardship – and it has not – the Federal Circuit has made it abundantly

clear that "one who elects to build a business on a product found to infringe cannot be heard to

complain if an injunction against continuing infringement destroys the business so elected."

Broadcom, 543 F.3d at 704 (quoting Windsurfing Int'l, Inc. v. AMF, Inc., 782 F.2d 995, 1003

n.12 (Fed Cir. 1986)).

By contrast, Plaintiffs will suffer greatly if WAGO is permitted to continue selling its

infringing PLC.  While WAGO has feebly claimed that it is not a viable competitor with

Rockwell, the record is clear that WAGO and Rockwell are competitors (Section II A. supra),

that WAGO is vying for business from Rockwell customers (Section II A. supra), and has even

successfully obtained business from Rockwell customers (Section II A. supra).  Further,

WAGO's sales of the infringing products have increased exponentially – by at least 30 fold since

2004 – suggesting that Rockwell's risk of prospective lost market share to WAGO is increasing,

not decreasing.  (Dkt. 374 (Artmann) Tr. 4-A-109:6-11.)  If WAGO is permitted to continue to

use, manufacture, or sell infringing products, Rockwell will continue to lose sales and market

share.  This is precisely the scenario that a permanent injunction is designed to prevent.  See e.g.

Robert Bosch LLC, 659 F.3d at 1149; Richardson, 868 F.2d at 1246-47.  Rockwell has

developed a series of unique and superior products based on the invention covered by the '813

patent, which are core to its business and should be given the opportunity to exploit those

products to the fullest extent permissible under the law.

    **D.**    **The Public Interest Will Not Be Disserved by an Injunction Against Future Infringement by WAGO**

"[T]he touchstone of the public interest factor is whether an injunction, both in scope and

effect, strikes a workable balance between protecting the patentee's rights and protecting the

public from an injunction's adverse effects."  i4i Ltd., 598 F.3d at 863.  There is a strong public

interest in maintaining the integrity of the patent system by enforcing a patent owner's right to

exclude.  As such, the public interest factor almost always favors the patentee.  See Rite-Hite

Corp. v. Kelley Co., 56 F.3d 1538, 1547 (Fed. Cir. 1995) (en banc); see also Abbott Labs. v.

Andrx Pharms., Inc., 452 F.3d 1331, 1348 (Fed. Cir. 2006) (recognizing that the public interest

in served by strong patent protection).

18

WAGO, however, contends that the public interest will not be served by the issuance of a permanent injunction here because, it claims, the '813 patent is invalid. (Br. at 13.)  WAGO's argument is wholly inappropriate, ignores the clear rulings of this Court, the determinations made by the jury, and has absolutely no basis in either fact or law.  Specifically, WAGO contends that Rockwell's 1747 Open Controller invalidates the '813 patent.  (Br. at 13.)  This purported invalidity argument has been rejected multiple times by this Court as untimely, including on the last day of trial when the Court made clear that this late-disclosed purported prior art would not serve to invalidate the '813 patent.  (See e.g. Dkt. 385 Tr. 5-A-99:2-11.) WAGO's attempt to advance arguments of invalidity in opposition to a request for permanent injunctive relief post-trial is particularly egregious in light of its election not to pursue its invalidity case at trial.  (See e.g. Dkt. 363 Tr. 2-C-6:14-16; Dkt. 385 Tr. 5-A-93:2-4.)  Yet, WAGO persists in making this argument.  Rockwell respectfully submits that public interest will be best served by the issuance of a permanent injunction here, and that WAGO has provided no legitimate arguments to the contrary.

## CONCLUSION

For the foregoing reasons, a permanent injunction should be granted to prevent any further infringement by WAGO of the '813 patent.

Respectfully Submitted,

Dated:  November 8, 2012          ___/s/ Scott S. Balber_____
                                 Scott S. Balber
                                 Emily Abrahams
                                 COOLEY LLP
                                 1114 Avenue of the Americas
                                 New York, NY  10036
                                 Tel.:  (212) 479-6000
                                 Fax:  (212) 479-6275
                                 Email:  sbalber@cooley.com
                                         eabrahams@cooley.com


                                 ___/s/ Paul J. Tanck_____
                                 Paul J. Tanck
                                 Lisa Schapira
                                 CHADBOURNE & PARKE LLP
                                 30 Rockefeller Plaza
                                 New York, NY  10112
                                 Tel.:  (212) 408-5100
                                 Fax:  (212) 541-5369
                                 Email:  ptanck@chadbourne.com
                                         lschapira@chadbourne.com

                                 COUNSEL FOR PLAINTIFFS
                                 ROCKWELL AUTOMATION, INC.
                                 and ROCKWELL AUTOMATION
                                 TECHNOLOGIES, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of November, 2012 a copy of the foregoing was electronically filed with the Clerk of the Court using the ECF system which will send notification of such filing to the attorneys of record.

I declare under the penalty of perjury under the law of the United States that the foregoing is true and correct.

Dated:  November 8, 2012

            /s/ Lisa Schapira
Lisa Schapira
30 Rockefeller Plaza
New York, NY  10112
Tel.:  (212) 408-5100
Fax:  (212) 541-5369
 lschapira@chadbourne.com

21