## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF WISCONSIN

ROCKWELL AUTOMATION, INC. and
ROCKWELL AUTOMATION
TECHNOLOGIES, INC.

*Plaintiffs,*

v.

WAGO CORPORATION and WAGO
KONTAKTTECHNIK GMBH & CO. KG

*Defendants.*

Case No. 3:10CV718-WMC

The Hon. William M. Conley

## WAGO'S OBJECTIONS TO ROCKWELL'S BILL OF COSTS

On October 29, 2012, Plaintiffs Rockwell Automation Inc. ("Automation") and Rockwell Automation Technologies, Inc. ("Technologies") (collectively "Rockwell") filed a bill of costs for $147,614.62 ("the Bill"; Docket No. 390).  Counsel for Rockwell signed the Bill, which certified: "Judgment having been entered in the above entitled action on 10/15/2012 against Defendants, . . . ."  Contrary to counsel's certification, however, judgment has not been entered by the Court.  Not only is the Bill on its face premature because no judgment has been entered, but it is excessive and overreaching for many other reasons.

The Bill is premature because costs under Federal Rule of Civil Procedure 54 are only awarded to a "prevailing party" as determined by a judgment, which is why the form bill of costs begins with the certification that judgment has entered.  But here judgment has yet to be entered because the Court has under consideration WAGO's unclean hands affirmative defense, WAGO's motion to dismiss, and Rockwell's request for a permanent injunction.[1]  The Court should reject the Bill because Rockwell is not a prevailing party.

---

[1] "WAGO" shall refer collectively to WAGO Corporation ("WCP") and WAGO Kontakttechnik GmbH & Co. KG ("WKT").

The Bill should also be denied as a matter of the Court's discretion. Even after a judgment establishes that a party is a "prevailing party," the Court has wide discretion over whether to award costs. If the Court rejects WAGO's unclean hands defenses, the Court may nonetheless deny Rockwell its costs based upon Rockwell's misconduct in the litigation. Rockwell forced WAGO to prepare for trial on two patents it chose to drop at the last minute; Rockwell sought damages for Automation knowing full well that it lacked evidence that Automation even had standing as a party; and Rockwell engaged in win-at-all-cost tactics and practices the Court characterized as "sharp." (Docket No. 374, Trial Tr. 4-A at 116:22–117:9.) Rockwell's overreaching, which is exemplified by this premature Bill, has throughout the litigation forced WAGO to incur excessive expense. In such circumstances, courts have denied even a prevailing party its costs.

Even if the Court were to consider the individual costs claimed by Rockwell, many should be rejected as inappropriate because they were unauthorized under the governing statute, they were unnecessary, or they were unreasonable.

## STATEMENT OF FACTS

Rockwell sued WAGO alleging infringement of six patents either owned or licensed exclusively by Automation. (Docket No. 1.) In February 2012, two months before the deadline for filing summary judgment motions, Rockwell dismissed claims regarding two patents. (Docket No. 33.) Discovery continued regarding the remaining four patents. On October 1, 2012, this Court granted WAGO summary judgment as to United States Patent No. 7,065,415. (Docket No. 333.) At the final pretrial conference on October 3, 2012, Rockwell announced that it was dismissing its claim that WAGO infringed United States Patent No. 6,745,232. (Docket No. 341, Hr'g Tr. at 28:16–20.) Finally, on October 9, the first day of trial, Rockwell withdrew

its claim that WAGO infringed United States Patent No. 7,123,974, leaving for trial only Rockwell's claim regarding United States Patent No. 6,801,813 ("the '813 patent").

During the trial that began on October 9, 2012, WAGO presented its defense of unclean hands to this Court.  (Docket No. 385, Trial Tr. 5-A at 109:20–22.)  On October 11, the Court admitted testimony from Cindy Hollenbeck that she had in her files from the late 1990s a System Overview describing Rockwell's 1747 Open Controller, a controller Rockwell sold in competition to a controller that was being sold by her company, SoftPLC.  (Docket No. 368, Trial Tr. 3-B at 63:24–65:5.)  The Court also heard unrebutted testimony from WAGO's expert, Dr. Richard Hooper, detailing how the 1747 Open Controller as described in the System Overview anticipated and thus invalidated claims of the asserted '813 patent.  (Docket No. 370, Trial Tr. 3-D at 45:19–46:3.)  Rockwell had no response and put on no witnesses to dispute the evidence.  (Docket No. 370, Trial Tr. 3-D at 76:15–22.)  Instead, in a misguided attempt to explain why Rockwell deliberately excluded its 1747 Open Controller from a list of "controllers" sold by Rockwell before 2002, Rockwell's counsel engaged in various misrepresentations regarding the 1747 Open Controller.  (Docket No. 368, Trial Tr. 3-B at 29:16–30:19.)  Closing arguments to the Court on the unclean hands defense were made on October 15.  (*See* Docket No. 385, Trial Tr. 5-A at 76:4–9.)  The Court presently has this matter under advisement.[2] (Docket No. 385, Trial Tr. 5-A at 109:20–22.)

