IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| ROCKWELL AUTOMATION, INC. and ROCKWELL AUTOMATION TECHNOLOGIES, INC.<br><br>*Plaintiffs,*<br><br>v.<br><br>WAGO CORPORATION and WAGO KONTAKTTECHNIK GMBH & CO. KG<br><br>*Defendants.* | Case No. 3:10CV718-WMC<br><br>The Hon. William M. Conley |

**MEMORANDUM IN SUPPORT OF
WAGO'S MOTION TO HOLD IN ABEYANCE
ENTRY OF JUDGMENT AND RULINGS ON WAGO'S UNCLEAN
HANDS AFFIRMATIVE DEFENSE AND ROCKWELL'S REQUEST
FOR A PERMANENT INJUNCTION AND TO GRANT ADDITIONAL RELIEF**

Last week, a month after the trial in this case ended, and in a last-ditch effort to salvage the standing of Automation, Rockwell disclosed for the first time a written license agreement between Technologies and Allen-Bradley Company, LLC. According to Rockwell, this license governs a portfolio of patents — including the '813 patent — all for a bundled rate of 17% of net sales ("the 17% License").[1] Rockwell's withholding of the 17% License and the License itself raise the most serious of questions regarding the integrity of the jury verdicts and of any judgment that could result from those verdicts.

In particular, the 17% License is critically material to at least two hotly disputed issues of fact. ***First***, Rockwell now relies on the 17% License to establish Automation's standing, even though it appears that the license itself does not cover the '813 patent. Automation's standing

---

[1] Except as otherwise noted, this memorandum shall use the same abbreviations used in WAGO's Memorandum In Support Of Its Motion Pursuant To Rule 12(h)(3) To Dismiss Rockwell Automation, Inc. For Lack Of Standing (Docket No. 387). "Ex." shall refer to the Exhibit attached to the Declaration of Marshall J. Schmitt ("the Schmitt Declaration" or "Schmitt Decl.") being filed with this memorandum.

determines whether any injury it allegedly suffered is relevant to the award of damages and a permanent injunction and whether Automation was properly before the jury in the first place. ***Second***, the existence of the 17% License directly contradicts the jury's conclusion based on the testimony Rockwell's damages expert Emmett Murtha that Rockwell was entitled to an effective royalty rate of more than 400% of WAGO's profits.

Rockwell has been silent as to why it failed to produce the 17% License until one month after the trial ended. This silence is deafening given that WAGO repeatedly requested all licenses relating to the patents in suit; that Rockwell repeatedly represented to the Court and to WAGO that Rockwell had produced all documents responsive to these requests; that Rockwell's witnesses reiterated throughout the litigation that no license for the '813 patent existed; and that Rockwell promised at trial to produce, but never did produce, a witness to explain the exclusive license alleged in the complaint. Rockwell produced the 17% License only when Automation's standing was threatened by motion.

Similar to the problem that Rockwell faced when it discovered the existence of the 1747 Open Controller, Rockwell found itself on the horns of a dilemma as to the 17% License, namely, whether to comply with its discovery obligations or not. If Rockwell produced it before or during trial, the License would necessarily undercut Rockwell's outrageous damages theory seeking more than 400% of WAGO's profits based on a single patent from a portfolio licensed at 17% royalty of net sales. If Rockwell concealed the License, Automation's lack of standing threatened Rockwell's ability to obtain an injunction. In the end, Rockwell resolved this dilemma by concealing the License from WAGO, from Rockwell's own expert, the jury, and the Court during discovery and at trial, but disclosing the License to salvage standing a month after the trial concluded.

Rockwell's concealment of the 17% License is the latest example of how Rockwell has manipulated the legal process here to obtain relief to which it is not entitled. Indeed, the jury reached a $10.1 million verdict only after Rockwell convinced the Court, contrary to clear Federal Circuit precedent, to refrain from construing the word "interpret" and to exclude compelling evidence of invalidity consciously concealed by Rockwell during discovery.

In short, Rockwell's inexcusable and unexplained withholding of the 17% License in discovery, compounded by its concealment in the middle of trial, deprived WAGO of a fair and just trial, handicapped the Court's ability to fairly adjudicate this litigation, and infected the jury verdicts. It is time that the Court ends Rockwell's win-at-all-costs tactics.

