IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ROCKWELL AUTOMATION, INC. and
ROCKWELL AUTOMATION
TECHNOLOGIES, INC.,

                          Plaintiffs,                    OPINION AND ORDER

          v.
                                                           10-cv-718-wmc
WAGO CORPORATION and WAGO
KONTAKTTECHNIK GMBH & CO. KG,

                          Defendants.

In defense of the infringement claims brought by plaintiffs Rockwell Automation, Inc. and Rockwell Automation Technologies, Inc. (collectively "Rockwell"), defendants WAGO Corporation and WAGO Kontakttechnik GmbH & Co. KG (collectively "WAGO") assert an equitable unclean hands defense based on certain litigation misconduct. Outside of the presence of the jury, the court heard further testimony, admitted additional exhibits and reviewed deposition designations WAGO contends are relevant to this defense.

After review of this evidence, the court finds that Rockwell acted with unclean hands in failing to disclose the existence of its 1747 Open Controller. As such, the court will allow: (1) WAGO to supplement its invalidity contentions and its expert invalidity opinions based on the 1747 Open Controller; and (2) a new trial solely on the issue of WAGO's contention that the 1747 Open Controller anticipates the '813 patent. Before trial, Rockwell will also be allowed an opportunity to take the deposition of WAGO's

expert and to submit its own supplemental rebuttal expert report addressing this single issue.

There are a number of other motions pending before the court.  For the reasons explained below, the court will deny WAGO's motion to dismiss for lack of jurisdiction. (Dkt. #386.)  The court will grant WAGO's motion to hold in abeyance entry of judgment and the court's rulings on other motions pending jury determination on WAGO's claim that the '813 patent is invalid as anticipated.  In all other respects, the court will deny WAGO's abeyance motion, including requests for additional relief because of Rockwell's failure to earlier produce the license agreement at the heart of its opposition to WAGO's motion to dismiss.  (Dkt. #409).[1]


FINDINGS OF FACTS[2]

1.   Defendants' first set of interrogatories directed to plaintiffs contained Common Interrogatory No. 2, which stated:

> Identify each and every Industrial Controller made, used sold, or otherwise provided by you or any other Person at any time on or before November 19, 2002[,] which was capable of running or otherwise using an operating system for a reprogrammable computer, including, but not limited to, any version of Windows, Linux or Unix, including in your identification, without limitation, the dates when each such Industrial Controller was made, used, sold or otherwise provided.

(Declaration of Gilberto E. Espinoza ("Espinoza Decl."), Ex. 9 (dkt. #218-9) 6.)

---

[1] The court also disposes of several other less substantive motions in the order below.

[2] The court finds the following facts for purposes of determining WAGO's unclean hands defense.

2.  On October 17, 2011, Rockwell served objections and responses to the WAGO's first set of interrogatories.  (*Id.*)

3.  In Rockwell's original response to Common Interrogatory No. 2, it stated:

> In addition to the objections stated above, Rockwell objects to this interrogatory to the extent it is overly broad, unduly burdensome, oppressive, harassing, and not related to the claim or defense of any party or reasonably calculated to lead to the discovery of admissible evidence.
>
> Rockwell objects to this interrogatory as vague as to the definition of "an operating system for a reprogrammable computer."   For the purpose of responding to this interrogatory, Rockwell's response is limited to Rockwell's sale of controllers.
>
> Subject to its objections, Rockwell responds that the chart below lists Rockwell controllers that were sold in the years 1980 and 2002:

| Controller | Date |
|---|---|
| PLC | 1980-1985 |
| PLC-2 | 1980-2001 |
| Mini-PLC2 | 1980-2002 |
| PLC-3 | 1981-2002 |
| 5/250 | 1989-2002 |
| PLC-5 | 1986-2002 |
| SLC-500 | 1989-2002 |
| Soft 5 / ControlPak | 1997-2002 |
| ControlLogix | 1997-2002 |
| ProcessLogix | 1998-2002 |
| FlexLogix | 2000-2002 |
| CompactLogix L3x | 2001-2002 |
| DriveLogix | 2002 |
| SoftLogix 5000 | 2001-2002 |
| PLC-4 | 1983-1992 |
| MAC | 1983-1987 |
| SLC 100-150 | 1985-2000 |
| SLC 500 Packaged | 1989-2002 |
| MicroLogix 1000 | 1995-2002 |
| MicroLogix 1200 | 2000-2002 |
| MicroLogix 1500 | 1999-2002 |

(*Id.* at 6-7.)