At trial, plaintiff Automation failed to produce any evidence that it had any license or other interest in the '813 patent that provided it standing to sue WAGO as alleged in Rockwell's Complaint.  (Docket No. 374, Trial Tr. 4-A at 3:23–24. 4:5–6; *see also* Docket No. 387 at 2–3.)  When this deficiency in Automation's evidence was raised at trial, Rockwell's counsel admitted

---

[2] Although the Court did not permit WAGO to offer the evidence of this prior art to the jury, given the extent of Rockwell's misconduct, the extent of which became apparent only two weeks before trial began, WAGO has requested that the Court grant a new trial based on this misconduct.

he had never seen a written license, and while he promised to put on a witness to testify as to some license, no such testimony was ever presented.  (Trial Tr. 4-A-3:23-24 and 4-A-4:5-6) WAGO has filed a motion to dismiss Automation's claims for lack of subject matter jurisdiction. (Docket No. 386.)  That motion is pending.

After the jury's verdict on damages, Rockwell moved for a permanent injunction based on the record at trial.  (Docket No. 384; Trial Tr. at 5-B 4:2–5.)  The Court granted WAGO ten days to file a brief in response to Rockwell's motion, which WAGO did on October 25, 2012. (Docket No. 388.)  Rockwell's response was filed today.  (Docket No. 399.)

Notwithstanding the lack of any judgment, Rockwell filed the Bill on October 29, 2012 in the amount of $147,614.62.  (Docket No. 390.)

## ARGUMENT

## I.     THE COURT SHOULD DENY ROCKWELL ANY AWARD OF COSTS

### A.     Rockwell's Bill Is Premature Because Despite Counsel's Certification To The Contrary No Judgment Has Been Entered, So Rockwell Is Not A "Prevailing Party" Entitled To Costs

Rockwell's Bill is improper under Federal Rule of Civil Procedure 54 because, until a final judgment is entered, there is no "prevailing party."  Awards of costs are governed by Rule 54 which provides that a "prevailing party" may be entitled to its costs.  Fed. R. Civ. P. 54(d)(1). A party prevails for purposes of Rule 54(d) when the party receives a final judgment awarding substantial relief.  *Smart v. Local 702 Int'l Bhd. of Elec. Workers*, 573 F.3d 523, 525 (7th Cir. 2009).  Rockwell's submission of its Bill before the entry of final judgment is premature on its face.  *See Custer v. Schumacher Racing Corp.*, 2008 U.S. Dist. LEXIS 9716, *3 (S.D. Ind. Feb. 8, 2008) ("[I]ndeed, any bill of costs filed by Schumacher Electric prior to the entry of final judgment following trial would have been premature.").

Here much remains to be done before the Court is in a position to enter judgment giving rise to a "prevailing party." WAGO has moved to dismiss Automation for lack of subject matter jurisdiction. (Docket Nos. 386, 387.) Automation cannot be a prevailing party because it lacks standing to even be a party. Further, because Rockwell's damages evidence relied upon Automation's profits, the damages verdict cannot provide a basis for judgment to Technologies. The Court also has yet to render its decision on WAGO's unclean hands defense or on Rockwell's request for a permanent injunction.

That Rockwell succeeded in obtaining a favorable verdict on that portion of the case triable by the jury does not make Rockwell a "prevailing party" for an award of costs. "[A] determination of who is the prevailing party for purposes of awarding costs should not depend on the position of the parties at each stage of the litigation but should be made when the controversy is finally decided." *Republic Tobacco Co. v. N. Atl. Trading Co., Inc.*, 481 F.3d 442, 446 (7th Cir. 2007) (citation omitted). In other words, the award should not depend on who won "the various battles preceding final judgment." *Id.* This Court has yet to issue a final judgment so the Court should deny Rockwell its costs.