Accordingly, WAGO respectfully requests that the Court:

1. Grant WAGO a reasonable opportunity to take discovery on the purported license and the reasons it was not previously produced;

2. Hold in abeyance the pending matters in this case, including the entry of judgment and rulings on WAGO's unclean hands defense and Rockwell's request for a permanent injunction;

3. Extend the deadlines for the pending filings, as necessary, to provide WAGO and the Court time to sort out the effect of the 17% License and, most important, Rockwell's most recent misconduct; and

4. Grant whatever other relief is just after WAGO completes its discovery.

## STATEMENT OF FACTS

On November 16, 2010, Rockwell filed a complaint against WAGO asserting six patents, including the '813 patent. (Docket No. 1 at ¶¶ 10–26.) For the '813 patent and four others, Rockwell alleged that Technologies was the owner by assignment and that Automation was the exclusive licensee. (*Id.* at ¶¶ 11–24.) WAGO answered denying the allegation that Automation was the exclusive licensee of the '813 patent. (Docket No. 27 at 3.)

The alleged license was the subject of multiple document requests served by WAGO:

- Request No. 10 dated September 16, 2011, asked (Docket No. 80-1 at 3–4): "For each Patent in Suit, produce all assignments, all licenses, and any other Records in your possession, custody or control which identify or otherwise discuss or relate to ownership of such Patent in Suit and whether either or both of the Plaintiffs has the right to sue for infringement of the Patent in Suit."

- Request No. 56 dated June 19, 2012 asked for (Ex. A at 3): "All license agreements or offers of license agreements relating to any of the Patents in Suit, including drafts of such agreements or offers."

- Request No. 57 dated June 19, 2012 asked for (Ex. A at 3): "All license agreements or offers of license agreements given or taken by either Plaintiff in the field of industrial control technology."

Rockwell responded to each of these requests by stating that it would produce certain non-privileged, non-immune documents and things that are located after a reasonable search. (Docket No. 80-2 at 9; Ex. D at 5–6.)

On May 3, 2012, WAGO filed a motion to compel discovery responses to certain document requests and interrogatories. (Docket Nos. 78, 79 at 12, 14.) Rockwell's response to that motion represented that Rockwell had produced ***all*** relevant requested non-privileged documents. (Docket No. 93 at 5.) At the hearing on the motion before Magistrate Judge Crocker, Rockwell's counsel repeated this representation (Docket No. 326-3 at 10–11): "But we've searched all the documents, we've searched the custodians, we've shared databases, we've search shared databases and we've produced everything." The Court warned Rockwell that its representations had better be correct (*id.* at 11–12):

> [I]f it turns out that the Court has been misled or that you've been misled and that you didn't get what you are entitled to, we'll move to 37(b). This isn't just about exchanging information, it's about being fair to each other. It's about getting the information on the table quickly.

Rockwell's representations regarding the completeness of its discovery responses continued into late July. When questioned about the completeness of, among other responses, Rockwell's responses to Request No.10, Rockwell responded: "Rockwell has produced ***all*** non-

4

privileged, non-immune documents and things *related to this request [number 10]* to the extent they exist." (Docket No. 326-5 at 7 (emphasis added).)

On June 27, 2012, WAGO served separate notices of Rule 30(b)(6) depositions to Technologies and Automation. (Exs. B, C.) In each, Topic 1 was "License agreements or offers of license agreements relating to any of the Patents in Suit," and Topic 2 was "License agreements or offers of license agreements given or taken by either Plaintiff in the field of industrial control technology." (Ex. B at 3, Ex. C at 3.) The notices included document requests for any documents related to these topics, and Rockwell responded by incorporating its responses to Document Request Nos. 10, 56, and 57. (Ex. B at 7, Ex. C at 7.) Rockwell agreed to designate a witness to testify on Topics 1 and 2 and, on July 26, 2012, produced Ronald Bliss to testify for Rockwell. (Ex. E at 5; Docket No. 137 at 10:6–22.)

At the deposition, Mr. Bliss testified that "There are no license agreements for any of these patents." (Docket No. 137 at 42:13–18.) Before and during the deposition of Mr. Bliss, counsel for WAGO and Rockwell engaged in extensive discussions regarding the licenses that WAGO had requested from Rockwell. (Schmitt Decl. at ¶ 2.) Ultimately, Rockwell agreed to produce the licenses that WAGO had requested. (*Id.*)

On August 7, 2012, Rockwell produced a CD containing 381 licenses that did not include the 17% License. (Docket No. 131 at ¶ 6, Docket No. 131-5.)