4.     Rockwell also indicated that since its "investigation as to the subject of this interrogatory is continuing," Rockwell reserves "the right to supplement, amend, and/or modify this response." (*Id.* at 6.)

5.     Rockwell's responses were verified by Gary Ballesteros.  (Trial Ex. 1542.)

4

6.    On January 9, 2012, Rockwell served amended responses to WAGO's first set of interrogatories.  (Espinoza Decl., Ex. 10 (dkt. #218-10).)

7.    In response to Common Interrogatory No. 2, Rockwell provided the following amended chart:

| Controller | Date |
|---|---|
| PLC | 1980-1985 |
| PLC-2 | 1980-2001 |
| Mini-PLC2 | 1980-2002 |
| PLC-3 | 1981-2002 |
| 5/250 | 1989-2002 |
| PLC-5 | 1986-2002 |
| SLC-500 | 1989-2002 |
| ControlLogix | 1997-2002 |
| ProcessLogix | 1998-2002 |
| FlexLogix | 2000-2002 |
| CompactLogix L3x | 2001-2002 |
| DriveLogix | 2002 |
| PLC-4 | 1983-1992 |
| MAC | 1983-1987 |
| SLC 100-150 | 1985-2000 |
| SLC 500 Packaged | 1989-2002 |
| MicroLogix 1000 | 1995-2002 |
| MicroLogix 1200 | 2000-2002 |
| MicroLogix 1500 | 1999-2002 |

(*Id.* at 5-6.)

8.    Without calling attention to it or offering explanation, missing from this amended chart were two items:  (1) "Soft 5/ Control Pak"; and (2) "SoftLogix 5000."

Both of these software products were related to so-called "soft controllers," like the 1747 Open controller.

9.     WAGO also served document requests on Rockwell concerning "industrial controllers."  (Declaration of Paul J. Tanck ("Tanck Decl."), Ex. 1 (dkt. #94-1) Nos. 3, 11, 12, 17 and 23.)

10.     In August 2012, counsel for WAGO discovered Rockwell's 1747 Open Controller System Overview document dated May 1997.  (Espinoza Decl., Ex. 2 (dkt. #218-2).)

11.     The document describes an industrial controller that was sold and offered for sale by Rockwell at least as early as 1997.

12.     The Overview introduces the 1747 Open Controller as "the first in a family of open controllers that combine the reliability, quality, and industrial packaging Allen-Bradley is known for, with the flexibility and value of personal computing technology, to create an open control platform."  (*Id.* at 3.)

13.     The Overview describes the 1747 Open Controller as providing "a rugged, PC-based control platform for industrial automation applications."  (*Id.* at 3.)

14.     The Overview also provides:

> Whether your application is an embedded solution using custom-developed software, or a large distributed application requiring features of a traditional programmable controller, the open controller can meet your needs.
>
> The open controller system provides solutions for:
>
> . . .

6

- Applications that require rugged, industrial control and I/O solutions.

15. The Overview also described a FlashDrive storage memory, use of ladder logic, and a real-time control executive. (*Id.* at 14, 19.)

16. Following WAGO's independent discovery of Rockwell's 1747 Open Controller and other open controller products on the market in the 1990s, WAGO supplemented its Rule 26 disclosures to add a third-party witness familiar with open controllers, Cindy Hollenbeck, of SoftPLC Corporation, which also produces a "PC-based" or "open" industrial controller. Rockwell moved to strike this supplement as untimely. (Dkt. #123.) Around the same time, WAGO also moved to supplement its invalidity contentions and its expert report on invalidity to address the open controllers, including Rockwell's 1747 Open Controller. (Dkt. #216.)

17. The court granted Rockwell's motion to strike and denied WAGO's motion to supplement and its subsequently-filed motion for reconsideration of these two decisions, but allowed defendant to present evidence on Rockwell's failure to disclose the 1747 Open Controller as part of its unclean hands defense. (9/21/12 Order (dkt. #300); 10/4/12 Order (dkt. #340).)

18. At trial, Hollenbeck testified that open controllers were on the market in the 1990s and that those in the business of making and selling controllers, like Rockwell, would have been aware of these products based on articles and advertising at the time in industry publications.