**B.   Even If The Bill Were Properly Before The Court, The Court Should Exercise Its Discretion To Deny Rockwell An Award Of Costs**

The Court has discretion whether to award costs to a prevailing party. *Sheets v. Yamaha Motors Corp., USA,* 891 F.2d 533, 539 (5th Cir. 1990). Where a party has engaged in litigation misconduct or otherwise has unjustifiably increased the expense of litigation, courts have denied an award of costs to a prevailing party. *Id.* at 540 ("Misconduct, bad faith, and abuse of the trial process are all grounds for refusing to award costs to the prevailing parties, and here they also provide a suitable basis for taxing costs against the prevailing parties.") The Seventh Circuit has noted that litigation misconduct by the prevailing party, such as calling unnecessary witnesses,

raising unnecessary issues, or otherwise unnecessarily prolonging the proceedings, can justify denying an award of costs. *Congregation of the Passion, Holy Cross Province v. Touche, Ross & Co.*, 854 F.2d 219, 222 (7th Cir. 1988); *accord Weeks v. Samsung Heavy Industries Co., Ltd.*, 126 F.3d 926, 944–46 (7th Cir. 1997). The Fifth Circuit Court of Appeals affirmed a district court's denial of costs to a prevailing party where the prevailing party's abuse of the process included inappropriately engaging the jurisdiction of a state court for issuance of an ex parte temporary restraining order, meritless attempts to remand the action after it was properly removed to the federal court, and abuse of the motion procedure. *Salley v. EI DuPont de Nemours & Co.*, 966 F.2d 1011, 1017 n.3 (5th Cir. 1992).

In this case, Rockwell engaged in litigation conduct more egregious than that found merely to justify denial of an award of costs.[3] Rockwell succeeded in obtaining a $10 million verdict by withholding evidence that invalidated its patent (the 1747 Open Controller); by urging repeatedly that the Court sidestep construing "interpret" contrary to Federal Circuit law, *O2 Micro Int'l Ltd. v. Beyond Innovation Tech. Co.*, 521 F.3d 1351, 1361 (Fed. Cir. 2008); by urging the jury to dismiss the claim language as mere "word games" (Docket No. 358, Trial Tr. 1-B at 31:17–21; Docket No. 367, Trial Tr. 3-A at 38:16–23); and by presenting damages evidence based upon a party, Automation, that lacks standing to be a party at all. Certainly, should this Court ever reach the question of awarding costs to Rockwell, its conduct warrants denying Rockwell its costs.

Rockwell's litigation conduct caused WAGO unnecessary expense. Rockwell dismissed its claims on two of its patents within a week of the beginning of trial, requiring WAGO not only to take full discovery of matters related to the dismissed claims, but also requiring WAGO to

---

[3] Rockwell would be happy to pay a $147,000 sanction to obtain a $10 million judgment, which shows why the misconduct here warrants dismissal of Rockwell's claim or, at a minimum, a new trial where the 1747 Open Controller so clearly invalidates the '813 patent.

prepare for trial of the infringement claims on those patents.  Rockwell then pursued claims

under the '813 patent on behalf of Automation knowing full well that Automation did not have

the exclusive license that was alleged in its Complaint.

Indeed, filing the Bill at this time and forcing WAGO to devote time and expense to

filing these Objections when Rockwell has not been determined to be a prevailing party is itself

an act that needlessly has increased the expense of this litigation to WAGO.

Rockwell should be denied any award of costs.

## II.   ROCKWELL'S BILL OVERREACHES AND CLAIMS UNREASONABLE AND UNNECESSARY EXPENSES THAT SHOULD BE DISALLOWED

The costs included in the Bill, if eventually considered by this Court, should be reduced

substantially.  "A district court may not tax costs under Rule 54(d) unless a federal statute

authorizes an award of those costs."  *Republic Tobacco Co.,* 481 F.3d at 447.  Recoverable costs

under 28 U.S.C. § 1920 include:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in this case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828.

Even if authorized by statute, "a cost must be both reasonable and necessary to the

litigation for a prevailing party to recover it."  *Little v. Mitsubishi Motors N. Am.*, 514 F.3d 699,

702 (7th Cir. 2008).  The costs that may be taxed are "narrow in scope."  *Kouichi Taniguchi v.*

*Kan Pac Saipan, Ltd.*, 132 S. Ct. 1997, 2006 (2012).  As the Supreme Court recently explained, "[t]axable costs are limited to relatively minor, incidental expenses . . . ." *Id.*  Here, Rockwell seeks costs that are neither "reasonable," "necessary to the litigation," nor "relatively minor."