On August 20, 2012, WAGO filed a Motion To Compel Discovery And For Sanctions And Opposition To Rockwell's Motion For A Protective Order. (Docket No. 128.) WAGO asserted, among other things, that Rockwell had failed to produce a single license before the Rule 30(b)(6) depositions of Rockwell on July 26 and 27. (*Id.* at 6–7.) In response, counsel for Rockwell filed a declaration stating (Docket No. 155 at ¶ 18):

5

> That same CD, transmitted in the letter attached hereto as Exhibit 7, contains the licenses requested by Defendants, which they contend were not produced. Those licenses were produced after extensive negotiations that I had with Mr. Schmitt, counsel for Defendants, concerning the scope of their request for licenses, including discussions that took place during the Rule 30(b)(6) depositions of Rockwell, during which Ronald Bliss was testifying.

Judge Crocker granted WAGO's motion to compel but refrained from entering any of the requested sanctions, stating that because they would impact the conduct of the trial, the sanctions were best left for Judge Conley. (Docket No. 165; *see also* Docket No. 166 at 13:15–16:7.)

During trial, WAGO raised the issue of standing of Automation because Rockwell had produced no evidence regarding the alleged license between Technologies and Automation. (Docket No. 374, Trial Tr. 4-A at 3:1–4:21.) Mr. Balber, Rockwell's counsel, told the Court that he had "never seen a license, . . . a written license" and that he would "put on a witness to testify about the license." (*Id.* at 3:23–24, 4:5–6.) Sitting next to Mr. Balber at counsel's table was John Miller, Vice President and Chief Intellectual Property Counsel of Automation, who last week, in support of Rockwell's opposition to WAGO's Motion to Dismiss Automation for lack of standing, submitted a declaration attesting to the 17% License. (*Id.* at 1; *see also* Docket No. 408 at ¶¶ 1, 9.) Despite being present at trial, Mr. Miller never testified about the 17% License. The Court declined to consider the issue of standing, but granted WAGO leave to file a brief addressing the issue. (Docket No. 374, Trial Tr. 4-A at 120:6–121:5.)

At the conclusion of the trial, Rockwell moved for a permanent injunction based upon the evidence presented at trial. (Docket No. 384, Trial Tr. 5-B at 4:2–5.) On October 25, 2012, WAGO filed its Opposition to Rockwell's Request for a Permanent Injunction, which argued among other things that Rockwell's arguments regarding injury to Automation could not be considered because Rockwell had failed to introduce any evidence that Automation had a license

under the '813 patent.  (Docket No. 388.)  WAGO also filed its Motion Pursuant to Rule 12(h)(3) to Dismiss Rockwell Automation, Inc. for Lack of Standing.  (Docket Nos. 386, 387.)

On November 8, 2012, Rockwell filed its reply brief supporting its request for a permanent injunction. (Docket No. 399.)  In its reply, Rockwell declined to address WAGO's argument that no evidence had been proffered at trial showing a license to Automation.  (*Id.*)  Instead, Rockwell delayed further addressing the existence of a license, stating Rockwell "contends that RAI [Automation] unequivocally has standing in this action, and will make arguments in support of that contention in its opposition to WAGO's motion to dismiss, on November 15, 2012."  (*Id.* at 5.)

On November 15, 2012, Rockwell filed its Memorandum of Law in Opposition to Defendants' Motion Pursuant to Rule 12(h)(3) to Dismiss Rockwell Automation, Inc. for Lack of Standing ("the Opposition") and the Declaration of John Miller ("the Miller Declaration").  (Docket Nos. 407, 408.)  Rockwell contended that the Miller Declaration and the exhibits attached to it, filed exactly one month after the trial was concluded, established the alleged exclusive license between Technologies and Automation.  (Docket No. 407 at 5–6.)  The documents attached to the Miller Declaration included the 17% License as well as the certification of the merger between Rockwell Automation, Inc. and Allen-Bradley Company, LLC ("the LLC Merger Certification"), which were not produced previously.