19. Dr. Hooper, WAGO's expert, testified -- consistent with his supplemental report which the court previously struck -- that based on the Overview document, the

1747 Open Controller contained all of the limitations disclosed in claim 1 of the '813 patent.

20.     At depositions, Rockwell employees confirmed that they were aware Rockwell sold an open controller.   (Deposition of Gregory Bell (dkt. #308) 27:23-28:12; Deposition of David Vasko (dkt. #175) 204:14-205:7.)[3]


OPINION

**I.  Unclean Hands Defense**

A district court's "finding of litigation misconduct" based on clear and convincing evidence justifies application of the unclean hands doctrine.  *Aptix Corp. v. Quickturn Design Sys., Inc.*, 269 F.3d 1369, 1374 (Fed. Cir. 2001).  In light of such a finding, courts have "broad discretionary powers to fashion appropriate relief," so long as the remedy is limited to the case at hand and does not "infect, or even affect, the original grant to the property right."  *Id.* at 1375-76, 1378.[4]  The relief for unclean hands should target the specific misconduct, without reference to the property right that is the subject of the

---

[3] WAGO also submitted deposition testimony concerning the EBSNet prior art.  Because the court's finding of litigation misconduct is limited to Rockwell's failure to disclose its own prior art, the court need not recount and does not consider evidence concerning the EBSNet prior art or Rockwell's claimed awareness and use of it.

[4] WAGO did not plead inequitable conduct and its request to amend its complaint to add a claim of inequitable conduct -- buried in a motion to compel discovery (dkt. #128) -- was properly denied by Judge Crocker.  (8/29/12 Hearing Tr. (dkt. #166) 16.)  Instead, WAGO pled an equitable defense of unclean hands.  (Answ. (dkt. #27) ¶ 17.)  Accordingly, the court will not consider whether Rockwell's failure to disclose the open controller to the USPTO constitutes inequitable conduct, rendering the patents-in-suit unenforceable.

litigation.  *Id.* at 1376 (discussing *Keystone Driller Co. v. Gen'l Excavator Co.*, 290 U.S. 240 (1933)).

### A.  Duty to Disclose

With the benefit of a more complete trial record and greater understanding of the technology at issue in this case, the court now finds that:  (1) the 1747 Open Controller was responsive to WAGO's Common Interrogatory No. 2 and various document requests; and (2) Rockwell should have identified the 1747 Open Controller and produced documents concerning it.  In particular, the 1747 Open Controller was an industrial controller made and sold by Rockwell prior to November 19, 2002, and capable of running the operating systems identified in the interrogatory.  In closing arguments on the unclean hands defense, Rockwell effectively conceded this point, while continuing to maintain that the 1747 Open Controller is not relevant to WAGO's invalidity case and any failure to disclose it was an understandable innocent oversight. (Trial Tr. (dkt. #385) 103-04.)

Of course, whether *Rockwell* believed or believes that the 1747 Open Controller, or any of its other industrial controllers, may ultimately establish prior art is not the test for determining whether it is obligated to identify it as responsive to an interrogatory request or to produce responsive documents concerning it.   WAGO sought information concerning all industrial controllers Rockwell made, used or sold before 2002 "using an operating system for reprogrammable computer . . . ", and Rockwell's response was plainly inadequate.  For this reason, the court is singularly unimpressed by Rockwell's

argument that WAGO's definition of "Industrial Controller" in its interrogatory requests did not contemplate the 1747 Open Controller.  (*See* Trial Tr. (dkt. #368) 23-24.)  While the definition specifically references products which Rockwell contends competes with WAGO's accused products, the definition is not limited to those products.  Rather, WAGO defined "Industrial Controllers" broadly to encompass "a control component, a control device, an industrial control component, an industrial control device, an industrial control system, an industrial controller, an industrial controller system, a programmed logic controller, related software, and a programmable logic controller[.]" (Espinoza Decl., Ex. 7 (dkt. #218-7) 3.)  Moreover, in its response, Rockwell represented that "the chart below lists Rockwell controllers that were sold in the years 1980 and 2002."  (*Id.*, Ex. 9 (dkt. #218-9) 7.)  Finally, Rockwell and its counsel certainly knew that use of similar technology in earlier controllers used in industrial settings went to the heart of what WAGO sought in Common Interrogatory No. 2.

### B.  Bad Faith

Having found that the 1747 Open Controller was responsive to WAGO's discovery requests, the court must still determine whether Rockwell's omitting it constitutes bad faith.  *See ABF Freight Sys., Inc. v. N.L.R.B.*, 510 U.S. 317, 329-30 (1994) ("The 'unclean hands' doctrine closes the door of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief, however improper may have been the behavior of the defendant." (internal citation omitted));

*Shinsaku Nagano v. McGrath*, 187 F.2d 753, 759 (7th Cir. 1951) ("The doctrine [of unclean hands] applies only to willful as distinguished from negligent misconduct[.]").