### 1. Rockwell's Deposition-Related Costs Are Neither Reasonable Nor Necessary To The Litigation

Rockwell seeks $65,535.16 for costs related to depositions.  (Docket No. 391 at 2.) Rockwell includes costs for Rough ASCII transcripts, Interactive Realtime Hookup, and delivery costs.  This Court has held that such expenditures are not necessary and should not be awarded as costs.  *Fujitsu Ltd. v. Netgear, Inc.*, 2009 U.S. Dist. LEXIS 131596, *14–15 (W.D. Wis. Dec. 30, 2009); *see also Smith v. Tenet Healthsystem SL, Inc.*, 436 F.3d 879 (8th Cir. 2006) ("Section 1920 does not authorize taxing Smith for the defendants' postage and delivery expenses.").

Rockwell also seeks costs for unnecessary video taping of depositions.  While the Seventh Circuit does not *per se* preclude an award of costs for videotaping depositions, such costs still must "be both reasonable and necessary to the litigation" to be recoverable.  *Little*, 514 F.3d at 702; *see Rogers v. City of Chi.*, 2002 U.S. Dist. LEXIS 4431,  8–9 (N.D. Ill. Mar. 15, 2002) (denying a request for video deposition costs because the prevailing party provided no explanation as to why it was necessary to videotape the deposition in addition to obtaining a stenographic transcript of it.); *FMS, Inc. v. Volvo Constr. Equip. N. Am., Inc.*, 2007 U.S. Dist. LEXIS 19517,  36–37 (N.D. Ill. Mar. 20, 2007) (denying request for costs for videotaping a deposition and transferring it to DVD when it was "not necessary to have multiple records of what transpired at a deposition, and because [the court] allowed the cost for the transcript."); *MarcTec, LLC v. Johnson & Johnson*, 2010 U.S. Dist. LEXIS 15300,  7–9 (S.D. Ill. Feb. 22, 2010) (prevailing party failed to show how the videotaping of depositions was reasonably necessary when it only argued that the other party videotaped its depositions as well.)

Here Rockwell is unable to show that most of the videotapes of the depositions were reasonable and necessary to the litigation.  For example, Rockwell videotaped the depositions of all the representatives of WCP who are within the subpoena power of the Court.  Indeed, Rockwell issued trial subpoenas to each of these individuals — Thomas Artmann, Mark DeCramer, Gregory Rinn, Dean Norton, and Charles Norz — and is seeking the witness fees associated with those subpoenas.  Rockwell also videotaped the depositions of WAGO's liability and damages experts knowing that each of these individuals would be testifying live at trial if at all.

Rockwell seeks the videotaping costs for the deposition of Kurt Braun, a WCP employee whose deposition Rockwell never used at trial.  Mr. Braun's deposition was prompted by a YouTube video that he created and Rockwell submitted as a trial exhibit.  To the extent Rockwell needed Mr. Braun's testimony to authenticate the video, the stenographic transcript was more than sufficient for that purpose.  Therefore, the videotape deposition of Mr. Braun was neither reasonable nor necessary for the litigation.

Rockwell also deposed representatives of WKT, Sven Hohorst and Jens Adler, in London on August 23, 2012.  These depositions were wholly unreasonable and unnecessary for the litigation because the testimony elicited by Rockwell at these depositions was not relevant to any of the issues in the case and not used at trial.  Rockwell focused these depositions on information that might be relevant to the litigation currently pending in the Northern District of Ohio between one of the WAGO companies and Rockwell.  Therefore, all costs associated with these depositions in London should be excluded including the cost of the interpreter.

After excluding all the foregoing costs, Rockwell's request for costs relating to depositions should be reduced by $33,205.31, and the cost for an interpreter should be reduced by $1,450.00.

### 2.   Rockwell's Copying Costs Are Neither Reasonable Nor Necessary To the Litigation

Rockwell seeks $60,251.03 for costs related to copying and processing documents. Copies made solely for counsel's convenience are not recoverable because they are not "necessarily" obtained for use in the case. *Haroco, Inc. v. American Nat'l Bank & Trust Co. of Chi.*, 38 F.3d 1429, 1441 (7th Cir. 1994).

Rockwell has failed to show that other copying costs were reasonable and necessary and not merely for counsel's convenience.  In seeking to tax copying costs, the prevailing party must provide enough information to allow the court to make a determination that the costs sought are, in fact, authorized by section 1920. *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 643 (7th Cir.1991).  "The court cannot award [the prevailing party's] copying costs without some confidence that the costs are properly recoverable." *Fait v. Hummel*, 2002 U.S. Dist. LEXIS 21012, *15 (N.D. Ill. Oct. 30, 2002).  Where a party fails to substantiate all of the costs it claims were necessary and reasonable, the Court will "reduce the costs to the level supported by [the party's] proof—even if that is zero." *Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 969 (N.D. Ill. 2010).