## ARGUMENT

Rockwell has abused the discovery and trial process in this case to manipulate its own expert, the Court, the jury, and WAGO to secure a $10.1 million dollar verdict.  The Court is currently considering WAGO's unclean hands affirmative defense that deals with Rockwell's intentional withholding of the best prior art that invalidates the '813 patent.  Through that misconduct, Rockwell has managed to escape the most damning challenge to the validity of the

7

'813 patent by successfully arguing that WAGO's serendipitous discovery of the Rockwell 1747 Open Controller was just too late.

Now Rockwell discloses for the first time, one month after the trial has ended, the 17% License, which Rockwell contends is evidence that Automation is the exclusive licensee of the '813 patent. Had it been produced timely, however, the 17% License would have been the single most important document during the damages trial. The 17% License establishes that it was an arms length transaction between Rockwell and Allen-Bradley who "are and shall be independent contractors to one another . . . ." (Docket No. 408-1 at ¶ 6.3.) The "Licensed Intellectual Assets" are defined as patents, copyrights, trade secrets, and many other intangible assets that were owned by Technologies as of the date of the 17% License. (Docket No. 408-1 at ¶ 1.8.) For all the "Licensed Intellectual Assets," Automation is obligated to pay Technologies a 17% royalty on net sales. (Docket No. 408-1 at ¶ 3.1, Schedule A.) But the inventors named on the '813 patent did not assign their rights to the patent until almost one month after the 17% License was executed. (*Compare* Docket No. 408-1 at 1 *with* Ex. F.)

Whether or not the Licensed Intellectual Assets include the '813 patent (which does not appear to be the case), the 17% royalty rate for industrial controller and other technology is highly probative of what a reasonable royalty rate would have been had WAGO infringed the patents. Moreover, if the 17% License does include the '813 patent, the License is even more relevant, and Attorney Miller's testimony under oath in the declaration directly contradicts Rockwell's own testimony through Mr. Bliss that the Rockwell never licensed the '813 patented technology to anyone. (*Compare* Docket No. 408 at ¶ 2 *with* Docket No. 137 at 42:13–24.)

Rockwell's deception as to the 17% License must be remedied. To proceed in an orderly way, however, additional discovery, discovery of which WAGO was deprived because of

Rockwell's deception, must be completed. Until that is done, other proceedings in this matter should be held in abeyance.

### A. WAGO Should Be Granted Leave To Depose Mr. Miller and Rockwell

The need to depose John Miller is apparent. Mr. Miller was not listed by Rockwell in its list of witnesses for trial or in its mandatory disclosures under Rule 26(a)(1). (Docket No. 250; Ex. G.) Rockwell chose not to produce Mr. Miller for the Rule 30(b)(6) deposition regarding the licensing of the asserted patents. As with the information regarding the 1747 Open Controller, Rockwell chose not to produce the 17% License or the LLC Merger Certification during discovery. Yet when Rockwell's $10.1 verdict was called into question due to Automation's lack of standing, Rockwell submitted the Miller Declaration with highly material documents never before produced, contending that Mr. Miller's testimony and the documents establish standing. In this regard, Rockwell mocks the discovery process.

Had Rockwell complied with its discovery obligations, the documents would have been disclosed early in discovery and certainly before trial, Mr. Miller would have been deposed, and Rockwell's contentions about standing and a reasonable royalty rate would have been tested. As it turns out, the 17% License was granted almost one month *before* the inventors named in the '813 patent assigned their rights in the invention to Technologies. (*Compare* Docket No. 408-1 at 1 *with* Ex. F.) Although this means that Automation did not obtain a license to the '813 patent, the 17% License rate is highly relevant to what royalty would have been reasonable in this case. *Georgia-Pacific Corp. v. United States Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *mod.* and *aff'd*, 446 F.2d 295 (2d Cir. 1971), *cert. denied*, 404 U.S. 870 (1971). Nevertheless, Rockwell withheld this license from its damages expert, Emmett Murtha, as well as from WAGO. (Docket No. 180 at ¶ 6; Docket No. 139 at 26:1–20, 27:2–10.)

9

Mr. Miller is the Vice President and Chief Intellectual Property Counsel of Automation. (Docket No. 408 at ¶ 1.) He has been the President of Technologies since September 2006 and that before that time he was Vice President and Treasurer of Technologies. (*Id.*) He is one of the individuals at Rockwell who had discussions with Mr. Murtha during the preparation of the expert report. (Docket No. 180 at ¶ 6; Docket No. 139 at 26:1–20, 27:2–10.)Mr. Miller was present at the deposition of David Vasko and participated in the preparation of Mr. Vasko's deposition. (Docket No. 175 at 2:14–16, 17:9–16.)