WAGO has no direct evidence of bad faith. For example, WAGO failed to call Gary Ballesteros to the stand to testify as to why certain industrial controllers were listed and others were not or why Rockwell decided to amend its list to remove software products that its own literature may be used in the 1747 Open Controller, rather than add the controller itself to the list.

Still, the indirect evidence provides strong support for inferring bad faith: Rockwell's initial failure to list the 1747 Open Controller despite its representation that the list contained all Rockwell controllers sold between 1980 and 2002; its inability to distinguish meaningfully this so-called "soft" or "open" controller from the other industrial controllers identified by Rockwell; and, most telling, the removal of software related to the 1747 Open Controller from the list of controllers without adequate (or indeed any) explanation. The inference is further bolstered by Dr. Hooper's persuasive testimony that the 1747 Open Controller anticipates claim 1 of the '813 patent, which suggests that Rockwell had reason to bury it. And then there is Rockwell's own aggressive litigation style here. While not crossing over into sharp practice (indeed, it appears Rockwell and its counsel were careful to walk up to, but not cross, ethical lines), Rockwell's discovery practices here left little to chance, leaving a reasonable inference that its counsel was quietly-calculating in carving out so-called "soft controllers" from other industrial controllers. The temptation to be less than candid to opposing counsel

was no doubt more tempting with an opponent whose discovery practices were, for much of the lawsuit, just the opposite: haphazard and incomplete.

While Rockwell's counsel represented that this was, at worst, an innocent oversight or error, their conduct says otherwise. At argument, Rockwell's lead counsel represented that he still had no idea who made the decision or why Common Interrogatory No. 2 was revised, but someone at Rockwell removed software from a list that could have led to the discovery of the 1747 Open Controller, which certainly supports the conclusion that someone connected with Rockwell decided that rather than disclose the 1747 Open Controller, it would further bury the controller's existence. Indeed, only by ignoring Rockwell's *own* language -- repeatedly describing the 1747 as an industrial controller and claiming technological abilities similar to that at issue here -- could one rationalize drawing the line as they did. If not a deliberate lack of candor to the court and opposing counsel, this constitutes a reckless disregard for the truth, which after all is the goal of any fair trial, that cannot be ignored.

### C. Remedy

Having found bad faith, the court now must fashion an appropriate remedy. WAGO seeks dismissal of Rockwell's infringement claims. While a finding of litigation misconduct can warrant dismissal, *see Aptix Corp.*, 269 F.3d at 1375, it is not justified in this action for at least two reasons. *First*, the court continues to believe that defendants should have discovered the existence of 1747 Open Controller independent of any obligation of Rockwell to identify it in an interrogatory request or to produce documents

concerning it, and eventually did so after finally taking up meaningful discovery late in the case. As WAGO's own witness, Cindy Hollenbeck, testified, the 1747 Open Controller and other open controllers were on the market and widely-publicized in industry publications and trade events during the 1990s. The fact that WAGO did not enter the industrial controller market until 2004 does not explain away its failure to conduct an investigation to develop its invalidity arguments. While not excusing plaintiffs' failure to disclose it, this failure tempers defendants' after-the-fact entitlement to sweeping relief, especially in light of the expense incurred and adverse result reached by the jury at trial, albeit without knowing about the existence of the 1747 technology.

*Second*, the conduct is not sufficiently egregious to warrant the Draconian relief requested by WAGO of dismissal of Rockwell's infringement claims. While there is limited caselaw applying unclean hands to litigation misconduct, cases in which district courts have dismissed a claim altogether concern far more egregious and prejudicial conduct than that at issue here. *See, e.g.*, *Keystone Driller Co. v. Gen'l Excavator Co.*, 290 U.S. 240, 245 (affirming dismissal of patentee's lawsuit where patentee suppressed testimony by purchasing the silence of another inventor); *Aptix Corp.*, 269 F.3d at 1372-75 (affirming district court's dismissal of patentee's infringement action where plaintiff fabricated invention notebooks).

At closing arguments on the unclean hands defense, the court questioned whether WAGO's decision to withdraw its invalidity claim at trial impacted the possible remedies the court could order. Specifically, the court questioned whether it would be fair to allow WAGO to revive an invalidity defense in light of its tactical decision to drop it at trial.