Rockwell fails to provide sufficient information to justify its $60,251.03 of copying costs. Rockwell relies solely on Exhibit F and counsel's blanket statement that these costs were reasonable and necessary.  (Docket No. 391 at 3.)  For the most part, the invoices contained in Exhibit F are for printing and various other expenses that occurred after the close of discovery on September 6 through October 15.  (Docket No. 391-6 at 3, 7–21.)

In particular, Rockwell seeks to recover costs for printing more than 332,000 pages between the close of discovery and October 15.  (Docket No. 391-6 at 3, 7, 9, 11, 12, 14–20.)  The invoices submitted by Rockwell lack any description as to what these pages are.  Indeed, these invoices are unreliable, as one is blacked out and unreadable (Docket No. 391-6 at 13) and several contain gibberish (*e.g.*, Docket No. 391-6 at 4, 6–8, 10–12, 14, 20).  Most important, it is impossible to determine whether such printing costs were reasonable and necessary.  Given the timing of these charges, Rockwell presumably incurred these costs in preparation for trial.  But Rockwell has failed to explain how printing more than 332,000 pages, even if for trial preparation, is necessary and reasonable.  As a result, Rockwell's costs for printing these documents should be excluded.

Similarly, Rockwell's non-printing costs incurred in September and October should be excluded as well because they are either unnecessary on their face or it is impossible to discern whether they are reasonable or necessary.  For example, it is impossible to know whether charges related to data transfer and processing, file conversion, imaging, numbering, OCR/Text extraction, and flash or external hard drives (Docket No. 391-6 at 3, 8, 9, 12, 19) were reasonable or necessary because there is no explanation why Rockwell needed these services after discovery closed.  Other items, such as: tabs and custom tabs, ringed and custom binders, labor related to exhibit stamping, custom binding, paper cutting, and redwelds (Docket No. 391-6 at 7, 9, 11, 12, 14, 15, 16, 17, 18, 19, 20, 21) are clearly for counsel's convenience.  Rockwell goes so far as to claim that it should receive costs related to redactions (Docket No. 391-6 at 12) even though no redacted documents were ever produced by Rockwell after the close of discovery or used in the case.  These non-printing costs should be excluded.

As a result of Rockwell's failure to explain its costs and inclusion of unrecoverable charges, Rockwell's "copying" costs incurred in September and October should be excluded and its copying costs reduced by $54,445.48.  This results in Rockwell receiving $2,643.45 for its printing costs incurred before the close of discovery in September as shown in Exhibit F and $3,162.10 for one set of PTX and DTX exhibits for Rockwell's use at trial.  (Docket No. 391-6 at 22, 23.)

### 3. Rockwell's Costs For Daily Trial Transcripts Should Be Excluded As Unreasonable And Unnecessary

Rockwell is not entitled to recover its costs for expedited trial transcripts because they were merely for counsel's convenience and not necessary.  "Courts have declined to award costs for expedited trial transcripts when the trial was 'relatively short' (*i.e.*, six days), *Habersham Plantation Corp. v. Art & Frame Direct, Inc.*, 2011 U.S. Dist. LEXIS 142139, *3 (S.D. Fla. Dec. 9, 2011), and when the party requesting the costs had sufficient staff present during the trial to take notes and anticipate legal arguments."  *Abbott Point of Care, Inc. v. Epocal, Inc.*, 2012 U.S. Dist. LEXIS 159042, * 20–21 (N.D. Ala. November 5, 2012) (citing *Durden v. Citicorp Trust Bank, FSB*, 2010 U.S. Dist. LEXIS 59537, *3 (M.D. Fla. April 26, 2010); *Pickett v. Tyson Fresh Meats, Inc.*, 2004 U.S. Dist. LEXIS 29389, *4 (M.D. Ala. Aug. 3, 2004) (daily transcripts were a mere convenience, not a necessity, when "lead counsel for the defendant was assisted by numerous partners, associates, and paralegals who had ample opportunity to take notes").

Here, the five-day trial was "relatively short" and Rockwell staffed the trial well.  While expedited transcripts may have been convenient, Rockwell did not need expedited transcripts to remember events that occurred mere days before.  At all times, Rockwell had four lawyers and one paralegal in Court.  Between these five individuals Rockwell had enough people to either remember each day's events or take notes sufficient to apprise Rockwell of each day's events.