Mr. Miller sat mute at counsel's table every day during trial as Rockwell's representative. When WAGO raised at trial the issue of Automation's standing, Mr. Miller was at counsel's table as Mr. Balber told that Court that he had never seen a written license and that Rockwell would put on a witness to testify about the license. (Docket No. 374, Trial Tr. 4-A at 1, 3:1–4:21, 3:23–24, 4:5–6.) Of course, Rockwell could not have presented at trial the evidence it now seeks to present through Mr. Miller's declaration without simultaneously strengthening WAGO's damages defense and its unclean hands case. Yet Mr. Miller now declares upon personal knowledge that "Automation is, and at all times has been, the exclusive licensee of the '813 patent, which is owned by Technologies" and produces what he contends is evidence of an exclusive license to the '813 patent. (Docket No. 408 at ¶¶ 1, 2, 8, 9.)

Presumably, in his capacity as Chief Intellectual Property Counsel and as Rockwell's trial representative, Mr. Miller managed this litigation on behalf of Rockwell including reviewing WAGO's discovery requests and Rockwell's responses to those requests. This presumption and the need to more fully understand his role in Rockwell's misconduct and the basis of Rockwell's contentions requires that WAGO be given the opportunity to depose Mr. Miller.

In addition, WAGO needs to depose Rockwell pursuant to Rule 30(b)(6) regarding the documents attached as exhibits to Mr. Miller's declaration, including the 17% License and the LLC Merger Certification. These depositions will provide WAGO the information to which it was entitled before trial and regarding the failure to produce these documents. Based on this information, WAGO intends to file a motion seeking appropriate relief from Rockwell's deliberate concealment of the 17% License.

In addition, these depositions will provide a sound factual basis upon which the Court can determine the consequences of Rockwell's misconduct. Within three weeks of the completion of this discovery, WAGO will file whatever additional motion is necessary to obtain appropriate relief from Rockwell's deception.

### B. The Court Should Hold in Abeyance All Pending Matters And Otherwise Grant Relief From The Current Briefing Schedules

Rockwell's deliberate concealment of the 17% License strikes at the core of this case. Rockwell made out with a $10.1 million verdict only by concealing the single most relevant document relating to damages in this case — the 17% License. Accordingly, at a minimum, in addition to granting the discovery above, WAGO respectfully asks that the Court proceed as follows:

*First,* the Court should hold in abeyance the entry of judgment based on the jury verdicts of liability and damages and its decisions regarding WAGO's unclean hands affirmative defense and Rockwell's request for a permanent injunction until after WAGO has had a fair opportunity to take discovery and be heard on how Rockwell's concealment of the 17% License has impacted the case.

*Second,* the Court should stay the briefing currently scheduled on WAGO's Motion Pursuant To Rule 12(h)(3) To Dismiss Rockwell Automation, Inc. For Lack Of Standing

11

(Docket No. 386) ("the Motion to Dismiss") and Plaintiffs' Motion For An Award And Judgment Of Prejudgment And Postjudgment Interest (Docket No. 397) ("the Motion for Interest") pending the resolution of any additional motions seeking relief from Rockwell's withholding of the 17% License.

WAGO's reply in support of its Motion to Dismiss is currently due on November 26, 2012. (*See* Docket No. 386 (ECF system set deadlines automatically).) In its Opposition, Rockwell argues that the Court has already determined that Automation is the exclusive licensee of the '813 patent. (Docket No. 407 at 4 (citing Docket No. 333 at 2).) Rockwell's argument is meritless because WAGO's never admitted that Automation is the exclusive licensee of the '813 patent in WAGO's proposed findings of fact. (*See* Docket No. 53 at 1.) WAGO's proposed finding of fact merely stated that Automation ***alleged*** that Automation was the exclusive licensee of the '813 patent. Most important, standing is a jurisdictional issue that cannot be waived and must be present at all stages of the case. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)("[S]ubject-matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived.") (*citing United States v. Cotton*, 535 U. S. 625, 630 (2002)) and *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 94 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") (quoting *Ex parte McCardle*, 7 Wall. 506, 514 (1869)); *see also Craig v. Ontario Corp.*, 543 F.3d 872, 875 (7th Cir. 2008) (vacating judgment and reversing order denying motion under Fed. R. Civ. P. 60(b)(4) filed after judgment was entered). Therefore, the Court must decide WAGO's motion to dismiss Automation without regard to the summary judgment order; that is, there is no law of the case regarding subject matter jurisdiction. In view

12

of Rockwell's concealment of the 17% License, the need for discovery and consideration of the proper consequences of Rockwell's conduct, further consideration of the motion to dismiss should be deferred.