13

In response, WAGO argued that by excluding the 1747 Open Controller, the court prevented WAGO from presenting "killer prior art" that contained "all the elements of the patent." (Trial Tr. (dkt. #385) 95.) Whether true or not, WAGO was prevented from pursuing a claim of invalidity based on the 1747 Open Controller, due, at least in part, to Rockwell's act of bad faith in not disclosing it. This distinguishes it further from the other open controllers that WAGO could and should have discovered on its own, as indeed it eventually did.

After considering a range of remedies, the court will, therefore, allow WAGO to proceed solely on the issue of whether the 1747 Open Controller anticipates the '813 patent. WAGO will not, however, be allowed to argue that the asserted claims are rendered obvious by this or any other prior art references. The court realizes that no one goes unscathed in the court's effort to arrive at a measured, equitable remedy here, but perhaps that is as it should be, or so it seems to the court. Even Rockwell concedes that the 1747 Open Controller should have been disclosed, though maintaining its omission was negligent at worst. Certainly, defendants could and should have discovered its existence, along with other so-called soft or open controllers long before they did, which would have resulted in invalidity being taken up in the first trial. And, at least with the benefit of hindsight, this court should have allowed defendants to proceed to argue invalidity based on the existence of the 1747 Open Controller. Since all are at fault, all will suffer the consequences. Rockwell will have to defend its patent against an anticipation defense. WAGO does not get to start over with an all-encompassing invalidity claim. And the court will have to address this issue and perhaps preside over

14

another trial.  The only true victim will be a new lay jury.  The only solace is that the trial will be on a narrow issue.

Consistent with this remedy, the court further (1) vacates in part its prior opinion striking Hooper's supplemental report (dkt. #300) opining on anticipation based on the 1747 Open Controller; and (2) will allow Rockwell an opportunity to depose Hooper and serve a supplemental rebuttal report on this limited issue.   The court will also hold a scheduling conference to set pretrial deadlines and an early trial date.


## II. Motion to Dismiss for Lack of Standing

Also before the court is defendants' motion to dismiss plaintiff Rockwell Automation, Inc. for lack of standing pursuant to Fed. R. Civ. P. 12(h)(3).  (Dkt. #386.) In support, defendants contend that plaintiffs' failure to put forth evidence of an exclusive license agreement between the owner of the '813 patent Rockwell Automation Technologies, Inc. and its co-plaintiff Rockwell Automation, Inc. is fatal to the latter's assertion of standing to sue.  For ease of reference, the court, consistent with the parties' treatment, will refer to Rockwell Automation, Inc. as "Automation," and will refer to Rockwell Automation Technologies, Inc. as "Technologies."

In response to the motion, plaintiffs now submit the following documents:

- an agreement, dated June 28, 2001, assigning inventions, patent applications and patents from Rockwell Technologies, LLC to Technologies, which lists 01AB085, "Method for Consistent and Persistent Storage of Data in an

15

Industrial Controller" as a "contributed invention" (Declaration of John Miller ("Miller Decl."), Ex. E (dkt. #408-5) 2-4, 62);[5]

- an exclusive license agreement, dated June 29, 2001, between Technologies and Allen-Bradley Company, LLC, granting Allen-Bradley an exclusive license to employ Technologies' patents in exchange for certain royalty payments (*id.*, Ex. A (dkt. #408-1);[6] and

- a merger agreement dated March 28, 2002, between Allen-Bradley Company, LLC, and Automation, making Automation the successor-in-interest to Allen-Bradley's rights under the license agreement (*id.*, Ex. B (dkt. #408-2)).

These documents demonstrate that Rockwell Automation, LLC transferred its rights to the invention later disclosed in the '813 patent to Technologies on June 28, 2001.  The next day, June 29, 2001, Technologies granted Allen-Bradley an exclusive license to employ Technologies' patents and inventions in exchange for certain royalty payments.  The license also appears to transfer all substantial patent rights to Allen-Bradley.  *See Alfred E. Mann Found. for Scientific Research v. Cochlear Corp.*, 604 F.3d 1354, 1360-61 (Fed. Cir. 2010) (listing certain factors for a court to consider in determining whether all substantial rights have been transferred).