The Court in *Abbott*, which was a seven-day patent trial that was "staffed well," held that expedited transcripts were merely for counsel's convenience.  *Abbott*, 2012 U.S. Dist. LEXIS 159042, * 22–23.  The same is true here, and the Court should exclude Rockwell's costs for expedited trial transcripts (Docket No. 391-3 at 5, 9) and reduce Rockwell's overall costs by $6,542.98.[4]

### 4.     WAGO's Counsel Accepted Service Of The Trial Subpoena On The WCP Witness Obviating The Need To Engage A Process Server To Serve Those Subpoenas

Rockwell seeks to recover the cost for service of trial subpoenas in the amount of $130.00.  (Docket No. 391 at ¶ 3.)  WAGO's counsel accepted service of these trial subpoenas, so there is absolutely no need for Rockwell to have engaged a process server to serve these subpoenas.  Therefore, Rockwell's overall costs should be reduced by $130.00.

### CONCLUSION

For the foregoing reasons, WAGO respectfully requests that Rockwell's request for costs be denied.  If and when the Court considers Rockwell's Bill, Rockwell's request for costs should at a minimum be reduced by $95,773.77.

---

[4] This amount also includes costs for realtime transcription services, which total $1,862.70, and were clearly for counsel's convenience.

Dated:  November 8, 2012                    Respectfully submitted,


                                            */s/ David L. De Bruin*
                                            _____
                                            David L. De Bruin, SBN 1016776
                                            MICHAEL BEST & FRIEDRICH LLP
                                            100 East Wisconsin Avenue, Suite 3300
                                            Milwaukee, WI  53202-4108
                                            T:  (414) 271-6560; F:  (414) 277-0656
                                            Email:  dldebruin@michaelbest.com

                                            Marshall J. Schmitt
                                            Gilberto E. Espinoza
                                            MICHAEL BEST & FRIEDRICH LLP
                                            Two Prudential Plaza
                                            180 N. Stetson Avenue, Suite 2000
                                            Chicago, Illinois  60601-6710
                                            T: 312.222.0800; F: 312.222.0818
                                            Email: mjschmitt@michaelbest.com
                                            Email: geespinoza@michaelbest.com

                                            John C. Scheller
                                            MICHAEL BEST & FRIEDRICH LLP
                                            One South Pinckney Street, Suite 700
                                            P.O. Box 1806
                                            Madison, Wisconsin  53701-1806
                                            T: 608.283.2276; F: 608.283.2275
                                            Email: jcscheller@michaelbest.com

                                            *Attorneys for Defendants*
                                            *WAGO CORPORATION and*
                                            *WAGO KONTAKTTECHNIK GMBH & CO. KG*

**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| ROCKWELL AUTOMATION, INC. and ROCKWELL AUTOMATION TECHNOLOGIES, INC.<br><br>*Plaintiffs,*<br><br>v.<br><br>WAGO CORPORATION and WAGO KONTAKTTECHNIK GMBH & CO. KG<br><br>*Defendants.* | Case No. 3:10CV718-WMC<br><br>The Hon. William M. Conley |

Certificate Of Service

I HEREBY CERTIFY that on this 8th day of November, 2012, a copy of the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system and was served on the following counsel as indicated below.

| | |
|---|---|
| Scott S. Balber<br>**COOLEY LLP**<br>The Grace Building<br>1114 Avenue of the Americas<br>New York, NY 10036-7798 | ☒ Via CM/ECF Service<br>☐ Via First Class Mail<br>☐ Via E-mail:<br>  sbalber@cooley.com |
| Paul Tanck<br>Lisa Schapira<br>**CHADBOURNE & PARKE LLP**<br>30 Rockefeller Plaza<br>New York, NY 10112 | ☒ Via CM/ECF Service<br>☐ Via First Class Mail<br>☐ Via E-mail:<br>  ptanck@chadbourne.com<br>  lschapira@chadbourne.com |
| Kristin Graham Noel<br>Matthew J. Duchemin<br>**QUARLES & BRADY LLP**<br>33 East Main Street, Suite 900<br>Madison, WI 53703 | ☒ Via CM/ECF Service<br>☐ Via First Class Mail<br>☐ Via E-mail:<br>  kgn@quarles.com<br>  matthew.duchemin@quarles.com |

*/s/ Gilberto E. Espinoza*
Gilberto E. Espinoza