In addition, the Court should defer briefing on the Motion for Interest. (Docket No. 397.) WAGO's opposition is due November 20, 2012. This motion has no relevance unless and until Rockwell obtains a judgment in its favor. Even if that eventually were to happen, Rockwell's concealment of the 17% License during discovery and at trial must be accounted for in any award of interest.

*Third*, the Court should grant WAGO a sur-reply if the Court ultimately takes up Rockwell's request for a permanent injunction. Although briefing on the permanent injunction has been completed through Rockwell's reply, Rockwell's concealment of the 17% License is yet another instance of Rockwell's litigation misconduct that affects the equities in this case. WAGO should be given a reasonable opportunity to address those equities.

## CONCLUSION

Rockwell's misconduct is repugnant and extremely prejudicial to WAGO. WAGO and the Court need additional time to understand this misconduct and determine how to remedy it. Accordingly, for the foregoing reasons, WAGO respectfully requests that the Court grant the relief set forth above and in the Motion.

Dated: November 20, 2012    Respectfully submitted,

*/s/ David L. De Bruin*

David L. De Bruin, SBN 1016776
MICHAEL BEST & FRIEDRICH LLP
100 East Wisconsin Avenue
Suite 3300
Milwaukee, WI  53202-4108
T:  (414) 271-6560; F:  (414) 277-0656
Email:  dldebruin@michaelbest.com

Marshall J. Schmitt
Gilberto E. Espinoza
MICHAEL BEST & FRIEDRICH LLP
Two Prudential Plaza
180 N. Stetson Avenue, Suite 2000
Chicago, Illinois  60601-6710
T: 312.222.0800; F: 312.222.0818
Email: mjschmitt@michaelbest.com
Email: geespinoza@michaelbest.com

John C. Scheller
MICHAEL BEST & FRIEDRICH LLP
One South Pinckney Street, Suite 700
P.O. Box 1806
Madison, Wisconsin  53701-1806
T: 608.283.2276; F: 608.283.2275
Email: jcscheller@michaelbest.com

*Attorneys for Defendants*
*WAGO CORPORATION and*
*WAGO KONTAKTTECHNIK GMBH & CO. KG*

**IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF WISCONSIN**

| | |
|---|---|
| ROCKWELL AUTOMATION, INC. and ROCKWELL AUTOMATION TECHNOLOGIES, INC.<br><br>*Plaintiffs,*<br><br>v.<br><br>WAGO CORPORATION and WAGO KONTAKTTECHNIK GMBH & CO. KG<br><br>*Defendants.* | Case No. 3:10CV718-WMC<br><br>The Hon. William M. Conley |

**Certificate Of Service**

I HEREBY CERTIFY that on this 20th day of November, 2012, a copy of the foregoing document was filed electronically with the Clerk of the Court using the CM/ECF system and was served on the following counsel as indicated below.

| | |
|---|---|
| Scott S. Balber<br>**COOLEY LLP**<br>The Grace Building<br>1114 Avenue of the Americas<br>New York, NY 10036-7798 | ☒ Via CM/ECF Service<br>☐ Via First Class Mail<br>☐ Via E-mail:<br>sbalber@cooley.com |
| Paul Tanck<br>Lisa Schapira<br>**CHADBOURNE & PARKE LLP**<br>30 Rockefeller Plaza<br>New York, NY 10112 | ☒ Via CM/ECF Service<br>☐ Via First Class Mail<br>☐ Via E-mail:<br>ptanck@chadbourne.com<br>lschapira@chadbourne.com |
| Kristin Graham Noel<br>Matthew J. Duchemin<br>**QUARLES & BRADY LLP**<br>33 East Main Street, Suite 900<br>Madison, WI 53703 | ☒ Via CM/ECF Service<br>☐ Via First Class Mail<br>☐ Via E-mail:<br>kgn@quarles.com<br>matthew.duchemin@quarles.com |

*/s/ Gilberto E. Espinoza*
Gilberto E. Espinoza