On March 28, 2002, Allen-Bradley and Automation merged, and Automation became the successor in interest to Allen-Bradley's rights under the exclusive license

---

[5] Rockwell Automation, Inc.'s Vice President and Chief Intellectual Property Counsel, John Miller, avers that the '813 patent was referred to by attorney docket reference number 01AB085 and by its title "Method of Consistent and Persistent Data in an Industrial Controller."  (Miller Aff. (dkt. #408) ¶ 14.)  The '813 patent application was filed about a month after this agreement on July 30, 2001.

[6] This agreement not only provides an exclusive license to all "intellectual assets" but also defines "patents" broadly to encompass "all patents . . . , patent applications, and patent and invention disclosures, and all other rights of inventorship[.]"  (Miller Aff., Ex. A (dkt. #408-1) p.3, ¶ 1.3.)  This grant is broad enough to encompass what was then the soon-to-be-filed '813 patent.

agreement.    As  such,  Automation  has  independent  standing  to  sue  separate  from
Technologies.  *See id.* at 1358-59 ("A patent owner may transfer all substantial rights in
the  patents-in-suit,  in  which  case  the  transfer  is  tantamount  to  an  assignment  of  those
patents  to  the  exclusive  licensee,  conferring  standing  to  sue  solely  on  the  licensee.").
Even  if  the  exclusive  license  agreement  does  not  transfer  *all*  substantial  rights  in  the
patent,  Automation  certainly  "hold[s]  exclusionary  rights  and  interest  created  by  the
patent  status,"  sufficient  to  have  standing  to  sue  as  a  co-plaintiff.  *Morrow v. Microsoft
Corp.*, 499 F.3d 1332, 1339 (Fed. Cir. 2007).

Both  parties  take  issue  with  the  other  parties'  delay  in  addressing  standing.
WAGO  blames  Rockwell  for  failing  to  submit  these  documents  as  part  of  its  summary
judgment  submission  or  during  trial.    Rockwell  blames  WAGO  for  raising  standing  on  the
fourth  day  of  trial.    Both  parties  should  have  been  more  diligent,  but  since  Automation
clearly  has  standing  to  sue,  the  court  will  leave  it  at  that.    Accordingly,  the  court  will
deny defendants' motion to dismiss Rockwell Automation, Inc. for lack of standing.

## III. Motion to Hold in Abeyance Entry of Judgment and Various Court Rulings

While  resolving  the  issue  of  standing,  Rockwell's  disclosure  of  the  June  29,  2001,
license  agreement  sparked  another  issue.    Also  before  the  court  is  WAGO's  "motion  to
hold  in  abeyance  entry  of  judgment  and  rulings  on  WAGO's  unclean  hands  affirmative
defense and Rockwell's request for a permanent injunction and to grant additional relief."
(Dkt. #409.)   As explained in the motion and brief in support of the motion, WAGO
"repeatedly requested all licenses related to the patents in suit," and Rockwell not only

failed to produce its own license agreement, but wrongly represented that *no* formal, written license for the '813 patent existed.  (WAGO's Opening Br. (dkt. #410) 2.)  In light of this failure, WAGO (1) seeks "a reasonable opportunity to take discovery on the purported license and the reasons it was not previously disclosed;" and (2) asks the court to hold in abeyance entry of judgment and rulings on pending motions, or grant extensions of deadlines for briefing of the pending motions.  (*Id.* at 3.)

As detailed in WAGO's brief in support of the motion, WAGO repeatedly requested production of license agreements, including:

- Request No. 10 dated September 16, 2011:  "For each Patent in Suit produce all assignments, all licenses, and any other Records in your possession, custody or control which identify or otherwise discuss or relate to ownership of such Patent in Suit and whether either or both of the Plaintiffs has the right to sue for infringement of the Patent in Suit."  (Declaration of Robert N. Cook ("Cook Decl."), Ex. A (dkt. #80-1) 4-5.)

- Request No. 56 dated June 19, 2012: "All license agreements or offers of license agreements relating to any of the Patents in Suit, including drafts of such agreements or offers."  (Declaration of Marshall J. Schmitt ("Schmitt Decl."), Ex. A (dkt. #411-1) 4.)

- Request No. 57 dated June 19, 2012: "All license agreement or offers of license agreements given or taken by either Plaintiff in the field of industrial control technology."  (*Id.*)

Rockwell responded to each request by stating that it would produce certain non-privileged, documents and things that are located after a reasonable search.  (Cook Decl., Ex. B (dkt. #80-2) 10; Schmitt Decl., Ex. D (dkt. #411-4) 6-7.)[7]

---

[7] WAGO also points out that in May 2012, it filed a motion to compel discovery responses to certain document requests and interrogatories.  (Dkt. #78.)  That motion, however, did not seek an order compelling plaintiffs to produce documents responsive to Request for Production No. 10.  (WAGO's Br. (dkt. #79) (listing several Document Request Nos.).  Still, Rockwell's counsel stated at the hearing on the motion, "But we've

During Rockwell's 30(b)(6) deposition on July 26, 2012, Rockwell representative Ronald Bliss testified that "[t]here are no license agreements for any of these patents." (Deposition of Ronald Bliss (dkt. #137) 42.)   During the deposition, counsel for the parties engaged in discussions about the licenses, and Rockwell subsequently produced a CD containing 381 licenses on August, 7, 2012.  That CD, however, did not contain the June 29, 2001, license agreement between Technologies and Allen-Bradley.

At trial, counsel for Rockwell, Mr. Balber, told the court that he had "never seen a license, Judge, a written license," and that "[w]e'll put a witness on to testify about the license." (Trial Tr. (dkt. #374) 3-4.)  Automation's Vice President and Chief Intellectual Property Counsel John Miller -- the same John Miller, who subsequently ushered in with his declaration the license agreement -- was sitting next to Mr. Balber when he made this representation.

So, where does this leave us?  No doubt, Rockwell should have produced the license agreement (and the other documents produced in response to WAGO's motion to dismiss Automation for lack of standing) in response to Request No. 10, which was served on September 16, 2011.  That much, the court is in agreement with WAGO.  The court, however, rejects WAGO's claims that it was prejudiced by this failure.

As an initial matter, WAGO claims that if the June 29, 2011, license agreement had been produced timely, it "would have been the single most important document during the damages trial." (WAGO's Br. (dkt. #410) 8.)  In support of this hyperbolic

searched all the documents, we've searched the custodians, we've shared databases, we've search[ed] shared databases and we've produced everything."  (5/16/12 Hearing Tr. (dkt. #101) 10-11.)

claim, WAGO argues that the 17% royalty rate disclosed in the license agreement is "highly probative of what a reasonable royalty rate would have been had WAGO infringed the patents." (*Id.*)  WAGO's position that this royalty rate -- negotiated between related companies -- would have been probative of a reasonable royalty between the parties in this lawsuit -- two competitors -- runs counter to Federal Circuit caselaw that a reasonable royalty is one the patentee "would have received through arms-length bargaining." *Lucent Techs, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009). Indeed, courts have refused to consider evidence of royalty rates between related companies, as is the case here.  *See Allen Archery, Inc. v. Browning Mfg., Co.*, 898 F.2d 787, 790 (Fed. Cir. 1990) (finding that intra-company pricing arrangement "jointly-established by the management of the companies" was not the result of "arm's-length bargaining" and therefore "could not be used" in determining a reasonable royalty);[8] *see also Minks v. Polaris Indus., Inc.*, 546 F.3d 1364, 1373 (Fed. Cir. 2008) ("What is a reasonable royalty rate between an inventor and his own company is clearly not a

---

[8] WAGO takes issue with Rockwell's description of the holding in *Allen Archery*, but Rockwell's description is consistent with the Federal Circuit's *own* description of the holding in a more recent case.

> In *Allen Archery, Inc. v. Browning Manufacturing Co.,* 898 F.2d 787 (Fed.Cir.1990), a parent-subsidiary relationship existed between the infringing companies, and this made the price of the infringing goods sold between them an inappropriate basis for calculating the royalty. Instead, the trial court used the price at which goods were sold to consumers. *Id.* at 790.

*Mitutoyo Corp. v. Central Purchasing, LLC*, 499 F.3d 1284, 1292 (Fed. Cir. 2007).

reasonable royalty rate between two competitors in the same line of business." (quoting *Ziggity Sys., Inc. v. Val Watering Sys.*, 769 F. Supp. 752, 826 (E.D. Pa. 1990))).

WAGO also argues that an "Independent Contractors" provision in the June 29, 2001, license agreement undermines Rockwell's portrayal of Technologies and Allen-Bradley as related companies, who failed to engage in arms-length negotiations.  This provision states:  "The parties are and shall be independent contractors to one another, and nothing herein shall be deemed to cause the Agreement to create an agency, partnership or joint venture between the Parties.  No Party shall have the power to act on behalf of or bind the other Party without their prior written consent."  (Miller Decl., Ex. A (dkt. #408-1) 6.)  This provision -- likely included to avoid shared liability for the conduct of the other entity -- does not change the fact that Allen-Bradley and Technologies are (or at least were at the time) related companies under the Rockwell umbrella and, accordingly, the negotiation of the royalty rate was not an arms-length one.

For the reasons stated above, the court also rejects WAGO's argument that the licensing documents fail to establish standing of Automation.  Indeed, as the court explained during trial, even if this argument had legs, it would not make a difference:

> It's much ado about nothing.  This is a royalty case; it's not a lost profits case.  The licensee isn't seeking damages for lost profits.  In any event, the owner of the patent is here as a party and certainly the owner of the patent gets the royalty.  I can't imagine why I would take up any time and certainly am not going to take it up in front of the jury on this issue."

(Trial Tr. (dkt. #374) 117.)  *See also Poly-America, Inc. v. GSE Lining Tech.*, 383 F.3d 1303, 1312 (Fed. Cir. 2004) (reversing district court's order allowing Poly-America, the owner of the patent, to recover lost profits incurred by its sister corporation Poly-Flex as

a non-exclusive licensee of the patent, but remanding for determination of whether Poly-America had incurred any lost profits due to the infringement, and "if not, the proper reasonable royalty to which Poly-America may be entitled"); *Novozymes A/S v. Genencor Intern., Inc.*, 474 F. Supp. 2d 592, 604-05 (D. Del. 2007) (denying lost profits award to parent company based on alleged lost sales of non-party subsidiary, but awarding reasonable royalty to parent company as patent owner).

For all these reasons, the court finds the delayed production of the license agreement did not prejudice WAGO in its failed challenge to standing, though the timely production of the June 29, 2001, license arguably may have prevented WAGO from incurring the costs of the motion to dismiss for lack of standing.  Accordingly, the court will only award WAGO $5,000 to cover attorneys' fees and costs in bringing the motion to dismiss.

ORDER

IT IS ORDERED that:

1)  Consistent with the court's finding that plaintiffs Rockwell Automation, Inc. and Rockwell Automation Technologies, Inc. acted with unclean hands in failing to disclose the 1747 Open Controller during the course of discovery, the court's order denying defendants WAGO Corporation and WAGO Kontakttechnik GmbH & Co. KG's motion to supplement its invalidity contentions and its expert report (dkt. #300) is VACATED IN PART to permit defendants to supplement their invalidity contentions and expert report to include a claim that the 1747 Open Controller anticipates the '813 patent;

2)  Defendants' motion for leave to file reply to plaintiffs' opposition to WAGO's MIL No. 3 to exclude evidence of indirect infringement (dkt. #304) is DENIED AS MOOT;

3) Defendants' motion to dismiss for lack of standing (dkt. #386) is DENIED;

4) Plaintiffs' motion to seal portions of the trial transcripts and a trial exhibit (dkt. #395) and defendants' motion to seal portions of the trial transcripts and trial exhibit containing confidential financial information (dkt. #405) are both GRANTED as unopposed;

5) Plaintiffs' request for permanent injunction and plaintiffs' motion for an award of prejudgment and post-judgment interest (dkt. #397) are both DENIED at this time, subject to the jury's determination of whether the 1747 Open Controller anticipates the '813 patent;

6) Defendants' motion to hold in abeyance entry of judgment and rulings on WAGO's unclean hands affirmative defense and Rockwell's request for a permanent injunction and to grant additional relief (dkt. #409) is GRANTED IN PART AND DENIED IN PART.  Judgment will not be entered and the court will not rule on Rockwell's request for a permanent injunction until a determination is made on WAGO's claim that the '813 patent is invalid as anticipated.  In all other respects, defendants' motion is denied;

7) Plaintiffs' motion for leave to file a reply to WAGO's opposition to Rockwell's motion for prejudgment and post-judgment interest (dkt. #414) is DENIED AS MOOT;

8) Plaintiff's request for an extension of time to oppose WAGO's abeyance motion (dkt. #416) is GRANTED;

9) Defendant's motion for leave to file a reply brief in support of WAGO's abeyance motion (dkt. #420) is GRANTED; and

10)    The court will hold a telephonic conference on April 3, 2013, at 9:00 a.m. to set pretrial deadlines and a trial date, plaintiffs to initiate the call to the court.

Entered this 15th day of March, 2013.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge